David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (646) 509-3913
Facsimile:   (877) 501-3346

Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, and Elena Weinberger,
individually and on behalf of a class of
similarly situated individuals

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| NICK KING, JR., DEENA FISCHER, and ELENA WEINBERGER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> BUMBLE TRADING, INC., and BUMBLE HOLDING LTD., <br><br> Defendants. | Case No. 5:18-cv-06868-NC <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Nick King, Jr., Deena Fischer, and Elena Weinberger ("Plaintiffs"), individually and on behalf of all others similarly situated, allege as follows based on personal knowledge of their own acts and observations and, otherwise, upon information and belief based on investigation of counsel:

## NATURE OF THE CASE

1.     Bumble Trading, Inc. and Bumble Holding Ltd. (together "Bumble" or "Defendants") own, operate, promote, and advertise a popular dating software application called "Bumble."

2.     Plaintiffs and class members are consumers in California who subscribed to the company's premium service, called Bumble Boost, and were charged fees for that service.

3.     Bumble's Terms and Conditions of Use (the "Terms," attached as Exhibit A), which Bumble claims is a contract between Bumble and consumers who use the app, fails to comply with California's dating service contract law (hereinafter "Dating Service Law" or "DSL"), Cal. Civ. Code §§ 1694, *et seq.*  The Terms do not inform consumers of their right to cancel the contract, without penalty or obligation, within three business days, as required under California's Dating Service Law.  Cal. Civ. Code § 1694.2.

4.     Not only does Bumble fail to inform consumers of their right of rescission – Bumble maintains a uniform practice and policy of denying rightfully owed refunds to consumers.

5.     Bumble's written Terms, as well as the FAQ's on Bumble's website, affirmatively represent that all purchases for premium subscriptions are non-refundable, and this directly violates the DSL. Bumble's failure to comply with the DSL renders Bumble's contracts with consumers void and unenforceable.

6.     In addition, Bumble has a uniform policy and practice of automatically renewing consumers' premium subscriptions without obtaining affirmative consent prior to the consumer's purchase, without providing the auto-renewal terms in a clear and conspicuous manner prior to the purchase, and without providing an acknowledgement identifying an easy and efficient mechanism for consumers to cancel their subscriptions.  Bumble also makes it exceedingly difficult and

confusing for consumers to cancel the premium service.  These practices and policies violate California's Automatic Renewal Law, Cal. Bus. Prof. Code §§ 17600-17606, *et. seq.*

7.    Bumble's conduct violates the California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") and constitutes unlawful, unfair, and fraudulent acts and practices under California's Unfair Competition Law ("UCL"), Business & Professions Code, §§ 17200, *et seq..*

8.    As a direct result of Bumble's conduct, Plaintiffs and the class members suffered economic injury in the loss of monies paid for premium subscriptions for Bumble's dating and social referral services, as well as loss of their rescission rights.

9.    Plaintiffs, on behalf of themselves and class members, seek restitution, declaratory, injunctive, and other equitable relief, statutory damages, actual and treble damages, reasonable attorneys' fees and costs, and interest, as set forth below.

## PARTIES

10.    Plaintiff Nick King, Jr., is an individual residing in Los Angeles County, California.

11.    Plaintiff Deena Fischer is an individual residing in San Diego County, California.

12.    Plaintiff Elena Weinberger is an individual residing in Santa Clara County, California.

13.    Defendant Bumble Trading, Inc. is a corporation organized under the laws of Delaware, having is principal place of business in Dallas, Texas.

14.    Defendant Bumble Holding, Ltd., is a corporation organized under the laws of the United Kingdom having its principal place of business in London, United Kingdom.

## JURISDICTION AND VENUE

15.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C., § 1332, as amended by the Class Action Fairness Act of 2005, in that the aggregate claims of Plaintiffs and the proposed class members exceed the sum or value of $5,000,000, exclusive of interest and costs.

16.    There is minimal diversity of citizenship between Plaintiffs and the proposed class

members and Defendants in that each Defendant is headquartered outside of the state of California and Plaintiffs are residents of California asserting claims on behalf of themselves and others who reside in the State of California.

17.     This Court has personal jurisdiction over Defendants because each do business in and have sufficient minimum contacts with this state, including within this District, and/or have otherwise intentionally availed themselves of the markets in this state through the promotion, marketing, and sale of their products and/or services in this state, and in this District, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

19.     Intradistrict Assignment.  Assignment to the San Jose Division of this Court is proper pursuant to Civil Local Rule 3-2(c) and (d) because a substantial portion of the events, conduct, and omissions giving rise to this action occurred within this District and division.

## FACTUAL ALLEGATIONS

### Bumble's Premium Subscription-Based Dating and Social Referral Service

20.     Bumble owns and operates a mobile software application called Bumble (the App).  Bumble offers, promotes, advertises, and provides dating and other social referral services directly through the App.

21.     When the App is downloaded, the owner, developer, and publisher of the App is identified as Bumble Holding, Ltd.  According to Bumble, about 40 million people have downloaded the App.

22.     Upon downloading the App, Plaintiffs and class members enter their names, telephone numbers, addresses, photos, and statistics into the App.  Based on Bumble's proprietary algorithm, they are matched with other users through the App.

23.     Bumble's premium subscription-based service is offered directly through the App.  The premium service is offered for intervals of time, such as one-week, three months, and six

months, each of which automatically renew at the end of the term, unless the consumer affirmatively cancels their subscription prior to the end of the subscription period.

24.     The consumer's purchase is an "In-App" purchase and the consumer is charged up front for the subscription period.

25.     At all times during the class period, the premium subscription was offered for a fee. Today, the cost of the premium subscription ranges from $8.99 to $139.99.

**Bumble's Terms Violate California's Dating Service Contract Law**

26.     California's DSL is a set of consumer protection statutes that require companies that offer dating services to advise consumers in writing that they have a right to cancel the dating service contract and to assure that consumers are aware of that right to cancel.  Cal. Civ. Code §§ 1694.1 and 1694.2.

27.     Cal. Civ. Code § 1694(b) defines "online dating service" as any person or organization engaged in the business of offering dating, matrimonial, or social referral services online, where the services are offered primarily online, such as by means of an Internet Web site or a mobile application. Cal. Civ. Code § 1694(b). The statute applies to companies, like Bumble, that provide online dating services and dating services through a mobile application.

28.     Bumble claims that the Terms create a "contract between [the consumer] and Bumble Trading Inc" and that "once [a consumer] access[es], view[s] or use[s] the App, [they] are going to be legally bound by these Terms…"  *See* Exhibit A.

29.     Bumble's Terms constitute a "dating service contract" as that term is defined by Cal. Civ. Code § 1694.

30.     According to the Terms, all purchases are non-refundable.  Specifically, the Terms provide:  "Once you have requested a Premium Service or In-App Product, you authorize us to charge your chosen Premium Payment Method and your payment is non-refundable."  *See* Exhibit A, section 5.

31.     Bumble's FAQ's also state that all purchases are non-refundable. *See* https://bumble.com/en-us/faq# ("I'm not happy with my Bumble Boost subscription. How can I get

a refund?  As stated in our Terms and Conditions, any purchases made in the Bumble app are non-refundable.").

32.     Bumble's Terms are directly contrary to the provisions of Civil Code section 1694 which imposes the right to cancel a dating service contract or offer, until midnight of the third business day after the day on which the buyer signs an agreement or offer to purchase those services.  Cal. Civ. Code § 1694.1(a).

33.     Bumble's Terms do not contain the mandatory language of Section 1694 et seq., and therefore, Plaintiffs and Class Members have a right to cancel the contract at any time.  Cal. Civ. Code § 1694.2(e).

34.     Specifically, Cal. Civ. Code § 1694.2, requires the following:

(b)(1) Every dating service contract shall contain on its face, and in close proximity to the space reserved for the signature of the buyer, a conspicuous statement in a size equal to at least 10-point boldface type, as follows:

"You, the buyer, may cancel this agreement, without any penalty or obligation, at any time prior to midnight of the original contract seller's third business day following the date of this contract, excluding Sundays and holidays. To cancel this agreement, mail or deliver a signed and dated notice, or send a telegram which states that you, the buyer, are canceling this agreement, or words of similar effect. This notice shall be sent
...................................................................................................................................
(Name of the business that sold you the contract)
..................................................................................................................................."
(Address of the business that sold you the contract)

(2) Paragraph (1) shall not otherwise apply to an online dating service if the online dating service contract includes the statement in paragraph (1) in a clear and conspicuous manner in a stand-alone first paragraph of the contract.

(c)(1) The dating service contract shall contain on the first page, in a type size no smaller than that generally used in the body of the document, the name and address of the dating service operator to which the notice of cancellation is to be mailed, and the date the buyer signed the contract.

(2) In the case of an online dating service contract, if the name of the dating service operator and the email address that can be used for cancellation appears in the first paragraph of the contract, in a type size no smaller than that generally used in the body of the document, the other requirements of paragraph (1) shall not apply.

35.     As a result of Bumble's violations of California's DSL, Bumble's Terms are "void and unenforceable." Cal. Civ. Code §1694.4(a).

36.     Bumble violates the law and systemically denies Plaintiffs and class members' requests for refunds.

37.     Moreover, by affirmatively informing Plaintiffs and class members that they are not entitled to obtain a refund, Bumble chills the ability of consumers to exercise their statutory rescission rights.

38.     Even a cursory review of the terms of other dating apps indicates that Bumble's competitors attempt to inform California residents of their right to cancel their subscription, without penalty or obligation, at any time prior to midnight of the third business day following the date they subscribed.[1]

39.     As a direct result of Bumble's failure to comply with California's DSL, Plaintiffs and class members suffered economic injury in that they were deprived of funds due to be returned to them pursuant to their cancellation and refund rights under the law.  Further, Plaintiffs and the class were deprived of their statutory right to cancel their subscriptions, rescind their contractual agreements, and obtain a full refund under the DSL.

**Bumble's Automatic Renewal Policy Violates California Law**

40.     California's Automatic Renewal Law, Cal. Bus. Prof. Code, §§ 17600-17606, was enacted in December 2010.  The stated intent of the Legislature was "to end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."  *See* Cal. Bus.

_____

[1]     *See e.g.*, Tinder, https://www.gotinder.com/terms/us-2018-05-09 (last visited September 12, 2018); Match, https://www.match.com/registration/membagr.aspx (last visited November 5, 2018); OK Cupid, https://www.okcupid.com/legal/terms (last visited November 5, 2018); PlentyOfFish https://www.pof.com/terms.aspx (last visited Feb. 10, 2019); Zoosk, https://docviewer.zoosk.com/legal-tos-en.html (last visited Feb. 10, 2019); Jdate, https://about.jdate.com/legal-en/#termsofservice (last visited Feb. 10, 2019); Hinge, https://hinge.co/terms/, Christian Mingle, https://about.christianmingle.com/en/legal-en/#termsofservice (last visited Feb. 10, 2019).

Prof. Code § 17600.

41.     Cal. Bus. Prof. Code § 17601(a) defines the term "automatic renewal" to mean "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."

42.     Bumble, through the App, offered and continues to offer consumers in California (including Plaintiffs and class members) dating, matrimonial and/or social referral services using a plan or arrangement in which a paid subscription is automatically renewed at the end of a definite term.  Bumble's premium subscriptions were, and are, "automatic renewal" plans under Cal. Bus. Prof. Code § 17601(a).

43.     Cal. Bus. Prof. Code § 17602(a)(1) makes it unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in California to:

> Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer…

44.     Cal. Bus. Prof. Code § 17601(b) defines the term "automatic renewal offer terms" as the following clear and conspicuous disclosures:

> (1) That the subscription or purchasing agreement will continue until the consumer cancels.

> (2) The description of the cancellation policy that applies to the offer.

> (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

> (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

> (5) The minimum purchase obligation, if any.

45.     At all relevant times, Bumble failed to disclose the "automatic renewal offer terms" defined by Cal. Bus. Prof. Code § 17601(b) before Plaintiffs and Members purchased their subscriptions to Bumble Boost. At no time during Bumble's subscription flow, or the process by which Plaintiffs and class members are presented with and then accept an offer for an automatically renewing premium subscription, did Bumble clearly and conspicuously disclose (i) that the

subscription will continue until cancelled (ii) the cancellation policy that applied to the offer; (iii) the recurring charges that would be charged to the consumer's credit or debit cards or third party payment accounts; (iv) the length of the automatic renewal term or that the service was continuous. This conduct violates Cal. Bus. Prof. Code § 17602 (a)(1).

46.     Cal. Bus. Prof. Code § 17602(a)(2) makes it unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in California to:

> Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms....

47.     At all relevant times, Bumble charged, and continues to charge, Plaintiffs and class members for premium subscriptions.  However, Bumble has done so, and continues to do so, without first obtaining Plaintiffs and class members' affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.  Indeed, there is no mechanism (during the subscription process or at any point in time) that requires Plaintiff and class members to affirmatively consent to such terms. This conduct violates Cal. Bus. Prof. Code § 17602(a)(2).

48.     Cal. Bus. Prof. Code § 17602(a)(3) makes it unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in California to:

> Fail to provide an acknowledgement that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer...

49.     Cal. Bus. Prof. Code § 17602(b) further provides:

> A business that makes automatic renewal offer or continuous service offer shall provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

50.     Bumble fails to provide Plaintiffs and class members with an acknowledgement that satisfies any of the requirements of Cal. Bus. Prof. Code §§ 17602(a)(3) and 17602(b).

51.     Cal. Bus. Prof. Code § 17603 provides:

> In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in

-9-

Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business, including, but not limited to, bearing the cost of, or responsibility for, shipping any goods, wares, merchandise, or products to the business.

52.     Bumble's premium subscription for dating and social services is a product provided to Plaintiffs and class members.  As a result, the services provided to Plaintiffs and class members under the subscription plan shall for all purposes be deemed an "unconditional gift" to them, and Plaintiffs and class members who may use such services in any manner they see fit without obligation to Bumble.  Cal. Bus. & Prof. Code § 17603.

53.     As a result of Bumble's violation of the Automatic Renewal Law, Plaintiffs and class members suffered economic injury and are entitled to reimbursement of their payments.

**Plaintiff King's Individual Allegations**

54.     On or about September 6, 2018, Plaintiff King purchased a one-week subscription of Bumble Boost for $8.99.

55.     Plaintiff King provided his debit card information directly to Bumble.

56.     At the time he subscribed, Plaintiff King believed the subscription would not extend beyond one week; he did not expect to be charged again.

57.     Before he subscribed to Boost, Bumble did not disclose the automatic renewal offer terms or continuous service offer terms to Plaintiff King, which was a direct violation of Cal. Bus. & Prof. Code §17602(a)(1). The screens and buttons presented to Plaintiff King before his purchase did not state that the Boost subscription would continue until he cancelled, did not describe the cancellation policy that applied to his purchase, did not state the recurring charges that would be charged to his debit card, and did not state that the term was continuous.

58.     At no point did Bumble obtain Plaintiff King's affirmative consent to an agreement containing the automatic renewal offer terms or continuous service offer terms, which was a violation of Cal. Bus. & Prof. Code §17602(a)(2).

59.     On or about September 6, 2018, Bumble emailed Plaintiff King an acknowledgment that his Bumble Boost subscription had been activated. The subject line of the email stated: "♥ Your

Bumble Boost membership has been activated".  The body of the email stated the following: "Bumble Boost.  Congratulations! You're now a member of Bumble Boost! You've unlocked the following features: The Beeline, ReMatching Expired Matches, Unlimited Extends.  Check Out Boost Now." A true and accurate copy of the email is attached as Exhibit B.

60.     The acknowledgement email failed to provide Plaintiff King with the automatic renewal or continuous service offer terms, cancellation policy, nor did it provide information regarding how to cancel in a manner capable of being retained by him, which was a violation of Cal. Bus. & Prof. Code § 17602(a)(3).  The acknowledgment email also failed to provide a toll-free telephone number, electronic mail address, or postal address, or another cost-effective, timely, and easy-to-use mechanism for cancellation of his membership, which was a violation of Cal. Bus. & Prof. Code § 17602(b).  Plaintiff King did not receive any other acknowledgements that contain the required information.

61.      Upon the expiration of the one-week subscription, Plaintiff King no longer used, nor did he want, the premium service.  However, Bumble automatically renewed the one-week subscription and continued to charge Plaintiff King's debit card $8.99 on a recurring, weekly basis five additional times.

62.     On October 18, 2018, Plaintiff King notified Bumble via email that he did not authorize the five additional weekly charges and requested instructions on how to cancel his Boost subscription.  He also requested a refund of the additional charges.

63.     In response, later that day, Bumble notified Plaintiff King that all purchases through the mobile app are non-refundable, as stated in the Terms. Bumble also informed Plaintiff King that his Boost subscription must be cancelled through the Bumble App – not through a third party such as Google or Apple.

64.     However, at no point was Plaintiff King required to examine or affirmatively accept Bumble's Terms.

65.     Bumble's refusal to issue a refund is contrary to the Automatic Renewal Law, which deems products provided in violation of the statute to be a gift to consumers. Cal. Bus. & Prof.

Code § 17603.

66.     Had Bumble complied with the Automatic Renewal Law, Plaintiff King would have been able to read the auto renewal terms, and he would have not subscribed to Boost or he would have cancelled his subscription earlier, i.e., prior to the expiration of the initial subscription period. As a direct result of Bumble's violations of the Automatic Renewal Law, Plaintiff King suffered economic injury.

67.     Bumble's refusal to issue a refund is also contrary to Plaintiff King's right to obtain a full refund of the services under the DSL.

68.     To date, more than ten days have passed since Plaintiff King cancelled the contract, yet he has not been refunded any portion of the subscription fee in violation of Cal. Civ. Code §1694.1(e).

69.     At the time Plaintiff King subscribed to Bumble Boost, Bumble's Terms failed to include any of the mandatory provisions required by Cal. Civ. Code § 1694, *et seq.*, including notice of his rescission rights.  Instead, the Terms omitted the required language and contained language about non-refundability of payments, which is directly contrary to the law.  As a result, Bumble's Terms are "void and unenforceable," under Cal. Civ. Code §1694.4(a) and Bumble cannot enforce them against Plaintiff King.

70.     In addition, under Cal. Civ. Code §1694.4(b), "[a]ny contract for dating services entered into under willful and fraudulent or misleading information or advertisements of the seller is void and unenforceable."  Plaintiff King entered into a dating services contract under willful and fraudulent or misleading information from Bumble.  Bumble's conduct is willful because it continued after Plaintiff King put Bumble on notice of the violation, and Bumble had received complaints by consumers to the company about the unauthorized recurring billing practices. Bumble's Terms are "void and unenforceable" for this additional reason.

71.     As a direct result of Bumble's violations of California's DSL, Plaintiff King suffered injury in the loss of monies and loss of his statutory rescission rights.

72.     The facts giving rise to Plaintiff King's claims are materially the same as the

1    class(es) he seeks to represent.

2    **Plaintiff Fischer's Individual Allegations**

3    73.    On or about September 16, 2018, Plaintiff Fischer purchased six months of Bumble

4    Boost for $79.99.

5    74.    At the time Plaintiff Fischer subscribed to Bumble Boost, Bumble's Terms failed to

6    include the mandatory provisions required by Cal. Civ. Code § 1694, *et seq.*, including notice of her

7    rescission rights.  Instead, the Terms omitted the required language and contained language about

8    non-refundability of payments, which is directly contrary to the law.

9    75.    Plaintiff Fischer started to experience technical issues with her account, including an

10   inability to edit or delete the "About Me" in her user profile, which impaired her ability to use and

11   enjoy the dating service.

12   76.    Plaintiff Fischer demanded a refund and expressed her intent not to be bound by the

13   contract several times, including but not limited to on October 27, 2018.

14   77.    Bumble denied Plaintiff Fischer's repeated requests, and advised that her

15   "subscription was cancelled when [she] deleted [her] account," that she was not eligible for a

16   refund, and that under the Terms, no refunds are allowed.

17   78.    Bumble's refusal to issue a refund is contrary to Plaintiff Fischer's right to obtain a

18   full refund at any time.

19   79.    To date, more than ten days have passed since Plaintiff Fischer cancelled the

20   contract, yet she has not been refunded any portion of the subscription fee paid in violation of Cal.

21   Civ. Code §1694.1(e).

22   80.    Because Bumble's Terms failed to comply with California's DSL, they are "void and

23   unenforceable." Cal. Civ. Code §1694.4(a).

24   81.    As a direct result of Bumble's violations of California's DSL, Plaintiff Fischer

25   suffered injury in the loss of monies and loss of her statutory rescission rights.

26   82.    The facts giving rise to Plaintiff Fischer's claims are materially the same as the class

27   she seeks to represent.

28

**Plaintiff Weinberger's Individual Allegations**

83.     On or about September 30, 2018, Plaintiff Weinberger purchased six months of Bumble Boost for $79.99.

84.     At the time Plaintiff Weinberger subscribed to Bumble Boost, Bumble's Terms failed to include the mandatory provisions required by Cal. Civ. Code § 1694, *et seq.*, including notice of her rescission rights.  Instead, the Terms omitted the required language and contained language about non-refundability of payments, which is directly contrary to the law.

85.     Within three business days of the purchase, Plaintiff Weinberger notified Bumble electronically, via Bumble's in-app "Contact Us," of her intent not to be bound by the contract as she did not want Bumble Boost and she demanded a refund.

86.     In response, Bumble informed Plaintiff Weinberger that purchases made through the App were non-refundable pursuant to the Terms.

87.     Bumble's refusal to issue a refund is contrary to Plaintiff Weinberger's right to cancel her contract and obtain a full refund under Cal. Civ. Code §1694.1.

88.     To date, more than ten days have passed since Plaintiff Weinberger cancelled the contract; however, Bumble has not issued a refund in violation of Cal. Civ. Code §1694.1(e).

89.     Because Bumble failed to comply with California's DSL, Bumble's Terms are "void and unenforceable." Cal. Civ. Code §1694.4(a).

90.     As a direct result of Bumble's violations of California's DSL, Plaintiff Weinberger suffered injury in the loss of monies to which she was entitled and loss of her statutory rescission rights.

91.      The facts giving rise to Plaintiff Weinberger's claims are materially the same as the class she seeks to represent.

**CONSUMERS COMPLAIN ABOUT INJURIES RESULTING FROM BUMBLE'S AUTO-RENEWAL AND NO-REFUND POLICIES AND PRACTICES**

92.     Consumers have been injured by Bumble's uniform practices of renewing consumers' subscriptions without their consent and knowledge, making it difficult for consumers to cancel their subscriptions, as well as by Bumble's practice of denying refunds.

-14-

93.     The websites of Consumer Affairs and the Better Business Bureau provide some examples that chronicle these common grievances:

> I joined for a week and have continued to be charged despite canceling my account. When offered membership selections initially, I opted to try it for a week for the price of $8.99 instead of the less expensive deal of by the month. I chose this because I did not want more than one charge. I have contacted the business by email because none of the phone numbers available online actually work. After several days I got an automated response that I had to cancel myself on their app. I wasn't able to find this information which is why I contacted them in the first place. I reopened my account so that I could follow their cancel directions, but the menu options they listed were not listed when I followed their directions. I want to be refunded all but the one week that I agreed to pay. I also want to make sure that I am removed from their billing and will not be charged or solicited again.
>
> https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

> I have been trying to cancel Bumble for 2 months. I cannot cancel thru iTunes due to no subscription button. I've emailed them twice. I cannot find a phone number for them. It was renewed again today. I want this subscription cancelled and today's charge reimbursed. Thank you.  https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

> I purchased a one week subscription and it automatically renewed. Yes, it was in the fine print, but most reputable companies will give you your money back on the subsequent renewal, just to be decent. Not Bumble!...
>
> https://www.consumeraffairs.com/entertainment/bumble.html

> To whom it may concern, Bumble and Google Play will not refund you 80$ after they auto charge you if you didn't cancel the subscription. I contacted both parties the day of the 80$ charge, and both would not honor refund. This is poor business practices. Please don't support a business that won't refund you a charge the day of the auto charge!!!
>
> https://www.consumeraffairs.com/entertainment/bumble.html?page=2

> I subscribed to bumble premium free trial and didn't realize that they would auto-charge me for the $49.99 premium version that I had not noticed any upgraded features or anything. Immediately after the charge, I asked for a refund and bumble said I would have no recourse for a refund…
>
> https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

> I began using Bumble Dating App in Jan '18. I purchased (what I thought was) a 1-time amount of "coins" to make contact with male dates. I authorized my credit card to be charged $8.99. I noticed today a debit "Social Payments" for $8.99 on my statement. I was curious so I searched the amount and found this debit for "Social Payments" has been recurring weekly since March 2018. I contacted my bank for help. The bank wasn't able to explain the charge or find a contact number for the company making the recurring debit. Upon investigation, the bank found that "Social Payments" has been making debits of $8.99

WEEKLY out of my account since Jan '18. I'm not happy about this. I did NOT authorize recurring WEEKLY charges. I decided to Google "Social Payments" and found that its a 3rd party vendor Bumble Dating App uses. There's no direct number for Bumble only this email: ************************…

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints.

I downloaded the app and was casually browsing through it, a few menus kept popping up and before I knew it I received a message telling me my credit card would be charged for $79.99 for services that I did not ask for or authorize. I immediately attempted to contact Customer service but they have no phone number listed, so instead I kept receiving automated emails telling me I would not receive a refund for this purchase I never made… this is a predatory company that scams people and takes advantage of those who aren't very tech savvy or don't watch their money closely, stay away at all costs.

https://www.consumeraffairs.com/entertainment/bumble.html.

Their app is horrible to use, no flexibility. AND... you have to be EXTREMELY careful where you click or they STEAL money from you without your consent. I signed up for 1 week to try it out and was so disappointed with this piece of crap that I wanted to cancel but of course, there is no easy way to do that. I clicked on one area that I thought might be the place to do that, and low and behold, they charge me $50!!! Without any authorization. I HATED paying $10 for 1 day for the week I signed up for... let alone have them STEAL $50 for making it so difficult to get out of their ** site. I am absolutely LIVID!!!

https://www.consumeraffairs.com/entertainment/bumble.html.

I wanted to purchase 15 "coins" for $19.99 on July 25, 2018 throught the app on my Visa card. I accidentally purchased 2 of the exact same product. It wasn't clear that the purchase had gone through and I pressed the "buy" button again, only to see on my credit card statement I had been charged twice. I contacted Bumble, and there robot automatic response team, said, "sorry, no refunds." This was clearly a mistake. If I wanted to purchase 30 coins (as I did by accident), I could have paid $34.99 foro 30 coins, rather than buying them at a higher price. After some research, I soon found that accidental purchases are very common with Bumble. It may be a design flaw, but after realizing how easily they dismiss customer concerns, it feels as if a large part of their revenue is made by customer mistakes. This practice is unethical and fraudulent.

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

I thought when I signed up that it would be a monthly deduction. I did not know they would deduct all the payments all at once. Within a few minutes of signing up I wanted to cancel and Bumble to refund my money. They do not have a phone number to contact them. The agreement is misleading and I would like them to refund me my full payment. I believe I cancel my membership that same day.

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

…I paid $49.99 for 3 months of service and they refuse to refund me so I filed a dispute with my bank. Entire company is a SCAM!!! STAY FAR FAR AWAY!!!

https://www.consumeraffairs.com/entertainment/bumble.html.

## CLASS ALLEGATIONS

94.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil

Procedure, Rules 23(a), (b)(2), (3), and (c)(4), on behalf of themselves and the following classes of

consumers (each a "class member" of the "Class" or "Classes"):

> Plaintiffs King, Weinberger, and Fischer seek to represent the following class:
>
> **California Dating Service Contract Class ("DSL Class")**:  All persons within California who purchased Defendants' premium subscription, any time from four years prior to the date this action is first filed through the date of certification.
>
> Plaintiff King seeks to represent the following class:
>
> **California Automatic Renewal Class ("ARL Class"):** All persons within California who, any time from four years prior to the date this action is first filed through the date of certification, purchased Defendants' premium subscription and had their credit card, debit card, and/or a third-party payment account charged as part of Defendants' automatic renewal program or a continuous service program.

95.     Excluded from the Classes are Defendants as well as Defendants' affiliates,

employees, officers and directors. Plaintiffs reserve the right to amend the definitions of the classes

if discovery or further investigation reveals that the classes should be expanded or otherwise

modified.

96.     Numerosity/Impracticability of Joinder: The members of each Class are so numerous

that joinder of all members would be impracticable. Plaintiffs reasonably estimate that each of the

proposed Classes consists of hundreds of thousands of consumers.  Class members can be identified

through Defendants' business records.

97.     Commonality and Predominance: Common questions of law and fact predominate

over any questions affecting only individual members of the Classes. These common legal and

factual questions, which do not vary from one class member to another and which may be

determined without reference to the individual circumstances of any class member, include, but are

not limited, to the following:

a.      Whether Bumble's Terms are void and unenforceable under California's DSL;

b.      Whether Bumble's no-refund policy violates California's DSL;

-17-

c. Whether Bumble's auto-renewal conduct violates the CLRA;

d. Whether Bumble's no-refund provision is unconscionable;

e. Whether Bumble's Terms and No-Refund Policy are an unfair, illegal and/or fraudulent act or practice under the UCL;

f. Whether Bumble imposed an automatic renewal or continuous service provision without first obtaining the Plaintiffs' and class members' affirmative consent to do so;

g. Whether Bumble failed to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the premium subscriptions were fulfilled;

h. Whether Cal. Bus. Prof. Code § 17603, in conjunction with Cal. Bus. Prof. Code § 17200, *et seq.* provides for restitution for money paid by class members in circumstances where the services provided by Bumble are deemed an unconditional gift;

i. Whether, as a result of Bumble's conduct, Plaintiffs and the class members suffered injury; and

j. Whether, as a result of Bumble's conduct, Plaintiffs and the class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

98. Typicality: Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs and all class members were injured by the same wrongful practices in which Bumble engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Classes and are based on the same or similar legal theories.

99. Adequacy: Plaintiffs will fully and adequately protect the interests of the members of the Classes they seek to represent and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation. Neither Plaintiffs nor their counsel have interests contrary to or conflicting with those of the Classes. Bumble has no defenses unique to Plaintiffs.

100.    Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Classes; the Classes are readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

101.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

102.    Bumble has acted or failed to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief with respect to the Classes as a whole.

103.    Without a class action, Bumble will continue a course of action that will result in further damages to Plaintiffs and members of the Classes and will likely retain the benefits of their wrongdoing.

104.    Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth below.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**Violation of Cal. Civ. Code, Section 1694, *et seq.***
**(On Behalf of Plaintiffs King, Fischer and Weinberger**
**and the DSL Class)**

105.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiffs King, Fischer and Weinberger bring this claim on their own behalf and on behalf of members of the DSL Class.

106.    As a result of Defendants' failure to comply with California's DSL as alleged above, Plaintiffs and members of the DSL Class have been injured and suffered loss of monies paid for the premium subscription and loss of their rescission rights.

107.    Pursuant to Cal. Civ. Code, §1694.4(c), Plaintiffs King, Fischer and Weinberger, on behalf of themselves and members of the DSL Class seek actual damages, treble damages, and reasonable attorney fees.

**SECOND CLAIM FOR RELIEF**
**Violations of Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiff King and ARL Class)**

108.    Plaintiff King repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiff brings this claim on behalf of himself and on behalf of the ARL Class pursuant to the CLRA.

109.    Cal. Civ. Code § 1770(a)(14) specifically prohibits companies from "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

110.    Bumble violated, and continues to violate the CLRA by representing that it has rights and remedies that it does not have, specifically that it has the right to charge Plaintiff and class members' debit cards, credit cards, or third party payment methods without first making the statutorily required disclosures under the ARL and obtaining their affirmative consent to the agreement containing the automatic renewal terms and continuous offer terms, and through other conduct described above, in violation of the ARL.  Bumble does not have the legal right to charge for these subscriptions because at all relevant times, it was not in compliance with the ARL.

111.    Plaintiff King and members of the ARL Class reasonably relied upon Bumble's material misrepresentations and/or omissions to their detriment.  Had Bumble complied with its disclosure obligations under the ARL, Plaintiff King and members of the ARL Class would not have subscribed to Boost or would have cancelled their Boost subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.  As a result of Bumble's conduct, Plaintiff King and members of the ARL Class were damaged.

112.    On December 11, 2018, Plaintiff King sent a written demand to Bumble, on behalf of himself and members of the ARL Class, pursuant to Civil Code Section 1782(a). Thirty days have elapsed since he sent such demand to Bumble. Bumble has failed to make an appropriate correction, repair, replacement or other remedy within 30 days of the demand or within a reasonable time.

113.    Plaintiff King, on behalf of himself and the ARL Class, is therefore entitled to maintain an action for damages under Civil Code Sections 1780 and 1781 and requests actual damages, restitution, punitive damages, injunctive relief and other relief that the Court deems

-20-

1   proper, and reasonable attorneys' fees and costs, as permitted by Civil Code Sections 1780 and

2   1782.  Such injunctive relief includes requiring Defendants to (i) cease representing to consumers

3   that Bumble is entitled to automatically renew their premium subscriptions; (ii) cease representing

4   to consumers that they are not entitled to refunds of moneys paid to Bumble for the premium

5   subscription; (iii) cease denying consumers requests for refunds that are allowable under the law;

6   and (iv) fully comply with the ARL.

7

8
**THIRD CLAIM FOR RELIEF**
**Violations of Cal. Civ. Code §§ 1750, *et seq.***
**(On behalf of Plaintiffs King, Fischer, and Weinberger**
9   **and the DSL Class)**

10       114.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

11  set forth herein.  Plaintiffs bring this claim on behalf of themselves and on behalf of the DSL Class

12  pursuant to the CLRA.

13       115.    Cal. Civ. Code § 1770(a)(19) specifically prohibits companies from "[i]nserting

14  an unconscionable provision in the contract."

15       116.    Bumble violated, and continues to violate the CLRA by inserting unconscionable

16  provisions in its adhesion contracts with Plaintiffs and class members.  In particular, Bumble inserts

17  the following no-refund provision into its Terms: "Once you have requested a Premium Service or

18  In-App Product, you authorize us to charge your chosen Premium Payment Method and your

19  payment is non-refundable." *See* Exhibit. A.

20       117.    The no-refund provision is both procedurally and substantively unconscionable.

21       118.     Bumble's dating service contracts with Plaintiffs and class members are contracts of

22  adhesion.  There was, and continues to be, no opportunity for Plaintiffs and class members to

23  bargain with Bumble, and Plaintiffs and class members did not have any meaningful choice in

24  entering into such agreements.

25       119.    The provision is buried in a lengthy contract, *i.e.*, Bumble's Terms.  Bumble's Terms

26  are available to Plaintiffs and class members via a tiny hyperlink within the App.  In order to read

27  the Terms, the consumer must click on the hyperlink and be redirected to a Bumble webpage

28

1   containing a copy of the Terms. Plaintiffs and class members were never required to affirmatively

2   accept nor read the Terms.

3       120.    Further, the DSL proscribes the manner in which contracts for dating services are

4   entered into in the State of California.  Bumble did not follow these procedures and the no-refund

5   provision is directly contrary to the statutorily required language of the DSL and the substantive

6   rights of consumers under the DSL.  The no-refund provision attempts to alter, in an impermissible

7   manner, fundamental duties imposed by the DSL.  The no-refund provision is illegal and in direct

8   violation of the strong public policy of the State of California as embodied in the DSL. The no-

9   refund provision is oppressive and unreasonably one-sided in favor of Bumble.

10      121.    As a result of Bumble's conduct, Plaintiffs and members of the DSL Class were

11  damaged in that they suffered economic harm, *i.e.*, the withheld refunds of moneys paid for dating

12  services.

13      122.    Plaintiffs reserve the right to identify additional provisions of the contract that are

14  unconscionable to the extent that Defendants attempt to enforce such provisions in the future.

15      123.    In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and members of the DSL and

16  Class seek injunctive and equitable relief as to Defendants' above violations of the CLRA; however,

17  in accordance with Cal. Civ. Code § 1782(a) and (d), Plaintiffs will subsequently amend their

18  complaint to include a request for damages.  Such injunctive relief may include requiring

19  Defendants to remove the no-refund provision from their Terms and to cease enforcing the

20  provision against consumers.

**FOURTH CLAIM FOR RELIEF**
**Violations of California Business & Professions Code §§ 17200, et seq.**
**(On behalf of Plaintiffs King, Fischer, and Weinberger**
**and the DSL and ARL Classes)**

24      124.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.  Plaintiff brings this claim on behalf of themselves and on behalf of each member

of the DSL and ARL Classes.

26      125.    Defendants have, and continue to, engage in unlawful, unfair or fraudulent business

27  acts and/or practices within the meaning of the UCL California Business & Professions Code,

28

-22-

sections 17200, *et seq*. Defendants need only violate one of the three prongs of the statute to be held strictly liable.

126.    Bumble's business acts and practices are "unlawful" because they fail to comply with California's Dating Services Law, Cal. Civ. Code §§ 1694, *et seq.*, California's Automatic Renewal Law, Cal. Bus. Prof. Code §§ 17600-17606, and the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, as alleged herein.

127.    Plaintiffs reserve the right to identify additional provisions of the law violated by Defendants as further investigation and discovery warrants.

128.    The UCL prohibits any "unfair business act or practice."  Bumble's No-Refund Policy, its failure to notify consumers of their right to cancel the contract, its continued enforcement of a void and unenforceable dating service contract, its automatic renewal of their premium subscription without first obtaining proper consent and authorization, and its failure to provide the acknowledgement required by the Automatic Renewal Law each constitute "unfair" business acts or practices.

129.    The gravity of the harm to Plaintiffs and members of the Classes outweigh any arguable utility of Bumble's conduct. Plaintiffs' injuries are substantial, are not outweighed by any countervailing benefit to consumers or competition, and are not ones that consumers could have reasonably avoided.

130.    Defendants' conduct offends California public policy tethered to California's DSL, California's ARL, and the CLRA.

131.    Defendants' actions are immoral, unethical, and/or unscrupulous, and offend established public policy, and have substantially injured Plaintiffs and other members of the Classes.

132.    Defendants had other reasonably available alternatives to further their legitimate business interests, other than the conduct described herein, such providing a right to cancel pursuant to the DSL, adequately disclosing that right, and obtaining affirmative consent before automatically renewing the premium subscription.

133.   Without the disclosures required by Cal. Civ. Code §§ 1694, *et seq.*, California consumers were not informed of their rights to cancel contracts with Bumble, without penalty or obligation.

134.   As a direct and proximate result of Bumble's unlawful and unfair business practices, Plaintiffs King, Fisher and Weinberger and members of the DSL Class have suffered economic injuries.

135.   Further, Bumble's conduct with respect to the automatic renewal of Boost subscriptions as described herein violates the "fraudulent prong" of the UCL.  Such practices are likely to deceive members of the public.

136.   Plaintiff King and members of the ARL Class reasonably relied upon Bumble's material misrepresentations and/or omissions to their detriment.  Had Bumble complied with its disclosure obligations under the ARL, Plaintiff King and members of the ARL Class would not have subscribed to Boost or would have cancelled their Boost subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.

137.   As a result of Bumble's fraudulent conduct, Plaintiff King and members of the ARL Class were damaged.

138.   Pursuant to Section 17203 of the UCL, Plaintiffs, on their own behalf and on behalf of the DSL and ARL Classes seek restitution and a court order enjoining Defendants from such future misconduct and any other such orders that may be necessary to rectify the unlawful, unfair, and fraudulent business practices of Defendants.

139.   All products received from Bumble in violation of the Automatic Renewal Law, Cal. Bus. Prof. Code, §17602 constitute unconditional gifts and, therefore, Plaintiff King and members of the ARL Class seek restitution in the amount of the subscription payments. Cal. Bus. Prof. Code, §17603.

140.   Plaintiffs bring this action as private attorneys general, and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the DSL and ARL Classes are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this

action.

### FIFTH CLAIM FOR RELIEF
### Declaratory Judgment
### (On Behalf of Plaintiffs King, Fischer and Weinberger and the DSL Class)

141.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiffs King, Fischer and Weinberger bring this claim on their own behalf and on behalf of each member of the DSL Class.

142.    By virtue of Bumble's past and continued failure to comply with the DSL, Cal. Civ. Code §§ 1694, *et seq.*, as alleged herein, its Terms are void and unenforceable.  Despite this, Bumble has and continues to enforce the Terms as contracts between Plaintiffs and class members. When consumers, including Plaintiffs and class members, notify Bumble of their intent not to be bound by the contract and/or demand a refund, Bumble has a uniform policy of ignoring or outright denying such requests pursuant to the Terms.  Accordingly, there is an actual controversy between the parties, requiring a declaratory judgment.

143.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiffs and class members seek a declaratory judgment that Bumble's contracts with Plaintiffs and class members are void and unenforceable.

144.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202, the Court is authorized to grant "further necessary or proper relief based on a declaratory judgment or decree… after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."  Plaintiffs and class members seek an injunction to prevent Bumble from enforcing the Terms against Plaintiffs and class members and any other relief the Court deems necessary and proper based on a declaratory judgment.

145.    Plaintiffs bring this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the DSL Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs King, Fischer, and Weinberger on behalf of themselves and the DSL and ARL Classes, respectfully pray:

-25-

a) For an order certifying this action as a class action, appointing Plaintiffs King, Fischer and Weinberger as a representative of the DSL Class and Plaintiff King as a representative the ARL Class, and appointing their attorneys as counsel for the Classes;

b) A declaration that Bumble' Terms are void and unenforceable;

c) For actual, statutory, and treble damages for all applicable claims in amounts to be proven at trial;

d) For an order permanently enjoining Bumble from engaging in the unlawful practices alleged herein;

e) For any and all other relief available under the various statutory causes of action asserted herein, including but not limited to disgorgement of profits received through Defendants' unfair business practices and restitution;

f) For an award of attorneys' fees, costs, and expenses;

g) For an award of pre and post-judgment interest; and

h) For such other and further relief as may be just and proper.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand trial by jury of all issues so triable.

Dated: February 13, 2019                    Respectfully submitted,

By: ___/s/David C. Parisi_____
David C. Parisi
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com

-26-
First Amended Class Action Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (646) 509-3913
Facsimile:   (877) 501-3346

*Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, and Elena Weinberger,
individually and on behalf of a class of
similarly situated individuals*

-27-

First Amended Class Action Complaint