1   COOLEY LLP
    MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
2   KYLE C. WONG (224021) (kwong@cooley.com)
    MAX A. BERNSTEIN (305722) (mbernstein@cooley.com)
3   KELSEY R. SPECTOR (321488) (kspector@cooley.com)
    101 California Street, 5th Floor
4   San Francisco, CA  94111-5800
    Telephone:    (415) 693-2000
5   Facsimile:    (415) 693-2222

6   Attorneys for Defendants
    Bumble Trading, Inc. and Bumble Holding Ltd.
7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10                           SAN JOSE DIVISION

11

12

13   NICK KING, JR., DEENA FISCHER, and        Case No.  5:18-cv-06868-NC
     ELENA WEINBERGER, Individually and on
14   Behalf of All Others Similarly Situated,   **DEFENDANTS BUMBLE TRADING, INC.
                                                 AND BUMBLE HOLDING LTD.'S MOTION
15                              Plaintiffs,      AND MEMORANDUM OF POINTS AND
                                                 AUTHORITIES IN SUPPORT OF MOTION
16            v.                                 TO DISMISS PLAINTIFFS' SECOND
                                                 AMENDED COMPLAINT**
17   BUMBLE TRADING, INC., and BUMBLE
     HOLDING LTD.,                               Date:          June 5, 2019
18                                               Time:          1:00 p.m.
                                Defendants.      Courtroom:     5
19                                               Judge:         Nathanael M. Cousins
                                                 Trial Date:    Not Set
20
                                                 Complaint Filed: November 13, 2018
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. vi

STATEMENT OF RELIEF SOUGHT .................................................................................... vi

STATEMENT OF ISSUES TO BE DECIDED ....................................................................... vi

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND ........................................................................................................ 2

    A.     Bumble .......................................................................................................... 2

    B.     Bumble's Terms ............................................................................................. 2

    C.     Bumble Boost ................................................................................................ 3

III.   LEGAL STANDARD ................................................................................................. 3

IV.    ARGUMENT ............................................................................................................. 4

    A.     The Choice-of-Law Provision in Bumble's Terms Precludes Plaintiffs'
        Claims. ........................................................................................................... 4

        1.     Bumble's choice-of-law provision applies to this dispute. ............................. 4

        2.     Plaintiffs cannot overcome the strong presumption in favor of
            enforcing the agreed-to choice-of-law provision. ........................................... 6

    B.     Plaintiffs Fail to State a Claim under the UCL (Count IV). ........................... 8

        1.     Bumble's alleged conduct was not unlawful. .................................................. 9

        2.     Bumble's alleged conduct was not unfair or fraudulent. ............................... 17

    C.     Plaintiffs Fail to State a Claim Under the CLRA (Counts II and III). .......... 18

        1.     Plaintiffs have not shown that Bumble made any misrepresentations
            about rights, remedies, or obligations available under the Auto
            Renewal Law. ................................................................................................ 18

        2.     Bumble's no-refund provision is not unconscionable. .................................. 20

    D.     Plaintiffs' Request for Declaratory Relief Should be Dismissed (Count V). ........... 21

    E.     Plaintiffs Fail to State a Claim for the Common Count of Money Had and
        Received (Count VI). .................................................................................... 22

V.     CONCLUSION ........................................................................................................ 23

# TABLE OF AUTHORITIES

**Page**

**Cases**

*1-800-Got Junk? LLC v. Super. Ct.*,
  189 Cal. App. 4th 500 (2010) ........................................................................5

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000), *overruled on other grounds by AT&T Mobility v.*
  *Concepcion*, 563 U.S. 333 (2011) ................................................................20

*In re Arris Cable Modem Consumer Litig.*,
  No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ...................18, 19

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) .........................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................3, 9, 21

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*,
  622 F.3d 996 (9th Cir. 2010) .........................................................................8

*Brinkley v. Monterey Fin. Servs., Inc.*,
  242 Cal. App. 4th 314 (2015) .........................................................................6

*Buckley v. Align Tech., Inc.*,
  No. 5:13-cv-02812-EJD, 2015 WL 5698751 (N.D. Cal. Sept. 29, 2015)....................22

*Cardonet, Inc. v. IBM*,
  No. C-06-06637-RMW, 2007 U.S. Dist. LEXIS 14519 (N.D. Cal. Feb. 14, 2007)........7

*Cayanan v. Citi Holdings, Inc.*,
  928 F. Supp. 2d 1182 (S.D. Cal. 2013)........................................................5, 8

*Chamberlan v. Ford Motor Co.*,
  369 F. Supp. 2d 1138 (N.D. Cal. 2005) ........................................................19

*Conley v. Gibson*,
  355 U.S. 41 (1957)....................................................................................3, 9

*Davis v. Md. Bank*,
  No. 00-04191, 2002 WL 32713429 (N.D. Cal. June 19, 2002)........................6

*Drum v. San Fernando Valley Bar Ass'n*,
  182 Cal. App. 4th 247 (2010) .........................................................................18

Cooley LLP
Attorneys At Law
San Francisco

ii.

**Def's Mot. and Brief ISO Mot. to Dismiss SAC**
**(Case No. 5:18-cv-06868-NC)**

TABLE OF AUTHORITIES<br>(continued)

Page

*In re Facebook Biometric Info. Privacy Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..................................................................8

*Feld v. Am. Express Co.*,
No. CV 09-7202-GW, 2010 WL 9593386 (C.D. Cal. Jan. 25, 2010) ...........................6

*Haskins v. Symantec Corp.*,
No. 13-cv-1834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013), *aff'd* 654 F.
App'x 338 (9th Cir. 2016) ........................................................................19

*Herskowitz v. Apple Inc.*,
940 F. Supp. 2d 1131 (N.D. Cal. 2013) ..............................................................21

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
No. 11-4498 SC, 2012 WL 892157 (N.D. Cal. Mar. 14, 2012)....................................5

*Johnson v. Pluralsight, LLC*,
728 F. App'x 674 (9th Cir. 2018) .....................................................................8

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ...................................................................18, 19

*Knodel v. Knodel*,
14 Cal. 3d 752 (1975) ....................................................................................6

*Mahoney v. Fid. Nat'l Title Co.*, No. SACV 08-0561 AG (CWx),
2008 WL 4286934 (C.D. Cal. Sept. 15, 2008) .....................................................22

*Mar Partners 1, LLC v. Am. Home Mortg. Servicing, Inc.*,
No. 10-cv-02906 WHA, 2011 WL 11501 (N.D. Cal. Jan. 4, 2011) ............................22

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
97 Cal. App. 4th 1282 (2002) .........................................................................19

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) .........................................................................22

*Medimatch, Inc. v. Lucent Techs., Inc.*,
120 F. Supp. 2d 842 (N.D. Cal. 2000) .................................................................6

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 1305 (2005) ............................................................................20

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ..........................................................................3

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page

*Nedlloyd Lines B.V. v. Super. Ct.*,
 3 Cal. 4th 459 (1992) ...................................................................................................4, 5

*Parsa v. State of New York*,
 64 N.Y.2d 143 (N.Y. Ct. App. 1984)...........................................................................8

*Pollak v. Staunton*,
 210 Cal. 656 (1930) ...................................................................................................22

*Poublon v. C.H. Robinson Co.*,
 846 F.3d 1251 (9th Cir. 2017) ...................................................................................21

*Pratt v. Whole Food Market Cal., Inc.*,
 No. 5:12-cv-05652-EJD, 2015 WL 5770799 (N.D. Cal. Sept. 30, 2015)....................20

*Princess Cruise Lines, Ltd. v. Super. Ct.*,
 179 Cal. App. 4th 36 (2009) ......................................................................................20

*Qwest Commc'ns Co. v. Sun Coast Merchandise Corp.*,
 No. CV 10-7145 PA, 2011 WL 13217684 (C.D. Cal. June 13, 2011) ...........................5

*Rojas-Lozano v. Google, Inc.*,
 159 F. Supp. 3d 1101 (N.D. Cal. 2016) ...................................................................4, 6

*Schultz v. Harney*,
 27 Cal. App. 4th 1611 (1994) ....................................................................................22

*Sonic-Calabasas A, Inc. v. Moreno*,
 51 Cal. 4th 659 (2011) ...............................................................................................21

*Ubaldi v. SLM Corp.*,
 No. C 11-01320-EDL, 2013 WL 4015776 (N.D. Cal. Aug. 5, 2013) ...........................4

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) ...................................................................................19

*Washington Mutual Bank, FA v. Super. Ct.*,
 24 Cal. 4th 906 (2001) .................................................................................................4

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

4

5

**Statutes**

6

Cal. Bus. & Prof. Code

7   § 17200 .................................................................................................................. 7
    § 17203 .................................................................................................................. 7
8   § 17600 .................................................................................................................. vi
    § 17601 .................................................................................................................. 9
9   § 17602 ................................................................................................ 7, 9, 14, 17
    § 17603 .................................................................................................................. 17
10

11  Cal. Civ. Code

    § 1694.1 ................................................................................................................ 7
12  § 1694.2 ................................................................................................................ 7
    § 1750 .................................................................................................................. vi
13  § 1770 ...................................................................................................... 7, 19, 20

14  N.Y. Gen. Bus.

15  § 349 .................................................................................................................... 7
    § 394-c ................................................................................................................ 7
16  § 350 .................................................................................................................... 7
    § 350-a ................................................................................................................ 7
17

18  N.Y. Gen. Oblig.

    § 5-903 ................................................................................................................ 7

19  **Other Authorities**

20  Federal Rules of Civil Procedure

21  9 ..................................................................................................................... 1, 18, 19
    12 ................................................................................................................ vi, 3, 4, 9
22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**DEF'S MOT. AND BRIEF ISO MOT. TO DISMISS SAC**
**(CASE NO. 5:18-CV-06868-NC)**

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 5, 2019 at 1:00 p.m. or as soon thereafter as this Motion may be heard in the above-titled court, located at 280 South First Street, San Jose, California 95113, in Courtroom 5, 4th Floor, Defendants Bumble Trading, Inc. and Bumble Holding Ltd. (collectively, "Bumble") will move to dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC"). Bumble's Motion to Dismiss ("Motion") is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Max A. Bernstein ("Bernstein Decl."), the Request for Judicial Notice, and all pleadings and papers on file in this matter, and upon such matters as may be presented to the Court at the time of hearing or otherwise.

## STATEMENT OF RELIEF SOUGHT

Bumble seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing with prejudice Plaintiffs' SAC and each of the six causes of action alleged therein for failure to state a claim upon which relief can be granted.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiffs may make claims under California law where the terms of service they agreed to contain a choice-of-law provision that chooses New York law.

2.      Whether Plaintiffs have alleged violations of California's Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et. seq.*, and Automatic Purchase Renewals Law ("Auto Renewal Law"), Cal. Bus. & Profs. Code §§ 17600 *et seq.*

3.      Whether Plaintiffs have stated a cause of action for the common count of money had and received.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi.

DEF'S MOT. AND BRIEF ISO MOT. TO DISMISS SAC
(CASE NO. 5:18-CV-06868-NC)

1

## I.    INTRODUCTION

2          Bumble is a popular online mobile app that allows users to find and message with potential

3 romantic interests, new friends, and professional connections.  Bumble is free, but users can pay a

4 small price to subscribe to Bumble Boost—a set of additional features that enhance the Bumble

5 experience.  Plaintiffs allege that the manner in which users both sign up for and cancel Bumble Boost

6 subscriptions violates California consumer protection laws.  These allegations are flawed for multiple

7 reasons.

8          First, Plaintiffs consented to Bumble's Terms of Service, which include a New York choice-

9 of-law provision.  This not only gives Bumble and its users legal certainty as to the specific rights they

10 enjoy, but also provides a single, uniform legal standard for Bumble and its users across the nation.

11 Because all Bumble users, including the Plaintiffs, have agreed that their use of the Bumble app is

12 governed exclusively by New York law, Plaintiffs cannot now circumvent their agreement and allege

13 claims under California law.  And, as Plaintiffs cannot allege claims under California law, all their

14 derivative claims—under the California UCL and CLRA, and the common count for money had and

15 received—also fail.

16          Second, Plaintiffs' claims arising from the Auto Renewal Law fail for an additional reason.

17 Plaintiffs allege they were unlawfully enrolled in an automatically renewing subscription, but these

18 allegations simply restate the statutory language and assert Bumble's noncompliance in conclusory

19 fashion.  Plaintiffs do not even allege how they purchased Bumble Boost, let alone what that allegedly

20 deficient purchase process looked like and disclosed.  Plaintiffs' vague allegations make it difficult

21 for Bumble to know what Plaintiffs are complaining of.  For example, as shown through the exhibits

22 to the concurrently-filed Declaration of Max Bernstein ("Bernstein Declaration"), users who purchase

23 Boost through the Apple App store are fully informed of the terms of their subscription, and all

24 requirements of the Auto Renewal Law are satisfied by this purchase flow.

25          Third, accordingly, Plaintiffs UCL and CLRA claims fail insofar as they are dependent on

26 showing that Bumble did not comply with the Dating Services Law or the Auto Renewal Law.  These

27 claims also fail for independent reasons.  Plaintiffs have not pled any misrepresentation with

28 particularity, as they must to comply with Rule 9(b).  And when they do get close to doing so, their

1  argument that they relied upon a misrepresentation is nonsensical; Plaintiffs effectively argue that

2  Bumble represented that it had the right to charge them repeatedly for a subscription service (when it

3  allegedly did not), but that alleged misrepresentation is actually the disclosure required by the Auto

4  Renewal Law.   Moreover, Plaintiffs' argument that the no-refund mechanism is unconscionable

5  because it does not comply with the Dating Services Law fails; the allegation that a provision violates

6  statute does not alone render that provision unconscionable, and allegations of refusing a refund are

7  not so unfair or one-sided as to "shock the conscience."

8       Lastly, Plaintiffs have failed to allege a claim for the common count of money had and

9  received.  That claim is available where an express agreement does not govern a relationship, but here

10 Bumble's terms of service govern.   Moreover, Plaintiffs have failed to allege—as they must—that

11 Bumble did not use the money it received from Plaintiffs for Plaintiffs' benefit.  The Complaint itself

12 alleges that Bumble provided the service—Bumble Boost—that Plaintiffs purchased.

13      For these reasons, detailed in this memorandum and accompanying papers, Plaintiffs' claims

14 should be dismissed.

15 **II.   BACKGROUND**

16    **A.    Bumble**

17      Bumble operates a popular dating, friendship, and professional networking platform.  (SAC

18 ¶ 1.)  Over 40 million users worldwide have downloaded Bumble's app (the "App"), and it has rapidly

19 become one of the most import social networking platforms globally.  (*Id*. ¶ 21.)  Users create profiles

20 on the App and can view the profiles of other users.  (*Id*. ¶ 22.)  Bumble's App is unique in that it

21 empowers—and in fact requires—women to make the first move.   Once a woman initiates

22 conversation, users can then message on the App and ultimately meet in real life.  The Bumble App is

23 free to download and use.

24    **B.    Bumble's Terms**

25      Bumble maintains Terms that govern its relationship with users.  Plaintiffs admit that Bumble's

26 Terms constitute a "contract" between a user and Bumble "once [a user] access[es], view[s], or use[s]

27 the App . . . ."  (SAC, Ex. A at Preamble; *id.* ¶ 27.)  Plaintiffs do not deny that they formed a contract

28 with Bumble and instead assert multiple claims premised on the alleged defects in this contract.  Nor

do Plaintiffs dispute that the Terms contain a choice-of-law provision designating that a user's "access to the App, Our Content, and any Member Content, as well as these Terms are governed and interpreted by the laws of the State of New York . . . ." (SAC, Ex. A at § 12.)

### C.   Bumble Boost

Bumble offers a set of enhanced features known collectively as "Bumble Boost." These features include the ability to view which other users have indicated interest, to extend expiring connections, and to revive expired ones. (*See* SAC, Ex A at § 5.)  To gain access to Bumble Boost, users pay for weekly, monthly, or longer subscriptions. (SAC ¶ 23.)  Boost is purchased "in app," (SAC ¶ 24), which means that the user can purchase the subscription through, for example, the Apple App store's standardized in-app purchase flow. (*See, e.g.*, Bernstein Decl., Ex. B.)

As is plainly disclosed at the time of purchase, Boost subscriptions automatically renew until a user cancels his or her subscription. (Bernstein Decl., Ex. A & B.)  For example, on Apple's iOS platform, users must click through multiple screens stating as much in large text and then must click "Confirm" on a screen that reads "subscription will continue unless canceled[.]" (*Id.*, Exs. A, B, and C.)  An Apple iOS user then receives an email from Apple further disclosing the renewal terms. (*Id.*, Ex. D.)

If and when a user decides to cancel Bumble Boost, she can also do so, for example, through Apple's standardized process for canceling app subscriptions.

### III.   LEGAL STANDARD

A court must dismiss claims under Rule 12(b)(6) when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action" are not sufficient to save a complaint from dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

IV.   **ARGUMENT**

    A.    **The Choice-of-Law Provision in Bumble's Terms Precludes Plaintiffs' Claims.**

Plaintiffs' claims under California law are barred by the choice-of-law provision in Bumble's Terms, which Plaintiffs agreed to.  (*See* Compl. Ex. A at Preamble ("[O]nce you access, view or use the App, you are going to be legally bound by these Terms[.]").)  In deciding whether to apply a choice-of-law provision, a federal court applies the choice-of-law rules of the state in which it sits. *See Ubaldi v. SLM Corp.*, No. C 11-01320-EDL, 2013 WL 4015776, at *4 (N.D. Cal. Aug. 5, 2013). California has "a strong policy favoring enforcement of [choice-of-law] provisions." *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 465 (1992).  California courts apply the standard articulated in Section 187 of the Second Restatement of Conflict of Laws to determine whether to enforce a choice-of-law provision. *Id.*

Under Section 187, the party seeking to enforce the choice-of-law provision must show that the claims fall within the scope of the provision and that the "chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law[.]" *Washington Mutual Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 916-17 (2001).  If, as here, these elements are met, the burden shifts to the party opposing enforcement of the provision.  *Id.*  That party must then show that the chosen law conflicts with a fundamental policy of California **and** that California has a materially greater interest in determining the claims.  *Id*. at 917.

For the reasons discussed below, the contractual choice of New York law in Bumble's Terms— which the parties agreed to—precludes all of Plaintiffs' claims, as each sounds in California law.  *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1121 (N.D. Cal. 2016) (granting Rule 12(b)(6) dismissal of claims under Massachusetts law because those claims were "barred by the parties contractual choice of California law" found in Google's terms).

    1.    **Bumble's choice-of-law provision applies to this dispute.**

The Term's choice-of-law provision is enforceable because the dispute falls within the provision's scope and Bumble had sound reasons to choose New York law.

***Within the provision's scope.***  The Terms clearly state that a user's "access to the App, Our Content, and any Member Content, as well as these Terms are governed and interpreted by the laws

of the State of New York . . . ." (SAC, Ex. A at § 12.)  Here, Plaintiffs' claims concern their access to the App.  As such, the choice-of-law provision in Bumble's terms clearly encompasses Plaintiffs' claims.  *See Nedlloyd*, 3 Cal. 4th at 470 ("[A] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement . . . .").

**Reasonable basis for choosing New York law.**  The provision is also enforceable because Bumble has multiple reasonable bases for choosing New York law.  Bumble has an interest in maintaining a uniform national standard to govern its agreements with users because it provides services to individuals across the nation and would face a high degree of legal uncertainty should fifty states' laws govern its relationship with users.  *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1194-95 (S.D. Cal. 2013) (concluding bank that "maintain[ed] a wide reach across the United States" had reasonable basis for choosing Nevada law to govern consumer agreements even though neither it nor the plaintiff were domiciled in Nevada); *1-800-Got Junk? LLC v. Super. Ct.*, 189 Cal. App. 4th 500, 505 (2010) (similar).  Bumble reasonably chose New York law to govern its users nationwide both because Bumble has a substantial number of users in New York and because New York law is generally well established, particularly in the commercial and consumer law realms.

In line with its interest in clear and consistent adjudication of disputes, Bumble also includes a forum-selection provision in its Terms that selects for New York state courts.  (SAC, Ex. A at § 12.)  This also serves as a reasonable basis for selecting for New York law.  *See JMP Sec. LLP v. Altair Nanotechnologies Inc.*, No. 11-4498 SC, 2012 WL 892157, at *5 (N.D. Cal. Mar. 14, 2012) (concluding reasonable basis existed for choosing New York law even though neither party was incorporated in, or had its principal place of business, there because forum-selection clause also opted for New York); *see also Qwest Commc'ns Co. v. Sun Coast Merchandise Corp.*, No. CV 10-7145 PA (SSx), 2011 WL 13217684, at *4 (C.D. Cal. June 13, 2011) (concluding reasonable basis existed for choice of New York law where forum selection provision also opted for "resolution of disputes in New York").  Similarly, Bumble's choice of New York law is reasonable given that Bumble Holding Ltd. is headquartered in London; New York is, relatively speaking, close to those headquarters (and is one of the closest U.S. locations to London).  *See 1-800 Got Junk?*, 189 Cal. App. 4th at 505

1   (concluding company based in Vancouver had reasonable basis for choosing Washington state law

2   because of "state's proximity to [its] headquarters").

3                                              ***

4          Because Bumble has demonstrated that the dispute falls within the scope of the choice-of-law

5   provision and that Bumble had reasons for choosing New York law, the burden shifts to Plaintiffs.

6          **2.     Plaintiffs cannot overcome the strong presumption in favor of enforcing
                    the agreed-to choice-of-law provision.**
7

8          ***No cognizable conflict between California and New York law.***  Plaintiffs must show a conflict

9   between California and New York law significant enough to justify disregarding an otherwise

10  enforceable choice-of-law provision.  They cannot do so.  Indeed, where, as here, California law and

11  the law of another state are "substantially similar" or "equivalent," there is no conflict for purposes of

12  California's choice-of-law analysis.  *Brinkley v. Monterey Fin. Servs., Inc.*, 242 Cal. App. 4th 314,

13  329 (2015) ("substantially similar"); *Davis v. Md. Bank*, No. 00-04191, 2002 WL 32713429, at *10

14  (N.D. Cal. June 19, 2002) ("equivalent"); *Rojas-Lozano*, 159 F. Supp. 3d at 1112 (no "substantive

15  differences").  Plaintiffs must do more than show that the laws differ in some respects or even that

16  those differences are material to the dispute at issue:  "[T]he mere fact that . . . in a particular

17  application the chosen law would not provide protection while California law would, are not reasons

18  for applying California law."  *Feld v. Am. Express Co.*, No. CV 09-7202-GW (RCx), 2010 WL

19  9593386, at *4 (C.D. Cal. Jan. 25, 2010) (quoting *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp.

20  2d 842, 862 (N.D. Cal. 2000)); *see also Knodel v. Knodel*, 14 Cal. 3d 752, 765 n.15 (1975) (holding

21  conflict with fundamental policy exists only where laws are so "offensive" to California's public

22  policies that applying them "would be prejudicial to recognized standards of morality and to the

23  general interest of [California's] citizens").

24         In the instant case, there is no such conflict between the California laws at issue and their New

25  York analogs.[1]  New York enforces a "Social Referral Services Law" that is highly similar to

26  _____

27  [1] The Court should look to each California statute under which Plaintiffs allege claims to determine
    whether applying New York law to that *particular* claim would create a conflict with a fundamental

28  policy of California.  If there is no such conflict between New York law and the relevant California
    statute, the Court should apply the choice-of-law provision to bar the related claim—whether or not

**DEF'S MOT. AND BRIEF ISO MOT. TO DISMISS SAC
                                                                             (CASE NO. 5:18-CV-06868-NC)**

1    California's Dating Services Law.  New York also enforces an auto renewal law.  These laws are not

2    just substantially similar to their California counterparts, but are in many instances virtually identical.

3            For example, California's Dating Services Law and New York's Social Referral Services Law

4    both provide customers with a right to cancel a dating service within three business days.  *Compare*

5    Cal. Civ. Code § 1694.1(a) *with* NY Gen. Bus. § 394-c(7)(a).  And the two statutes also place identical

6    limits on the permissible length of time a buyer may be obligated to pay for a dating service contract.

7    *Compare* Cal. Civ. Code § 1694.2(d)(1) (stating that no dating service "shall require payments or

8    financing by the buyer over a period in excess of two years"), *with* NY Gen. Bus. § 394-c(2) (same).

9    Moreover, the mechanisms created to protect these rights are almost exactly the same in both states.

10   *Compare, e.g.*, Cal. Civ. Code § 1694.2(b)(1) (providing script that providers of dating services must

11   use in contracts) *with* NY Gen. Bus. § 394-c(7)(b), (d)-(e) (same).

12           California and New York also both enacted auto renewal laws.  Both states require providers

13   of subscription services to notify purchasers that a contract for goods or services will renew unless

14   cancelled.  *Compare* Cal. Bus. & Prof. Code § 17602(a)(3) (requiring provider of automatically-

15   renewing services to provide acknowledgment of terms of service and cancellation policy) *with* N.Y.

16   Gen. Oblig. § 5-903(2) (requiring provider of automatically renewing services to give notice of right

17   to cancel fifteen to thirty days before a subscription period is set to renew).[2]

18   _____

19   the other claims survive the choice-of-law analysis.  *Cardonet, Inc. v. IBM*, No. C-06-06637-RMW,
     2007 U.S. Dist. LEXIS 14519, at *14-15 (N.D. Cal. Feb. 14, 2007) (analyzing applicability of choice-
20   of-law provision to individual claims under different California laws).

21   [2] Moreover, the consumer protection laws through which individuals can enforce the Dating Services
     Law and the Auto Renewal Laws are substantially similar.  For example, New York has a law that is
22   almost identical to California's UCL.  *Compare* Cal. Bus. & Prof.  Code § 17200 (defining "unfair
     competition" in part as "any unlawful, unfair or fraudulent business act or practice") *and id.* § 17203
23   (authorizing "[a]ny person" injured by actions prohibited under Section 17200 to pursue
     "representative claims or relief on behalf of others," including injunctive relief) *with* N.Y. Gen. Bus.
24   § 349(a) (declaring unlawful "[d]eceptive acts or practices in the conduct of any business") *and id.*
     § 349(h) (empowering "any person who has been injured by" acts declared unlawful under Section
25   349(a) to seek the same).  The same goes for the CLRA.  *Compare* Cal. Civ. Code § 1770 (providing
     list of "unfair or deceptive acts or practices . . . intended to result or that results in the sale or lease of
26   goods or services to any consumer" that are unlawful) *with* N.Y. Gen. Bus. § 350 (prohibiting "[f]alse
     advertising"), *and id.* § 350-a (defining "false advertising" as "misleading in a material respect").  In
27   fact, this court has already found there is no cognizable conflict between California's UCL and New
     York's analog and has accordingly applied a choice-of-law provision choosing New York law to bar
28   a plaintiff's claims under the UCL.  *Cardonet, Inc.*, 2007 U.S. Dist. LEXIS 14519, at *16-17.  And
     New York also recognizes the claim for money had and received in a form that is nearly identical to

These similarities between New York and California law end the inquiry. Bumble's choice-of-law provision controls here because there is not a sufficient conflict between the selected law and the law Plaintiffs invoke, and Plaintiffs will be unable to carry their burden of showing otherwise.

But even if the Court disagrees, Plaintiffs still cannot meet their burden in showing that the Dating Services Law and Auto Renewal Law represent fundamental policies of California. Indeed, Bumble is aware of no case holding that the Dating Services Law represents such a fundamental policy, and the Auto Renewal Law does not even confer a private right of action, *see Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 676 (9th Cir. 2018); *see also In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1169 (N.D. Cal. 2016) (highlighting private right of action when concluding that Illinois statute embodied fundamental policy of that state). As a result, Plaintiffs' claims are barred and must be dismissed.

***California does not have a materially greater interest.*** Finally, even if Plaintiffs could show that applying New York law would create a conflict with fundamental public policy of California, Plaintiffs cannot demonstrate that California has a greater material interest. "California courts consider which state, in the circumstances presented, will suffer greater impairment of its policies if the other state's law is applied." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (citations and internal quotation marks omitted). Here, given that any conflict between California and New York law is minimal, Plaintiffs cannot show that California's interest in applying its own laws outweighs New York's interest in upholding the reasonable expectations of parties regarding contracts formed under its laws. *Cf. Cayanan*, 928 F. Supp. 2d at 1195 (concluding party had "reasonable basis" for choosing one state's law where the party "maintain[ed] a wide reach across the United States").

### B.      Plaintiffs Fail to State a Claim under the UCL (Count IV).

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. Plaintiffs fail to allege a UCL claim under any of those three prongs.

---

California's. *See Parsa v. State of New York*, 64 N.Y.2d 143, 148 (N.Y. Ct. App. 1984).

1.      **Bumble's alleged conduct was not unlawful.**

Plaintiffs' unlawful UCL claim rests on the alleged violation of the Dating Services Law, the Auto Renewal Law, and the CLRA. All fail.

*No Violation of the Dating Services law.* Plaintiffs agreed to have their relationship with Bumble governed by New York law. (*See*, *supra*, Section IV(A).) As such, Bumble cannot have violated the California Dating Services Law with regard to Plaintiffs. Plaintiffs' derivative UCL claim, to the extent it relies on the alleged violations of the Dating Services Law, fails for the same reason.

*No Violation of the Auto Renewal Law.* The choice-of-law provision also renders California's Auto Renewal Law inapplicable to Bumble. (*Id.*) Accordingly, to the extent that Plaintiffs' UCL claim relies on the alleged violations of the Auto Renewal Law, it should also be dismissed.

Regardless, Plaintiffs have also failed to allege **facts** showing a violation of the Auto Renewal Law and putting Bumble on notice of the claims against it. *See Twombly*, 550 U.S. at 555; *see also id.* (allegations must "give the defendant fair notice of what . . . the [] claim is and the grounds upon which it rests") (quoting *Conley*, 355 U.S. at 47). Instead, the SAC makes conclusory statements that track the language of the statute. *Compare* Cal. Bus. Prof. Code §§ 17601(a), 17601(b)(1), *with* SAC ¶ 45; *compare also* Cal. Bus. Prof. Code § 17602(a)(2), *with* SAC ¶ 47. That is, Plaintiffs assert that Bumble violated each provision of Section 17602 without making factual allegations about what Plaintiffs were presented with when they purchased Bumble Boost. Such conclusory allegations fail to provide Bumble with notice of the grounds upon which the claims against it rest, providing grounds for dismissal of Plaintiffs' claims. *See Twombly*, 550 U.S. at 555; *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (holding that "absence of sufficient facts alleged" even "under a cognizable legal theory" justifies dismissal under Rule 12(b)(6)).

Indeed, Plaintiffs appear to have carefully taken this approach to avoid facts that undermine their claims. Plaintiffs do not even allege how they purchased Bumble Boost—i.e. what platform and purchase flow they navigated. This alone defeats Plaintiffs' claims, given that the disclosures, purchase flows, and even confirmation emails vary by the purchase method. For example, Bumble users who use the App on an iPhone purchase Boost through the Apple App Store's standardized

purchase process.  (*See*, *e.g.*, Compl, Ex. A at § 5 (noting users can purchase Bumble Boost "through the Apple App Store"); Bernstein Decl., Ex. B.)   Nothing about the screen-flows, cancellation mechanisms, or even confirmation emails that form this process are unique to Bumble—**they are all created by Apple and are standard for subscription-based apps on this platform**.  (SAC, Ex. A at § 5 ("If you choose to make an In-App purchase . . . your Mobile Platform Account will be charged for the Premium Service . . . in accordance with the terms disclosed to you at the time of purchase, as well as the general terms applicable to all other in-app purchases made through your Mobile Platform Account (e.g., Android, Apple, etc.).").)

Continuing with the example of a purchase made on the Apple App Store platform,[3] before a user can purchase Bumble Boost and directly contrary to Plaintiffs' conclusory allegations, he or she must **expressly** agree to the terms of the auto renewal—in fact, he or she must do so in multiple ways.[4] The following screenshots, which a user is presented with in this order before purchasing Bumble Boost, are entirely inconsistent with Plaintiffs' conclusory allegations:

///

---

[3] While Plaintiffs allege they purchased Boost through a mobile app (*e.g.*, SAC ¶ 24), Plaintiffs do not even allege which platform they purchased Boost on, alone rendering their allegations too vague to state a claim.  This brief gives the example of the App Store's disclosures and features to show why Plaintiffs have obscured the actual process of purchasing Boost.

[4] *See* Defendant Bumble Trading, Inc. and Bumble Holding Ltd.'s Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiffs' SAC (seeking judicial notice of Exhibits A, B, C, D, E and F to the Bernstein Declaration).

Cooley LLP
Attorneys At Law
San Francisco

10.

Def's Mot. and Brief ISO Mot. to Dismiss SAC
(Case No. 5:18-cv-06868-NC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**EXHIBIT A TO BERNSTEIN DECLARATION**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11.

DEF'S MOT. AND BRIEF ISO MOT. TO DISMISS SAC
(CASE NO. 5:18-CV-06868-NC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**EXHIBIT B TO BERNSTEIN DECLARATION**

Cooley LLP
Attorneys At Law
San Francisco

12.

Def's Mot. and Brief ISO Mot. to Dismiss SAC
(Case No. 5:18-cv-06868-NC)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**EXHIBIT C TO BERNSTEIN DECLARATION**

Cooley LLP
Attorneys At Law
San Francisco

13.

Def's Mot. and Brief ISO Mot. to Dismiss SAC
(Case No. 5:18-cv-06868-NC)

As these exhibits show, the sign-up flow for Boost in the Apple App store clearly displays the terms of automatic renewal.  First, the user is prompted to select from options that state **per week**, **per month**, or **lifetime** price.  (Bernstein Decl., Ex. A.)  That same page also states "Recurring Billing. Cancel anytime."  (*Id.*)  Next, the user is presented with a confirmation window designed by Apple. That window refers to the purchase as a "SUBSCRIPTION" and, in a section set out as "POLICY," states: **"Automatically renews until canceled.  To stop, tap Cancel Subscription in Settings before next billing date."**  (*Id.*, Ex. B.)  The price is listed with the subscription period indicated.  (*Id.*) Finally, the user is prompted to "Confirm Subscription" by pressing "OK" on a screen that also states that "[t]he subscription will continue unless canceled in Settings at least one day before a subscription period ends."  (*Id.*, Ex. C.)  Apple, and therefore Bumble, clearly complies with § 17602(a)(1)'s conspicuous disclosure requirement and § 17602(a)(2)'s consent requirement for purchases made on the App Store.  Plaintiffs' allegations are so vague that Defendants cannot tell if Plaintiffs are complaining about these exemplar Apple App Store pages or an entirely different purchase flow—i.e. the screens presented when purchasing Bumble Boost through the Google Play Store.

The same is true of Plaintiffs' suggestion that Bumble does not provide a compliant mechanism for canceling auto renewal (SAC ¶ 54).  Again, as one example, the Apple App Store clearly provides such a mechanism.  (*See* SAC, Ex. A at § 5 ("[Y]ou must cancel . . . in accordance with the terms and conditions of your Mobile Platform Account and the terms and conditions of any applicable Third Party Store.").)  On the App Store, as indicated during the purchase flow, users can cancel a subscription at any time through the Settings page.  This is disclosed in a myriad of places, including on the confirmation page before a purchase is made (*see* Bernstein Decl., Ex. B ("To stop, tap Cancel Subscription in Settings")) and at https://support.apple.com/en-us/HT202039.  It complies with § 17602(b) and a finding to the contrary would subject virtually every subscription-based app in the world to liability.  Plaintiffs make no factual allegations about the cancelation mechanism they allege is deficient.  So lacking are these allegations, Defendants are not even put on notice which cancellation mechanism is at issue (i.e. that provided through the Apple App Store or something else).

Plaintiffs also allege that the Bumble acknowledgement email following purchase of a Boost subscription fails to comply with the Auto Renewal Law's requirement that a consumer be provided

Cooley LLP
Attorneys At Law
San Francisco

14.

Def's Mot. and Brief ISO Mot. to Dismiss SAC
(Case No. 5:18-cv-06868-NC)

1    an acknowledgement that sets out terms and how to cancel auto renewal.  (SAC ¶¶ 48-49, 61-62.)

2    Plaintiffs allege this too in conclusory fashion and do not clarify whether Google or Apple sent them

3    a separate email after purchase (stating only that they did not receive another email that "contain[ed]

4    the required information" (SAC ¶ 62)).  For example, when a user purchases Bumble Boost on Apple

5    iOS, the user receives the following confirmation email:

6    ///

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cooley LLP
Attorneys At Law
San Francisco

15.

Def's Mot. and Brief ISO Mot. to Dismiss SAC
(Case No. 5:18-cv-06868-NC)

| From: | Apple <no_reply@email.apple.com> |
| Sent: | Friday, April 5, 2019 11:15 AM |
| To: | ████████ |
| Subject: | Your Subscription Confirmation |

 Subscription Confirmation



**Bumble**
Bumble Boost (1 week)
$8.99

Dear ████,

This email confirms your subscription purchase:

| | |
| --- | --- |
| Subscription | Bumble Boost |
| App | Bumble - Meet New People |
| Content Provider | Bumble Holding Limited |
| Date of Purchase | Apr 5, 2019 |
| Subscription Price | $8.99/week |
| Payment Method | ████████ |

Your subscription will renew at $8.99 unless you cancel by Apr 11, 2019.

To learn more or cancel, review your subscription.

Regards,
The App Store Team

For answers to frequently asked questions, visit Apple Support.

Privacy: We use a Subscriber ID to provide reports to developers.



Apple ID Summary · Terms of Sale · Privacy Policy

1

**EXHIBIT D TO BERNSTEIN DECLARATION**

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEF'S MOT. AND BRIEF ISO MOT. TO DISMISS SAC
(CASE NO. 5:18-CV-06868-NC)

This email states the auto renewal terms (e.g., "[y]our subscription will renew at $8.99 unless you cancel by April 11, 2019"). This email also informs a user how to cancel his or her subscription by providing a hyperlink to do just that. And, like any email, it can be retained by a user or printed.[5] As such, this confirmation email fully complies with the Auto Renewal Law.

Accordingly, to the extent Plaintiffs' claim under the UCL relies on the alleged violations of the Auto Renewal Law, it should be dismissed.[6] Plaintiffs cannot rely on such vague allegations that fail to identify the specific disclosures that they were shown and that group together disparate purchase processes.

*No Violation of the CLRA.* Plaintiffs also fail to state a claim under the CLRA. (*See*, *infra*, Section IV(C).) Thus, Plaintiffs' UCL claim also fails insofar as it is predicated on their CLRA claim.

\*\*\*

Given the above, Plaintiffs have not alleged an underlying violation of any law upon which their unlawful theory could be based.

### 2.    Bumble's alleged conduct was not unfair or fraudulent.

*No underlying statutory violations.* Plaintiffs purport to allege a claim under the UCL's unfair and fraudulent prongs, but do so only by repackaging the alleged violations of the Auto Renewal Law and Dating Services Law. Plaintiffs allege that Bumble's conduct was unfair only because it failed to provide the refund mechanism required by the Dating Services Law and failed to provide the disclosures required by the Auto Renewal Law. (SAC ¶ 127.) Plaintiffs allege that Bumble's conduct was fraudulent only insofar as Bumble allegedly misrepresented Plaintiffs' rights under the Auto Renewal Law. (*Id*. ¶¶ 135-36.) In other words, Plaintiffs allege **no** supposedly unfair or fraudulent

---

[5] The sign-up flow and confirmation email shown herein are not recent advents. (*See* Bernstein Decl. Ex E (substantially identical screenshot from November 15, 2018); *id*. Ex. F (same).

[6] Plaintiffs' allegations with respect to the Auto Renewal Law are misleading for an additional reason. Plaintiffs suggest that because Bumble allegedly violated the Auto Renewal Law, their Bumble Boost subscriptions should be deemed an "unconditional gift." (SAC ¶¶ 51-52.) But that provision of the Auto Renewal Law applies to goods—**not** services. *See* Cal. Bus. & Prof. Code § 17603 (establishing that a provision of "any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase" in violation of Section 17602 "shall for all purposes be deemed an 'unconditional gift' to [the consumer]"). Plaintiffs allege Bumble Boost constitutes a "service." (*E.g.*, SAC ¶ 52.) Moreover, Plaintiffs Fischer and Weinberger do not allege their subscriptions ever renewed, so their subscriptions would not be gifts regardless.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17.

DEF'S MOT. AND BRIEF ISO MOT. TO DISMISS SAC
(CASE NO. 5:18-CV-06868-NC)

1    conduct other than the alleged statutory violations themselves—rendering Plaintiffs' unfair and

2    fraudulent theories redundant with their unlawful theory.  But the SAC fails to allege facts showing

3    unlawful conduct in violation of these statutes.  (*See*, *supra*, Section IV(A), IV(B)(1).)  No further

4    analysis is required for dismissal.

5         ***Not unfair***.   Moreover, because Plaintiffs cannot demonstrate Bumble violated the Auto

6    Renewal Law, Dating Services law, or CLRA, Plaintiffs have failed to explain how Bumble's alleged

7    conduct violates a legislative policy that is "tethered to specific constitutional, statutory, or regulatory

8    provisions."  *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010).  Nor are

9    their conclusory allegations that Bumble's conduct is "immoral, unethical, oppressive, [or]

10   unscrupulous" sufficient under the law.  *Id*.

11        ***Not fraudulent.***  Plaintiffs' fraudulent theory is defective for an additional reason.  Allegations

12   of fraud under the UCL (and CLRA) must be plead with particularity to meet Rule 9(b)'s heightened

13   standard.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Plaintiffs must allege,

14   but have not done so, that they relied on a specific misrepresentation made by Bumble or their claims

15   are properly dismissed.  *Id*. at 1126.  Plaintiffs nowhere allege what specific representations they read

16   and relied on and instead allege only in conclusory terms that Bumble's alleged statutory violations

17   resulted in "material misrepresentations."  (*See*, *e.g.*, SAC ¶ 137.)  This is not enough.[7]  *See In re Arris*

18   *Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *9 (N.D. Cal. Jan. 4,

19   2018) (dismissing UCL and CLRA claims because plaintiffs must allege not only misrepresentations

20   specifically, but must specifically identify the misrepresentations they read and relied upon).

21   **C.    Plaintiffs Fail to State a Claim Under the CLRA (Counts II and III).**

22        **1.    Plaintiffs have not shown that Bumble made any misrepresentations about**
             **rights, remedies, or obligations available under the Auto Renewal Law.**
23

24        In their second claim for relief, Plaintiffs allege that Bumble violated the CLRA because

25   Bumble allegedly did not comply with the Auto Renewal Law when it represented that it had "the

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] Moreover, Plaintiffs' theory that they were injured by Bumble's alleged misrepresentations of its
     rights and obligations under the Auto Renewal Law, (SAC ¶ 138), is incoherent.  *See infra* Section
28   IV(C)(1).

right to charge Plaintiff [King] and [the ARL class]" even though it allegedly had not make the requisite disclosures.  (*See* SAC ¶¶ 109-10 (citing Cal. Civ. Code § 1770(a)(14)).)  This claim fails.

***No predicate violation.***  This CLRA claim, like the UCL claim, is entirely derivative of the alleged violations of the Auto Renewal law, and it fails because Plaintiffs have failed to allege a violation of the Auto Renewal Law.   (*See*, *supra*, Section IV(A), IV(B)(1).)  Plaintiffs offer no alternative CLRA theory independent of this alleged predicate violation.  This alone is grounds to dismiss Plaintiffs' claim.

***Sounds in fraud.***   Moreover, like UCL claims premised on fraudulent conduct or misrepresentations, so-premised CLRA claims sound in fraud and must be plead with particularity under Rule 9(b).  *See Kearns*, 567 F.3d at 1125; *see also Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D. Cal. 2005).  To buttress their CLRA claim, Plaintiffs again vaguely and in conclusory fashion allege a range of "misrepresentations" Bumble allegedly made.  (SAC ¶ 110 (alleging that Bumble misrepresented that "it has the right to charge Plaintiff and class members' debit cards, credit cards, or third party payment methods without first making the statutorily required disclosures under the ARL and obtaining their affirmative consent").)  But Plaintiffs do not allege any details of these supposed misrepresentations and therefore do not meet the Rule 9(b) particularity standard.  Plaintiffs come nowhere close to alleging the "'who, what, where, when, and how' of the misconduct charged." *See In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *4 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  This is grounds for dismissal of the CLRA claim.  *Id.*  Moreover, they fail to allege reliance on any of these "misrepresentations" other than in the most conclusory fashion—they do not even allege that they heard or read them.  *See Haskins v. Symantec Corp.*, No. 13-cv-1834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) (dismissing UCL and CLRA claims for failing to satisfy Rule 9(b) where plaintiffs alleged only that they were "exposed" to the alleged misrepresentations), *aff'd* 654 F. App'x 338 (9th Cir. 2016); *see also In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *9 (dismissing UCL and CLRA claims where plaintiffs did not allege which statements they "saw or relied on").

***No Injury.***  Plaintiffs must allege more than a false representation—they must allege that they relied on the false representation and that it caused them harm. *Mass. Mut. Life Ins. Co. v. Super. Ct.*,

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19.

DEF'S MOT. AND BRIEF ISO MOT. TO DISMISS SAC
(CASE NO. 5:18-CV-06868-NC)

1    97 Cal. App. 4th 1282, 1292 (2002); *Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36,

2    46 (2009).  Plaintiffs fail to do so.

3         Plaintiffs allege that Bumble represented that it had "the right to charge Plaintiff and class

4    members" and that "Bumble does not have the legal right to charge for these subscriptions because at

5    all relevant times, it was not in compliance with the ARL." (SAC ¶ 110.)  But this is nonsense.  If

6    Bumble represented to Plaintiffs that it had the right to charge them on a recurring basis, then Bumble

7    **did** disclose that Bumble Boost is an automatically renewing subscription.  Plaintiff King, the only

8    Plaintiff that alleges he was charged under Bumble Boost's auto renewal, claims to have been harmed

9    by Bumble's failure to provide this exact disclosure.  (*Id.* ¶ 111.)  Put differently, Plaintiff King cannot

10   have both been injured because he was unaware subscribing to Boost caused recurring payments **and**

11   because he relied on Bumble's representation that subscribing to Boost caused recurring payments.

12   *See Pratt v. Whole Food Market Cal., Inc.*, No. 5:12-cv-05652-EJD, 2015 WL 5770799, at *6-7 (N.D.

13   Cal. Sept. 30, 2015) (dismissing claims where theories of reliance were "implausible").

14                    **2.    Bumble's no-refund provision is not unconscionable.**

15        In their third claim for relief, Plaintiffs contend that Bumble's no-refund provision is

16   unconscionable.  (SAC ¶¶ 115-17 (citing Cal. Civ. Code § 1770(a)(19)).)  "[U]nconscionability has

17   both a 'procedural' and a 'substantive element,' the former focusing on 'oppression' or 'surprise' due

18   to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *Armendariz v. Found.*

19   *Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000), *overruled on other grounds by AT&T*

20   *Mobility v. Concepcion*, 563 U.S. 333 (2011).  Plaintiffs fail to allege facts showing that either element

21   is met here.

22        ***Not procedurally unconscionable.***  Plaintiffs do not sufficiently allege that the no-refund

23   provision is procedurally unconscionable.  Although Plaintiffs' allege the no-refund provision "is

24   buried in a lengthy contract," the prominent heading of the section in which the provision appears

25   makes clear that the section contains provisions governing "Third Party Stores; Premium Services;

26   [and] In-App Purchases."  (SAC Ex. A at § 5.) *See also Morris v. Redwood Empire Bancorp*, 128 Cal.

27   App. 1305, 1321 (2005) (concluding that provision did not constitute "surprise" where the provision

28

1  was preceded by "a large type heading" (internal quotations and citation omitted)).  Nothing about this
2  provision is hidden, nor are Bumble's Terms lengthy.  (*See* SAC, Ex. A.)

3          ***Not substantively unconscionable.***  Plaintiffs' allegations also fail to show that the no-refund
4  provision is substantively unconscionable.  Plaintiffs first allege that the no-refund provision is
5  substantively unconscionable because it "is illegal and in direct violation of the strong public policy
6  of the State of California as embodied in the California DSL." (SAC ¶ 120.)  That argument, however,
7  is contrary to law.  *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1264 (9th Cir. 2017)
8  ("[C]ontracts can be contrary to public policy but not unconscionable and vice versa." (quoting *Sonic-*
9  *Calabasas A, Inc. v. Moreno*, 51 Cal. 4th 659, 686-87 (2011)).

10         Moreover, Plaintiffs' conclusory allegations that "[t]he no-refund provision is oppressive and
11  unreasonably one-sided" (SAC ¶ 120), do not satisfy the pleadings standard, *see Twombly*, 550 U.S.
12  at 555, and do not demonstrate that the provision is so unfair as to "shock the conscience," *see*
13  *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1144 (N.D. Cal. 2013).  Indeed, in *Herskowitz*, a court
14  in this district rejected the plaintiffs' argument that the practice of "charg[ing a consumer] ***twice*** after
15  purchasing and downloading a song ***only once***" and refusing a refund pursuant to a no-refund
16  provision was substantively unconscionable because the practice was not "so 'overly harsh' or 'one-
17  sided' as to create results that 'shock the conscience.'" *Id.* (emphasis added).  Bumble is alleged only
18  to have refused a refund—not charged a user twice.  So too here should the Court reject Plaintiffs'
19  argument that a no-refund provision is itself "oppressive." (SAC ¶ 120.)

20         **D.      Plaintiffs' Request for Declaratory Relief Should be Dismissed (Count V).**

21         Moreover, Plaintiffs seek a declaration that their contract with Bumble is void and
22  unenforceable because Bumble violated the Dating Services Law.  (SAC ¶¶ 143-44.)  However, as
23  noted above, Plaintiffs fail to allege facts showing a violation of the Dating Services Law because that
24  law does not govern Bumble's relationship with Plaintiffs.  (*See*, *supra*, Section IV(A).)  As such,
25  Plaintiffs' declaratory relief claim should be dismissed in conjunction with dismissal of Plaintiffs'
26  claim under the Dating Services Law.

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

DEF'S MOT. AND BRIEF ISO MOT. TO DISMISS SAC
(CASE NO. 5:18-CV-06868-NC)

1

2

    **E.    Plaintiffs Fail to State a Claim for the Common Count of Money Had and Received (Count VI).**

3

4

5

6

7

8

9

10

11

12

13

14

    Plaintiffs' fail to state a claim for money had and received.  As an initial matter, Plaintiffs have failed to show that the Terms are not binding on them.  *See supra* Sections IV(A) (showing why Plaintiffs' claim under the Dating Services Law fails), IV(B)(1) (same).  And a common count of money had and received cannot survive where there is an express agreement that governs the relationship at issue.  *See Mar Partners 1, LLC v. Am. Home Mortg. Servicing, Inc.,* No. 10-cv-02906 WHA, 2011 WL 11501, at *4 (N.D. Cal. Jan. 4, 2011) ("[A]n action for money had and received . . . does not lie when an enforceable, binding agreement exists defining the rights of the parties."); *see also Pollak v. Staunton*, 210 Cal. 656, 665 (1930) (holding that money had and received is based on a quasi-contract).  Accordingly, Plaintiffs' common count of money had and received falls with their other claims.  *See McBride v. Boughton*, 123 Cal. App. 4th 379, 394-95 (2004) ("When a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, . . . [it] must stand or fall with [the] first cause of action[.]").

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    Even were Plaintiffs' other claims to survive, the money had and received claim would still fail.  To recover under a theory of money had and received, a plaintiff must show that "the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff."  *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1623 (1994) (internal quotations and citations omitted); *see also* Cal. Civil Jury Instruction No. 370 (listing elements of count as (1) receipt of money by the defendant for use to benefit plaintiff, (2) failure to use money to benefit plaintiff, and (3) defendant has not given money to plaintiff).  But Plaintiffs do not deny that they paid for Bumble Boost *and received that service*.  As such, Plaintiffs have failed to allege that the money they paid was not used for their benefit, as this money was payment for services to which they were given access.  *See Mahoney v. Fid. Nat'l Title Co.*, No. SACV 08-0561 AG (CWx), 2008 WL 4286934, at *4 (C.D. Cal. Sept. 15, 2008) (concluding money had and received was used for plaintiff's benefit where "[i]n return for the money, [plaintiff] was provided the insurance policy he sought"); *see also Buckley v. Align Tech., Inc.*, No. 5:13-cv-02812-EJD, 2015 WL 5698751, at *4 (N.D. Cal. Sept. 29, 2015) (rejecting money had and received claim where plaintiff used the product).

Cooley LLP
Attorneys At Law
San Francisco

22.

**Def's Mot. and Brief ISO Mot. to Dismiss SAC
(Case No. 5:18-cv-06868-NC)**

1

V.      CONCLUSION

2
        For the reasons discussed herein, Plaintiffs' claims should be dismissed with prejudice.

3
Dated:  April 12, 2019                          COOLEY LLP
                                                MICHAEL G. RHODES (116127)
4                                               KYLE C. WONG (224021)
                                                MAX A. BERNSTEIN (305722)
5                                               KELSEY R. SPECTOR (321488)

6

7                                               /s/ *Michael G. Rhodes*
                                                _____
8                                               Michael G. Rhodes (116127)
                                                Attorneys for Defendants
9                                               Bumble Trading, Inc. and Bumble Holding Ltd.

10

11

12

13

14

15

16

17
201545379
18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23.

DEF'S MOT. AND BRIEF ISO MOT. TO DISMISS SAC
(CASE NO. 5:18-CV-06868-NC)