David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, CA 90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (646) 509-3913
Facsimile: (877) 501-3346

Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, and Elena Weinberger,
individually, and on behalf of a class of
similarly situated individuals

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| **NICK KING, JR., DEENA FISCHER, and ELENA WEINBERGER, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**BUMBLE TRADING, INC., and BUMBLE HOLDING LTD.,**<br><br>**Defendants.** | **Case No.  5:18-cv-06868-NC**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS BUMBLE TRADING, INC. AND BUMBLE HOLDING LTD'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>**Date:** June 5, 2019<br>**Time:** 1:00 p.m.<br>**Courtroom:** 5<br>**Judge:** Nathanael Cousins<br>**Trial Set:** Not Yet<br>**Complaint Filed:** November 13, 2018 |

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether California law applies to Plaintiffs' claims.

2.      Whether Plaintiffs state claims under the UCL and CLRA.

3.      Whether Plaintiffs state claims for money had and received.

Opposition to Motion to Dismiss

# **TABLE OF CONTENTS**

I.     INTRODUCTION AND STATEMENT OF THE RELEVANT FACTS ............................ 1

II.    BUMBLE'S TERMS EXPLICITLY REQUIRE APPLICATION OF CALIFORNIA LAW TO PLAINTIFFS' CLAIMS .......................................................................... 3

III.   THE *NEDLLOYD* ANALYSIS ALSO DICTATES APPLICATION OF CALIFORNIA LAW TO PLAINTIFFS' CLAIMS ................................................. 5

    A.    The Choice-Of-Law Provision Does Not Encompass Any of Plaintiffs' Claims ................................................................................................ 5

    B.    Bumble Fails to Meet its Burden of Making a Showing that It Had a Reasonable Basis to Choose New York Law ................................................. 7

    C.    Application of New York Law to Plaintiffs' Claims Would Leave Them Without Any Remedy or Relief Because New York's Consumer Protection Laws Do Not Apply Extraterritorially and Parties Cannot Stipulate Otherwise ....... 10

    D.    The DSL, CLRA, ARL, and UCL Reflect Fundamental California Policies and Bumble Fails to Meet Its Burden of Showing That Enforcement of the Choice-of-Law Clause Would Not Diminish Non-Waivable Statutory Rights ....... 12

    E.    California Has A Materially Greater Interest In Ensuring That Its Citizens Are Afforded Protection Under California Law ........................................ 15

IV.   PLAINTIFFS STATE CLAIMS UNDER CALIFORNIA LAW ........................................ 15

    A.    Plaintiffs State Claims Under the "Unlawful" and "Unfair" Prongs of the UCL .............................................................................................. 15

    B.    Plaintiff King States Fraudulent Omission Claims Under The UCL And The CLRA ............................................................................................. 19

        1.    Bumble's Failure to Disclose the Auto-Renewal Terms Is Actionable Under the UCL and CLRA ........................................................ 19

        2.    Mr. King Alleges Reliance and Injury Under the CLRA and UCL ............. 20

        3.    Plaintiff King's Fraudulent Omission Allegations Satisfy Rule 9(b) ........... 21

    C.    Plaintiffs State Non-Fraud Claims under the CLRA Based on Bumble's Insertion of an Unconscionable Provision in its Dating Service Contracts ............ 22

    D.    Plaintiffs Sufficiently Allege Common Counts For Money Had And Received ...... 24

V.    CONCLUSION .............................................................................. 25

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Federal Cases**

5
6

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197, 1231 (N.D. Cal. 2014) ...................................................................21

7

*Associated Press v. Riddle*,
   496 F. Supp. 119 (E.D. Ark. 1980) ..............................................................................14

8
9

*Baker-Rhett v. Aspiro AB*,
   324 F. Supp. 3d 407, 417 (S.D.N.Y. 2018) ..................................................................12

10
11

*Buckley v. Align Tech., Inc.*,
   No. 5:13-CV-02812-EJD, 2015 WL 5698751 (N.D. Cal. Sept. 29, 2015) ..................25

12

*Cahill v. Liberty Mutual Ins. Co.*,
   80 F. 3d 336 (9th Cir. 1996)........................................................................................18

13
14

*Cardonet, Inc. v. IBM*,
   2007 WL 518909 (N.D. Cal. Feb. 14, 2007)................................................................14

15
16

*Cayanan v. Citi Holdings, Inc.*,
   928 F. Supp. 2d 1182 (S.D. Cal 2013) and *1-800-Got*................................................9

17

*Chigirinskiy v. Panchenkova*,
   No. 14 Civ. 4410, 2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015)...................................7

18
19

*Cotter v. Lyft, Inc.*,
   60 F. Supp. 3d 1059, 1061 (N.D. Cal. 2014) ......................................................10, 12

20
21

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015)......................................................................................21

22

*Doe v. United States*,
   58 F.3d 494 (9th Cir. 1995).........................................................................................25

23
24

*E*Trade Fin. Corp. v. Deutsche Bank AG*,
   420 F. Supp. 2d 273 (S.D.N.Y. 2006)............................................................................7

25
26

*Ehrlich v. BMW of North America, LLC*,
   801 F. Supp.2d 908 (C.D. Cal. 2010).........................................................................20

27

*In re Facebook Biometric Info. Privacy Litig.*,
   185 F. Supp. 3d 1155,1169 (N.D. Cal. 2016) ..............................................................15

28

iv

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
    414 F.3d 325 (2d Cir. 2005) ........................................................................ 5, 7

*Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*,
    No. 1:17-CV-8987-GHW, 2019 WL 1244294 (S.D.N.Y. Mar. 18, 2019) ................... 7

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
    323 F.3d 1219 (9th Cir. 2003) ......................................................................... 12

*Hadida v. King*,
    No. 2:11-CV-8648-SVW-VBK, 2012 WL 13012701 (C.D. Cal. Feb. 2, 2012) ........... 25

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ............................................................. 23

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ......................................................................... 20

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ........................................................................... 20

*Ingalls v. Spotify USA, Inc.*,
    No. C 16-03533 WHA, 2017 WL 3021037 (N.D. Cal. July 17, 2017) ........... 16, 18, 20

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................. 20

*JMP Sec. LLP v. Altair Nanotech. Inc.*,
    No. 11-4498 SC, 2012 WL 892157 (N.D. Cal. 2012) ........................................ 8, 9

*JMP Sec. LLP v. Altair Nanotechnologies Inc.*,
    880 F. Supp. 2d 1029 (N.D. Cal. 2012) ............................................................... 5

*Johnson v. Pluralsight, LLC*,
    728 F. App'x 674 (9th Cir. 2018) (unpublished) ................................................. 18

*K & D Corp. v. Concierge Auctions, LLC*,
    2 F. Supp. 3d 525, 547-548 (S.D.N.Y 2014) ..................................................... 12

*Kissel v. Code 42 Software, Inc.*,
    No. SACV 15-1936-JLS, 2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ................. 14

*Krock v. Lipsay*,
    97 F.3d 640 (2d Cir. 1996) ............................................................................... 7

*KST Data, Inc. v. DXC Tech.*,
    No. CV 17-07927 SJO (SK), 2018 WL 5734227 (C.D. Cal. Mar. 26, 2018) ............. 8

*Lloyd v. Navy Fed. Credit Union*,
    2018 WL 1757609 (S.D. Cal. 2018) ............................................................ 14, 15

Opposition to Motion to Dismiss

*Lopez v. Stages of Beauty*,
   LLC, 307 F. Supp. 3d 1058, 1072 (S.D. Cal. 2018) .................................................................17

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ..........................................................................................15, 16

*Mahoney v. Fid. Nat. Title Co.*,
   No. SACV 08-0561 AG CWX, 2008 WL 4286934 (C.D. Cal. Sept. 15, 2008) .........................25

*Mayaguez S.A. v. Citigroup, Inc.*,
   No. 16 CIV. 6788 PGG, 2018 WL 1587597 (S.D.N.Y. Mar. 28, 2018) ......................................7

*McBeth v. Porges*,
   171 F. Supp. 3d 216, 224 (S.D.N.Y. 2016) ................................................................................7

*Mendy v. JP Morgan Chase & Co.*,
   No. 12–cv–8252 (PGG), 2014 WL 1224549 (S.D.N.Y. Mar. 23, 2014) ....................................15

*Narayan v. EGL, Inc.*,
   616 F.3d 895 (9th Cir. 2010) .....................................................................................................5

*O'Connor v. Uber Techs., Inc.*,
   58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014) .............................................................................12

*Oestreicher v. Alienware Corp.*,
   502 F. Supp. 2d 1068–69 (N.D. Cal. 2007) .............................................................................15

*Ottman v. Anthem Life Ins. Co.*,
   No. SA CV 150434-DOC-RNBx, 2015 WL 12683809 (C.D. Cal. Oct. 15, 2015) ................9, 10

*Peugeot Motors of Am., Inc. v. Eastern Auto Distributors, Inc.*,
   892 F.2d 355 (4th Cir. 1989), *cert. denied*, 497 U.S. 1005 (1990) ............................................12

*Price v. Synapse Grp., Inc.*,
   No. 16-CV-01524-BAS-BLM, 2017 WL 3131700 (S.D. Cal. July 24, 2017) ...............18, 20, 21

*Qwest Commc'ns Co. LLC v. Sun Coast Merch. Corp.*,
   No. CV 10-7145 PA (SSX), 2011 WL 13217684 (C.D. Cal. June 13, 2011) ...............................9

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
   No. 13 Civ. 1654, 2014 WL 2610608 (S.D.N.Y. June 10, 2014) ................................................7

*Savetsky v. Pre-Paid Legal Servs., Inc.*,
   No. 14-03514 SC, 2015 WL 4593744 (N.D. Cal. July 30, 2015) ..............................................12

*SCM Grp., Inc. v. McKinsey & Co.*,
   No. 10 Civ. 2414 PGG, 2011 WL 1197523 (S.D.N.Y. Mar. 28, 2011) .......................................7

*Sarandi v. Breu*,
   No. C 08-2118 SBA, 2009 WL 2871049 (N.D. Cal. 2009) .....................................................6, 7

vi

*Sharpe v. Puritan's Pride, Inc.*,
  No. 16-CV-06717-JD, 2019 WL 188658 (N.D. Cal. Jan. 14, 2019) ...........................10

*Shroyer v. New Cingular Wireless Services, Inc.*,
  498 F.3d 976 (9th Cir .2007)..................................................................................22

*In re Sling Media Slingbox Advert. Litig.*,
  202 F. Supp. 3d 352, 358 (S.D.N.Y. 2016) ..........................................................7, 15

*Slovin v. Sunrun*
  No. 15-CV-05340 YGR 2016 WL 593063 (N.D. Cal. Oct. 12, 2016) .......................16

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
  971 F.2d 401 (9th Cir. 1992).................................................................................4, 5

*Tompkins v. 23andMe, Inc.*,
  No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd*,
  840 F.3d 1016 (9th Cir. 2016)................................................................................23

*Turtur v. Rothschild Registry Int'l, Inc.*,
  26 F.3d 304 (2d Cir. 1994)........................................................................................7

*Ubaldi v. SLM Corp.*,
  No. C 11-01320-EDL, 2013 WL 4015776 (N.D. Cal. Aug. 5, 2013)...........................8

*Vess v. Ciba–Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003).................................................................................21

*Walter v. Hughes Communs., Inc.*,
  682 F. Supp. 2d 1031 (N.D. Cal. 2010) .............................................................14, 15

*Washington v. Baenziger*,
  673 F.Supp. 1478 (N.D. Cal. 1987) ........................................................................21

*Weeks v. Google LLC*,
  No. 18-CV-00801 NC, 2018 WL 3933398 (N.D. Cal. Aug. 16, 2018) ................20, 24

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  313 F. Supp. 3d 1113, 1136 (N.D. Cal. 2018) ........................................................22

**State Cases**

*America Online, Inc. v. Superior Court*,
  90 Cal.App.4th 1 (2001).....................................................................................12, 14

*Bastanchury v. Times-Mirror Co.*,
  68 Cal.App.2d 217 (1945)....................................................................................7, 25

vii

*Brack v. Omni Loan Co.*,
    164 Cal.App.4th 1312 (2008) ................................................................. 12

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal.App.4th 824 (2006) ................................................................... 20

*Dime Laundry Serv., Inc. v. 230 Apartments Corp.*,
    120 Misc. 2d 399, 466 N.Y.S.2d 117 (Sup. Ct. 1983) ............................ 14

*Duffens v. Valenti*,
    161 Cal.App.4th 434 (2008) .............................................................. 24, 25

*Estrada v. Alvarez*,
    38 C.2d 386, 390 (1952) ........................................................................ 24

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (2002) ....................................................................... 10, 12

*Gutierrez v. Carmax Auto Superstores Ca.*,
    19 Cal.App.5th 1234, 1258 (2018), *as modified on denial of reh'g* (Feb. 22,
    2018) ...................................................................................................... 20

*Hall v. Superior Court*,
    150 Cal.App.3d 411 (1983) ................................................................... 14

*Harper v. Ultimo*,
    113 Cal.App.4th 1402 (2003) .................................................................. 4

*Kwikset Corp. v. Superior Court*,
    51 Cal.4th 310 (2011) ....................................................................... 16, 20

*Lennar Homes of California, Inc. v. Stephens*,
    232 Cal.App.4th 673 (2014) .................................................................... 4

*Lhotka v. Geographic Expeditions, Inc.*,
    181 Cal.App.4th 816 (2010) ............................................................. 22, 23

*LLC v. Superior Court*,
    189 Cal.App.4th 500 (2010) .................................................................. 8, 9

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal.4th 634 (2009) ........................................................................... 24

*Mirkin v. Wasserman*,
    5 Cal.4th 1082 (1993) ........................................................................... 21

*Mobile Diagnostic Testing Servs., Inc. v. TLC Health Care Network*,
    19 A.D.3d 1145 (4th Dept. 2005) ......................................................... 14

Opposition to Motion to Dismiss

*Moran v. Prime Healthcare Mgmt., Inc.*,
    3 Cal.App.5th 1131, 1149 (2016) ................................................................................. 16

*Morrissey v. Nextel Ptrs Inc.*,
    895 N.Y.S.2d 580 (N.Y. App. Div. 2010) ..................................................................... 10

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal.4th 459 (1992) .............................................................................................. 2, 5, 9, 10

*Outboard Marine Corp. v Superior Court*,
    52 Cal.App.3d 30 (1975) .................................................................................................. 20

*Perdue v. Crocker Nat'l Bank*,
    38 Cal.3d 913 (1985) ....................................................................................................... 22

*Sanchez v. Valencia Holding Co., LLC*,
    61 Cal. 4th 899 (2015) ..................................................................................................... 23

*Sandquist v. Lebo Auto., Inc.*,
    1 Cal. 5th 233, 247 (2016) ................................................................................................. 5

*Schultz v. Harney*,
    27 Cal.App.4th 1611 (1994) ............................................................................................ 24

*Sonic-Calabasas A, Inc. v. Moreno*,
    57 Cal.4th 1109 (2013) ............................................................................................... 23, 24

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) ............................................................................................ 8, 20, 21

*Verdugo v. Alliantgroup, L.P.*,
    237 Cal.App.4th 141,147-51 (2015) ............................................................................... 14

*Washington Mut. Bank, FA v. Superior Court*,
    24 Cal.4th 906 (2001) ..................................................................................................... 5, 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................. 12, 16

**State Statutes**

Automatic Renewal Law ("ARL") ................................................................................ *passim*

Cal. Bus. & Prof. Code § 17600 ......................................................................................... 1

Cal. Bus. & Prof. Code § 17602(a)(1) .............................................................................. 17

Cal. Bus. & Prof. Code § 17602(a)(3) .............................................................................. 17

Cal. Bus. & Prof. Code § 17602(b) ................................................................................... 17

ix

Cal. Bus. & Prof. Code § 17603 ............................................................................... 18

Cal. Bus. & Prof. Code § 17604 ............................................................................... 15

Cal. Civ. Code § 1670.5(b) ...................................................................................... 22

Cal. Civ. Code § 1694. ...................................................................................... 14, 16

Cal. Civ. Code § 1694.2 ............................................................................................ 14

Cal. Civ. Code § 1694.4(a) .................................................................................. 12, 24

Cal. Civ. Code § 1694.4(e) ....................................................................................... 12

Cal. Civ. Code § 1751 ............................................................................................... 14

Cal. Civ. Code § 1770(a)(14) ................................................................................... 20

Cal. Civ. Code § 1770(a)(19) .............................................................................. 16, 24

California Dating Services Law ("DSL") ........................................................... *passim*

CLRA ................................................................................................................ *passim*

N.Y. Gen. Bus. Law § 349 ................................................................................. 10, 14

N.Y. Gen. Bus. Law § 350 ................................................................................. 10, 14

N.Y. Gen. Bus. Law § 394-c ...................................................................................... 8

N.Y. Gen. Bus. Law § 394-c(7) ............................................................................... 14

N.Y. Gen. Oblig. Law § 5-903 ........................................................................... 12, 14

N.Y. Gen. Oblig. Law § 5–903(2) ............................................................................ 14

UCL ................................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. Rule 8 ............................................................................................... 18

Fed. R. Civ. P. Rule 9(b) ..................................................................................... 21, 24

Fed. R. Civ. P. Rule 12(b)(6) ................................................................................... 25

**Other Authorities**

David A. Hoffman, *Relational Contracts of Adhesion*, 85 U. Chi. L. Rev. 1395,
    1440–41 (2018) ................................................................................................... 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Restatement (Second) of Conflict of Laws § 187, *cmt* f. (1971) ...............................................8, 12, 14

Restatement (Second) of Contracts § 206 (1979) ................................................................................3

Opposition to Motion to Dismiss

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION AND STATEMENT OF THE RELEVANT FACTS

Plaintiffs Nick King, Deena Fischer, and Elena Weinberger and putative Class Members are consumers in California who purchased subscriptions to Bumble Boost, a popular online dating service, offered and operated by Defendants Bumble Trading, Inc. and Bumble Holding, Ltd. ("Bumble") through a software application. Second Amended Compl. ("SAC"), ¶¶ 1-2. Plaintiffs allege Bumble violated California's comprehensive legislative scheme which protects consumers against the predatory business practices of online dating services through the California Automatic Renewal Law ("ARL") and the California Dating Services Law ("DSL").

The ARL was enacted to "end the practice of ongoing charging of consumer credit and debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of a service." Cal. Bus. & Prof. Code § 17600. In fact, consumer complaints of the automatic renewal of "online dating services" was an impetus in updating the ARL to include an unconditional "gift" provision for non-compliant auto-renewals. *Id.* at § 17603; *see* Plaintiffs' Request for Judicial Notice, Exs.1 & 2. Mr. King, who purchased a subscription from Bumble believing he was only making a one-time purchase, asserts claims under the California Unfair Competition Law ("UCL") and the California Consumer Remedies Act ("CLRA") premised on Bumble's ARL violations.

The DSL was enacted to provide consumers with a means of release from dating service contracts. Under the DSL, dating service contracts must meet certain statutory requirements or be deemed void and unenforceable. For example, online dating services must provide consumers with clear and conspicuous notice of their right to cancel and obtain a refund. These rights and remedies are *non-waivable*. Bumble does not follow *any* of the statutory requirements. Bumble's Terms and Conditions of Service ("Terms") state that all purchases are non-refundable, which directly contradicts the DSL. Plaintiffs allege claims under the DSL, UCL, and CLRA for injuries they suffered as a result of Bumble's conduct of enforcing the Terms when Plaintiffs sought to cancel the contract and obtain refunds.

Bumble moves to dismiss Plaintiffs' claims on the grounds that Bumble's Terms contain a choice-of-law clause that designates New York law – a state that has no relationship to the parties or

the transaction.  Bumble Holding Ltd., who is not a party to the Terms, does not explain how it has standing to enforce them.  Bumble Trading Inc. seeks to enforce the Terms ignoring Plaintiffs' allegations that they were neither required to read nor affirmatively agree to the Terms, which were only accessible via a tiny hyperlink in the App.  In fact, the choice-of-law provision is buried in the very last section entitled "ABOUT US" and immediately after a section Bumble refers to as "Some more legal mumbo jumbo."  Though Bumble desires application of New York law in order to insulate itself from liability, the plain language of the Terms makes clear that California law applies. Bumble's brief omits the second half of the choice-of-law clause and other language in the Terms which state that the law of the consumer's forum state applies.

Moreover, Bumble's application of the *Nedlloyd* test fails at each step, which ends the inquiry.  Bumble analyzes the scope of the choice-of-law clause under California law, but it must be analyzed under New York law, which reads clauses like Bumble's to only apply to contractual claims.  Thus, Bumble fails to meet its burden of showing that Plaintiffs' claims, all of which are non-contractual, fall within the ambit of the clause. Bumble fails to meet its burden of *showing* it had a reasonable basis to choose New York law.  Further, the *choice* of law is a Hobson's choice: New York's consumer protection statutes do not apply extraterritorially, and the parties cannot stipulate otherwise.  Plaintiffs and the DSL and ARL Classes will be stripped of their rights and remedies – *in total.*  Bumble cannot meet its burden of demonstrating that enforcement of its choice-of-law provision will not diminish Plaintiffs' non-waivable rights under the DSL and CLRA *in any way.* Bumble is incorrect when it asserts that there are no cognizable differences between New York and California law, and importantly, the DSL, ARL, CLRA, and derivatively, the UCL, each embody fundamental public policies of California. California has a materially greater interest in protecting California purchasers through its statutory scheme while New York has zero interest in applying its laws to parties and injuries occurring outside the state.

Bumble's challenges to the sufficiency of Mr. King's ARL-based claims also fail.  Bumble spends many pages with illustrations of the screens and buttons of Apple's purchase and confirmation process. This is a red herring: **Mr. King alleged that he purchased directly from Bumble – not through Apple.**  (For the reasons stated in the Opposition to Bumble's Request for Judicial Notice filed herewith, the Court should not consider Exhibits A through F to Mr.

2

Bernstein's Declaration.) Moreover, Bumble mischaracterizes his fraud claims as affirmative misrepresentation claims, but Mr. King's asserts fraudulent omissions claims based on Bumble's statutory duty to disclose the auto-renewal terms before his purchase.

Bumble does not challenge the sufficiency of Plaintiffs' DSL claims (First Claim for Relief) nor their claim for a declaration that the dating service contracts are void and unenforceable (Fifth Claim for Relief). If the Court finds that California law applies, then these claims, along with Plaintiffs' DSL-premised claims under the "unlawful" and "unfair" prongs of the UCL, survive. Further, Plaintiffs' CLRA claims for insertion of an unconscionable provision in the Terms does not sound in fraud, is sufficiently plead, and is a factual matter that is premature at this stage.

Lastly, Plaintiffs sufficiently allege common counts under an alternative theory for money had and received because California law does not allow Bumble to retain the benefits of its illegal and void dating service contracts, and therefore Plaintiffs are entitled to all monies paid. Bumble does not challenge Mr. King's additional money had and received claim based on ARL violations.

## II. BUMBLE'S TERMS EXPLICITLY REQUIRE APPLICATION OF CALIFORNIA LAW TO PLAINTIFFS' CLAIMS

The Court need not undertake a choice-of-law analysis because the plain language of Bumble's Terms requires application of California, not New York, law to this dispute. In the very choice-of-law provision relied on by Bumble in its brief, is a significant limitation to the application of New York law: "**other than such laws, rules, regulations and case law that would result in the application of the laws of a jurisdiction other than the State of New York.**" SAC, Ex. A, § 12 (emphasis added). Although Bumble does not provide the Court with this language, words have meaning and this language, drafted by Bumble, should be read in favor of Plaintiffs and against Bumble.[1] Further, the Terms, in numerous other locations, make clear that all claims are governed by "applicable law," in particular, the laws of the consumer's respective forum states:

> You agree to: comply with all **applicable laws** . . . SAC, Ex. A., §3 (bold added).

> SHOULD **APPLICABLE LAW NOT PERMIT . . ., THEN WE GRANT THE MINIMUM EXPRESS OR IMPLIED WARRANTY REQUIRED BY APPLICABLE LAW.** SAC, Ex. A., §7 (bold added).

---

[1]    *See* Restatement (Second) of Contracts § 206 (1979) (where a contract is reasonably susceptible to more than one meaning, "that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds.")

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

YOU HEREBY WAIVE ANY AND ALL CLAIMS ARISING OUT OF YOUR USE OF THE APP OR SITE. **BECAUSE SOME STATES DO NOT ALLOW THE DISCLAIMER OR IMPLIED WARRANTIES OR THE EXCLUSION OR LIMITATION OF CERTAIN TYPES OF DAMAGES, THESE PROVISIONS MAY NOT APPLY TO YOU**. SAC, Ex. A., § 7 (bold added.)

Bumble Trading Inc. . . . is responsible for addressing any claims . . . that the app fails to conform to any **applicable legal** or regulatory requirement . . . . SAC, Ex. A., §10 (bold added).[2]

The Ninth Circuit recognizes that choice-of-law provisions with "applicable law" limitations are, in fact, limited. *Sutter Home Winery, Inc. v. Vintage Selections, Ltd*., 971 F.2d 401, 407 (9th Cir. 1992). The *Sutter* Court interpreted a similar limitation in a choice of law provision, which provided: "[e]xcept as otherwise required by applicable law, this Agreement shall be governed by the law of the State of California." *Id*. at 404. In *Sutter*, as here, the phrase "applicable law" was repeated in three separate paragraphs of the agreement. *Id*. at 406. The Court found that the "language implies that some other law must be applicable; otherwise, the phrase 'except as otherwise required by applicable law' is mere surplusage." *Id.* at 406. Accordingly, the district court was found to have erred in not applying the law of the forum state because the phrase "except as otherwise required by applicable law," included the law of the forum state and further, because any ambiguity had to be read against Sutter, the drafter of the agreement. *Id*. at 407.

Here, like the choice-of-law provision in *Sutter*, Bumble's provision states that New York law applies except where other laws, rules, regulations, and case law would result in application of another jurisdiction's laws. As in *Sutter*, Bumble's Terms contain not less than three references to "applicable law." *Id*. at 406. Bumble' choice-of-law clause, read in the context of multiple references to "applicable law" and the forum "states" laws, plainly provides that New York law does not apply to any consumer claims where the consumer's forum state has an applicable law. SAC, Ex. A, §12. Therefore, California's "laws, rules, regulations and case law," *i.e.*, the claims

---

[2]    Notably, Bumble's one-sided limitation of liability clause is substantively unconscionable in California. *See Harper v. Ultimo*, 113 Cal.App.4th 1402, 1407 (2003) ("limitation of damages provision" in a customer's contract with a contractor "is yet another version of a 'heads I win, tails you lose' arbitration clause that has met with uniform judicial opprobrium"); *see also Lennar Homes of California, Inc. v. Stephens*, 232 Cal.App.4th 673, 693 (2014) ("courts often analyze provisions in contracts of adhesion between corporation and consumer having the practical effect of limiting the consumer's recourse to the courts in the event of a dispute," and "[i]n those contexts, there are 'any number of cases' where arbitration clauses effectively limiting the defendant corporation's exposure to damages have been found substantively unconscionable").

4

1   alleged violated in this case, are "part of the other applicable law agreed upon by the parties in the

2   agreement and should therefore be applied in the instant case*." See Sutter,* 971 F.2d at 407.

3      Even if Bumble could proffer an alternative reasonable reading, it would be of no

4   consequence. The law is settled that where there is doubt as to the intent of the parties, ambiguities

5   in written agreements are to be construed against the drafters, a rule that "applies with peculiar force

6   in the case of a contract of adhesion." *Sandquist v. Lebo Auto., Inc*., 1 Cal. 5th 233, 247 (2016).

**III.    THE *NEDLLOYD* ANALYSIS ALSO DICTATES APPLICATION OF CALIFORNIA**
7   **LAW TO PLAINTIFFS' CLAIMS**

8      **A.    The Choice-Of-Law Provision Does Not Encompass Any of Plaintiffs' Claims**

9      Bumble analyzes the scope of the choice-of-law provision under California law, not New

10  York law.  Therefore, Bumble fails to meet its burden that the provision applies to this dispute.

11  "The scope of a choice-of-law clause in a contract is a matter that ordinarily should be determined

12  under the law designated therein." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906,

13  n.3 (2001) (*citing Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 469 n.7 (1992)); *see also,*

14  *Narayan v. EGL, Inc*., 616 F.3d 895, 898 (9th Cir. 2010)  ("California, the forum state, ordinarily

15  examines the scope of a choice-of-law provision in a contract under the law designated in that

16  contract.") (applying *Nedlloyd* and determining scope under law designated in agreement); *JMP*

17  *Sec. LLP v. Altair Nanotechnologies Inc*., 880 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012) ("because

18  the Agreement at issue in this case identifies New York law and does not specify otherwise, the

19  Court applies New York law to determine which of JMP's claims the Agreement covers.").  Thus,

    to determine the scope, the Court must look to New York law, the law designated in the provision.

20     While Bumble is correct that courts favor enforcement of a valid choice-of-law clause freely

21  and voluntarily entered into by parties, the effect of such a clause necessarily depends on its scope.

22  *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332 (2d Cir. 2005).  New York

23  courts read choice-of-law provisions narrowly. The Second Circuit has observed "a reluctance on

24  the part of New York courts to construe contractual choice-of-law clauses broadly to encompass

25  extra-contractual causes of action." *Id. at* 334-35. Choice-of-law clauses are deemed to apply only

26  to claims that are based on rights conferred by the agreement. *Id.* at 335.[3]

27  _____
    [3]      *See also*, *JMP Sec. LLP*, 880 F. Supp. 2d at 1036 (holding that extra-contractual claims for
28  promissory estoppel, fraud, and negligent misrepresentation did not fall within the scope of New

Under the New York approach, "[e]xtra-contractual claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract." *Sarandi v. Breu*, No. C 08-2118 SBA, 2009 WL 2871049, at *4 (N.D. Cal. 2009) (citing *Finance One Pub. Co. Ltd*. 414 F.3d at 335 (2d Cir. 2005). "Thus, unless expressly specified otherwise, a choice-of-law clause should not be interpreted to encompass extra-contractual claims, even if such claims arise from or are related to the contract." *Id*. In order for a choice-of-law provision to apply to non-contractual claims, the express language of the provision must be "sufficiently broad" to encompass the entire relationship between the contracting parties. *See In re Sling Media Slingbox Advert. Litig*., 202 F. Supp. 3d 352, 358 (S.D.N.Y. 2016) (*citing Turtur v. Rothschild Registry Int'l, Inc*., 26 F.3d 304, 309-10 (2d Cir. 1994); *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996). Hence, the Second Circuit has observed that "no reported New York cases present such a broad clause." *Fin. One,* 414 F.3d at 334-35. New York "[c]ourts treat the specific wording of a choice-of-law provision as crucial in determining how broad the provision is: provisions applying to disputes 'arising out of' or 'relating to' a contract are capacious enough to reach related tort claims, **while provisions stating that a contract will be 'governed by' or 'construed in accordance with' the law of a state are not**." *See Chigirinskiy v. Panchenkova*, No. 14 Civ. 4410, 2015 WL 1454646, at *6 (S.D.N.Y. Mar. 31, 2015) (emphasis added) (*quoting Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P*., No. 13 Civ. 1654, 2014 WL 2610608, at *40 (S.D.N.Y. June 10, 2014).

Bumble's choice-of-law clause is not "sufficiently broad" to cover Plaintiffs' extra-contractual claims. SAC, Ex. A, § 12. Bumble's choice-of-law provision states that the "Terms are governed and interpreted by"—a phrase that has consistently failed to encompass extra-contractual claims under New York law. *See* SAC, Ex. A, §12; *see e.g. Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 1:17-CV-8987-GHW, 2019 WL 1244294, at *16 (S.D.N.Y. Mar. 18, 2019);

---

York choice-of-law provision because they were not based on breaches of rights conferred by the agreement); *Sarandi*, 2009 WL 2871049, at *4 (holding that breach of fiduciary duty claims not predicated on rights specified in or conferred by the terms of the agreement are extra-contractual, and thus, do not fall within the ambit of New York choice-of-law provision); *see also, E*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 290 (S.D.N.Y. 2006) ("the choice of law in [the agreement] does not apply to . . .  non-contract claims, including [California UCL]").

*Chigirinskiy,* 2015 WL 1454646, at *6.[4]  Moreover, because Bumble's Terms contain multiple references to compliance with "applicable laws" and application of forum states' laws (*see* section II., *supra*), and the choice-of-law clause excludes "laws, rules, regulations and case law that would result in the application of the laws of a jurisdiction other than New York" (*see* SAC, Ex. A, § 12), the choice of law clause is not "sufficiently broad" to control all the rights and duties of the parties. The Clause simply does not "encompass the entire relationship of the parties." *See Krock*, 97 F.3d at 645 (2d Cir. 1996); *McBeth v. Porges*, 171 F. Supp. 3d 216, 224 (S.D.N.Y. 2016) (because choice-of-law provision did not "encompass the entire relationship between the contracting parties," it did not extend to fraudulent and negligent misrepresentation claims).

Plaintiffs' claims to enforce rights and remedies conferred by a host of California consumer protection statutes are extra-contractual. As alleged, Bumble's Terms do not confer any of the rights and remedies sought to be enforced, rather, they deprive Plaintiffs of them.  In addition, Plaintiffs' common count for money had and received is, by definition, outside the contract, and therefore is not covered by the choice-of-law provision.[5]

Bumble fails to meet its burden that the scope of the choice-of-law provision encompasses the parties' dispute, and therefore, California law applies to the claims.

### B.    Bumble Fails to Meet its Burden of Making a Showing that It Had a Reasonable Basis to Choose New York Law

The proponent of the choice-of-law provision bears the burden of showing that the chosen state has a substantial relationship to the parties or their transaction, or that there is a reasonable basis for the choice of law. *Washington Mut. Bank*, 24 Cal.4th at 917.  Bumble does not meet its burden of showing it has a "reasonable basis" to choose New York law.  The "substantial relationship" and "reasonable basis" tests set forth in the Restatement are not mutually exclusive; "[s]ome courts appear to blur the line between the two prongs by equating a reasonable basis with a

---

[4]    Contrary to Bumble's assertion (Dkt 44 12:1-2), Plaintiffs' claims have nothing to do with their access to the App; rather, their claims relate to Bumble' billing and refund practices. The Terms clarify that access to the App refers to Bumble's right to restrict access to the App and prevent consumers from accessing "non-public areas" of the App. *See* SAC, Ex. A at §1,2.

[5]    "The foundation of an action for conversion on a money had and received count is the unjust enrichment of the wrongdoer. *Bastanchury v. Times-Mirror Co.*, 68 Cal.App.2d 217, 236 (1945). Unjust enrichment claims are extra-contractual claims and not subject to standard choice of law provisions. *See e.g., SCM Grp., Inc. v. McKinsey & Co.*, No. 10 Civ. 2414 PGG, 2011 WL 1197523, at *1-3 (S.D.N.Y. Mar. 28, 2011); *Mayaguez S.A. v. Citigroup, Inc.*, No. 16 CIV. 6788 PGG, 2018 WL 1587597, at *7 (S.D.N.Y. Mar. 28, 2018).

7

substantial relationship." *JMP Sec. LLP*, 2012 WL 892157, at *5 (internal quotations omitted).

Accordingly, the Restatement provides a narrow illustration of circumstances where "[t]he parties to

a multistate contract may have a reasonable basis for choosing a state with which the contract has

no substantial relationship[:]"

> For example, when contracting in countries whose legal systems are strange to them
> as well as relatively immature, the parties should be able to choose a law on the
> ground that they know it well and that it is sufficiently developed...parties to a
> contract for the transportation of goods by sea between two countries with relatively
> undeveloped legal systems should be permitted to submit their contract to some well-
> known and highly elaborated commercial law.

Restatement (Second) of Conflict of Laws §187, *cmt* f. (1971).  These circumstances do not apply to

Bumble Trading, Inc., a Delaware corporation, having a principal place of business in Texas.[6]

Bumble asserts it has an interest in "a uniform national standard to govern its agreement."

Dkt. 44 at 12:7-10. Bumble does not "argue that the parties have a particular familiarity with New

York law or that the law itself would minimize uncertainty in a specific and foreseeable way." *KST

Data, Inc. v. DXC Tech*., No. CV 17-07927 SJO (SK), 2018 WL 5734227, at *5 (C.D. Cal. Mar. 26,

2018) (emphasis in original).  To the contrary, Bumble's Terms do not include the mandatory

language of New York's DSL (N.Y. Gen. Bus. Law § 394-c) and its choice-of-law provision is not

written with New York's cannon of construction against noncontractual claims in mind (if that was

Bumble's intention). *See S*ect. III (A)*, supra*.  Thus, Bumble has not met its burden of showing that

opting for New York law is reasonable. *KST Data, Inc.*, 2018 WL 5734227, at *5 (party's assertion

of an interest in a national uniform standard insufficient to establish a reasonable basis to designate

New York law).

Further, that Bumble's Terms plainly call for "applicable law," the law of the consumer's

forum state, and the "laws, rules, regulations and case law" of other states to apply (*see* section II*.,

supra*) is also fatal to Bumble's argument.  *See Ubaldi v. SLM Corp*., No. C 11-01320-EDL, 2013

WL 4015776, at *7 (N.D. Cal. Aug. 5, 2013) (Sallie Mae did not meet its burden of establishing a

reasonable basis to choose Oklahoma law; it did not show it had a greater familiarity with

_____

[6]    Bumble relies on *1-800-Got Junk? LLC v. Superior Court*, 189 Cal.App.4th 500, 514
(2010), where the court considered as a factor that a company chose a state's law because of its
proximity to its headquarters. Dkt. 44 at 13:1-2. Bumble asserts that its holding company is based in
London and New York is "one of the closest U.S. locations" to those headquarters. This is not
relevant because the Terms are purportedly a "contract between [Plaintiffs] and Bumble Trading
Inc," not Bumble Holding, Ltd.  *See* SAC, ¶ 13; Ex. A. (preamble).

1  Oklahoma law nor did it supply evidence that Oklahoma law applied to all student loans nationwide

2  as promissory notes called for application of the laws of numerous other states).  Bumble has not

3  made any showing that New York would provide a uniform national standard.

4        Conversely, in *Cayanan v. Citi Holdings, Inc*., 928 F. Supp. 2d 1182, 1195 (S.D. Cal. 2013)

5  and *1-800-Got Junk?*, 189 Cal.App.4th at 514, relied upon by Bumble (Dkt. 44 at 12-13), the party

6  seeking to enforce the choice-of-law clause made a showing that the chosen state law would in fact

7  provide a uniform national standard to govern multiple agreements.

8        Bumble's unsupported assertion that it "has a substantial number of users in New York,"

9  and thereby has a reasonable basis to choose New York law, is insufficient to meet its burden and

10  should be rejected.  Dkt. 44 at 12:14-16.  Bumble essentially argues that any company that does

11  business in numerous states can arbitrarily choose a state's law to satisfy the reasonable basis test,

12  even where the chosen state has no relationship to the dispute or the parties.  This faulty reasoning

13  is neither supported by the Restatement, nor by the cases Bumble relies on, and would eviscerate

14  the "substantial relationship" test, the purpose of which is to prevent parties from "avoid[ing] the

15  application of the law of a particular state to their transaction by stipulating to the law of a state that

16  has no interest in having its law applied." *Nedlloyd,* 3 Cal. 4th at 482 (Kennard, J. concurring).

17  New York has zero interest in having it laws applied here. *See* Sect. III, E, *infra*.

18        Lastly, Bumble's argument that a forum selection provision which selects **New York state**

19  **courts** provides a reasonable basis for choosing New York Law, fares no better.  Dkt. 44 at 5:17-19

20  (emphasis added).  The forum selection clause is more expansive than Bumble would like to

21  acknowledge—**it provides for disputes to be resolved in any federal court located in any of the**

22  **fifty U.S. states and territories.**  *See* SAC, Ex. A, § 12 ("exclusive jurisdiction of the courts of the

23  United States").  For this reason alone, the cases Bumble relies on are readily distinguishable.[7]

24  Bumble has simply not provided **any** evidence to establish a reasonable basis for selecting New

_____

[7]     In *Qwest Commc'ns Co. LLC v. Sun Coast Merch. Corp.*, No. CV 10-7145 PA (SSX), 2011 WL 13217684, at *4 (C.D. Cal. June 13, 2011), on summary judgment, the court held the corporate entities had a reasonable basis to choose New York law because the agreement provided for "resolution of disputes in New York" and there were significant transactions in New York. *JMP Sec. LLP v. Altair Nanotech. Inc.,* No. 11-4498 SC, 2012 WL 892157, at *5 (N.D. Cal. 2012) is further distinguishable as a case where two corporate entities negotiated and consented to an agreement. *Ottman v. Anthem Life Ins. Co.,* No. SA CV 150434-DOC-RNBx, 2015 WL 12683809, at *3 (C.D. Cal. Oct. 15, 2015). In contrast here, "Plaintiff did not engage in direct negotiations with [Bumble] over the [forum selection] provision." *See id.* at *4; SAC, ¶ 66, 118-119.

9

York law. *See Ottman*, 2015 WL 12683809, at *4 ("Defendant has not provided the Court with adequate information—and therefore has not met its burden—of establishing a reasonable basis for choosing Ohio law"). Bumble fails to meet its burden on this record.

Because "neither the substantial relationship nor the reasonable basis tests are met, that is the end of the inquiry, and the [C]ourt need not enforce the parties' choice-of-law." *Nedlloyd*, 3 Cal. 4th at 466.

C.   **Application of New York Law to Plaintiffs' Claims Would Leave Them Without Any Remedy or Relief Because New York's Consumer Protection Laws Do Not Apply Extraterritorially and Parties Cannot Stipulate Otherwise**

Bumble invites the Court to compare California laws with their "New York analog(s)." Dkt. 44 at 13:24-25.  But this is not the relevant analysis and skips an important analytical step—whether New York's consumer statutes can apply extraterritorially in the first instance. They cannot.  "A court conducts a conflict of laws analysis only where the laws of multiple states could conceivably apply to the same claim." *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1061 (N.D. Cal. 2014).  Here, a conflict of laws analysis is unnecessary because New York law cannot conceivably apply to Plaintiffs' claims because New York's consumer protection laws do not apply extraterritorially.

New York's highest court has held that New York's Consumer Protection Statute, Gen. Bus. Law, Sections 349 and 350, do not apply extraterritorially because the statutory language, "in this state" requires the deception of a consumer to occur in New York.  *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002).[8] New York's Dating Service Law, N.Y. Gen. Bus. Law § 394-c, is also limited to transactions that occur within the state. Indeed, in 2010, the legislature added a section—New York GBL 394-cc, that plainly limits the territorial application for internet dating services, like Bumble, to "New York member(s)." *See* N.Y. Gen. Bus. Law § 394-cc. ("An internet dating service offering services to New York members"). [9]

---

[8]      *See also*, *Morrissey v. Nextel Ptrs Inc.*, 895 N.Y.S.2d 580, 587 (N.Y. App. Div. 2010) ("Gen. Bus. Law § 349 requires the deceptive transaction to have occurred in New York, and, therefore, no viable claim under the statute would lie for potential class members from outside the state who were victimized by defendant's practices."); *Sharpe v. Puritan's Pride, Inc.*, No. 16-CV-06717-JD, 2019 WL 188658, at *3 (N.D. Cal. Jan. 14, 2019) (Gen. Bus. Law § 349 and § 350 do not apply to consumer purchases made outside New York).

[9]      The New York legislature recognizes the statute applies to New York residents: Legislative findings and declarations. The legislature finds and declares that **residents of this state** need to be informed of the potential risks of participating in internet dating services. The legislature further finds and declares that the offer of

When a law contains geographical limitations on its application, courts will not apply it to parties falling outside those limitations even if the parties stipulate otherwise. *See Peugeot Motors of Am., Inc. v. Eastern Auto Distributors, Inc.*, 892 F.2d 355, 358 (4th Cir. 1989), *cert. denied*, 497 U.S. 1005 (1990) (applying choice-of-law clause designating New York law, court held that "New York regulatory schemes with explicit geographical limitations do not apply to this contract between two parties outside the state of New York.").  Indeed, the Ninth Circuit articulated the rule that "[w]hen a law contains geographical limitations on its application, [] courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." *Gravquick A/S v. Trimble Navigation Int'l Ltd*., 323 F.3d 1219, 1223 (9th Cir. 2003); *see also, In re Yahoo! Inc. Customer Data Sec. Breach Litig*., No. 16-MD-02752-LHK, 2017 WL 3727318, at *35 (N.D. Cal. Aug. 30, 2017) (dismissed California Customer Records Act claims of non-California plaintiffs, despite parties' stipulation to the nationwide application of California law, because of the geographical limitation that restricts the statute's protections to California residents); *Cotter*, 60 F. Supp. 3d at 1065 (applying *Gravquick* and collecting cases, court rejected argument that where California does not directly provide a statutory cause of action for employees outside the state, employees may bring claims under the California's Labor Code pursuant to a California choice-of-law provision).

Here, New York's consumer protection statutes do not apply to actions occurring outside New York that injure non-residents and Bumble cannot extend the reach of these laws by contract. "The parties' contractual agreement is governed by New York law, but the governing law clause does not override the territorial constraints contained in Sections 349 and 350 of the General Business Law." *Baker-Rhett v. Aspiro AB*, 324 F. Supp. 3d 407, 417 (S.D.N.Y. 2018) (plaintiff lacked standing under NY GBL, sections 349 and 350 despite choice-of-law and forum selection provision designating New York law because the territoriality requirement was not met); 4 *K & D*

_____

> internet dating services to **residents of this state**, and the acceptance of membership fees from **residents of this state** means that an internet dating service is conducting business **in this state** and is subject to regulation by this state . . . . N.Y. Gen. Bus. Law § 394-cc.

New York Mem of Assembly Rules Comm, Bill Jacket, 2010 A.B. 5180, Ch. 425, § 2 (italics added).

1  *Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547-548 (S.D.N.Y 2014) ("the mere fact that

2  parties agreed to be bound by New York law and to resolve their disputes in courts in New York

3  does not, in itself, provide any indication as to where a transaction occurred.").[10]

4         For these reasons, application of New York law to Plaintiffs' claims would leave them and

5  the proposed classes of California purchasers without any remedy or relief.

6         **D.    The DSL, CLRA, ARL, and UCL Reflect Fundamental California Policies and
               Bumble Fails to Meet Its Burden of Showing That Enforcement of the Choice-
7               of-Law Clause Would Not Diminish Non-Waivable Statutory Rights**

8         *California's DSL.* Bumble incorrectly asserts that the DSL does not represent a fundamental

9  policy of California. *See* Dkt. 44 at 15:4-11. The DSL is fundamental for two reasons: it is

10  unwaivable and an agreement entered into in violation of the statute is void. Rest., § 187, cmt. G, p.

11  568; *Brack v. Omni Loan Co.*, 164 Cal.App.4th 1312, 1324 (2008).[11] The DSL contains an explicit

12  anti-waiver provision.  Cal. Civ. Code § 1694.4(e) ("Any waiver by the buyer of this chapter is void

13  and unenforceable.") "[W]here the California legislature included an antiwaiver provision, it is

14  reasonable to conclude that they were attempting to create a fundamental right." *Savetsky v. Pre-*

15  *Paid Legal Servs., Inc.*, No. 14-03514 SC, 2015 WL 4593744, at *7 (N.D. Cal. July 30, 2015).

16  Courts have consistently found antiwaiver provisions in California statutes to be fundamental.[12]

_____

17  [10]      Even in the absence of an explicit limitation in a statute, an implicit limitation on a statute's
18  geographical reach also prevents extraterritorial application, despite the parties' stipulation
    otherwise.  *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014) ("While [the
    Ninth Circuit in] *Gravquick* makes clear one such circumstance is where the legislation contains an
19  explicit limitation, there is no logical reason to reach a different result where that limitation is
    implicit."). As the *O'Connor* court noted, a contractual choice-of-law provision that incorporates
20  California law presumably incorporates all of California law—including California's presumption
    against extraterritorial application of its law. *Id.* at 1005-1007 (holding a UCL claim cannot apply
21  extraterritorially).  Likewise, a choice-of-law clause that designates New York law would
    incorporate New York's "settled rule of statutory interpretation that unless expressly stated
22  otherwise, no legislation is presumed to be intended to operate outside the territorial jurisdiction of
    the state...enacting it." *Goshen*, 286 A.D.2d 229, 229–30 (1st Dept. 2001). New York does not have
23  any analog to the California ARL as Bumble erroneously contends. *See infra*, at III.D.  Regardless,
    N.Y. Gen. Oblig. Law § 5-903, like all New York statutes, contains an implicit limitation on
24  extraterritorial application, and therefore, its reach cannot be extended by contract. A party cannot
    create by contract a cause of action that the law does not provide. *Cotter*, 60 F. Supp. 3d at 1065.
25  [11]      "[T]he requirements of a statute may [also] be fundamental when the Legislature provides
    that an agreement entered into in violation of the statute is void. . . . When the Legislature acts in
26  this manner, it is clear it has found the particular policies which underlie a statute are more
    important than the more general policy in favor of the freedom to contract." *Brack*, 164 Cal.App.4th
27  at 1324 (internal citations omitted.) The DSL provides that "[a]ny contract for dating services which
    does not comply with this chapter is void and unenforceable." Cal. Civ. Code § 1694.4(a).
28  [12]      *See e.g.*, *America Online, Inc. v. Superior Court,* 90 Cal.App.4th 1, 15 (2001) (prevented

As the party seeking to enforce a clause that "has the potential of stripping California consumers of their legal rights deemed by the Legislature to be nonwaivable," **Bumble has the burden of showing that enforcement of the DSL and CLRA[13] would not violate statutory anti-waiver provisions by "diminish[ing] in any way the substantive rights afforded" to California consumers**. *See Am. Online, Inc. v. Superior Court*, 90 Cal.App.4th 1, 10-11 (2001), as modified (July 10, 2001) (internal citations omitted); *Walter v. Hughes Communs., Inc.*, 682 F. Supp. 2d 1031, 1038 (N.D. Cal. 2010)*;Verdugo v. Alliantgroup, L.P*., 237 Cal.App.4th 141,147-51 (2015) (holding that "[b]urden is reversed when the claims at issue are based on unwaivable rights created by California statute[;]" in that situation, the proponent of the clause must show that substantive rights will not be diminished in any way).  Bumble cannot satisfy this burden. While Bumble highlights similarities between the dating service statutes, it studiously fails to reckon with the substantial differences in substantive rights and remedies and that the New York statute cannot apply extraterritorially.  *See* section III., C, *supra*; Dkt 44 at 14:3-14.[14]

**California's CLRA and UCL**.  "Both the CLRA and UCL reflect multiple fundamental policies of the state of California aimed at protecting California consumers." *Lloyd v. Navy Fed. Credit Union*, 2018 WL 1757609, at 15 (S.D. Cal. 2018) (collecting cases). Bumble's reliance on *Cardonet, Inc. v. IBM*, 2007 WL 518909 (N.D. Cal. Feb. 14, 2007) does not require a different result here. *Cardonet* acknowledged that whether the UCL implicates a fundamental policy "depends on the predicate violation." *Id*. at *5.  Here, the underlying statutes that Plaintiffs' seek to enforce through the UCL—the ARL, DSL, and CLRA—each represent fundamental policies of California, thereby imbuing the UCL with a fundamental policy. Because New York's GBL § 349 and § 350 (which Bumble contends are "substantially similar" to the UCL and CLRA), do not apply

---

enforcement of choice of law with respect to the antiwaiver provisions of the CLRA); *Walter*, 682 F. Supp. 2d at 1041; *Hall v. Superior Court*, 150 Cal.App.3d 411, 418–419 (1983).

[13]    The CLRA also contains explicit anti-waiver provisions.  Cal. Civ. Code § 1751.

[14]    California's DSL expressly provides consumers of a dating service contract that does not comply with the DSL's requirements to cancel the contract "*at any time."* Cal. Civ. Code § 1694.2 (emphasis added). Moreover, the protections are non-waivable and the contract is deemed void and unenforceable and therefore consumers are also entitled to any and all monies paid. *Id.* § 1694, *et seq*. Judgment may also be entered for three times the amount at which the actual damages are assessed. *Id*. § 1694.4. *Compare* with N.Y. Gen. Bus. Law § 394-c (7), which only allows cancellation within 3 business days, does not provide that the contract is void and unenforceable, does not contain an anti-waiver provision, or allow for treble damages. Bumble fails to meet its burden that Plaintiffs would have any claims under New York's DSL. Conversely, Plaintiffs have demonstratively shown that Bumble cannot meet its burden.

13

extraterritorially, Plaintiffs will be left without any protections.  *See* section III.C, *supra*.

*California's ARL.*  The California ARL embodies a fundamental policy of California. *Kissel v. Code 42 Software, Inc.,* No. SACV 15-1936-JLS (KESx), 2016 WL 7647691, at *4 (C.D. Cal. Apr. 14, 2016) (*citing* Restatement § 187 cmt. g. and holding that applying Minnesota law would be contrary to a fundamental policy of California, *i.e.* the ARL). The ARL's provisions were enacted to target, *inter alia*, the auto-renewal practices of online dating services. Pls' RJN, Exs. 1 & 2.

Bumble invites the court to apply N.Y. Gen. Oblig. Law § 5-903, a statute that Bumble claims is the analog to California' ARL.  Contrary to Bumble's assertion, this statute is no analog. It does not cover products or personal service contracts like Bumble, and it does not apply to agreements, like here, that renew within 30 days.  *See e.g.*, SAC, ¶ 63 (Mr. King's weekly subscription auto-renewed). Indeed, the statute itself provides that "[n]othing herein contained shall be construed to apply to a contract in which the automatic renewal period specified is one month or less". N.Y. Gen. Oblig. Law § 5-903 (McKinney).    Unlike California, the New York law is limited to the servicing, maintenance or repair of real or personal property. *Mobile Diagnostic Testing Servs., Inc. v. TLC Health Care Network*, 19 A.D.3d 1145, 1146 (4th Dept. 2005) (*citing* N.Y. Gen. Obl. Law, § 5–903(2)).  Nor is the statute meant to protect consumers; it "is clearly designed to protect businessmen" from inadvertent automatic renewals. *Associated Press v. Riddle*, 496 F. Supp. 119, 121 (E.D. Ark. 1980)*; see also Dime Laundry Serv., Inc. v. 230 Apartments Corp.*, 120 Misc. 2d 399, 402, 466 N.Y.S.2d 117, 120 (Sup. Ct. 1983) (same). Conversely, California's "ARL was clearly enacted to protect consumers from the oppressive use of superior bargaining power when entering into subscription or purchasing agreements." *Kissel,* 2016 WL 7647691, at *4 (internal quotations omitted). Where another state's laws offer greater or lesser protection that runs contrary to a fundamental policy of California, then California law applies. *See Walter*, 682 F. Supp. 2d at 1041.[15]  Because the New York law affords no protection to Mr. King, and runs contrary to a fundamental policy of California to protect consumers from automatically renewing

---

[15]    *Walter,* 682 F. Supp. 2d at 1041 explained that *Mediamatch* (Dkt 44 at 13:18-23) does not apply to choice-of-law provisions as Bumble suggests. "The California Supreme Court has stated that the proper standard is whether a "fundamental policy" is contravened." *Id.*(internal citations omitted.)

dating services, California law applies.[16] *See id.*

**E.      California Has A Materially Greater Interest In Ensuring That Its Citizens Are Afforded Protection Under California Law**

California has a "stronger interest" in protecting its own consumers through its chosen statutory scheme for doing so. *see Lloyd*, 2018 WL 1757609, at *6.(collecting cases). This alone gives California a greater interest in applying its laws to Plaintiffs, who are residents of California, and on behalf of classes of California purchasers. *Oestreicher v. Alienware Corp.,* 502 F. Supp. 2d 1068–69 (N.D. Cal. 2007) ("California has a materially greater interest based on the fact that California residents are invoking California consumer protection laws.")

Conversely, New York has "*no interest* in applying their consumer protection statutes to buyers who live out of state and whose purchases occur out of state*." In re Sling Media Slingbox Advert. Litig.,* 202 F. Supp. 3d 352, 357, n. 8 (S.D.N.Y. 2016) (collecting cases) (internal quotations and citations omitted) (italics added). As discussed above, it is undisputed that New York has no relationship to the transactions at issue–the deception did not occur in New York, none of the parties reside there, and the contract was neither made nor performed in New York. *Supra* at III. B. Bumble's unsupported argument that New York has a greater interest in having its law applied to the dispute does not comport with New York's narrow reading of choice-of-law provisions to not extend to extra contractual claims (*see* section, III.A., *supra*) and New York's choice of law "interest analysis" which looks at where the tort occurred to determine which state has the greater interest. *Mendy v. JP Morgan Chase & Co.,* No. 12–cv–8252 (PGG), 2014 WL 1224549, at *7 (S.D.N.Y. Mar. 23, 2014) (under New York's interest test, "the jurisdiction with the greater interest is the one in which the injury to the plaintiff is suffered.")

For all of the above reasons, California law applies to Plaintiffs' claims.

**IV.      PLAINTIFFS STATE CLAIMS UNDER CALIFORNIA LAW**

**A.      Plaintiffs State Claims Under the "Unlawful" and "Unfair" Prongs of the UCL**

The UCL creates a cause of action for business practices that are: (1) unlawful, (2) unfair, *or* (3) fraudulent. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).  It is a

---

[16]      Bumble's reliance on *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155,1169 (N.D. Cal. 2016) is unavailing. While the ARL may not create an *independent* private right of action, it expressly provides that "all available civil remedies that apply to a violation of this article may be employed."  Cal. Bus. & Prof. Code § 17604.

"broad remedial statute," and each prong provides a "separate and distinct theory of liability." *Id.*

    ***Unlawful Conduct Predicated on DSL Violations***.  As predicates for their claims under the "unlawful" prong, Plaintiffs allege Bumble violated two statutes: California's DSL, Cal. Civ. Code §1694, *et seq*. and the CLRA, Cal. Civ. Code § 1770(a)(19). SAC, ¶ 127. Violation of any provision of either of these statutes states a claim for unlawful conduct.  Bumble does not challenge the sufficiency of Plaintiffs' DSL claims (First and Third Claims). As discussed (*see* section, IV. C., *infra*), Plaintiffs state claims for an unconscionable provision in a contract under the CLRA.  "To the extent that Plaintiffs have sufficiently alleged these stand-alone causes of action, Plaintiffs have also alleged violations of the unlawful prong of the UCL."  *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.,* 2017 WL 3727318, at *23; *Moran v. Prime Healthcare Mgmt., Inc.*, 3 Cal.App.5th 1131, 1149 (2016) ("to the extent plaintiff alleges the financial liability provision of defendant's contract is unconscionable, we conclude he has sufficiently stated a cause of action under the unlawful prong of the UCL.")[17]

    ***Unlawful Conduct Predicated on ARL Violations***. Bumble spends a number of pages arguing that they are not put on notice of its violations of the ARL. Dkt 44:16-24. Bumble suggests that had *Plaintiffs* purchased directly from Apple's iTunes, they may have seen sufficient disclosures thereby contradicting *their* allegations. *Id.* at 17:13. This argument is a smokescreen. **Plaintiff King is the only named plaintiff asserting claims premised on ARL violations.** SAC, 2nd Claim; ¶¶ 137-38. Contrary to Bumble's assertion, Mr. King does indeed allege his purchase method: He specifically alleges he purchased Bumble Boost directly from Bumble (not a third party), by providing his debit card info to Bumble. SAC ¶¶ 56-57. Bumble's contention that Mr. King's claims are defeated because the "disclosures, purchase flows, and confirmation emails vary by purchase method" (Dkt. 44, at 16:26-27) is, at its core, an improper attack on the standing of absent class members, which is premature at this stage. *Slovin v. Sunrun* No. 15-CV-05340 YGR 2016 WL 593063, at *2 (N.D. Cal. Oct. 12, 2016).

---

[17]     Bumble does not challenge that Plaintiffs have standing under the UCL because they suffered economic injury as a result of Bumble's conduct of denying them refunds to which they were entitled under the DSL. *See Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 322 (2011) (lost money constitutes economic injury under the UCL).  Because their claims are predicated on a non-fraud-based wrongs, Plaintiffs need only show that, but for the alleged wrongdoing, they would not have been harmed. *See Ingalls v. Spotify USA, Inc.,* No. C 16-03533 WHA, 2017 WL 3021037, at *4 (N.D. Cal. July 17, 2017).

As a predicate for his claims under the "unlawful" prong of the UCL, Mr. King alleges Bumble violated the ARL in three distinct ways.  An allegation that Bumble violated any one of these are sufficient to state a claim under the "unlawful" prong of the UCL. *Lopez v. Stages of Beauty*, LLC, 307 F. Supp. 3d 1058, 1072 (S.D. Cal. 2018) ("…it is plausible that Defendant's failure to provide the complete cancellation policy (namely, the timeframe in which a subscriber must cancel), violates the ARL's requirement that "[t]he description of the cancellation policy" be disclosed in a clear and conspicuous manner."). Here, Bumble violated all of these requirements.

*First*, Mr. King specifically alleges facts, namely that the "screens and buttons presented to him through the Bumble app prior to his purchase did not state that the subscription would continue until he cancelled, did not describe the cancellation policy that applied to his purchase, did not state the recurring charges that would be charged to his debit card, and did not state that the term was continuous" in violation of Cal. Bus. & Prof. Code § 17602(a)(1).  SAC ¶ 59.

*Second*, Mr. King alleges that Bumble failed to obtain his affirmative consent for automatic renewal as required by Section 17602(a)(2). *Id*. at ¶¶ 60.  Mr. King does not merely challenge the sufficiency of disclosures but, rather, **a lack of disclosures and a failure to obtain his affirmative consent.**  SAC, ¶ 59-62.  Mr. King alleges that at no point was he required to examine or affirmatively accept Bumble's Terms. SAC, ¶ 66. Had the required disclosures been presented to him, he would have been able to read the auto renewal terms and would not have subscribed or he would have cancelled prior to expiration of the initial subscription period. SAC, ¶ 68.

*Third*, Mr. King alleges that the acknowledgement email he received from Bumble upon purchasing a Bumble Boost subscription directly from Bumble had none of the information required by the Cal. Bus. & Prof. Code § 17602(a)(3): it contains neither the automatic renewal terms, the cancellation policy, nor information regarding how to cancel in a manner capable of being retained by the consumer. SAC at ¶¶ 61-62.  The email also failed to provide a toll-free telephone number, electronic mail address, or postal address, or another cost-effective, timely, and easy-to-use mechanism for cancellation of his membership, in violation of Cal. Bus. & Prof. Code § 17602(b). *Id*. at ¶ 62. Mr. King attached the email to the SAC and alleged the specific content of emails between him and Bumble. *Id*. at ¶¶ 61-65. Mr. King also alleges that he did not receive another acknowledgement email from Bumble or any other entity, such as Apple or Google. *Id*. at ¶ 65.

Consistent with *Cahill v. Liberty Mutual Ins. Co.*, 80 F. 3d 336, 337-338 (9th Cir. 1996), these allegations must be taken as true and construed in the light most favorable to Mr. King. These allegations exceed Rule 8's minimal standards and are sufficient to state claims under the UCL for multiple violations of the ARL.  *See Price v. Synapse Grp., Inc.*, No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *7 (S.D. Cal. July 24, 2017) (allegations that "the automatic renewal terms were not presented in a clear and conspicuous manner" that plaintiff "would not have ordered the magazine subscriptions if the renewal terms had been presented in a clear and conspicuous manner" and that she incurred credit card charges were sufficient to state UCL claim);  *Ingalls*, 2017 WL 3021037, at *2 (summary judgment denied on claims alleging three distinct ARL violations).

Still, Mr. King alleges more: the cancellation policy **and** the cancellation mechanism were never disclosed to him– neither partially nor fully – until he specifically asked Bumble how to cancel the subscription after Bumble had automatically renewed his subscription and continued to charge his debit card without his consent or knowledge. SAC, ¶ 59-66; *see Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 677 (9th Cir. 2018) (unpublished) (plaintiff sufficiently alleged unlawful conduct under the UCL where he alleged defendant violated the ARL by charging him without first providing information on how to cancel the subscription).  In response, Bumble denied Mr. King's refund request and informed him "that his **Boost subscription must be cancelled through the Bumble App – not through a third party such as Google or Apple**." SAC, ¶ 65 (emphasis added).  This is contrary to Bumble's previous mistaken assertion that the cancellation mechanisms are not "unique to Bumble" because they **"are *all* created by Apple and Google and are standard for subscription-based apps on these platforms."** Dkt. 23 at 16: 18-19 (emphasis in original). If Bumble does not know the mechanism by which consumers are to cancel a subscription purchased directly from Bumble (as opposed to purchases via a third party like Apple), how should consumers like Mr. King reasonably know? This is precisely the point of Mr. King's claims.[18]

---

[18]     Despite Bumble's premature protestations (Dkt. 44 at 24, n 6.), the "unconditional gift provision" of the ARL (Cal. Bus. & Prof. Code § 17603) which applies to any "goods, wares, merchandise, or products," certainly applies to products like Bumble Boost. The legislative history makes clear that the ARL was meant in part to target "online dating services, such as Match.com." Plaintiffs' RJN, Exs. 1 & 2.  "Products" are "something produced" or "something (such as a service), that is marketed or sold as a commodity." Merriam-Webster's Collegiate Dict. (11th ed. 2008) p. 991. Indeed, Plaintiffs use the term product interchangeably with services in the SAC in reference to Bumble Boost. *See e.g.* SAC ¶ 52. Consistent with the above, Bumble itself refers to

1    *Unfair Conduct*.  As explained above, the DSL and ARL each embody fundamental public

2    policy of this State and the Legislature's clear intent to regulate online dating services and curb the

3    practices complained of in this case.  *See* section, III.D, *supra*.  Contrary to Bumble's assertions,

4    Plaintiffs' allegations of violations of the DSL and ARL sufficiently allege harm that is tethered to

5    specific statutory provisions, or conduct that is immoral, unethical, oppressive, unscrupulous or

6    injurious to consumers.  Dkt. 44 at 25:5-10.  As these are factual determinations, the Court cannot

7    find, at this stage, that Plaintiffs' claims for unfairness are precluded as a matter of law. *See In re*

8    *iPhone Application Litig., In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal.

9    2012); W*eeks v. Google LLC*, No. 18-CV-00801 NC, 2018 WL 3933398, at *14 (N.D. Cal. Aug.

10   16, 2018) ("Court is unwilling, at a motion to dismiss, to find that Google's actions were not at least

11   oppressive or substantial injurious to plaintiffs, without justification.")

12   **B.**    **Plaintiff King States Fraudulent Omission Claims Under The UCL And The CLRA**

13          **1.**    **Bumble's Failure to Disclose the Auto-Renewal Terms Is Actionable Under the UCL and CLRA**

14          Bumble argues that Plaintiff King's fraud claims under the UCL and the CLRA cannot stand

15   because he has not specifically identified any misrepresentation that he relied upon. *See* Dkt. 44 at

16   p. 25-27. Bumble ignores Plaintiffs' factual allegations as well as well-settled law recognizing

17   fraudulent omissions as actionable under these statutes. "Omissions may be the basis of claims

18   under California consumer protections laws" when there is "*an omission of a fact the defendant was*

19   *obliged to disclose*." *Hodsdon v. Mars, Inc*., 891 F.3d 857, 861 (9th Cir. 2018) (emphasis in

20   original) (*quoting Daugherty v. Am. Honda Motor Co.*, 144 Cal.App.4th 824 (2006)).

21          Mr. King alleges that the ARL imposed on Bumble a duty to disclose the automatic renewal

22   terms and cancellation policy and to obtain his affirmative consent prior to his subscription

23   purchase, but it failed to do so.  These omissions of fact are actionable under both the UCL's fraud

24   prong and the CLRA's express prohibition on "[r]epresenting that a transaction confers or involves

25   rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." SAC,

26   ¶ 109; Cal. Civ. Code § 1770(a)(14).19. *See Outboard Marine Corp. v Superior Court*, 52

27   Bumble Boost, *i.e*., a consumer's ability to extend matches, as an "in-app product." *See* SAC, Ex. A at §5.

28   [19]    Plaintiff King alleges that Bumble did not have the legal right to charge subscription fees because it was not in compliance with the ARL but did so anyway.  SAC, ¶ 109-110.

19

Cal.App.3d 30, 37 (1975) (in the CLRA context, "[f]raud or deceit may consist of the suppression of a fact by one who is bound to disclose it."). "[F]ailures to disclose material facts are actionable under the CLRA." *Gutierrez v. Carmax Auto Superstores Ca.,* 19 Cal.App.5th 1234, 1258 (2018), *as modified on denial of reh'g* (Feb. 22, 2018).

Bumble's omissions of fact were material to Mr. King's and ARL Class Member's purchasing decisions.  Materiality is judged from the perspective of a "reasonable consumer" *Ehrlich v. BMW of North America, LLC*, 801 F. Supp.2d 908, 916 (C.D. Cal. 2010)), and it is generally a question of fact, not appropriate for a motion to dismiss. *In re Tobacco II Cases,* 46 Cal.4th 298, 327 (2009); *Kwikset*, 51 Cal.4th at 333. Mr. King alleges that Bumble's practices are likely to deceive the public, and in fact deceived him and ARL Class Members. SAC, ¶ 136-37. Moreover, by enacting the ARL, and prohibiting the alleged practices "the legislature's decision to prohibit a particular misleading advertising practice is evidence that the legislature has deemed that the practice constitutes a "material" misrepresentation, and courts must defer to that determination." *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1107 (9th Cir. 2013). Bumble's conduct of omitting information to induce consumers to enter into subscriptions that will renew automatically, is therefore a fraudulent business practice.

## 2.   Mr. King Alleges Reliance and Injury Under the CLRA and UCL

Bumble's contention that Mr. King fails to plead injury and reliance lacks merit. The allegation that Bumble's wrongful conduct resulted in multiple charges to his debit card is sufficient "to state a loss of money or property sufficient to satisfy economic injury under the UCL, and by extension the "any damage" requirement of the CLRA." SAC, ¶ 63.  *Price v. Synapse Grp., Inc.*, No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *4 (S.D. Cal. July 24, 2017) (allegation that fraudulent conduct of failing to disclose auto-renewal terms resulted in charges to plaintiffs' credit cards satisfied injury under UCL and CLRA); *Ingalls,* 2017 WL 3021037, at *3 (payment to Spotify for three months established injury in fact under UCL).

Mr. King also pleads causation by alleging actual reliance on Bumble's material omissions. SAC, ¶ 111, 137 (Mr. King relied on Bumble's material omission); *see Tobacco II*, 46 Cal.4th at 326-27 (noting "reliance is the causal mechanism of fraud"). "To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's

injury-producing conduct." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). "A plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision." *Id*. at 1225 (*citing Tobacco II,* 46 Cal.4th at 326). A plaintiff may do so by simply alleging "that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Mirkin v. Wasserman,* 5 Cal.4th 1082, 1093 (1993).

That is precisely what Mr. King alleges here. At the time he subscribed, Mr. King believed he was purchasing a one-week subscription, and that he would not be charged again.  SAC, ¶¶ 56-58.  Upon the expiration of the one-week subscription, he no longer used nor wanted the service, but Bumble automatically charged his debit card five more times.  SAC, ¶ 63.  "Had Bumble complied with the Automatic Renewal Law, Plaintiff King would have been able to read the auto renewal terms, and he would have not subscribed to Boost or he would have cancelled his subscription earlier, *i.e*., prior to the expiration of the initial subscription period." SAC, ¶ 68. "These allegations – which emphasize the role of Defendants' alleged misconduct in causing Plaintiffs' injury – suffice to plead reliance." *Price v. Synapse Grp., Inc*., No. 16-CV-01524-BAS-BLM, 2017 WL 3131700, at *5 (S.D. Cal. July 24, 2017) (allegation that "if they had known that [d]efendants were going to enroll them in automatic subscription programs, they would not have ordered magazines in the first place" sufficient for reliance); *In re Adobe Sys., Inc. Privacy Litig*., 66 F. Supp. 3d 1197, 1231 (N.D. Cal. 2014) (allegation that plaintiffs would not have subscribed had they known of Adobe's unsound security practices was sufficient to pled reliance and injury under UCL fraud prong). Thus, Mr. King states claims under the fraudulent prong of the UCL and subdivision (a)(14) of the CLRA.

### 3.    Plaintiff King's Fraudulent Omission Allegations Satisfy Rule 9(b)

Rule 9(b)'s heightened pleading standard applies only to Plaintiff King's *fraud claims* (*i.e*, claims under CLRA, subd. (a)(14) and under the fraudulent prong of the UCL.  To satisfy Rule 9(b), Plaintiff must allege "the who, what, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted). However, in the context of a fraudulent omission claim, a plaintiff cannot plead a specific time or place of a failure to act and so may plead fraud in alternative ways. *Washington v. Baenziger*, 673 F.Supp. 1478, 1482 (N.D. Cal. 1987).  Here, Mr. King satisfies 9(b) by alleging who (Bumble, SAC, ¶ 57),

21

1  what (automatic renewal terms and cancellation policy, SAC, ¶ 59), where (on the "screens and

2  buttons presented to Plaintiff King" on his Bumble App and on the acknowledgement email, a copy

3  of which is attached to his complaint, SAC, ¶¶ 59, 62); how (had Bumble complied with the ARL's

4  disclosure requirements, he would not have purchased Boost or would have cancelled sooner, SAC,

5  ¶ 68); and when (prior to his purchase on September 6, 2018, SAC, ¶ 59).

### C.   Plaintiffs State Non-Fraud Claims under the CLRA Based on Bumble's Insertion of an Unconscionable Provision in its Dating Service Contracts

7  Plaintiffs allege the Bumble's No-Refund Provision in its Terms violates subdivision (a)(19)

8  of the CLRA, which makes it unlawful for a business to insert an unconscionable provision in a

9  contract. To determine whether a provision is unconscionable, a sliding scale is applied, so that the

10  more substantively oppressive the contract term, the less evidence of procedural unconscionability

11  is required to find it unenforceable, and vice versa. *Id.* This is a factual issue, which turns on the

12  provision's "commercial setting, purpose, and effect," not appropriate for a motion to dismiss. *See*

13  Civ. Code, § 1670.5(b); *Perdue v. Crocker Nat'l Bank,* 38 Cal.3d 913, 928–29 (1985) (parties

14  should be afforded a reasonable opportunity to present evidence as to the commercial setting,

15  purpose, and effect of the signature card and the NSF charge); *In re Yahoo! Inc. Customer Data*

16  *Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1136 (N.D. Cal. 2018) ("Although unconscionability is

17  ultimately a question of law, "numerous factual inquiries bear upon that question..").

18  ***Procedurally Unconscionable.***  A contract is procedurally unconscionable where it was

19  obtained through "surprise" or "oppression" – Plaintiffs allege both. *See Lhotka v. Geographic*

20  *Expeditions, Inc.*, 181 Cal.App.4th 816, 821 & 824 (2010).  "Oppression occurs where a contract

21  involves lack of negotiation and meaningful choice." *Id.* at 821.  Plaintiffs sufficiently allege

22  "oppression" because the Provision is in a contract of adhesion, and Plaintiffs had no opportunity to

23  bargain with Bumble and nor meaningful choice in entering into the agreement. SAC, ¶ 116; *see*

24  *Shroyer v. New Cingular Wireless Services, Inc*., 498 F.3d 976, 981 (9th Cir .2007) (procedural

25  unconscionability generally takes the form of a standardized contract of adhesion drafted by the

   party of superior bargaining strength and imposed on the other.)

26  "Surprise" occurs where an "unconscionable provision is hidden within prolix printed text.

27  *Lhotka* at 821.  Plaintiffs allege surprise because the Provision was buried in a lengthy terms of

28  service drafted by Bumble and available to users via a tiny hyperlink within the App. SAC, ¶119.

22

1 To read the Terms, the user must first notice and then choose to click on the hyperlink and be

2 redirected to a Bumble webpage containing a copy of the Terms. *Id.* Further, Plaintiffs were never

3 required to affirmatively accept nor read the Terms. *Id.*[20] These allegations are sufficient.

4 *Tompkins v. 23andMe, Inc*., No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *14 (N.D. Cal. June

5 25, 2014), *aff'd,* 840 F.3d 1016 (9th Cir. 2016) (provision procedurally unconscionable; website

6 provides minimal notice of the terms and purports to bind any user who visits the website or makes

7 a purchase, "though the website does not require those users to acknowledge" the terms.)

8     ***Substantively Unconscionable***. Bumble suggests that substantive unconscionability requires

9 that the Provision be so unfair that it "shock the conscience," suggesting that this is a higher

10 standard than other formulations of the rule, such as "unfairly one-sided," "unduly oppressive,"

11 "overly-harsh or one-sided" and "unduly oppressive." *See* Dkt. 44 at 28: 12.  It is not.  *Sanchez v.*

12 *Valencia Holding Co., LLC*, 61 Cal. 4th 899, 913 (2015) ("We see no reason to disturb our

13 precedents, and we reject the view that "shock the conscience" is a higher standard.").  "As with

14 any contract, the unconscionability inquiry requires the court to examine the totality of the

15 agreement's substantive terms as well as the circumstances of its formation to determine whether

16 the overall bargain was unreasonably one-sided," which is a "fact-specific inquiry."  *Sonic-*

17 *Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1146 (2013). The Provision attempts to

18 impermissibly alter fundamental duties imposed by the California DSL in direct violation of policy

19 embodied in the law, which allows consumers to be released from the transaction and obtain their

20 money back. *See* section, III.D, *supra*. For these reasons, Plaintiffs sufficiently allege that the

21 Provision is oppressive and unreasonably one-sided in favor of Bumble.[21]

22     Bumble ignores the procedural and substantive requirements of the DSL entirely, and

23 inserted the unlawful Provision which deprives consumers of their non-waivable rights and

---

24 [20]     Even Bumble's lawyer who drafted the Terms "acknowledged that individuals rarely if ever read the terms and conditions of any app –that the Bumble terms' real audience (apart from courts) are journalists who might peruse them at the app's launch". David A. Hoffman, *Relational Contracts of Adhesion*, 85 U. Chi. L. Rev. 1395, 1440–41 (2018). Despite this, Bumble chose to not put consumers on notice of their terms.

25 [21]     Bumble's reliance on *Herskowitz v. Apple Inc.,* 940 F. Supp. 2d 1131, 1144 (N.D. Cal. 2013) is misplaced.  In *Apple,* the court found a no-refund policy was not so overly harsh or one-sided because "a clear contractual provision alerting customers that they may not download a song twice would appear to eliminate any element of surprise or oppression."  In contrast, Bumble's provision is contrary to a non-waivable statutory requirement.

23

remedies.  *See Sonic-Calabasas A, Inc*., 57 Cal.4th at 1145 (the unconscionability doctrine is concerned with "terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms . . . .").

Because this CLRA claim does not sound in fraud, Rule 9(b)'s heightened pleading requirement does not apply. *See Weeks v. Google LLC*, No. 18-CV-00801 NC, 2018 WL 3933398, at *12 (N.D. Cal. Aug. 16, 2018) ("Plaintiffs' CLRA allegations sound in fraud, except for under § 1770(a)(19)").  Plaintiffs allege that when they cancelled their contracts and demanded their monies returned, Bumble enforced the Terms and refused to return the money. SAC, ¶¶ 64-65, 70, 78-83, 87-92. This suffices to allege that Plaintiffs suffered economic injury as a result of Bumble's conduct. *See Meyer v. Sprint Spectrum L.P*., 45 Cal.4th 634, 640 (2009).

**D.      Plaintiffs Sufficiently Allege Common Counts For Money Had And Received**

Bumble's two challenges to Plaintiffs' common counts for money had and received fail.

First, Bumble argues that the DSL does not apply because Plaintiffs fail "to show that the Terms are not binding on them" as New York law applies. Dkt. 44 at 29:3-7. This is incorrect. *See* sections I. and II., *supra*.  Plaintiffs allege that because Bumble's Terms do not comply with the DSL, the contracts are void and unenforceable, and they are entitled to full refunds. SAC, ¶¶ 35, 71, 72, 82, 91,143; Cal. Civ. Code § 1694.4(a).  In turn, because Plaintiffs allege they paid money pursuant to void and unenforceable dating service contracts, they are entitled to full restitution under the alternative money had and received theory. *See, e.g., Schultz v. Harney*, 27 Cal.App.4th 1611 (1994) (holding cause of action for money had and received available where plaintiff paid money to defendant pursuant to contract which is void for illegality); *Estrada v. Alvarez*, 38 C.2d 386, 390 (1952) (right to recover money paid under illegal contract under common count of money had and received). Therefore, Plaintiffs sufficiently allege a claim for money had and received.

Second, Bumble argues that "Plaintiffs have failed to allege that the money they paid was not used for their benefit, as this money was payment for services to which they were given access." Dkt 44, p. 29: 22-23. Bumble misses the point. Bumble cannot retain *any* benefits from its illegal contracts. As the California court of appeal in *Duffens* recognized, the Dating Services Law—which expressly provides that a dating service contract that is not made in compliance with its provisions is void and unenforceable—is among those "specialized types of contracts that must meet certain

statutory standards in order to be valid." *Duffens v. Valenti,* 161 Cal.App.4th 434, 454-55 (2008). "A contract made otherwise than as so prescribed is not binding or obligatory as a contract, and the doctrine that there is an implied liability arising from the receipt of benefits has no application." *Id.* at 455. Accordingly, California does not allow the dating service to recover under any theory of implied liability pursuant to a non-compliant, and therefore, void dating services contract. *Hadida v. King*, No. 2:11-CV-8648-SVW-VBK, 2012 WL 13012701, at *3 (C.D. Cal. Feb. 2, 2012). Bumble simply has no claim to Plaintiffs' monies.

Case law relied upon by Bumble is not to the contrary as they do not address void and unenforceable contracts. *Mahoney v. Fid. Nat. Title Co.*, No. SACV 08-0561 AG CWX, 2008 WL 4286934, at *4 (C.D. Cal. Sept. 15, 2008) ("there [was] no allegation that Plaintiff's contract with Defendant Fidelity was void."); *Buckley v. Align Tech., Inc.*, No. 5:13-CV-02812-EJD, 2015 WL 5698751, at *4 (N.D. Cal. Sept. 29, 2015) (Court did not address allegation of an illegal contract.).

For money had and received, all the plaintiff "must show [is] that a definite sum, to which she is justly entitled, has been received by defendant." *Bastanchury v. Times-Mirror Co.*, 68 Cal.App.2d 217, 236 (1945). Plaintiffs did that and alleged that they paid a definite sum to which they are justly entitled (pursuant to a void contract) and that Bumble received the monies and did not return the monies. SAC ¶¶ 148-150. Bumble does not challenge that Mr. King and the ARL Class state a claim for money had and received based on Bumble's ARL violations. For this additional reason, the Court should deny Bumble's motion to dismiss the common count.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' request that the motion be denied in its entirety. Should the Court consider granting the Motion, Plaintiffs' request that leave to amend be granted. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (if a dismissal is granted under Rule 12(b)(6), leave to amend should be ordered unless "the pleading could not possibly be cured by the allegation of other facts") (citations omitted).

Dated: May 9, 2019                                        Respectfully submitted,


By:   /s/David C. Parisi
David C. Parisi

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
Santa Monica, CA   90405
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (646) 509-3913
Facsimile:   (877) 501-3346

*Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, Elena Weinberger,
individually and on behalf of a class of similarly
situated individuals*

Opposition to Motion to Dismiss