UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK KING, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>BUMBLE TRADING, INC., et al.,<br>　　　　Defendants. | Case No.18-cv-06868-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 44 |

Before the Court is defendants Bumble Trading, Inc. and Bumble Holding Ltd.'s motion to dismiss plaintiffs Nick King Jr., Deena Fischer, and Elena Weinberger's claims under California's Dating Service Law and related consumer protection statutes. The central question presented is whether the choice of law provision in Bumble's terms of service applies to Plaintiffs' claims. *See* Dkt. No. 44. Because Plaintiffs allege violations of the Dating Service Law and the Automatic Renewal Law, the Court must consider whether those statutes represent fundamental public policies of California. The Court concludes that the Dating Service Law does not, but the Automatic Renewal Law does. Accordingly, the Court DISMISSES without leave to amend Plaintiffs' claims relying upon the Dating Service Law. Plaintiffs' claims relating to the Automatic Renewal Law survive.

## I. Background

### A. Allegations in the Complaint

Plaintiffs bring a putative class action arising out of Bumble's alleged business practices. *See* Dkt. No. 43 ("SAC"). Bumble owns and operates mobile software applications that offer dating services (the "Bumble App"). *Id*. ¶ 1. Bumble also offers a premium, paid service through the Bumble App called "Bumble Boost." *Id.* ¶ 23. Bumble Boost offers weekly and monthly subscriptions allowing users to "view which other users have indicated interest, to extend expiring connections, and to revive expired ones." *See* Dkt. No. 44 at 10.

Plaintiffs downloaded and installed the Bumble App and purchased Bumble Boost. SAC ¶¶ 56, 75, 85. Fischer and Weinberger requested refunds following their purchases—Fischer because of technical issues with her account and Weinberger because she no longer wanted the Bumble App—but both were denied. *Id*. ¶¶ 78–79, 87–88. King was similarly denied a refund after he informed Bumble that he had not authorized five auto-renewing weekly payments for Bumble Boost. *Id*. ¶¶ 64–65.

Plaintiffs allege that Bumble does not notify consumers of their right to cancel their dating service contracts and instead maintains that all purchases are non-refundable. *Id*. ¶¶ 31, 33.

King further alleges that Bumble failed to disclose the automatic renewal terms of his Bumble Boost subscription, gain his affirmative consent to automatic renewal, and provide a statutorily-required acknowledgement. SAC ¶¶ 62, 110–13. He claims that Bumble's acknowledgement email failed to provide him with the automatic renewal or continuous service offer terms and cancellation policy, nor did it provide information regarding how to cancel. *Id*. ¶ 62; *see also id.* Ex. B. King states that after the one-week subscription expired, he no longer used, nor did he want, Bumble Boost, but Bumble automatically renewed the subscription and continued to charge his debit card $8.99 for five weeks. *Id*. ¶ 63. King maintains that Bumble denied his refund request for these allegedly unauthorized charges. *Id*. ¶ 65.

2

Before using the Bumble App, Plaintiffs must agree to Bumble's Terms of Service ("Terms"). *See id.* ¶ 3. Those Terms include a choice of law provision selecting New York law:

> Your access to the App, Our Content, and any Member Content, as well as these Terms are governed and interpreted by the laws of the State of New York, other than such laws, rules, regulations and case law that would result in the application of the laws of a jurisdiction other than the State of New York.

Dkt. No. 43-1 § 12 ("Terms").

The Terms also require Plaintiffs to agree to certain limits on express or implied warranties:

> SHOULD APPLICABLE LAW NOT PERMIT THE FOREGOING EXCLUSION OF EXPRESS OR IMPLIED WARRANTIES, THEN WE GRANT THE MINIMUM EXPRESS OR IMPLIED WARRANTY REQUIRED BY APPLICABLE LAW.

*Id.* § 7. Bumble also requires its users to "comply with all applicable laws, including without limitation, privacy laws, intellectual property laws, anti-spam laws, equal opportunity laws and regulatory requirements[.]" *Id*. § 3.

### B. Procedural Background

On November 13, 2018, Plaintiffs filed their complaint, alleging claims under: (1) California's Dating Service Law, Cal. Civ. Code §§ 1694 *et seq.*; (2) Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq*., for violation of the Automatic Renewal Law ("Renewal Law"), Cal. Bus. & Prof. Code § 17602; (3) CLRA for violation of the Dating Service Law; (4) Unfair Competition Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (5) declaratory judgment; and (6) money had and received. *See* Dkt. No. 1 ¶¶ 105–51.

Plaintiffs later filed a second amended complaint alleging the same claims. *See* Dkt. No. 43. Bumble now moves to dismiss. *See* Dkt. No. 44. The motion is fully briefed

3

1 and the Court held a hearing on June 5, 2019. *See* Dkt. Nos. 46, 49, 51. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 11, 21.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Discussion

Bumble seeks to enforce the choice of law provision in its Terms and moves to dismiss Plaintiffs' California law claims. Plaintiffs argue that the choice of law provision is unenforceable. First, they argue, the choice of law provision is ambiguous. Second, Plaintiffs contend that their claims fall outside the scope of the choice of law provision. Finally, Plaintiffs argue that the choice of law provision is unenforceable under California's choice-of-law framework. The Court addresses each argument in turn before deciding whether Plaintiffs have stated a claim.

### A. Choice of Law

Federal courts sitting in diversity apply the laws of the forum state when analyzing choice of law provisions. *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1153 (9th Cir. 2015). Plaintiffs brought suit in the Northern District of California, so California law regarding choice of law provisions applies.

4

California has a strong public policy favoring enforcement of choice of law provisions. *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 465 (1992). California courts analyze choice of law provisions using the framework set out in Restatement (Second) of Conflict of Laws § 187. *Nedlloyd*, 3 Cal. 4th at 464.

> [T]he proper approach . . . is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, that is the end of the inquiry, and the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue . . . ." If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

*Id.* (internal citations omitted).

Before proceeding to the *Nedlloyd* test, however, the Court must first determine whether the Terms even apply to Plaintiffs' claims. To that end, Plaintiffs contend that the Terms are ambiguous and their claims fall outside the ambit of the choice of law provision.

### 1. Ambiguity

As noted above, Plaintiffs first argue that the Court should not enforce the choice of law provision because it is ambiguous and arguably incorporates California law. *See* Dkt. No 46 at 16. According to Plaintiffs, the Terms' repeated references to "applicable law" throughout the contract suggests that the choice of law provision is unclear as to which states' laws actually govern the Terms. The Court disagrees.

5

Plaintiffs rely solely on *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401 (9th Cir. 1992). In *Sutter Homes*, the contract at issue repeatedly invoked "applicable law" throughout. *See* 971 F.2d at 406. However, unlike the Terms here, the use of the phrase "applicable law" in *Sutter* specifically referenced local and state laws and regulations. *See id.* ("Distributor shall conduct its efforts at all times in strict compliance with all applicable *local*, state and federal laws and regulations . . . ") (emphasis added). The *Sutter* contract required its parties to choose foreign law, "[e]xcept as otherwise required by applicable law." *Id.* at 406. Throughout the contract, however, the *Sutter* contract explicitly incorporated local law. *Id.* For example, the *Sutter* contract required the Arizona wine distributor to "conduct its efforts at all times in strict compliance with all applicable local, state and federal laws and regulations." *Id.* at 404, 406. Thus, the *Sutter* contract's choice of law provision was at best ambiguous because the contract was internally inconsistent—the parties could not both choose for the exclusive application of foreign law to their conduct yet also require compliance with local, applicable law. *See id.*

Unlike *Sutter*, none of the three references to "applicable law" in Bumble's Terms allude to local or state laws or regulations. *See* Terms §§ 3, 7. The Term's use of "applicable law" do not specify what jurisdiction's laws apply. *See id.* Rather, the Terms explicitly direct the parties to apply New York law. *See id.* § 12. Thus, New York law is the "applicable law." In short, this case is distinguishable from *Sutter* and Bumble's Terms unambiguously require the parties to choose New York law.

**2. Scope**

Next, the Court must determine whether Plaintiffs' claims fall within the scope of the choice of law provision. When determining a choice of law provision's scope, California applies the law of the state facially designated by the provision. *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010); *see also Wash. Mut. Bank*, 24 Cal. 4th at 916 n.3 (noting that scope "is a matter that ordinarily should be determined under the law designated therein . . . ") (citing *Nedlloyd*, 3 Cal. 4th 469 n.7). Therefore, the Court examines the scope of Bumble's provision under New York law. *See* Terms § 12.

6

"New York differs from California in its approach to determining the scope of a choice-of-law clause." *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1036 (N.D. Cal. 2012). New York construes the scope of choice of law provisions narrowly. *See Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 334 (2d Cir. 2005). Where California law implies broad coverage of claims related to a contract, New York law requires express terms capacious enough to encompass the alleged claims. *Compare Nedlloyd*, 3 Cal. 4th at 470 (holding choice of law provisions "encompass all causes of action arising from or related to that agreement") *with In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 358 (S.D.N.Y. 2016) (stating that "the express language of the provision must be sufficiently broad as to encompass the entire relationship between the contracting parties") (citing *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996)) (quotations omitted).

In particular, New York courts generally find that provisions broadly stating that a contract is "governed by" or "in accordance with" New York law is insufficient to capture extra-contractual claims. *See, e.g. McBeth v. Porges*, 171 F. Supp. 3d 216, 224 (S.D.N.Y. 2016); *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17-cv-8987-GHW, 2019 WL 1244294, at *16 (S.D.N.Y. Mar. 18, 2019). Specific wording is not, however, dispositive. *See, e.g.*, *Capital Z Fin. Servs. Fund II, L.P. v. Health Net, Inc.*, 43 A.D.3d 100, 109 (2007) (finding "shall *govern* all issues concerning the validity of this Agreement, the construction of its terms and the interpretation and enforcement of the rights and duties of the parties" to "fall squarely within the broad terminology used in the choice of law provisions") (emphasis added); *Trainum v. Rockwell Collins, Inc.*, No. 16-cv-7005-JSR, 2017 WL 2377988, at *18 (S.D.N.Y. May 31, 2017) (finding "for the purposes of any Action *arising out of* or relating to the Transaction [and] this Agreement" insufficient) (emphasis added). Ultimately, whether a provision encompasses a plaintiff's claims depends on whether they fall within the provision's express wording. *See Chigirinskiy v. Panchenkova*, No. 14-cv-4410-JPO, 2015 WL 1454646, at *6 (S.D.N.Y. Mar. 31, 2015) (finding that Russian law applied given express language that deeds "may

7

be terminated in accordance with the applicable laws of the Russian Federation").

Here, Bumble's choice of law provision encompasses Plaintiffs' claims. As recounted above, the choice of law provision states: "Your access to the App, Our Content, and any Member Content, as well as these Terms are governed and interpreted by the laws of the State of New York . . . ." Terms § 12. Though the Terms use a variant of the unfavored "governed by" phrasing, the Terms expressly include claims related to "access [and] Content . . . ." *Id*.

Thus, Plaintiffs' reliance on *JMP* and *Sarandi v. Breu*, No. 08-cv-02118-SBA, 2009 WL 2871049 (N.D. Cal. Sept. 2, 2009) is not persuasive. Both cases involved terms with only the generic "governed by and construed in accordance with" phrasing with no other qualifiers. *See JMP*, 880 F. Supp. 2d at 1033–36; *Sarandi*, 2009 WL 2871049 at *4–5. Conversely, Bumble's specifically target its users' "access to the App . . . Content, and any Member Content . . . ." Terms § 12. Thus, Bumble's added language distinguishes its terms from the narrower choice of law provisions cited by Plaintiffs. *See, e.g.*, *Flatiron*, 2019 WL 1244294, at *6 ("shall in all respects be interpreted, enforced and governed under the laws of"); *McBeth*, 171 F. Supp. 3d at 223 ("shall govern the validity of this Agreement, the construction of its terms and interpretation of the rights and duties of the Members"); *E*Trade Fin. Corp. v. Deutsche Bank AG*, 420 F. Supp. 2d 273, 290 (S.D.N.Y. 2006) ("This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York").

Rather, Bumble's terms are more analogous to choice of law provisions covering "all issues." *See, e.g.*, *Capital Z*, 43 A.D.3d at 103 (2007) ("shall govern all issues concerning the validity of this Agreement, the construction of its terms and the interpretation and enforcement of the rights and duties of the parties"). In *Capital Z*, for example, the Court found that "the challenged claims here fall squarely within the broad terminology used in the choice of law provisions." *See id*. at 109. Here, Plaintiffs' claims directly challenge Bumble's Terms and their "access to the App [and] Content . . . ." Terms § 12. Their Dating Service Law claim, for example, seeks to void the Terms

because it does not contain statutorily required language. And Plaintiffs' UCL and CLRA claims rely in part on alleged violations of the Renewal Law, which requires subscription services to contain certain termination and notice provisions. In other words, the crux of Plaintiffs' claims are purported deficiencies in Bumble's Terms.

Thus, the additional language included in Bumble's Terms distinguish them from the narrower provisions cited by Plaintiffs. As such, the Court finds that the choice of law provision encompasses Plaintiffs' claims.

### 3. *Nedlloyd* Framework

The Court now proceeds to apply California's choice of law framework. As explained above, California courts apply a three-part test set out in Restatement (Second) of Conflict of Laws § 187. *Nedlloyd*, 3 Cal. 4th at 464–67.

#### a. Substantial Relationship or Reasonable Basis

Under the first step of the *Nedlloyd* analysis, Bumble must demonstrate either a "substantial relationship" to New York or a "reasonable basis" for choosing New York law. *See Nedlloyd*, 3 Cal. 4th at 466 (citing Rest., § 187(2)). The "reasonable basis" test is a "lower standard" than "substantial relationship." *See BASF Corp. v. Cesare's Collision Repair & Towing, Inc.*, 364 F. Supp. 3d 1115, 1120 (E.D. Cal. 2019) (quoting *J.P. Morgan Chase Bank, N.A. v. Shea Mortg.*, Inc., No. 13-cv-9128 PSG, 2014 WL 12696354, at *3 (C.D. Cal. Nov. 14, 2014)). Even under the "reasonable basis" standard, however, the choice of a specific forum's law cannot simply be arbitrary. *See Missaghi v. Coca-Cola Co.*, No. CV 12-07472 SJO, 2013 WL 12114765, at *3 (C.D. Cal. Jan. 2, 2013) (finding no reasonable basis when "[n]either the [agreement] nor the parties' briefs indicate why Michigan was chosen"). Thus, a party purporting the creation of a national standard must specify a reason why it selected the specific state identified in its provision. *See 1-800-Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 505 (2010) (finding "designation of Washington law . . . given that state's proximity to Got Junk's headquarters in Vancouver, Canada" reasonable); *but see Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1195

9

(S.D. Cal. 2013) (concluding that pursuit of a national standard established a reasonable basis based solely on defendant's "wide reach across the United States").

The Bumble App has 40 million or more users spread across multiple jurisdictions. *See* SAC ¶ 21; Dkt. No 44 at 9. Given the wide spread of Bumble App users, Bumble, like the defendants in *1-800-Got Junk* and *Cayanan*, has an interest in identifying a single body of law to govern its users in different states. *See 1-800-Got Junk*, 189 Cal. App. 4th at 505; *Cayanan*, 928 F. Supp. 2d at 1195. Bumble also has other "identifiable connection[s]" to New York such as its substantial number of New York users. *See KST Data, Inc. v. DXC Tech.*, No. 17-cv-07927-SJO, 2018 WL 5734227, at *5 (C.D. Cal. Mar. 26, 2018). These connections to New York satisfy the lenient "reasonable basis" standard. *See 1-800-Got Junk*, 189 Cal. App. 4th at 505.

#### b. Fundamental Policy

Next, the Court now considers whether enforcing the choice of law clause would be contrary to a fundamental policy of California. And, if there is no conflict between California and New York law, the Court will enforce the choice of law clause. Plaintiffs' claims implicate the Dating Service Law and the Renewal Law. Thus, the Court must determine whether those laws represent fundamental policies of California and, if so, whether applying New York would conflict with those policies.

"To determine the public policy of a state, 'the Constitution, laws, and judicial decisions of that state, and as well the applicable principles of the common law, are to be considered.'" *Ahn*, 798 F.3d at 1156 (quoting *Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 357 (1931)). No bright-line rules govern this analysis. *See Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 889 F. Supp. 2d 1198, 1216 (E.D. Cal. 2012), *aff'd*, 600 F. App'x 502 (9th Cir. 2015) (citing Rest., § 187 cmt. g); *see also Discover Bank v. Super. Ct.*, 134 Cal. App. 4th 886, 893 (2005) ("We are not aware of any bright-line rules for determining what is and what is not contrary to a fundamental policy of California"). It is clear, however, that the policy must be a "substantial" one. *See Brack v. Omni Loan Co.*, 164 Cal. App. 4th 1312, 1323, (2008) (citing Rest., § 187 cmt. g).

10

### i. Dating Service Law

Plaintiffs argue that the Dating Service Law represents a fundamental California policy. *See* Dkt. No. 46 at 23. The Dating Service Law applies to "dating service contract[s]" and "online dating service[s]." Cal. Civ. Code § 1694. The law requires all such contracts and services to include certain terms and provide certain notices. *See* Cal. Civ. Code §§ 1694.1–1694.4. For example, under § 1694.1, dating service contracts must provide the buyer the right to cancel any such contract by "midnight of the third business day" and to receive a refund. Cal. Civ. Code § 1694.1. Dating service contracts must also provide notice to the buyer of their right to cancel. *See* Cal. Civ. Code § 1694.2. And the Dating Service Law also provides treble damages for "actual damages . . . assessed" and renders dating service contracts void if induced by fraud. Cal. Civ. Code §§ 1694.4(b), (c).

As the party opposing enforcement of a choice of law provision, Plaintiffs "must point to a statute or judicial decision that clearly states such a strong public policy." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1090 (9th Cir. 2018).[1] Plaintiffs do not do so. Instead, they rely heavily on the Dating Service Law's anti-waiver provision. But an anti-waiver provision alone does not automatically defeat a choice of law clause. *See id.*

Plaintiffs' reliance on *Savetsky v. Pre-Paid Legal Servs., Inc.*, No. 14-cv-03514-SC, 2015 WL 4593744, at *2 (N.D. Cal. July 30, 2015) is not persuasive. In *Savetsky*, the court reflected on the anti-waiver provision of the CLRA to decide whether Oklahoma or California law should apply to an arbitration clause. *Id*. at *7. The CLRA, however, includes not only an anti-waiver provision, but also express language indicating that it represented a fundamental policy of California. *See* Cal. Civ. Code § 1751 ("Any waiver by a consumer of the provisions of this title is *contrary to public policy* and shall be unenforceable and void") (emphasis added); *see also Cody v. SoulCycle Inc.*, No. 15-cv-

---

[1] Though the anti-waiver discussion in *Sun* occurs in the context of a forum selection clause rather than a choice of law provision, courts apply similar standards for the "fundamental policy" prong in both contexts. *See Richards v. Lloyd's of London*, 135 F.3d 1289, 1293 n.1 (9th Cir. 1998).

11

06457-GHK, 2016 WL 4771392, at *8 (C.D. Cal. Jan. 11, 2016) (analyzing Cal. Civ. Code § 1749.51, which states "[a]ny waiver of the provisions of this title *is contrary to public policy* and is void and unenforceable.") (emphasis added).

The Dating Service Law does not include such language. Though the Dating Service Law states that "[a]ny waiver . . . is void and unenforceable," it lacks the critical language indicating a fundamental policy present in *Savetsky* or *Cody*. *Compare* Cal. Civ. Code § 1694.4 *with* §§ 1749.51, 1751. And Plaintiffs have not presented any legislative statement or case law identifying a strong public policy. *See, e.g.*, *Kissel v. Code 42 Software, Inc.*, No. 15-cv-01936-JLS, 2016 WL 7647691, at *5 (C.D. Cal. Apr. 14, 2016) (identifying legislative history). Indeed, case law applying the Dating Service Law is quite sparse. Thus, despite the presence of an anti-waiver provision, the Court cannot conclude that the Dating Service Law embodies a fundamental policy of California. *Cf. Sun*, 901 F.3d at 1090 (requiring parties to "point to" clear case law or statute).

Plaintiffs also argue that, at a minimum, the anti-waiver provision requires Bumble to show that enforcing the choice of law provision would not diminish any substantive right afforded by California law. *See* Dkt. No. 46 at 24. And, Plaintiffs argue, Bumble has not done so. But Plaintiffs skip a step. Before the Court reaches the fundamental *conflict* analysis, it must first find that the underlying statute represents a fundamental *policy*.

*America Online, Inc. v. Superior Court ("AOL")*, 90 Cal. App. 4th 1 (2001) is instructive. There, the California Court of Appeals considered whether a forum selection clause could be enforced when that clause would preclude the plaintiffs' claims under the CLRA. *See AOL*, 90 Cal. App. 4th at 5–7. The court concluded that the clause could not be enforced because the defendant had not shown that Virginia's consumer protection statutes would protect the rights afforded by California law. *Id.* at 16–17. Before the court reached that conclusion, however, it first noted that "the CLRA is a legislative embodiment of a desire to protect California consumers *and furthers a strong public policy of the state*[,]" citing legislative history and the text of the CLRA. *Id.* at 14–15 (emphasis added). And, as explained above, the Dating Service Law simply does not contain

12

language suggesting that it reflects a fundamental policy of California and Plaintiffs have not identified legislative history suggesting otherwise.

As a result, Bumble's choice of law provision applies, and Plaintiffs cannot state a claim under the Dating Service Law. Accordingly, the Court GRANTS Bumble's motion to dismiss Plaintiffs' Dating Service Law claim without leave to amend. The Court also GRANTS Bumble's motion to dismiss the UCL and CLRA claims to the extent those claims rely on alleged violations of the Dating Service Law without leave to amend. *See Cardonet, Inc. v. IBM Corp.*, No. 06-cv-06637-RMW, 2007 WL 518909, at *5 (N.D. Cal. 2007) ("Whether a [UCL] claim implicates fundamental California policy depends on the predicate violation").

### ii. Automatic Renewal Law

The Automatic Renewal Law codifies the California Legislature's intent "to end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent." Cal. Bus. & Prof. Code § 17600. Under the Renewal Law, businesses are prohibited from "clear[ly] and conspicuous[ly]" notifying the customer that their subscription would be automatically renewed. Cal. Bus. & Prof. Code § 17602. Businesses are also prohibited from charging customers for automatic renewals without first obtaining the customer's affirmative consent. *Id.* Customers may obtain "all civil remedies" in connection with a business's violation of the Renewal Law unless the business attempted to comply with the law in "good faith." Cal. Bus. & Prof. Code § 17604.

As with the Dating Service Law, Bumble argues that the Renewal Law is not a fundamental policy of California and, therefore, does not apply to its Terms due to the choice of law provision. Bumble largely rests its argument on the fact that the Renewal Law does not confer a private right of action. *See* Dkt. No. 49 at 14 (citing *Johnson v. Pluralsight, LLC*, 728 Fed. Appx. 674, 677 (9th Cir. 2018)). Although Bumble is correct that the Renewal Law does not confer a private right of action (*see Pluralsight, LLC*, 728 Fed. Appx. at 677), the Renewal Law nonetheless represents a fundamental public policy.

13

Courts may factor in whether a statute confers a private right of action in its fundamental policy analysis. *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1169 (N.D. Cal. 2016). But the presence of a private right of action alone is not dispositive. In *Facebook*, the court found that a choice of law provision selecting California law would run counter to a fundamental Illinois policy. *Id.* at 1169–70. The court reasoned that the private right of action conferred by the Illinois statute indicated that Illinois had a fundamental public policy in protecting the privacy of its citizens' biometric information. *Id.* However, the court also considered a variety of other evidence of the statute's importance. For example, the court also considered the legislature's explicit findings regarding biometric data and their stated need to protect the privacy of such data. *Id.* And the allusion to a private right of action concluded a list of other safeguards imposed by the statute, including the requirement of certain written policies and a ban on the sale or trade of biometric data for profit. *Id.* The court relied on these factors in combination, not in isolation, to find that the Illinois statute was fundamental. *Id.*

*Kissel v. Code 42 Software, Inc.*, No. 15-cv-01936-JLS, 2016 WL 7647691, at *5 (C.D. Cal. Apr. 14, 2016) is persuasive here. *Kissel* noted that the Renewal Law was enacted specifically to "protect a person against the oppressive use of superior bargaining power." *See Kissel,* 2016 WL 7647691, at *4 (citing Rest. § 187 cmt. g). The Renewal Law's statutory language and legislative history is in accord. For example, the Renewal Law specifically codifies the California legislature's intent "to end the practice of ongoing charging of consumer[s] . . . without the consumers' explicit consent . . . ." *See* Cal. Bus. & Prof. Code § 17600; *see also* S.B. 340, 2009–2010 Reg. Sess. (Cal. 2009). And California courts generally consider the "[p]rotection of unwary consumers from being duped by unscrupulous sellers . . . an exigency of the utmost priority in contemporary society." *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166 (N.D. Cal. 2008) (quoting *Vasquez v. Superior Court*, 4 Cal. 3d 800, 808 (1971)).

New York law also conflicts with the Renewal Law. For example, New York's version of the Renewal Law does not apply to contracts with durations of less than one

14

month. *See* N.Y. Gen. Oblig. Law § 5-903(3). Thus, New York law would not cover King's weekly Bumble Boost subscription. *See* SAC ¶¶ 23, 56. More significantly, New York law differs substantially in the type of contracts it governs. New York's version of the Renewal Law limits itself to contracts "for service, maintenance or repair to or for any real or personal property" while California's Renewal Law governs any contract that includes "recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement." *Compare* N.Y. Gen. Oblig. Law § 5-903(2) *with* Cal. Bus. & Prof. Code § 17601(a)(3). Indeed, Bumble concedes that New York's law "differs in scope from California." *See* Dkt. No. 49 at 14. The Court finds these distinctions substantial and concludes New York law conflicts with the Renewal Law.

Because the Renewal Law represents a fundamental California policy and conflicts with New York law, the Court must now consider whether California or New York has a materially greater interest in this lawsuit.

### c. Materially Greater Interest

To determine whether California or New York has a materially greater interest, the Court must examine: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and, (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *See Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1324 (9th Cir. 2012) (citing *1–800–Got Junk*, 189 Cal.App.4th at 513 n.10).

Here, Plaintiffs are California residents, who purchased and used the Bumble App in California. Bumble Trading, Inc. is incorporated in Delaware and has its principle place of business in Texas. Likewise, Bumble Holding, Ltd. is incorporated and has its principle place of business in the United Kingdom. There is no indication that any party has any connection to New York. Put simply, California's interest in protecting its residents from a product purchased and used in state far outweighs New York's interest. For these reasons, the Court finds that California has a materially greater interest than New York.

15

Thus, Bumble's choice of law provision cannot be enforced to the extent it would conflict with California's Renewal Law. Accordingly, Bumble's Terms must comply with California's Renewal Law and Plaintiffs may state claims derivative of the Renewal Law.

**B.     Whether Plaintiffs Stated a Claim Under the UCL and CLRA**

Because the choice of law provision is unenforceable to the extent Plaintiffs' claims allege violations of the Renewal Law, Plaintiffs' second and fourth claims under the UCL and CLRA claims survive if they have stated a plausible violation of the Renewal Law. *See* SAC ¶¶ 108–13, 125–41.

The UCL prohibits any "unlawful, unfair, or fraudulent business practice." Cal. Bus. & Prof. Code § 17200. "[The UCL] thereby 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1107 n.1 (9th Cir. 2013) (internal citation and quotation marks omitted). Thus, plaintiffs may bring a claim under the UCL for violations of other law unless "that other [law] . . . actually bar[s] it . . . and not merely fail to allow it." *Cel-Tech. Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999); *see also Marilao v. McDonald's Corp.*, No. 09-cv-01014-H, 2009 WL 3007368, at *2 (S.D. Cal. Sept. 21, 2009) ("[A] private plaintiff may bring a UCL action even when the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action.") (internal quotation marks omitted). Similarly, "[t]he CLRA makes it unlawful to use 'unfair methods of competition and unfair or deceptive acts or practices' in the sale of goods or services to a consumer." *Lozano*, 504 F.3d at 730 (citing Cal. Civ. Code § 1770).

Here, the only plaintiff alleging violations of the Renewal Law is Nick King, Jr. *See* SAC ¶¶ 56–71. King alleged that Bumble failed to describe his subscription's auto-renewal or cancellation policy when he purchased the Bumble Boost through the mobile app. *Id.* ¶¶ 12, 65. Specifically, King alleged that "[t]he screens and buttons presented to [him] before his purchase did not state that the Boost subscription would continue until he cancelled" nor did they describe the cancellation policy that applied to his purchase. *Id.*

16

¶ 59. He also alleged that Bumble failed to obtain his affirmative consent to the terms. *Id.* ¶ 60. Finally, King alleged that Bumble's confirmation email to him did not contain the automatic renewal terms, cancellation policy, or other information on cancellation required under the Renewal Law. *Id.* ¶¶ 61–62. These allegations sufficiently state a violation of the Renewal Law and, consequently, a claim under the UCL and CLRA.

Accordingly, the Court DENIES Bumble's motion to dismiss Plaintiffs' UCL and CLRA claims to the extent they rely on alleged violations of California's Renewal Law.

### 4. Money Had and Received

Plaintiffs also bring a common count for money had and received. "A common count is not a specific cause of action, however; rather, it is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness . . . ." *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004). Thus, a common count for money had and received rises and falls with the underlying equitable claims. *See id.* at 394–95; *see also Clerkin v. MyLife.com, Inc.*, No. 11-cv-00527-CW, 2011 WL 3670496, at *8 (N.D. Cal. Aug. 16, 2011).

Here, Plaintiffs' claims under the UCL and CLRA survive to the extent they rely on alleged violations of the Renewal Law. Thus, Plaintiffs' common count for money had and received also survives. *See Clerkin*, 2011 WL 3670496, at *8. Accordingly, the Court DENIES Bumble's motion to dismiss Plaintiffs' common count for money had and received to the extent it relies on alleged violations of the Renewal Law.

## IV. Conclusion

The Court GRANTS Bumble's motion to dismiss Plaintiffs' Dating Service Law claim without leave to amend. The Court also GRANTS the motion to dismiss Plaintiffs' UCL and CLRA claim without leave to amend to the extent they rely on alleged violations of the Dating Service Law, but DENIES the motion to dismiss the UCL and CLRA claims to the extent they rely on alleged violations of the Renewal Law. The Court also DENIES Bumble's motion to dismiss the common count for money had and received. Bumble must file its answer within 14 days of this order. *See* Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

Dated: July 8, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge