David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, California   94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (646) 509-3913
Facsimile:   (877) 501-3346

Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, Elena Weinberger,
and Brian Wess, individually, and on behalf of a class of
similarly situated individuals

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| NICK KING, JR., DEENA FISCHER, and ELENA WEINBERGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>    v.<br><br>BUMBLE TRADING, INC., and BUMBLE HOLDING LTD.,<br><br>Defendants. | Case No. 5:18-cv-06868-NC<br><br>**THIRD AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Nick King, Jr., Deena Fischer, Elena Weinberger, and Brian Wess, ("Plaintiffs"), individually and on behalf of all others similarly situated, allege as follows based on personal knowledge of their own acts and observations and, otherwise, upon information and belief based on investigation of counsel:

## NATURE OF THE CASE

1.     Bumble Trading, Inc. and Bumble Holding Ltd. (together "Bumble" or "Defendants") own, operate, promote, and advertise a popular dating software application called "Bumble."

2.     Plaintiffs and class members are consumers who subscribed to the company's premium service, called Bumble Boost, and were charged fees for that service.

3.     The New York Dating Services Law, N.Y. G.B.L. § 394-c (the "DSL") was enacted to protect against widespread fraud and misrepresentation in social matching services. Bumble violates New York's Dating Service Law, N.Y. G.B.L. § 394-c(1) (the "DSL") by maintaining a uniform practice and policy of denying rightfully owed refunds to consumers and by failing to provide consumers with the statutorily required notice of their three business day "cooling off" right to cancel the contract and obtain a full refund without any penalty or obligation.  Bumble's Terms and Conditions of Use (the "Terms," attached as Exhibit A), which Bumble claims is a contract between Bumble and consumers, as well as the FAQ's on Bumble's website, affirmatively represent that all purchases for premium subscriptions are non-refundable, which directly violates the DSL. Bumble enforces the Terms by denying refunds that consumers are entitled to under the DSL when consumers cancel Bumble Boost.  These practices and policies also violate New York's consumer protection statute, New York General Business Law, § 349.

4.     Bumble also has a uniform policy and practice of automatically renewing consumers' premium subscriptions without obtaining affirmative consent prior to the consumer's purchase, without providing the auto-renewal terms in a clear and conspicuous manner prior to the purchase, and without providing an acknowledgement identifying an easy and efficient mechanism for consumers to cancel their subscriptions.  Bumble also makes it exceedingly difficult and

confusing for consumers to cancel the premium service.  These practices and policies violate California's Automatic Renewal Law, Cal. Bus. Prof. Code §§ 17600-17606, *et. seq.*. the California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), and the California's Unfair Competition Law ("UCL"), Business & Professions Code, §§ 17200, *et seq.*.

5.      As a direct result of Bumble's conduct, Plaintiffs and the members of the proposed classes suffered economic injury in the loss of monies paid for Bumble Boost and the deprivation of their statutory right to exercise the option to try the service and cancel within three business days, without penalty or obligation. Plaintiffs, on behalf of themselves and members of the class(es) they seek to represent, seek restitution, declaratory, injunctive, and other equitable relief, statutory damages, actual and treble damages, reasonable attorneys' fees and costs, and interest, as set forth below.

**PARTIES**

6.      Plaintiff Nick King, Jr., is an individual residing in Los Angeles County, California.

7.      Plaintiff Elena Weinberger is an individual residing in Santa Clara County, California.

8.      Plaintiff Brian Wess is an individual residing in Nassau County, New York.

9.      Plaintiff Deena Fischer is an individual residing in San Diego County, California.

10.     Defendant Bumble Trading, Inc. is a corporation organized under the laws of Delaware, having is principal place of business in Dallas, Texas.

11.     Defendant Bumble Holding, Ltd., is a corporation organized under the laws of the United Kingdom having its principal place of business in London, United Kingdom.

**JURISDICTION AND VENUE**

12.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C., § 1332, as amended by the Class Action Fairness Act of 2005, in that the aggregate claims of Plaintiffs and the proposed class members exceed the sum or value of $5,000,000, exclusive of interest and costs.

13.     There is minimal diversity of citizenship between the named plaintiffs and the

proposed class members, and Defendants. Defendant Bumble Trading, Inc. is headquartered in the state of Texas.  Plaintiff King is a resident of the state of California asserting claims on behalf of himself and other California purchasers.  Plaintiffs Fischer and Weinberger are residents of the state of California asserting claims on behalf of themselves and other purchasers across the country. Plaintiff Wess is a resident of the state of New York asserting claims on his own behalf and on behalf of purchasers across the country.

14.     This Court also has personal jurisdiction over the Defendants because each do business in and have sufficient minimum contacts with this state, including within this District, and/or have otherwise intentionally availed themselves of the markets in this state through the promotion, marketing, and sale of their products and/or services in this state, and in this District, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

15.     Further, Bumble's misconduct occurred in California.  Beginning as early as August 2016, when Bumble Boost was launched, Bumble's Terms failed to provide consumers with notice of their right to cancel the dating service contract under the DSL and other state dating service laws. In or about September 2016, Bumble updated its Terms to include a no-refund provision for purchases of the premium subscription, Bumble Boost.  At the time when Bumble's Terms were drafted, adopted, instituted, approved, and updated to include provisions which violate the DSL, Bumble's principle executive office was located at 50 California Street, Suite 1502, San Francisco, CA 94111 and its corporate officer Whitney Wolfe, Chief Executive Officer, who created, adopted, approved, updated, and/or implemented the Terms, was located at 8455 Beverly Boulevard, Suite 401, in Los Angeles, California.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

17.     Intradistrict Assignment.  Assignment to the San Jose Division of this Court is proper pursuant to Civil Local Rule 3-2(c) and (d) because a substantial portion of the events, conduct, and omissions giving rise to this action occurred within this District and division.

## FACTUAL ALLEGATIONS

### Bumble's Premium Subscription-Based Dating and Social Referral Service

18. Bumble owns and operates a mobile software application called Bumble (the "App").  Bumble offers, promotes, advertises, and provides dating and other social referral services directly through the App.

19. When the App is downloaded, the owner, developer, and publisher of the App is identified as Bumble Holding, Ltd.  According to Bumble, about 40 million people have downloaded the App.

20. Upon downloading the App, Plaintiffs and class members enter their names, telephone numbers, addresses, photos, and statistics into the App.

21. Based on Bumble's proprietary algorithm, Bumble matches users through the App.

22. Bumble's premium subscription-based service is offered directly through the App. The premium service is offered for intervals of time, such as one-week, one month, three months, and six months, each of which automatically renew at the end of the term, unless the consumer affirmatively cancels their subscription prior to the end of the subscription period.

23. The consumer's purchase is an "In-App" purchase and the consumer is charged up front for the subscription period.

24. At all times during the class period, the premium subscription was offered for a fee. Today, the cost of the premium subscription ranges from $8.99 to $139.99.

### Bumble's Terms Violate New York's Dating Service Law

25. The DSL applies to "social referral services."  N.Y. G.B.L. § 394-c(1).  The law defines a "social referral service" to "include any service for a fee providing matching of members of the opposite sex, by use of computer or any other means, for the purpose of dating and general social contact."  N.Y. G.B.L. § 394-c(1)(a).

26.     Bumble Boost is a "social referral service" within the meaning of the New York DSL because it is a fee-based service which provides matching of members of the opposite sex, by use of a computer or other means, for the purpose of dating and general social contact.

27.     The DSL is a consumer protection statute designed to respond to widespread fraud, misrepresentation, and price gouging by social matching services.

28.     The DSL provides, in pertinent part, as follows:

(a)     Every contract for social referral service shall provide that such contract may be cancelled without a cancellation fee within three business days after the date of receipt by the buyer of a copy of the written contract.

(b)     In every social referral service sale, the seller shall furnish to the buyer a fully completed copy of the contract pertaining to such sale at the time of its execution, which is in the same language, e.g., Spanish, as that principally used in the oral sales presentation and which shows the date of the transaction and contains the name and address of the seller, and in the immediate proximity to the space reserved in the contract for the signature of the buyer and in not less than ten-point bold face type, a statement in substantially the following form:

YOU, THE BUYER, MAY CANCEL THIS CONTRACT WITHOUT ANY CANCELLATION FEE WITHIN THREE (3) BUSINESS DAYS AFTER THE DATE OF THIS CONTRACT.   SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

(c)     Notice of cancellation shall be delivered by certified or registered United States mail at the address specified in the contract.

(d)     At the time the buyer signs the social referral service contract, a completed form in duplicate, captioned "NOTICE OF CANCELLATION", which shall be attached to the contract and easily detachable, and which shall contain in not less than ten-point bold face type the following information and statements in the same language, e.g., Spanish, as that used in the contract:

NOTICE OF CANCELLATION

(enter date of transaction) (Date)

YOU MAY CANCEL THIS CONTRACT, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE (3) BUSINESS DAYS AFTER THE DATE OF THIS CONTRACT BY MAILING THIS SIGNED AND DATED NOTICE OF CANCELLATION BY CERTIFIED OR REGISTERED UNITED STATES MAIL TO THE SELLER AT THE ADDRESS SPECIFIED HEREIN. IF YOU CANCEL, ANY PAYMENTS MADE BY YOU UNDER THE CONTRACT WILL BE RETURNED WITHIN TEN (10) BUSINESS DAYS FOLLOWING RECEIPT BY THE SELLER OF YOUR CANCELLATION NOTICE. TO CANCEL THIS

TRANSACTION, MAIL BY CERTIFIED OR REGISTERED UNITED STATES
MAIL A SIGNED AND DATED COPY OF THIS CANCELLATION NOTICE TO:

(Name of Seller)                                   NOT LATER THAN _____

(Address of Seller)                                                        (Date)

N.Y. G.B.L. § 394-c(7)(a)-(d).

29.     The DSL also provides that in every social referral service sale or renewal, the seller

shall provide each purchaser with a clear and conspicuous, separate written notice, to be known as

the "Dating Service Consumer Bill of Rights," which shall contain at least the following

information:

Dating Service Consumer Bill of Rights

1.     No social referral service contract shall require the payment by you, the
purchaser, of an amount greater than one thousand dollars.   In addition, no such
contract may extend over a period of time greater than two years.

2.     No social referral service contract shall require you, the purchaser, to
purchase a good or service which is directly or indirectly related to the social referral
service.   These extra services are known as ancillary services and, while these
ancillary services may be offered to you, the law prohibits the seller from requiring
that you purchase this service as a condition of your social referral service contract.

3.     If your social referral service contract costs more than twenty-five dollars, the
seller must furnish a minimum number of referrals per month to you.  If this
minimum amount is not furnished to you for two successive months, you have the
option of cancelling the contract and receiving a full refund of all the money you
paid, less a cancellation fee which cannot exceed either fifteen percent of the cash
price or a pro rata amount for the number of referrals furnished to you.

4.     Your social referral service contract must specify the distance which you, the
purchaser, are willing to travel to meet any social referral. No social referrals shall be
furnished where you and the referral live at a distance greater than the distance
specified in the contract.

5.     The provider must have an established policy to address the situation of your
moving outside the area it services. This policy must be explained in your contract.

6.     If any provision of the social referral service contract is violated, you have
the right to bring a court action against the provider which has violated the contract.

N.Y. G.B.L. 394-c(7)(e).

30.     Plaintiffs Weinberger and Wess and members of the DSL Classes subscribed to

Bumble Boost, cancelled within three business days, but Bumble denied them refunds to which they

were entitled under the DSL.

-7-

31.     At the time Plaintiffs Weinberger, Wess, and Fischer and members of the DSL Classes subscribed to Bumble Boost, Bumble's Terms did not include any of the statutory provisions mandated by New York General Business Law, Section 394-c.  At no time did Bumble notify Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes of their right to cancel, without penalty or obligation.  Instead, Bumble's Terms and FAQs state that all purchases are non-refundable, contrary to rights conferred by New York General Business Law, Section 394-c(7) on Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes.

32.     At the time Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes purchased and/or renewed their Bumble Boots subscriptions, Bumble failed to provide them with the statutorily required notice of consumers' "Dating Service Consumer Bill of Rights" in violation of the New York General Business Law, Section 394-c(7).

33.     The New York DSL was enacted to protect consumers from widespread misrepresentations by social matching services.  To protect against this harm, the law affords consumers with a "cool-off period." That period is a number of days (three business days) after the purchase. During that period, the consumer's right to cancel is absolute and the seller must make certain disclosures concerning that right of cancellation.  The consumer therefore has the option to use the product for a trial period of three business days to determine whether it conforms to the representations of the seller and cancel without penalty or obligation.  This right to exercise an option to cancel has a quantifiable economic value and deprivation of this right by Bumble caused economic harm to Plaintiffs Weinberger, Wess, and Fischer and members of the DSL Classes.

34.     Bumble's Terms and FAQs, affirmatively represent to consumers that they have no right to a refund.  By affirmatively telling consumers that they cannot obtain refunds, Bumble chills the ability of consumers to exercise this "cool-off period" right and cancel free of obligation and penalty.  Consumers, including Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes, reasonably assume that the company's no refund policy is lawful. Bumble's "no refund policy" is deceptive, materially misleading, and illegal under New York law, in direct violation of

1 Plaintiffs Weinberger, Fischer, and Wess and DSL Class members' rights under New York General

2 Business Law, Section 394-c(4).

3    35.    A cursory review of the terms of other dating apps indicates that Bumble's

4 competitors attempt to inform persons in New York of their right to cancel their subscription,

5 without penalty or obligation, at any time prior to midnight of the third business day following the

6 date they subscribed.[1]

7    36.    As a result of Bumble's violations of the DSL, Plaintiffs Weinberger, Fischer, and

8 Wess and members of the DSL Classes suffered actual injury in the form of loss of refunds,

9 deprivation of their rights of rescission, and the deprivation of their statutory right to exercise the

10 option to try the service and cancel within three business days, without obligation or penalty.

11             **Bumble's Automatic Renewal Policy Violates California Law**

12    37.    California's Automatic Renewal Law, Cal. Bus. Prof. Code, §§ 17600-17606, was

13 enacted in December 2010.  The stated intent of the Legislature was "to end the practice of ongoing

14 charging of consumer credit or debit cards or third-party payment accounts without the consumers'

15 explicit consent for ongoing shipments of a product or ongoing deliveries of service."  *See* Cal. Bus.

16 Prof. Code § 17600.

17    38.    Cal. Bus. Prof. Code § 17601(a) defines the term "automatic renewal" to mean "a

18 plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed

19 at the end of a definite term for a subsequent term."

20    39.    Bumble, through the App, offered and continues to offer consumers in California

21 (including Plaintiffs and class members) dating, matrimonial and/or social referral services using a

22 plan or arrangement in which a paid subscription is automatically renewed at the end of a definite

---

[1]    *See e.g.*, Tinder, https://www.gotinder.com/terms/us-2018-05-09 (last visited September 12, 2018); Match, https://www.match.com/registration/membagr.aspx (last visited November 5, 2018); OK Cupid, https://www.okcupid.com/legal/terms (last visited November 5, 2018); PlentyOfFish https://www.pof.com/terms.aspx (last visited Feb. 10, 2019); Zoosk, https://docviewer.zoosk.com/legal-tos-en.html (last visited Feb. 10, 2019); Jdate, https://about.jdate.com/legal-en/#termsofservice (last visited Feb. 10, 2019); Hinge, https://hinge.co/terms/, Christian Mingle, https://about.christianmingle.com/en/legal-en/#termsofservice (last visited Feb. 10, 2019).

term.  Bumble's premium subscriptions were, and are, "automatic renewal" plans under Cal. Bus. Prof. Code § 17601(a).

40.     Cal. Bus. Prof. Code § 17602(a)(1) makes it unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in California to:

> Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer…

41.     Cal. Bus. Prof. Code § 17601(b) defines the term "automatic renewal offer terms" as the following clear and conspicuous disclosures:

> (1) That the subscription or purchasing agreement will continue until the consumer cancels.

> (2) The description of the cancellation policy that applies to the offer.

> (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

> (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

> (5) The minimum purchase obligation, if any.

42.     At all relevant times, Bumble failed to disclose the "automatic renewal offer terms" defined by Cal. Bus. Prof. Code § 17601(b) before California consumers purchased their subscriptions to Bumble Boost. At no time during Bumble's subscription flow, or the process by which California consumers are presented with and then accept an offer for an automatically renewing premium subscription, did Bumble clearly and conspicuously disclose (i) that the subscription will continue until cancelled (ii) the cancellation policy that applied to the offer; (iii) the recurring charges that would be charged to the consumer's credit or debit cards or third party payment accounts; (iv) the length of the automatic renewal term or that the service was continuous. This conduct violates Cal. Bus. Prof. Code § 17602 (a)(1).

43.     Cal. Bus. Prof. Code § 17602(a)(2) makes it unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in California to:

> Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the

consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms….

44.     At all relevant times, Bumble charged, and continues to charge, Plaintiffs and class members for premium subscriptions.  However, Bumble has done so, and continues to do so, without first obtaining California consumers' affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms.  Indeed, there is no mechanism (during the subscription process or at any point in time) that requires California consumers to affirmatively consent to such terms. This conduct violates Cal. Bus. Prof. Code § 17602(a)(2).

45.     Cal. Bus. Prof. Code § 17602(a)(3) makes it unlawful for any business that makes an automatic renewal or continuous service offer to a consumer in California to:

> Fail to provide an acknowledgement that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer...

46.     Cal. Bus. Prof. Code § 17602(b) further provides:

> A business that makes automatic renewal offer or continuous service offer shall provide a toll-free telephone number, electronic mail address, a postal address if the seller directly bills the consumer, or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

47.     Bumble fails to provide California consumers with an acknowledgement that satisfies any of the requirements of Cal. Bus. Prof. Code §§ 17602(a)(3) and 17602(b).

48.     Cal. Bus. Prof. Code § 17603 provides:

> In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business, including, but not limited to, bearing the cost of, or responsibility for, shipping any goods, wares, merchandise, or products to the business.

49.     Bumble's premium subscription for dating and social services is a product provided to Plaintiffs and class members.  As a result, the services provided to Plaintiffs and class members under the subscription plan shall for all purposes be deemed an "unconditional gift" to them, and Plaintiffs and class members who may use such services in any manner they see fit without obligation to Bumble.  Cal. Bus. & Prof. Code § 17603.

50.     As a result of Bumble's violation of the Automatic Renewal Law, Plaintiff King and class members defined below suffered economic injury and are entitled to reimbursement of their payments.

**Consumers Complain About Injuries Resulting From Bumble's Auto-Renewal And No-Refund Policies And Practices**

51.     Consumers have been injured by Bumble's uniform practices of renewing consumers' subscriptions without their consent and knowledge, making it difficult for consumers to cancel their subscriptions, as well as by Bumble's practice of denying refunds.

52.     The websites of Consumer Affairs and the Better Business Bureau provide some examples that chronicle these common grievances:

> I joined for a week and have continued to be charged despite canceling my account. When offered membership selections initially, I opted to try it for a week for the price of $8.99 instead of the less expensive deal of by the month. I chose this because I did not want more than one charge. I have contacted the business by email because none of the phone numbers available online actually work. After several days I got an automated response that I had to cancel myself on their app. I wasn't able to find this information which is why I contacted them in the first place. I reopened my account so that I could follow their cancel directions, but the menu options they listed were not listed when I followed their directions. I want to be refunded all but the one week that I agreed to pay. I also want to make sure that I am removed from their billing and will not be charged or solicited again.
>
> https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

> I have been trying to cancel Bumble for 2 months. I cannot cancel thru iTunes due to no subscription button. I've emailed them twice. I cannot find a phone number for them. It was renewed again today. I want this subscription cancelled and today's charge reimbursed. Thank you.  https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

> I purchased a one week subscription and it automatically renewed. Yes, it was in the fine print, but most reputable companies will give you your money back on the subsequent renewal, just to be decent. Not Bumble!...
>
> https://www.consumeraffairs.com/entertainment/bumble.html

> To whom it may concern, Bumble and Google Play will not refund you 80$ after they auto charge you if you didn't cancel the subscription. I contacted both parties the day of the 80$ charge, and both would not honor refund. This is poor business practices. Please don't support a business that won't refund you a charge the day of the auto charge!!!
>
> https://www.consumeraffairs.com/entertainment/bumble.html?page=2

I subscribed to bumble premium free trial and didn't realize that they would auto-charge me for the $49.99 premium version that I had not noticed any upgraded features or anything. Immediately after the charge, I asked for a refund and bumble said I would have no recourse for a refund…

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

I began using Bumble Dating App in Jan '18. I purchased (what I thought was) a 1-time amount of "coins" to make contact with male dates. I authorized my credit card to be charged $8.99. I noticed today a debit "Social Payments" for $8.99 on my statement. I was curious so I searched the amount and found this debit for "Social Payments" has been recurring weekly since March 2018. I contacted my bank for help. The bank wasn't able to explain the charge or find a contact number for the company making the recurring debit. Upon investigation, the bank found that "Social Payments" has been making debits of $8.99 WEEKLY out of my account since Jan '18. I'm not happy about this. I did NOT authorize recurring WEEKLY charges. I decided to Google "Social Payments" and found that its a 3rd party vendor Bumble Dating App uses. There's no direct number for Bumble only this email: ************************…

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

I downloaded the app and was casually browsing through it, a few menus kept popping up and before I knew it I received a message telling me my credit card would be charged for $79.99 for services that I did not ask for or authorize. I immediately attempted to contact Customer service but they have no phone number listed, so instead I kept receiving automated emails telling me I would not receive a refund for this purchase I never made… this is a predatory company that scams people and takes advantage of those who aren't very tech savvy or don't watch their money closely, stay away at all costs.

https://www.consumeraffairs.com/entertainment/bumble.html.

Their app is horrible to use, no flexibility. AND... you have to be EXTREMELY careful where you click or they STEAL money from you without your consent. I signed up for 1 week to try it out and was so disappointed with this piece of crap that I wanted to cancel but of course, there is no easy way to do that. I clicked on one area that I thought might be the place to do that, and low and behold, they charge me $50!!! Without any authorization. I HATED paying $10 for 1 day for the week I signed up for... let alone have them STEAL $50 for making it so difficult to get out of their ** site. I am absolutely LIVID!!!

https://www.consumeraffairs.com/entertainment/bumble.html.

I wanted to purchase 15 "coins" for $19.99 on July 25, 2018 throught the app on my Visa card. I accidentally purchased 2 of the exact same product. It wasn't clear that the purchase had gone through and I pressed the "buy" button again, only to see on my credit card statement I had been charged twice. I contacted Bumble, and there robot automatic response team, said, "sorry, no refunds." This was clearly a mistake. If I wanted to purchase 30 coins (as I did by accident), I could have paid $34.99 foro 30 coins, rather than buying them at a higher price. After some research, I soon found that accidental purchases are very common with Bumble. It may be a design flaw, but after realizing how easily they dismiss customer concerns, it feels as if a large part of their revenue is made by customer mistakes. This practice is unethical and fraudulent.

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

I thought when I signed up that it would be a monthly deduction. I did not know they would deduct all the payments all at once. Within a few minutes of signing up I wanted to cancel and Bumble to refund my money. They do not have a phone number to contact them. The agreement is misleading and I would like them to refund me my full payment. I believe I cancel my membership that same day.

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

…I paid $49.99 for 3 months of service and they refuse to refund me so I filed a dispute with my bank. Entire company is a SCAM!!! STAY FAR FAR AWAY!!!

https://www.consumeraffairs.com/entertainment/bumble.html.

The website advertises a 13/mo subscription. And then they take out $80 all at once. Since when is that transparent??? I haven't even had the subscription for three hours. I just want my money back.

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/customer-reviews

I had purchased a month-to-month contract I was thinking which should be $13 a month and they bill you for six months and you cannot cancel. I tried twice to resolve through email and they won't refund my money I contacted them within 12 hours asking politely for a refund.

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

I was on the company website looking at their pricing. The pricing has a lower price advertised monthly but upon clicking on the option I was charged 79$ I contacted customer service via email who constantly told me that the website says it would be taken out in one payment which I was not aware of. The way the company has it on their website it does NOT show 79$ will be taken out. That price isn't even listed upon clicking on the amount. I requested a refund and was denied stated it's their policy. I feel that it's an entrapment for consumers because you don't realize you were billed for 79$ until after the fact. It's very misleading. And I just wanted a refund due to the misunderstanding and misrepresentation of pricing on their website.

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

Bubmle provides monthly services. When you click on their screen in defaults to $80/6 month ($480) total for premium service features. I attempted to click outside of this, but it accepted the purchase. It was a complete accident and everything was automated and too fast to even notice what was happening. I've contacted their support service and cancelled the subscription, but they are refusing to acknowledge this and keep pointing to their terms

of service. I'm a human. It was not my intention to pay for this. They place the option be default on a screen where this is can easily be purchased. I cannot afford $480 for this. I need my money. I cannot afford this. I need them to stop the transaction. No one will help!

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

I signed up for Bumble over 6 months ago and I paid for a service called Bumble Boost. I wasn't aware that it was a subscription based feature and that they would automatically charge me again for without warning. Furthermore, I contacted Bumble the day I was charged and did not receive a response. I contacted them a second time and did then receive a response that claimed they will not refund this request, even though I contacted them the day of the charge and did not use the service. Any company that is not willing to refund a customer who is not satisfied, nor has used the service is no company at all. I guess it's all about cashing out quick before going out of business. I will definitely let everyone I encounter know about Bumble's cheap and un-customer friendly practices.

https://www.bbb.org/us/tx/austin/profile/online-dating-services/bumble-0825-1000144974/complaints

**Plaintiff King's Individual Allegations**

53.     On or about September 6, 2018, Plaintiff King purchased a one-week subscription of Bumble Boost for $8.99.

54.     Plaintiff King provided his debit card information directly to Bumble.

55.     At the time he subscribed, Plaintiff King believed the subscription would not extend beyond one week; he did not expect to be charged again.

56.     Before he subscribed to Boost, Bumble did not disclose the automatic renewal offer terms or continuous service offer terms to Plaintiff King, which was a direct violation of Cal. Bus. & Prof. Code §17602(a)(1). The screens and buttons presented to Plaintiff King before his purchase did not state that the Boost subscription would continue until he cancelled, did not describe the cancellation policy that applied to his purchase, did not state the recurring charges that would be charged to his debit card, and did not state that the term was continuous.

57.     At no point did Bumble obtain Plaintiff King's affirmative consent to an agreement containing the automatic renewal offer terms or continuous service offer terms, which was a violation of Cal. Bus. & Prof. Code §17602(a)(2).

58.     On or about September 6, 2018, Bumble emailed Plaintiff King an acknowledgment that his Bumble Boost subscription had been activated. The subject line of the email stated: "♥ Your Bumble Boost membership has been activated". The body of the email stated the following: "Bumble Boost. Congratulations! You're now a member of Bumble Boost! You've unlocked the following features: The Beeline, ReMatching Expired Matches, Unlimited Extends. Check Out Boost Now." A true and accurate copy of the email is attached as Exhibit B.

59.     The acknowledgement email failed to provide Plaintiff King with the automatic renewal or continuous service offer terms, cancellation policy, nor did it provide information regarding how to cancel in a manner capable of being retained by him, which was a violation of Cal. Bus. & Prof. Code § 17602(a)(3). The acknowledgment email also failed to provide a toll-free telephone number, electronic mail address, or postal address, or another cost-effective, timely, and easy-to-use mechanism for cancellation of his membership, which was a violation of Cal. Bus. & Prof. Code § 17602(b). Plaintiff King did not receive any other acknowledgements that contain the required information.

60.     Upon the expiration of the one-week subscription, Plaintiff King no longer used, nor did he want, the premium service. However, Bumble automatically renewed the one-week subscription and continued to charge Plaintiff King's debit card $8.99 on a recurring, weekly basis five additional times.

61.     On October 18, 2018, Plaintiff King notified Bumble via email that he did not authorize the five additional weekly charges and requested instructions on how to cancel his Boost subscription. He also requested a refund of the additional charges.

62.     In response, later that day, Bumble notified Plaintiff King that all purchases through the mobile app are non-refundable, as stated in the Terms. Bumble also informed Plaintiff King that his Boost subscription must be cancelled through the Bumble App – not through a third party such as Google or Apple.

63.     However, at no point was Plaintiff King required to examine or affirmatively accept Bumble's Terms.

64.     Bumble's refusal to issue a refund is contrary to the Automatic Renewal Law, which deems products provided in violation of the statute to be a gift to consumers. Cal. Bus. & Prof. Code § 17603.

65.     Had Bumble complied with the Automatic Renewal Law, Plaintiff King would have been able to read the auto renewal terms, and he would have not subscribed to Boost or he would have cancelled his subscription earlier, i.e., prior to the expiration of the initial subscription period. As a direct result of Bumble's violations of the Automatic Renewal Law, Plaintiff King suffered economic injury.

66.     The facts giving rise to Plaintiff King's claims are materially the same as the class(es) he seeks to represent.

**Plaintiff Weinberger's Individual Allegations**

67.     On or about September 30, 2018, Plaintiff Weinberger was served with a pop-up advertisement in the Bumble App.  The advertisement offered her four options to subscribe to Bumble Boost based on different subscription durations.  The option for the "most popular" "6 months $13.33 / mo $79.99" was pre-selected. While trying to exit the screen, she accidentally purchased Bumble Boost.  She was charged for six months of Bumble Boost for $79.99.

68.     Within three business days of the purchase, Plaintiff Weinberger notified Bumble electronically, via Bumble's in-app "Contact Us," that she was cancelling her contract as she did not intend to purchase Bumble Boost, and she demanded a refund.  In response, Bumble informed Plaintiff Weinberger that purchases made through the App were non-refundable pursuant to the Terms.  Plaintiff Weinberger explained to Bumble that the placement of the advertisement was predatory to trick consumers into purchasing Bumble Boost by making it easy to purchase a pre-selected six month option when one is attempting to decline the offer by exiting the screen.  To date, more than ten days have passed since Plaintiff gave notice of cancellation of the contract; however, Bumble has not issued a refund.

69.     Bumble's refusal to issue a refund violates New York General Law, Section 394-c, which provides Plaintiff Weinberger with a right to cancel the contract within three business days and obtain a full refund, without penalty or obligation.

70.     At the time Plaintiff Weinberger subscribed to Bumble Boost, Bumble's Terms did not include any of the mandatory provisions of New York General Business Law, Section 394-c(a)-(d), including notice of her rescission rights and of New York's Dating Service Consumer Bill of Rights.  Instead, the Terms contained language about non-refundability of payments, which is directly contrary to the DSL.  As a direct result of Bumble's conduct, Plaintiff Weinberger suffered injury in the form of loss of monies and deprivation of her statutory right of rescission.

71.     The facts giving rise to Plaintiff Weinberger's claims are materially the same as the classes she seeks to represent.

**Plaintiff Wess' Individual Allegations**

72.     On or about February 17, 2019, Plaintiff Wess purchased a Bumble Boost subscription.  He was immediately charged $79.99 for Bumble Boost – which amounts to an upfront payment for a total of six months of Bumble Boost.

73.     At the time he subscribed, Plaintiff Wess believed he was signing up for six  months of Bumble Boost, to be paid in monthly installments of $13.33, as stated in the offer.  Plaintiff Wess also believed that he could "cancel anytime" as stated by the offer for Bumble Boost. He did not expect to be charged for six months upfront in one lump sum.  Bumble did not disclose, nor did Plaintiff Wess expect, that upon cancellation prior to the six-month period, Bumble would not refund any money.

74.     Within three business days of his purchase, Plaintiff Wess cancelled the Bumble Boost subscription, notified Bumble electronically, via Bumble's in-app "Contact Us," that he was cancelling the contract, and demanded a refund.  In response, Bumble informed Plaintiff Wess via email that pursuant to Bumble's Terms, all purchases were non-refundable. To date, more than ten days have passed since Plaintiff Wess gave notice of cancellation of the contract; however, Bumble has not issued a refund.

75.    Bumble's refusal to issue a refund violates the New York General Business Law, Section 394-c, which provides Plaintiff Wess with a right to cancel the contract within three business days and obtain a full refund, without penalty or obligation.

76.    At the time Plaintiff Wess subscribed to Bumble Boost, Bumble's Terms did not include any of the mandatory provisions of New York General Business Law, Section 394-c(a)-(d), including notice of his rescission rights and of New York's Dating Service Consumer Bill of Rights. Instead, the Terms contained language about non-refundability of payments, which is directly contrary to the DSL.

77.    As a direct result of Bumble's violations of New York's DSL, Plaintiff Wess suffered injury in the loss of monies and his statutory rescission rights.

78.    The facts giving rise to Plaintiff Wess' claims are materially the same as the classes he seeks to represent.

**Plaintiff Fischer's Individual Allegations**

79.    On or about September 16, 2018, Plaintiff Fischer purchased six months of Bumble Boost for $79.99.

80.    After purchasing Bumble Boost, Plaintiff Fischer started to experience technical issues with the App, including an inability to edit or delete the "About Me" in her user profile, which impaired her ability to use and enjoy the dating service. Plaintiff Fischer informed Bumble of the technical issues but Bumble did not fix the problem.

81.    Plaintiff Fischer provided notice of cancellation and demanded a refund multiple times, including but not limited to on October 27, 2018.  She explained that she wanted all of her money back because she could not use the App.

82.    Bumble denied Plaintiff Fischer's repeated requests for a refund.  Bumble stated that under the Terms, "any purchases on the Bumble mobile application are non-refundable."

83.    On November 1, 2018, Bumble also confirmed that Plaintiff Fischer's "subscription was cancelled when [she] deleted [her] account," but again denied her request for a refund.

84.     At the time Plaintiff Fischer subscribed to Bumble Boost, Bumble's Terms did not include any of the mandatory provisions of New York General Business Law, Section 394-c(a)-(d), including notice of her rescission rights and of New York's Dating Service Consumer Bill of Rights.  Instead, the Terms contained language about non-refundability of payments, which is directly contrary to the DSL.  Plaintiff Fischer was therefore deprived of her right to exercise the option to try the service to determine whether the product conformed to Bumble's representations and/or had technical problems and cancel within three business days, without obligation or penalty.

85.     Bumble's conduct injured Plaintiff Fischer in that she suffered economic harm and loss of her statutory rescission rights.

86.     The facts giving rise to Plaintiff Fischer's claims are materially the same as the class she seeks to represent.

## CLASS ALLEGATIONS

87.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure, Rules 23(a), (b)(2), (3), and (c)(4), on behalf of themselves and the following classes of consumers (each a "class member" of the "Class" or "Classes"):

**Plaintiffs Weinberger, Wess, and Fischer seek to represent the following class:**

**Dating Service Law Class ("DSL Class")**:  All persons nationwide who purchased Bumble Boost, any time from three years prior to the date this action was first filed through the date of certification.

**Plaintiffs Weinberger and Wess seek to represent the following class:**

**Dating Service Law Subclass ("DSL Subclass")**:  All persons in the DSL Class who cancelled Bumble Boost within three business days of purchase.

**Plaintiff King seeks to represent the following class:**

**California Automatic Renewal Class ("ARL Class"):** All persons who purchased, within California, any time from four years prior to the date this action was first filed through the date of certification, Bumble Boost and had their credit card, debit card, and/or a third-party payment account charged as part of Defendants' automatic renewal program or a continuous service program.

88.     The DSL Class and the DSL Subclass are collectively referred to as the "DSL Classes."

89.     Excluded from the Classes are Defendants as well as Defendants' affiliates, employees, officers and directors.

90.     Plaintiffs reserve the right to amend the definitions of the classes if discovery or further investigation reveals that the classes should be expanded or otherwise modified.

91.     Numerosity/Impracticability of Joinder: The members of each Class are so numerous that joinder of all members would be impracticable. Plaintiffs reasonably estimate that each of the proposed Classes consists of hundreds of thousands of consumers.  Class members can be identified through Defendants' business records.

92.     Commonality and Predominance: Common questions of law and fact predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary from one class member to another and which may be determined without reference to the individual circumstances of any class member.

93.     Common questions of law and fact for the DSL Classes, include, but are not limited, to the following:

a.      Whether Bumble is a social referral service under the DSL;

b.      Whether Bumble's Terms and its no-refund policy violate the DSL;

c.      Whether Bumble provided consumers with the Dating Services Consumer Bill of Rights;

d.      Whether Bumble's Terms and its no-refund policy is misleading in a material way;

e.      Whether Bumble's acts and practices constitute unlawful and deceptive acts under the New York General Business Law, Section 349;

f.      Whether, as a result of Bumble's conduct, Plaintiffs Fischer, Weinberger, Wess and members of the DSL classes suffered injury; and

g.      Whether, as a result of Bumble's conduct, Plaintiffs Fischer, Weinberger, Wess and members of the DSL classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

94.     Common questions of law or fact for the ARL Class, include, but are not limited, to the following:

a.      Whether Bumble's auto-renewal conduct violates the CLRA;

b.      Whether Bumble imposed an automatic renewal or continuous service provision without first obtaining the Plaintiffs' and class members' affirmative consent to do so;

c.      Whether Bumble failed to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the premium subscriptions were fulfilled;

d.      Whether Bumble failed to provide Plaintiff King and ARL Class members with an acknowledgement that satisfies any of the requirements of Cal. Bus. Prof. Code §§ 17602(a)(3) and 17602(b);

a.      Whether Cal. Bus. Prof. Code § 17603, in conjunction with Cal. Bus. Prof. Code § 17200, *et seq*. provides for restitution for money paid by class members in circumstances where the services provided by Bumble are deemed an unconditional gift;

b.      Whether, as a result of Bumble's conduct, Plaintiffs and the class members suffered injury; and

c.      Whether, as a result of Bumble's conduct, Plaintiffs and the class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

95.     Typicality: Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs and all class members were injured by the same wrongful practices in which Bumble engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Classes and are based on the same or similar legal theories.

96.     Adequacy: Plaintiffs will fully and adequately protect the interests of the members of the Classes they seek to represent and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex

1    litigation. Neither Plaintiffs nor their counsel have interests contrary to or conflicting with those of

2    the Classes. Bumble has no defenses unique to Plaintiffs.

3        97.    Superiority: A class action is superior to all other available methods for the fair and

4    efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of

5    individual actions are economically impractical for members of the Classes; the Classes are readily

6    definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs,

7    conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action

8    permits claims to be handled in an orderly and expeditious manner.

9        98.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

10       99.    Bumble has acted or failed to act on grounds generally applicable to the Classes,

11   thereby making appropriate final injunctive relief with respect to the Classes as a whole.

12       100.   Without a class action, Bumble will continue a course of action that will result in

13   further damages to Plaintiffs and members of the Classes and will likely retain the benefits of their

14   wrongdoing.

15       101.   Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth

16   below.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**Violations of the New York Dating Services Law,**
**New York General Business Law, § 394-c**
**(On Behalf of Plaintiffs Weinberger, Fischer, Wess and the DSL Class and Subclass)**

20       102.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

21   set forth herein.  Plaintiffs Weinberger, Fischer, and Wess bring this claim under N.Y. G.B.L. §

22   394-c on their own behalf and on behalf of each member of the DSL Classes.

23       103.   Bumble Boost is a "social referral service" as that term is defined by New York

24   General Business Law, Section 394-c(1)(a).

25       104.   Bumble's conduct, as alleged above, violates the New York DSL, New York General

26   Business Law, Section 394-c (7)(a) through 7(e).

27

28

105.     As a direct result of Bumble's violations of the DSL, Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes suffered actual injury in the form of loss of refunds, deprivation of their rights of rescission, and the deprivation of their statutory right to exercise the option to try the service and cancel within three business days, without obligation or penalty.

106.     Bumble's violations of Section 394-c of New York's General Business Law threaten additional injury if the violations continue.  Plaintiffs Weinberger, Fischer, Wess and members of the DSL Classes have no adequate remedy at law.

107.     N.Y. G.B.L. § 394-c(9)(b) provides in part as follows:  "Any person who has been injured by reason of a violation of this section may bring an action in his or her own name to enjoin such violation, an action to recover his or her actual damages or fifty dollars whichever is greater, or both such actions."

108.     Pursuant to N.Y. G.B.L § 394-c, Plaintiffs Weinberger, Fischer, and Wess, on their own behalf and on behalf of members of the DSL Classes, seek the greater of actual or statutory damages, costs and expenses, pre and post-judgment interest.

109.     Plaintiffs Weinberger, Fischer, and Wess, on their own behalf and on behalf of members of the DSL Classes seek equitable relief against Bumble.  Pursuant to N.Y. G.B.L § 394-c(9)(b), this Court has the power to award such relief, including but not limited to, an order enjoining Bumble from undertaking any further unlawful conduct.

**SECOND CLAIM FOR RELIEF**
**Violations of Cal. Civ. Code §§ 1750, *et seq*.**
**(On behalf of Plaintiff King and the ARL Class)**

110.     Plaintiff King repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiff brings this claim on behalf of himself and on behalf of the ARL Class pursuant to the CLRA.

111.     Cal. Civ. Code § 1770(a)(14) specifically prohibits companies from "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

112.    Bumble violated, and continues to violate the CLRA by representing that it has rights and remedies that it does not have, specifically that it has the right to charge Plaintiff and class members' debit cards, credit cards, or third party payment methods without first making the statutorily required disclosures under the ARL and obtaining their affirmative consent to the agreement containing the automatic renewal terms and continuous offer terms, and through other conduct described above, in violation of the ARL.  Bumble does not have the legal right to charge for these subscriptions because at all relevant times, it was not in compliance with the ARL.

113.    Plaintiff King and members of the ARL Class reasonably relied upon Bumble's material misrepresentations and/or omissions to their detriment.  Had Bumble complied with its disclosure obligations under the ARL, Plaintiff King and members of the ARL Class would not have subscribed to Boost or would have cancelled their Boost subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.  As a result of Bumble's conduct, Plaintiff King and members of the ARL Class were damaged.

114.    On December 11, 2018, Plaintiff King sent a written demand to Bumble, on behalf of himself and members of the ARL Class, pursuant to Civil Code Section 1782(a). Thirty days have elapsed since he sent such demand to Bumble. Bumble has failed to make an appropriate correction, repair, replacement or other remedy within 30 days of the demand or within a reasonable time.

115.    Plaintiff King, on behalf of himself and the ARL Class, is therefore entitled to maintain an action for damages under Civil Code Sections 1780 and 1781 and requests actual damages, restitution, punitive damages, injunctive relief and other relief that the Court deems proper, and reasonable attorneys' fees and costs, as permitted by Civil Code Sections 1780 and 1782.  Such injunctive relief includes requiring Defendants to (i) cease representing to consumers that Bumble is entitled to automatically renew their premium subscriptions; (ii) cease representing to consumers that they are not entitled to refunds of moneys paid to Bumble for the premium subscription; (iii) cease denying consumers requests for refunds that are allowable under the law; and (iv) fully comply with the ARL.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIRD CLAIM FOR RELIEF**
**Violations of the New York General Business Law, § 349**
**Deceptive Acts and Practices**
**(On Behalf of Plaintiffs Weinberger, Fischer, Wess**
**and the DSL Class and the DSL Subclass)**

116.    Plaintiffs Weinberger, Fischer, and Wess repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiffs Weinberger, Fischer, and Wess bring this claim under N.Y. G.B.L. § 349 on their own behalf and on behalf of members of the DSL Classes.

117.    Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes are "consumers" as defined in Section 349 of the New York General Business Law.

118.    Bumble has engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. G.B.L § 349.   At all times relevant, Bumble conducted trade and commerce within the meaning of Section 349 of the New York General Business Law.

119.    Bumble's no-refund policy informs consumers that they cannot obtain a refund. However, this "no-refund" policy is in direct violation of their rights under New York General Business Law, Section 394-c(4).

120.    Bumble also failed to provide Plaintiff and class members with the statutorily required notice of consumers' "Dating Service Consumer Bill of Rights."

121.    Bumble's No Refund Policy is deceptive, materially misleading, and illegal under New York law.  Consumers, including Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes, reasonably assume that the company's no refund policy is legal.

122.    By affirmatively telling consumers that they cannot obtain refunds, Bumble chills the ability of consumers to exercise this right and to elect this option to cancel free of obligation and penalty.

123.    Further, Bumble's acts and practices were misleading in a material way.  Bumble's acts and practices as described above are per se illegal because they violate the New York Dating Services Law.

124.    Bumble's failure to inform Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes of their statutory rescission rights and other rights listed in the Dating Service Bill of Rights is misleading in a material way.

125.    Bumble's deceptive business practices adversely impacted classes of purchasers, and therefore, constitute consumer-oriented conduct under Section 349 of the New York General Business Law.

126.    As a direct result of Bumble's deceptive acts and practices, Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes suffered actual injury in the form of loss of refunds, deprivation of their rights of rescission, and the deprivation of their statutory right to exercise the option to try the service and cancel within three business days, without obligation or penalty.

127.    Bumble's violations of N.Y. G.B.L § 349 have damaged Plaintiffs Weinberger, Fischer, and Wess and members of the DSL Classes and threaten additional injury if the violations continue.

128.    The aforementioned acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

129.    Pursuant to section 349 of the New York General Business Law, Plaintiffs Weinberger, Fischer, and Wess, on their own behalf and on behalf of the DSL Classes, seek the greater of actual or statutory damages, as well as treble damages, costs and expenses, pre and post-judgment interest, and attorneys' fees.

130.    Plaintiffs Weinberger, Fischer, and Wess, on their own behalf and on behalf of members of the DSL Classes seek equitable relief against Bumble.  Pursuant to N.Y. G.B.L § 349(h), this Court has the power to award such relief, including but not limited to, an order enjoining Bumble from undertaking any further unlawful conduct.

**FOURTH CLAIM FOR RELIEF**
**Violations of California Business & Professions Code §§ 17200, *et seq*.**
**(On behalf of Plaintiff King and the ARL Class)**

131.    Plaintiff King repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiff King brings this claim on behalf of himself and on behalf of each member of the ARL Class.

132.    Defendants have, and continue to, engage in unlawful, unfair or fraudulent business acts and/or practices within the meaning of the UCL California Business & Professions Code, sections 17200, et seq. Defendants need only violate one of the three prongs of the statute to be held strictly liable.

133.    Bumble's business acts and practices are "unlawful" because they fail to comply with California's Automatic Renewal Law, Cal. Bus. Prof. Code §§ 17600-17606, and the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq., as alleged herein.

134.    Plaintiff reserves the right to identify additional provisions of the law violated by Defendants as further investigation and discovery warrants.

135.    The UCL prohibits any "unfair business act or practice."  Bumble's automatic renewal of its premium subscription without first obtaining proper consent and authorization, and its failure to provide the acknowledgement required by the Automatic Renewal Law each constitute "unfair" business acts or practices.

136.    The gravity of the harm to Plaintiff King and members of the Class outweigh any arguable utility of Bumble's conduct. Plaintiff King and ARL Class members' injuries are substantial, are not outweighed by any countervailing benefit to consumers or competition, and are not ones that consumers could have reasonably avoided.

137.    Defendants' conduct offends California public policy tethered to California's ARL and the CLRA.

138.    Defendants' actions are immoral, unethical, and/or unscrupulous, and offend established public policy, and have substantially injured Plaintiff King and other members of the ARL Class.

139.    Defendants had other reasonably available alternatives to further their legitimate business interests, other than the conduct described herein, such as obtaining affirmative consent before automatically renewing the premium subscription.

140.    As a direct and proximate result of Bumble's unlawful and unfair business practices, Plaintiff King and members of the ARL Class have suffered economic injuries.

141.    Further, Bumble's conduct with respect to the automatic renewal of Boost subscriptions as described herein violates the "fraudulent prong" of the UCL.  Such practices are likely to deceive members of the public.

142.    Plaintiff King and members of the ARL Class reasonably relied upon Bumble's material misrepresentations and/or omissions to their detriment.  Had Bumble complied with its disclosure obligations under the ARL, Plaintiff King and members of the ARL Class would not have subscribed to Boost or would have cancelled their Boost subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.

143.    As a result of Bumble's fraudulent conduct, Plaintiff King and members of the ARL Class were damaged.

144.    Pursuant to Section 17203 of the UCL, Plaintiff King, on his own behalf and on behalf of the ARL Class seeks restitution and a court order enjoining Defendants from such future misconduct and any other such orders that may be necessary to rectify the unlawful, unfair, and fraudulent business practices of Defendants.

145.    All products received from Bumble in violation of the Automatic Renewal Law, Cal. Bus. Prof. Code, §17602 constitute unconditional gifts and, therefore, Plaintiff King and members of the ARL Class seek restitution in the amount of the subscription payments. Cal. Bus. Prof. Code, §17603.

146.    Plaintiff King brings this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiff King and the ARL Class members are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

**FIFTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiffs Fischer, Weinberger, Wess**
**and the DSL Class and the DSL Subclass)**

147.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiffs Fischer, Weinberger, and Wess bring this claim on their own behalf and on behalf of members of the DSL Classes.

148.    Plaintiffs Fischer, Weinberger, and Wess and members of the DSL Classes have conferred upon Bumble a benefit including monies collected and retained by Bumble that should lawfully be refunded to them pursuant to their rescission rights under the DSL.

149.    These benefits came at the expense of Plaintiffs Fischer, Weinberger, and Wess and members of the DSL Classes.  As a result of Bumble's illegal and deceptive conduct, Plaintiffs Fischer, Weinberger, and Wess and members of the DSL Classes suffered economic harm and loss of the rescission rights under the DSL.

150.    Under principles of equity and good conscience, Bumble should not be permitted to retain the money and other benefits acquired through the unlawful conduct. All funds, revenues, and benefits unjustly received by Bumble rightfully belong to Plaintiffs Fischer, Weinberger, and Wess and members of the DSL Classes.

**SIXTH CLAIM FOR RELIEF**
**Common Count: Money Had and Received**
**In the Alternative**
**(On Behalf of Plaintiff King and the ARL Class)**

151.    Plaintiff King repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiff King brings this claim on his own behalf and on behalf of each member of the ALR Class.

152.    Bumble received money from Plaintiff King and from each member of the California ARL Class.

153.    The monies belong to Plaintiff and each member of the ARL Class.

154.    Bumble has not returned the money.

155.    Plaintiff King, on behalf of himself and members of the ARL Class seeks relief as described below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs King, Fischer, Wess and Weinberger on behalf of themselves and members of the classes they seek to represent, respectfully pray:

a)    For an order certifying this action as a class action, appointing Plaintiff King as a representative of the ARL Class; Plaintiffs Fischer, Weinberger, and Wess as representatives of the DSL Class; Plaintiffs Weinberger and Wess as representatives of the DSL Subclass; and appointing their attorneys as counsel for the Classes;

b)    For actual, statutory, and treble damages for all applicable claims in amounts to be proven at trial;

c)    For an order permanently enjoining Bumble from engaging in the unlawful practices alleged herein;

d)    For any and all other relief available under the various statutory causes of action asserted herein, including but not limited to disgorgement of profits received through Defendants' unfair business practices and restitution;

e)    For an award of attorneys' fees, costs, and expenses;

f)    For an award of pre and post-judgment interest; and

g)    For such other and further relief as may be just and proper.

### JURY TRIAL DEMAND

Plaintiffs hereby demand trial by jury of all issues so triable.

Dated: August 9, 2019                     Respectfully submitted,

By: /s/David. C. Parisi

David C. Parisi
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, California   94111

Third Amended Class Action Complaint

Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (646) 509-3913
Facsimile:   (877) 501-3346

*Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, Elena Weinberger, and Brian Wess,
individually and on behalf of a class of similarly
situated individuals*

Third Amended Class Action Complaint