UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK KING, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BUMBLE TRADING, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-06868-NC<br><br>**ORDER DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 67 |

In this putative class action, defendants Bumble Trading, Inc. and Bumble Holding, Ltd. move to dismiss certain claims in plaintiffs Nick King, Jr., Deena Fischer, Elena Weinberger, and Brian Wess's third amended complaint. *See* Dkt. No. 67. Defendants argue that the Court lacks personal jurisdiction over out-of-state plaintiffs' claims and that Plaintiffs' claims under New York law fail. *Id.*

As indicated at the November 13, 2019, hearing on Defendants' motion, the Court defers ruling on the personal jurisdiction issue pending jurisdictional discovery. *See* Dkt. No. 74. Because Defendants do not challenge the Court's jurisdiction over the claims of California plaintiffs, who also bring claims under New York law, the Court need not wait to decide Plaintiffs have stated a claim under New York law. For the following reasons, the Court concludes that it does and DENIES IN PART Defendants' motion to dismiss.

## I. Background

Defendants own and operate a mobile software application called "Bumble," which provides dating services by matching its users using a proprietary algorithm. *See* Dkt. No. 58 ("TAC") ¶¶ 18, 21. Users provide Bumble with various personal information when they sign up, such as their names, addresses, and photographs. *Id.* ¶ 20. Bumble offers a premium service called "Bumble Boost" that unlocks additional features for a recurring subscription fee. *See id.* ¶¶ 22, 23, Ex. B.

Relevant here, Plaintiffs' third amended complaint alleges that Bumble (1) violated New York's Social Referral Services Law, N.Y. Gen. Bus. Law § 394-c; (2) engaged in deceptive practices violating New York's Gen. Bus. Law § 349; and (3) was unjustly enriched. *Id.* ¶¶ 102–09, 116–30, 147–50. Defendants move to dismiss those claims. *See* Dkt. No. 67.

All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 11, 21, 22, 63.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Discussion

#### A.  New York's Social Referral Services Law

The primary issue here is whether New York's Social Referral Services Law, N.Y. Gen. Bus. Law § 394-c applies to Bumble Boost. Defendants contend that they do not match users, and, in any case, Bumble Boost is merely a paid upgrade consisting of "a package of interface enhancements." Dkt. No. 67 at 19. Defendants further argue that § 394-c was not intended to cover a service like Bumble or Bumble Boost. *See* Dkt. No. 67 at 19–22. On the other hand, Plaintiffs suggest that Defendants really provide two services: Bumble, which is free, and Bumble Boost, "a higher quality, more robust, version of [Bumble]." *See* Dkt. No. 69 at 21. Because Bumble Boost is not free, Plaintiffs argue that it falls within the definition of "social referral service" under § 394-c. *See id.*

New York's Social Referral Services Law defines a "social referral service" as "any service for a fee providing matching of members of the opposite sex, by use of computer or any other means, for the purpose of dating and general social contact." N.Y. Gen. Bus. Law § 394-c(1)(a). Here, the two relevant elements in question are whether Bumble Boost (1) provides matching (2) for a fee.

In *Chassman v. People Resources*, 151 N.Y.S.2d 589, 590 (1991), the New York Civil Court considered whether an "organization for singles" was a social referral service. That organization argued that it was simply a "'forum' for its members to match themselves." *Id.* The court rejected that argument, reasoning that "[t]he clear intent of the services provided by Defendant is to arrange for unattached persons of the opposite sex to meet each other socially." *Id.* It further reasoned that § 394-c's "use of the comprehensive phrase 'any other means' in the statute demonstrates a clear legislative intent to broadly regulate this kind of activity." *Id.*

Likewise, the New York County Supreme Court also adopted an expansive reading of § 394-c in *Great Expectations Creative Management v. Attorney-General of New York*, 616 N.Y.S.2d 917, 919–20 (1994). There, the court noted that § 394-c "is not limited to service agencies which actively match individuals, but encompasses those services for a

3

fee 'providing matching of members . . . .'" *Id.* at 919. "The plain dictionary definition of the verb 'provide' is 'to furnish, to supply or to make available.'" *Id.* at 919–20 (citing American Heritage Dictionary of English Language, 3d. ed (1992)). Thus, the court concluded that § 394-c governs both "services that actually do the matching" and "agencies which make available the means for persons to do their own matching." *Id.* at 920; *see also Doe v. Great Expectations*, 809 N.Y.S.2d 819, 820–21 (2005) (applying same reasoning). As a result, the service was required to follow § 394-c's requirements simply by acting as an intermediary and repository for its members' profiles, photographs, and videotapes. *Id.* at 919.

In contrast, the concurring opinion in *Grossman v. MatchNet, PLC*, 782 N.Y.S.2d 246, 248 (2004) adopted a more limited view of § 394-c. There, the Appellate Division of the Supreme Court of New York dealt with a website "through which subscribers have the opportunity to seek out and introduce themselves to other . . . subscribers." *Id.* at 248. That website allowed any visitor to view subscriber profiles and photographs for free, but only allowed paid subscribers to contact other subscribers via e-mail. *Id.* A two-justice concurrence reasoned that the website did not "take[] an assertive role in matching single persons with one another[,]" but instead adopted a "passive [role], more akin to those who provide personal advertisements." *Id.* Thus, the concurrence concluded that § 394-c did not apply to the website's services. *Id.* at 248–49.

*Chassman* and *Great Expectations* are more persuasive. As noted in *Chassman*, § 394-c is broad. The statute regulates "any service for a fee providing matching of members . . . by use of computer or *any other means* . . . ." N.Y. Gen. Bus. Law § 394-c(1)(a) (emphasis added). On its face, the statute does not require that the service actually match its members. It only requires that the service "provid[e] matching." The ordinary meaning of "provide" is "to supply or make available." *See Provide*, Merriam-Webster Dictionary (Oct. 19, 2019), https://www.merriam-webster.com/dictionary/provide. And by acting as a repository or intermediary, a service "make[s] available" the means by which its members can match.

4

Although the concurrence in *Grossman* is the only appellate opinion interpreting § 394-c, it is not especially persuasive for two reasons. First, the opinion has limited weight. It was not adopted by the panel majority and it also was not a decision by New York's highest court. Second, *Grossman*'s characterization of the website in question as "passive, more akin to those who provide personal advertisements" is not convincing. *Grossman*, 782 N.Y.S.2d at 248. The website in *Grossman* did not merely display dating profiles or photographs, but instead acted as a gatekeeper by controlling distribution of its members' contact information. *See id.* ("[*O*]*nly* a subscriber, upon payment of the $ 28.50 one-month subscription fee, may send e-mail correspondence to other subscribers.") (emphasis added). By contrast, newspapers and magazines that display personal advertisements do nothing but host the advertisements.

Here, the Plaintiffs' allegations are sparse. Plaintiffs' sole allegation regarding Defendants' matching service is that their application uses a "proprietary algorithm" to "match users through the App." TAC ¶ 21. Although Plaintiffs' complaint would be better served with additional detail (*c.f.*, *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1087 (C.D. Cal. 2015) (alleging that "Tinder utilizes the user's location . . . together with the user's profile, to suggest potential matches within a geographical radius."), their reference to Defendants' use of a "proprietary algorithm" and the allegation (in the form of an email apparently sent by Defendants) that Bumble Boost "Re-Match[es] Expired Matches" allows the Court to reasonably infer that Defendants are "providing matching" at this stage. *See* TAC ¶ 21, Ex. B.

Similarly, the parties' disagreement as to whether Bumble Boost itself provides matching or if it simply adds "interface enhancements" is an inherently factual dispute. But all allegations of material fact must be assumed true and construed in the light most favorable to plaintiffs on a motion to dismiss (*Cahill*, 80 F.3d at 337–38) and Plaintiffs have alleged that Bumble Boost provides "Re-Matching [of] Expired Matches" (*see* TAC, Ex. B). Thus, under the plain language of § 394-c(1)(a), Bumble Boost is a "social referral service" and § 394-c applies.

5

Defendants' remaining arguments to the contrary are not persuasive. First, Defendants contend that § 394-c, when originally enacted in 1971, was intended to "prevent[] the practice of dating referral services that required their customers to sign long-term contracts involving significant sums of money." *Grossman*, 782 N.Y.S.2d at 248. These services often failed to provide any matches or provided matches that were "totally incompatible" and "preyed upon the lonely and rejected members of society." *Grossman*, 782 N.Y.S.2d at 248.

Defendants argue that its application is totally different from the social referral services of yore—Bumble is "a social networking application that allow users to peruse an unlimited number of profiles for free." Dkt. No. 67 at 22 (emphasis omitted). And Bumble does not recommend incompatible matches because it simply does not recommend any matches. Defendants' arguments miss the mark, however, because Plaintiffs do not allege that Bumble is regulated by § 394-c. They contend that *Bumble Boost* is a social referral service regulated by § 394-c. The fact that the base Bumble application is free is beside the point. Furthermore, as explained above, Defendants' contention that neither Bumble nor Bumble Boost actually "match" its users may well be true. But the Court must accept Plaintiffs' factual allegations as true on a motion to dismiss and Plaintiffs attached an email allegedly from Bumble proclaiming that Bumble Boost "Re-Match[es] Expired Matches." *See* TAC, Ex. B. The only reasonable inference that can be drawn from that email at this stage is that Bumble Boost "matches" users.

Next, Defendants contend that applying § 394-c to Bumble and other similar online networking applications would be unworkable. The Court disagrees.

Defendants first point to § 394-c(3), which provides that "[e]very contract for social referral service which requires payment . . . shall provide that the seller of such service must furnish to the purchaser a specified certain number of social referrals per month." Because Bumble does not provide any social referrals and matching is wholly user-driven, Defendants argue, it is impossible for them to comply with § 394-c(3). But all § 394-c(3) requires is that Defendants "furnish . . . a *specified* certain number of social referrals per

6

month." It does not require Bumble or similar services to provide any specific number; it merely requires those services to live up to their promises if they choose to make them.

Similarly, § 394-c(8), which requires social referral service contracts to "specify the distance which the buyer is willing to travel to meet any social referral," does not seem like an impossible requirement. Defendants contend that their users themselves set a geographic range of the profiles they view. *See* Dkt. No. 67 at 24. It is unclear why that specified range would not be "the distance which the buyer is willing to travel." N.Y. Gen. Bus. Law § 394c(8).

Defendants next point to § 394-c(6), which requires social referral services to "promptly return[] . . . to the purchaser by certified mail" the "information and material of a personal or private nature acquired from a purchaser" when their contract expires. Because all material submitted to Bumble is stored electronically, it would be absurd and burdensome to force Defendants to physically mail that material to their users upon expiration of their contract.[1] This argument has some force but is ultimately not persuasive. It is not literally impossible for Defendants to comply with § 394-c(6). Rather, Defendants would incur significant costs and may have to alter their services to comply with § 394-c(6). But that fact does not mean the law should not apply, especially when Defendants specifically chose to be governed by New York law. *See* TAC, Ex. A §12; *see also* Dkt. No. 53 (order granting Defendants' motion to dismiss and enforcing choice-of-law provision).

The same is true of provisions that are "ripe for abuse," such as § 394-c(7), which requires social referral service contracts to provide for a three-day cancellation and refund period. Dkt. No. 67 at 23. Defendants' complaint that its users may abuse that provision by cancelling their subscription after taking full advantage of Bumble Boost is empty when Defendants chose to be governed by New York law.

---

[1] The New York Legislature has apparently recognized this absurdity and both of its houses have drafted bills seeking to amend various provisions of § 394-c to more accurately address social referral services in the 21st century. *See* S.B. 6300, 242nd Ann. Legis. Sess. (N.Y. 2019); A.B. 8196, 242nd Ann. Legis. Sess. (N.Y. 2019).

Lastly, Defendants point to § 394-cc, titled "Internet Dating Safety." *See* Dkt. No. 67 at 24. That section requires internet dating services to provide certain safety awareness notifications to its users. *See* N.Y. Gen. Bus. Law § 394-cc(2). It defines an "internet dating service" as "a person or entity directly or indirectly in the business, for profit, of offering, promoting or providing access to dating, relationship, compatibility, matrimonial or social referral services principally on or through the internet." *Id.* § 394-cc(1)(a). Defendants argue that Bumble and Bumble Boost are more accurately captured by § 394-cc's definition of an "internet dating service" than § 394-c's definition of a "social referral service." *See* Dkt. No. 67 at 24. And because the Court must construe the broader statutory scheme harmoniously and § 394-cc's definition of "internet dating service" more accurately captures Defendants' services, Defendants argue that § 394-c should not be read to encompass Bumble or Bumble Boost. *Id.* Otherwise, Defendants argue, § 394-cc would be made redundant. *See* Dkt. No. 71 at 18.

The Court disagrees. The two statutes are not mutually exclusive and serve different purposes. Section 394-c places limits and restrictions on social referral service contracts aimed to prevent fraud and predatory business practices, while § 394-cc requires safety awareness notifications. There is no indication that only one set of rules apply to any given service.

Moreover, § 394-cc regulates a broader swath of services. That section applies to any entity that runs a dating business for profit, while § 394-c applies only to services "for a fee." *Compare* N.Y. Gen. Bus. Law § 394-c(1)(a) *with id.* § 394-cc(1)(a). As Defendants succinctly note, § 394-cc would regulate ostensibly free services that generate profit by selling advertising space, while § 394-c only regulates paid services. *See* Dkt. No. 71 at 19. In short, § 394-c and § 394-cc are not mutually exclusive and the existence of § 394-cc does not caution against applying § 394-c to Defendants' services.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' claim under N.Y. Gen. Bus. Law § 394-c.

### B. N.Y. Gen. Bus. Law § 349 and Unjust Enrichment

Under N.Y. Gen. Bus. Law § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." The parties agree that this claim is derivative of Plaintiffs' § 394-c claim and rises or falls with that claim. *See* Dkt. No. 67 at 25–26; Dkt. No. 69 at 30. Because Plaintiffs' § 394-c claim survives, this claim survives as well.

Likewise, Plaintiffs' unjust enrichment claim also rises or falls with their § 394-c claim. This claim is predicated on Plaintiffs' theory that they were entitled to a refund under § 394-c(7) and that Defendants' no-refund provision in their service contract is illegal. *See* TAC ¶¶ 147–150; Dkt. No. 69 at 30. As with Plaintiffs' § 349 claim, their unjust enrichment claim also survives.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' claim under N.Y. Gen. Bus. Law § 349 and for unjust enrichment.

### IV. Conclusion

The Court DENIES IN PART Defendants' motion to dismiss Plaintiffs' first claim under N.Y. Gen. Bus. Law § 394-c, third claim under N.Y. Gen. Bus. Law § 349, and fifth claim for unjust enrichment. The Court defers ruling on the personal jurisdiction challenge under the completion of jurisdictional discovery.

**IT IS SO ORDERED.**

Dated: November 20, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge