UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK KING, et al., <br> Plaintiffs, <br> v. <br> BUMBLE TRADING, INC., et al., <br> Defendants. | Case No. 18-cv-06868-NC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; ORDER GRANTING MOTIONS TO SEAL** <br><br> Re: Dkt. Nos. 67, 78, 79 |

Pending before the Court is defendants Bumble Trading, Inc. and Bumble Holding, Ltd.'s motion to dismiss out-of-state plaintiffs' claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *See* Dkt. No. 67 at 11–18. At issue is whether the Court has personal jurisdiction over the claims of the out-of-state named plaintiff, Brian Wess, and those of absent out-of-state class members. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. The Court also GRANTS the parties' administrative motions to seal.

**I.  Background**

Defendants own and operate a mobile software application "Bumble" that provides dating services for its users. *See* Dkt. No. 58 ("TAC") ¶¶ 18, 21. Plaintiffs Nick King, Jr., Deena Fischer, Elena Weinberger, and Brian Wess accuse Bumble of violating New York and California law by failing to provide statutorily required disclaimers and contract

provisions in connection with Bumble's premium service, "Bumble Boost." *See id.* ¶¶ 2, 25–50. Plaintiffs seek to represent a nationwide class of Bumble Boost purchasers. *Id.* ¶ 87.

On September 9, 2019, Defendants moved to dismiss certain claims in Plaintiffs' third amended complaint. *See* Dkt. No. 67. The Court denied in part Defendants' motion to dismiss in-state plaintiffs' claims under New York law, but deferred ruling on whether the Court lacks personal jurisdiction over out-of-state plaintiffs' claims to give the parties time to conduct jurisdictional discovery.[1] *See* Dkt. No. 76. Jurisdictional discovery is now complete. *See* Dkt. Nos. 77, 80.

## II. Legal Standard

To determine whether the exercise of personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of the state in which it sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). District courts in California may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the Constitution. Cal. Code Civ. Proc. § 410.10. Accordingly, under the Due Process Clause of the Fourteenth Amendment, the defendant must have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). Personal jurisdiction may be general or specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "[I]n the absence of an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012) (quotation marks omitted); *see also Data Disc,*

---

[1] Defendants do not argue that the Court lacks specific personal jurisdiction over the named California plaintiffs and absent California class members.

2

*Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977) ("If the court determines that it will receive only affidavits or affidavits plus discovery materials . . . a plaintiff must make only a prima facie showing of jurisdictional facts . . . ."). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citations and quotation marks omitted). Likewise, "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

## III. Discussion

Defendants argue that the Court does not have personal jurisdiction over the claims of the out-of-state named plaintiff, Brian Wess, and those of absent out-of-state class members. Plaintiffs raise three arguments in response: (1) Defendants waived any challenge to personal jurisdiction; (2) the Court has general jurisdiction; and (3) the Court has specific jurisdiction. The Court addresses each in turn.

### A. Forum Selection Clause

Plaintiffs first argue that Defendants waived any challenge to the Court's personal jurisdiction by virtue of the forum selection clause in their terms of use. *See* Dkt. No. 69 at 11–13. As relevant here, Bumble's forum selection clause states that:

> By using the App, you are consenting to the exclusive jurisdiction of the courts of the United States and the State of New York. You agree that such courts shall have in personam jurisdiction and venue and waive any objection based on inconvenient forum.

Dkt. No. 58-1 ("Terms") § 12.

The Court disagrees. That provision unambiguously refers to the user's waiver of personal jurisdiction. The word "you" is used throughout the Terms to specifically reference the user, not Defendants. *See, e.g.*, Terms § 1. The provision limits the agreement to waive personal jurisdiction and venue to "you," and says nothing about

3

personal jurisdiction over Defendants. *Id.* § 12. Accordingly, Defendants did not waive their challenge to personal jurisdiction through the Terms.

**B. General Jurisdiction**

General jurisdiction exists when a defendant's activities in the forum are "continuous and systematic." *Daimler*, 571 U.S. at 126 (quoting *Int'l Shoe*, 326 U.S. at 317). For corporate defendants, general jurisdiction exists at its "place of incorporation and principal place of business." *Id.* at 137. Specific jurisdiction exists when the lawsuit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Id.* at 127 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)) (alterations in original).

Plaintiffs argue that the Court has general personal jurisdiction over Defendants because their principal places of business are in California. *See* Dkt. No. 77 at 7. The principal place of business, or the corporation's "nerve center," is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).[2]

According to Plaintiffs, Defendants' principal places of business are in California because, according to documents filed with the California Secretary of State, Bumble Trading's principal executive office is in San Francisco and both Bumble Trading and Bumble Holding have high level officers who work or live in Los Angeles. *Id.* at 8. In response, Defendants contend that they have never been based in California. *See* Dkt. No. 80 at 2. Relying on two declarations by Caroline Roche, Bumble's first employee, Defendants assert that the California Secretary of State documents were filed in error and that Bumble Trading was always headquartered in Texas. *Id.* Defendants also assert that Bumble Holding is headquartered in the United Kingdom. *See* Dkt. No. 67 at 12.

---

[2] Although *Hertz* defined "principal place of business" in the context of citizenship for diversity jurisdiction, courts have used the *Hertz* formulation of "principal place of business" for personal jurisdiction purposes as well. *See, e.g., Google Inc. v. Rockstar Consortium U.S. LP*, No. 13-cv-5933-CW, 2014 WL 1571807, at *1 n.1 (N.D. Cal. Apr. 17, 2014).

4

Plaintiffs argue that Roche's declaration should be stricken because she lacks personal knowledge regarding the Secretary of State filings. *See* Dkt. No. 77 at 4–6.

Even if the Court strikes Roche's declaration, however, the Secretary of State filings alone do not establish Bumble Trading's principal place of business. In *Hertz*, the Supreme Court "reject[ed] suggestions . . . that the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'" 559 U.S. at 97.

As additional proof, Plaintiffs offer employment agreements and other documents, which show that some of Bumble Trading's executive officers live and work in California. However, Defendants provide uncontradicted evidence showing that Whitney Wolfe Herd, Bumble Trading's CEO, lives and works out of Texas. Although the Court generally resolves conflicts over statements contained in the parties' affidavits in Plaintiffs' favor (*see Schwarzenegger*, 374 F.3d at 800), Plaintiffs' evidence is insufficient to establish California as the principal place of business. As the Supreme Court noted in *Hertz*, even if "the bulk of a company's business activities visible to the public take place in [California], while its top officers direct those activities just across the river in [Texas], the 'principal place of business' is [Texas]." 559 U.S. at 96. Plaintiffs provide no evidence that the California executives, not Wolfe Herd, "direct, control, and coordinate" Bumble Trading's activities. *Hertz*, 559 U.S. at 80. Thus, Plaintiffs have not shown that Bumble Trading's principal place of business is in California.

Likewise, as to Bumble Holding, Plaintiffs merely point to corporate documents showing that some of its officers or shareholders live and work in California. *See, e.g.*, Dkt. Nos. 77-4 at 4, 77-6 at 5. But Plaintiffs provide no evidence suggesting that California is where Bumble Holding's "overall direction, control, and coordination" takes place. *Hertz*, 559 U.S. at 96. Accordingly, the Court does not have general jurisdiction over Defendants.

## C. Specific Jurisdiction

A court may exercise specific personal jurisdiction over a nonresident defendant if (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities of the nonresident defendant; and (3) the exercise of jurisdiction over the nonresident defendant is reasonable. *Schwarzenegger*, 374 F.3d at 802.

### 1. California Plaintiffs and Class Members

Here, Defendants do not argue that the Court lacks personal jurisdiction over King, Fischer, Weinberger, and putative California class members' claims. *See* Dkt. No. 67. Nor could they. King, Fischer, Weinberger, and California class members are California citizens who subscribed to Bumble Boost. *See* TAC ¶¶ 6–7, 9, 53, 67, 79. By entering into a contract with those Plaintiffs, Defendants purposefully availed themselves of the privilege of conducting activities in California. *See Schwarzenegger*, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.").

Defendants focus their arguments on personal jurisdiction over the claims of putative out-of-state class members and Wess, a New York citizen. The Court addresses Defendants' arguments below.

### 2. Out-of-State Class Members

Defendants argue that the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2016) precludes personal jurisdiction over the claims of out-of-state class members. As Defendants recognize, this Court previously addressed this issue in *Fitzhenry-Russell v. Dr. Pepper Snapple Group*, No. 17-cv-0564-NC, 2017 WL 4224732 (N.D. Cal. Sept. 22, 2017). In that case, the Court held that *Bristol-Myers*, which dealt with a mass tort action, was materially distinguishable from class actions like this

6

one. *See Fitzhenry-Russel*, 2017 WL 4224732, at *5. Because unnamed class members "may be parties for some purposes and not for others," the Court declined to apply *Bristol-Myers* to class actions and did not consider unnamed class members for jurisdictional purposes. *Id.* (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 9–10 (2002)).

Since the Court decided *Fitzhenry-Russell*, other courts in this district have confronted the issue. Although some courts have applied *Bristol-Myers* to class actions (*see, e.g.*, *In re Samsung Galaxy Smartphone Marketing and Sales Practices Litigation*, No. 16-cv-6391-BLF, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018)), others have not (*see, e.g.*, *Pascal v. Concentra, Inc.*, No. 19-cv-2559-JCS, 2019 WL 3934936, at *4–6 (N.D. Cal. Aug. 20, 2019)). The Ninth Circuit and the Supreme Court, however, have yet to decide this issue. *Cf. Bristol-Myers*, 137 S. Ct. at 1783–84 ("[W]e leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.").

Defendants urge the Court to reconsider its decision in *Fitzhenry-Russell* for two reasons. Neither are persuasive.

First, Defendants argue that the due process and federalism concerns in *Bristol-Myers* "is the same in the class and mass action contexts." Dkt. No. 67 at 15–16. Although the Court agrees that the due process and federalism concerns in *Bristol-Meyers* are relevant to class actions (*see Fitzhenry-Russell*, 2017 WL 4224732, at *4), there are significant procedural differences between class and mass actions that address those concerns. In particular, class actions are subject to the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Those requirements act as due process safeguards to ensure fairness. *See Allen v. ConAgra Foods, Inc.*, No. 13-cv-1279-WHO, 2018 WL 6460451, at *7 (N.D. Cal. Dec. 10, 2018).

Second, Defendants argue that applying *Bristol-Myers* to preclude personal jurisdiction over non-resident class members' claims would "protect[] against what would otherwise be nearly unfettered forum shopping that could lead to absurd results." Dkt. No. 67 at 16. According to Defendants, failing to apply *Bristol-Myers* would force "[a]

7

defendant that sells even one good or service in a state [to] face litigation in that state" even if it "almost exclusively" sells its good or services elsewhere. *Id.*

But the analysis for specific jurisdiction already reflects those concerns. The exercise of specific jurisdiction "must comport with traditional notions of fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. It may not be reasonable to exercise personal jurisdiction in a case where all but one class members reside outside the forum state. This, however, is not that case. Defendants provide no evidence suggesting that class members are so concentrated in a single state that the exercise of personal jurisdiction outside that state is unreasonable. Rather, as they noted themselves, Defendants "provide[] services to individuals across the nation" and seek to impose "a uniform national standard to govern its agreements with users." Dkt. No. 44 at 12; *see Sloan v. General Motors, LLC*, 287 F. Supp. 3d 840, 862–63 (N.D. Cal. 2018) (finding no unreasonable burden in the exercise of personal jurisdiction in a nationwide class action where the defendant sought to apply Florida law over a nationwide class and also sought transfer to the Eastern District of Michigan for the application of non-Michigan law).

Accordingly, the Court will follow its prior decision in *Fitzhenry-Russell* and finds that it has specific jurisdiction over the out-of-state class members' claims.

### 3. Wess

Whether the Court can assert specific jurisdiction over Wess's claims presents a more difficult question. Unlike the out-of-state class members, Wess is a named plaintiff and must be considered a party for all purposes, including personal jurisdiction.

Plaintiffs assert that specific jurisdiction over Wess's claims is proper because various aspects of the Bumble application's product design, user experience, or marketing was developed in California. *See* Dkt. No. 77 at 7. But these activities are not relevant to the specific jurisdiction analysis for Wess. Wess's claims do not "arise[] out of" Bumble's product design or marketing. *Schwarzenegger*, 374 F.3d at 802. Wess's claims arise out of Defendants' decision to deny refunds. *See* TAC ¶¶ 102–09, 116–30.

8

As an alternative, Plaintiffs argue that the Court should assert pendent personal jurisdiction over Wess's claims. "[A] court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Co. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). "When a defendant must appear in a forum to defend against one claim, it is often reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of operative facts." *Id.* at 1181. "Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction." *Id.* at 1181–82. Pendent jurisdiction serves the interests of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties." *Id.*

Plaintiffs rely heavily on *Sloan* and *Allen*. In *Sloan*, a court in this district applied *Action Embroidery* to find pendent jurisdiction over named out-of-state plaintiffs in a putative nationwide class action where those plaintiffs asserted the same claims as in-state plaintiffs. 287 F. Supp. 3d at 861–62. Three factors were key to the court's analysis. First, the court noted that it likely had jurisdiction over absent out-of-court class members. *Id.* at 861. Second, the court noted that the additional burden on the defendant was *de minimis* due to the substantial overlap between the out-of-state plaintiffs' claims and the in-state plaintiffs' claims. *Id.* at 861–62. Third, the court noted that if it declined to exercise jurisdiction, piecemeal litigation would result. *Id.* at 862. These factors established a "sufficient nexus between the claims of the 5 out-of-state plaintiffs and [the defendant's] contacts with California over which [it] has jurisdiction" to justify the exercise of pendent jurisdiction. *Id.*; *see also Allen*, 2018 WL 6460451, at *7–8 (following *Sloan* and finding pendent jurisdiction over nonresident named plaintiffs' claims).

However, *Sloan*, at least when the above-cited order was issued, is materially distinguishable from this case. *Sloan* involved a putative class action asserting federal

9

warranty claims. And as the Ninth Circuit noted in *Action Embroidery*, pendent jurisdiction is "typically found where one or more *federal* claims . . . are combined in the same suit with one or more state claims . . . ." 268 F.3d at 1181–82 (emphasis added). By contrast, Plaintiffs assert no federal claims here. Indeed, when the *Sloan* plaintiffs' federal claims were dismissed, the court revisited its prior holding and declined to assert pendent jurisdiction without a federal question "hook." *See Sloan v. Gen. Motors LLC*, No. 16-cv-7244-EMC, 2019 WL 6612221, at *8–10 (N.D. Cal. Dec. 5, 2019). Other district courts have similarly concluded that pendent jurisdiction may be inappropriate in diversity cases. *See id.* at *9 (collecting cases); *cf. Fitzhenry-Russell*, 2017 WL 4224723, at *4 (rejecting argument that *Bristol-Myers* did not apply to federal courts sitting solely in diversity).

On the other hand, *Allen* adopted *Sloan*'s reasoning even though there were no federal claims in that case. *See Allen*, 2018 WL 6460451, at *1, 7–8. But *Allen* did not consider whether a federal question was necessary before a court could exercise pendent jurisdiction.[3]

There is some appeal to asserting pendent personal jurisdiction in this case. Wess and the California named plaintiffs all assert the same claims under the same New York laws.[4] Their claims arise from the same nucleus of alleged facts. Requiring Wess to separately litigate his claims on an individual basis would be an extremely inefficient use of judicial resources and could subject Defendants to inconsistent obligations.

And despite district courts concluding otherwise, it is not clear that *Action Embroidery* limited pendent jurisdiction to federal question cases. *See* 368 F.3d at 1181 ("[p]endent personal jurisdiction is *typically* found" in federal question cases) (emphasis

---

[3] In any case, the *Allen* plaintiffs' victory was short-lived. In October 2019, the *Allen* court reconsidered its decision to assert pendent jurisdiction after it denied certification of a nationwide class. *See Allen v. ConAgra Foods, Inc.*, No. 13-cv-1279-WHO, 2019 WL 5191009, at *2–3 (N.D. Cal. Oct. 15, 2019) ("Now that plaintiffs have failed to achieve certification of a nationwide class, the foundation for my decision to exercise of pendent personal jurisdiction is no longer present.").

[4] King and the putative California sub-class assert two claims under California law. *See* TAC ¶¶ 110–15, 131–46. All other claims are asserted by Fischer, Weinberger, and Wess on behalf of the putative nationwide class.

10

added). Likewise, it is also far from clear that the Supreme Court intended to "so starkly change the landscape of class actions." *Allen*, 2018 WL 6460451, at * 8 n.5; *see Bristol-Myers*, 137 S. Ct. at 1783–84 (leaving open "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court"); *see also id.* at 1788–89 & n.4 (Sotomayor, J., dissenting).

However, the weight of authority weighs heavily against the exercise of pendent jurisdiction in a diversity case such as this one. *See Sloan*, 2019 WL 6612221, at *9. Because the exercise of pendent jurisdiction is discretionary (*see Action Embroidery*, 368 F.3d at 1181 ("the actual exercise of personal pendent jurisdiction in a particular case is within the discretion of the district court")) and Wess could "proceed" as an unnamed class member if he were dismissed from this lawsuit, the Court declines to create a split of authority and will not assert pendent jurisdiction over Wess's claims.

### 4. Certification for Appeal

As an alternative to dismissal, Defendants request that the Court certify the issue of personal jurisdiction for an interlocutory appeal. *See* Dkt. No. 67 at 17–18. Plaintiffs oppose certification. *See* Dkt. No. 69 at 16–17.

Under 28 U.S.C. § 1292(b), a district court may certify an order for immediate appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." A substantial ground for difference of opinion exists where "novel and difficult questions of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

The Court agrees with Defendants that there is a substantial ground for difference of opinion as to the personal jurisdiction issue. As mentioned above, courts within this district have reached different conclusions as to whether *Bristol-Myers* applies to class actions and that question remains open.

However, the Court does not find that an interlocutory appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Plaintiffs also

seek to represent California class members and Defendants do not contest the Court's personal jurisdiction over their claims. Thus, even if the Ninth Circuit were to reverse the Court's finding of personal jurisdiction as to Wess and the out-of-state class members, this lawsuit would continue to march towards trial on every claim in the third amended complaint.

Accordingly, the Court declines to certify this order for interlocutory appeal under 28 U.S.C. § 1292(b).

### D. Motions to Seal

In connection with their supplemental briefing on personal jurisdiction, both parties move to seal various declarations, exhibits, and portions of Plaintiffs' brief referencing those documents. *See* Dkt. Nos. 78, 79. Those documents include a deposition transcript, corporate statements, discovery responses, and employment agreements.

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Access to motions and their attachments that are "more than tangentially related to the merits of a case" may be sealed only upon a showing of "compelling reasons" for sealing. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101–02 (9th Cir. 2016). On the other hand, motions and records that are only tangentially related to the merits of the case may be sealed for "good cause." *Auto Safety*, 809 F.3d at 1101. The "'good cause' standard presents a lower burden for the party wishing to seal documents than the 'compelling reasons' standard." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). To satisfy good cause, the party wishing to seal documents must make a "particularized showing" of harm. *See Kamakana*, 447 F.3d at 1180; *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) ("good cause" requires the party to show "that specific prejudice or harm will result"). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (internal quotation marks and citation omitted).

Here, the documents sought to be sealed are only tangentially related to the merits of the case. Each document relates to the question of personal jurisdiction, not the underlying merits of Plaintiffs' consumer protection claims. Thus, the "good cause" standard for sealing applies.

The Court finds that there is good cause to seal the documents in question. Each document contains non-public information relating to Defendants' internal processes for decision making or employment terms. Revealing that information could cause Bumble to suffer competitive harm. Accordingly, the Court GRANTS both parties' motions to seal.

## IV. Conclusion

The Court GRANTS Defendants' motion to dismiss for lack of personal jurisdiction as to Wess. Wess is terminated as an individual plaintiff. The Court DENIES Defendants' motion to dismiss for lack of personal jurisdiction as to absent out-of-state class members. The Court declines to certify this order for interlocutory appeal. The Court GRANTS both parties' motions to seal.

**IT IS SO ORDERED.**

Dated: February 11, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge