David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (646) 509-3913
Facsimile: (877) 501-3346

Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, and Elena Weinberger,
individually, and on behalf of a class of
similarly situated individuals

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NICK KING, JR., DEENA FISCHER, and ELENA WEINBERGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BUMBLE TRADING, INC., and BUMBLE HOLDING LTD.,<br><br>Defendants. | Case No.  5:18-cv-06868-NC<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** July 15, 2020<br>**Time:** 1:00 p.m.<br>**Courtroom:** 5<br>**Judge:** Nathanael Cousins<br>**Trial Set:** Not Yet<br>**Complaint Filed:** November 13, 2018 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on July 15, 2020 (or on any other date the Court may set) at 1:00 p.m., in Courtroom 5 in the San Jose Division of the USDC of the Northern District of California, before the Hon. Nathanael Cousins, Plaintiffs Nick King, Deena Fischer, and Elena Weinberger (collectively, "Plaintiffs") will and hereby do move for preliminary approval of the class settlement with Defendants Bumble Trading Inc. and Bumble Holding Ltd. (collectively "Defendants" or "Bumble") under Rule 23(c) and (e) of the Federal Rules of Civil Procedure for entry of the submitted proposed order: (i) certifying the DSL Settlement Class and the ARL Settlement Class for settlement purposes ("Settlement Classes"); (ii) appointing Nick King, Jr. as class representative of the ARL Settlement Class and Elena Weinberger and Deena Fischer as class representatives of the DSL Settlement Class; (iii) appointing Grace E. Parasmo and Yitzchak H. Lieberman of Parasmo Lieberman Law and David C. Parisi and Suzanne Havens Beckman of Paris & Havens LLP as Class Counsel; (iv) preliminarily approving the proposed Settlement; (v) approving the form and manner of notice to the Settlement Class; (vi) approving JND Legal Administration as the Settlement Administrator; and (v) scheduling a Final Approval Hearing.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, the authorities cited therein and the supporting declarations, the settlement agreement, the proposed notice (including Email Notice, Direct Mail Notice, a Settlement Website, and a press release), the proposed Orders for Preliminary and Final Approval, the oral argument of counsel, and any other matter that may be submitted at the hearing.  Further, this Motion is made on the grounds that the settlement agreement is the product of arm's-length, good-faith negotiations; is fair, reasonable, and adequate to the settlement classes, and should be preliminarily approved, as discussed in the attached memorandum.

Dated: June 22, 2020         By:  ___/s/David C. Parisi_____
                                   David C. Parisi (162248)
                                   dcparisi@parisihavens.com
                                   Suzanne Havens Beckman (188814)

ii

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

shavens@parisihavens.com
PARISI & HAVENS LLP
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
100 Pine Street, Suite 1250
San Francisco, CA  94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile:  (877) 501-3346

David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (646) 509-3913
Facsimile: (877) 501-3346

Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, and Elena Weinberger,
individually, and on behalf of a class of
similarly situated individuals

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| NICK KING, JR., DEENA FISCHER, and ELENA WEINBERGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BUMBLE TRADING, INC., and BUMBLE HOLDING LTD.,<br><br>Defendants. | Case No.  5:18-cv-06868-NC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** July 15, 2020<br>**Time:** 1:00 p.m.<br>**Courtroom:** 5<br>**Judge:** Nathanael Cousins<br>**Trial Set:** Not Yet<br>**Complaint Filed:** November 13, 2018 |

iv

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

# TABLE OF CONTENTS

I.    Introduction ............................................................................................................1

II.   Background .............................................................................................................1

      A.    Summary of the litigation...........................................................................1

      B.    Settlement negotiations and mediation .......................................................3

III.  The Settlement........................................................................................................4

      A.    Class definition...........................................................................................4

      B.    Monetary relief ...........................................................................................4

      C.    Injunctive relief ..........................................................................................5

      D.    Scope of the release ....................................................................................5

IV.   Legal Standard for Preliminary Approval of a Class Settlement ...........................6

V.    The Court Should Conditionally Certify the Classes for Settlement Purposes......7

      A.    Plaintiffs satisfy Rule 23(a) requirements .................................................7

            1.    The classes are numerous ................................................................7

            2.    Plaintiffs' claims are typical of the classes they seek to represent.................7

            3.    Plaintiffs and their counsel have fairly and adequately protected the
                  classes' interests ..............................................................................8

      B.    Rule 23(a)(2) and 23(b)(3) requirements are satisfied ...............................9

            1.    Common questions predominate for both classes ............................9

            2.    A class action is the superior dispute resolution mechanism .......10

VI.   The Proposed Settlement is Fair, Adequate, and Reasonable ..............................11

      A.    The Agreement is the result of informed, arms-length, non-collusive
            negotiations and a mediator's proposal.....................................................12

      B.    Plaintiffs' case is strong but continued litigation poses significant risks.................14

      C.    The amount offered in Settlement falls within the range of possible approval.........15

      D.    The extensive discovery completed and the stage of the proceedings supports
            preliminary approval .................................................................................17

v

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

E.      The experience and views of counsel support preliminary approval ....................... 18

VII.   The Procedural Guidance For Class Settlements Are Satisfied ............................................. 18

Guidance 1:  Differences, range and plan of allocation ........................................................ 18

Guidance 2: The proposed Settlement Administrator ............................................................ 20

Guidance 3: The proposed settlement notices satisfy Rule 23(c)(2) and (e)
        requirements ........................................................................................................ 20

Guidance 4 and 5:  Opt-outs or objections ............................................................................ 22

Guidance 6: The intended attorneys' fees and costs request ................................................. 22

Guidance 7: The proposed settlement and proposed service awards do not unjustly
        favor any class members, including the named plaintiffs ......................................... 23

Guidance 8: *Cy pres* awardee .............................................................................................. 24

Guidance 9:  The proposed timeline ..................................................................................... 25

Guidance 10: The Class Action Fairness Act........................................................................ 25

Guidance 11:  Past distributions ........................................................................................... 25

VIII.   Conclusion................................................................................................................... 25

vi

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
   2017 WL 1806583 (N.D. Cal. May 5, 2017) .......................................................................... 9

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ........................................................................................ 6, 13

*Amchem Prods. Inc. v. Windsor*,
   521 U.S. 591 (1997) .............................................................................................................. 7

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .................................................................................. 13, 18

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................................................. 13

*Bradach v. Pharmavite, LLC*,
   735 F. App'x 251 (9th Cir. 2018) ....................................................................................... 10

*Burnthorne-Martinez v. Sephora USA, Inc.*,
   No. 4:16-CV-02843-YGR, 2018 WL 5310833 (N.D. Cal. May 16, 2018) ......................... 23

*Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*,
   249 F.R.D. 334 (N.D. Cal. 2008) .......................................................................................... 8

*Carlotti v. ASUS Computer Int'l*,
   2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) .................................................................... 19

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
   No. 17-md-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ............................... 23

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .............................................................................................. 12

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ..................................................................... 14

*Custom LED, LLC v. eBay, Inc*,
   No. 12-CV-00350-JST, 2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) .............................. 16

*Custom LED, LLC v. eBay, Inc*,
   No. 12-CV-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ............................... 21

*Dennis v. Kellogg Co.*,
   697 F.3d 858 (9th Cir. 2012) .............................................................................................. 24

*Dupler v. Costco Wholesale Corp.*,
    249 F.R.D. 29 (E.D.N.Y. 2008) ...................................................................... 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir.1998)............................................................... *passim*

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................... 12

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ......................................................................... 6

*In re Hyundai and Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) (en banc).......................................................... *passim*

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    No. 16-CV-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ...................... 6

*Johnson v. Pluralsight*,
    LLC, 728 F. App'x 674 (9th Cir. 2018) ...................................................... 10, 13

*Just Film Inc. v. Buono*,
    847 F.3d 1108 (2017) .................................................................................. 11

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ....................................................................... 22

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)...................................................................... 15

*Lopez v. Stages of Beauty, LLC*,
    307 F. Supp. 3d 1058 (S.D. Cal.2018) ............................................................. 10

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007)....................................................................... 14

*McCabe v. Six Continents Hotels, Inc.*,
    No. 12-CV-04818 NC, 2015 WL 3990915 (N.D. Cal. June 30, 2015)...................... 16

*McKnight v. Uber Techs., Inc.*,
    No. 14-CV-05615-JST, 2017 WL 3427985 (N.D. Cal. Aug. 7, 2017) ..................... 24

*In re Med. Capital Sec. Litig.*,
    2011 WL 5067208 (C.D. Cal. July 26, 2011) ................................................... 10

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000)........................................................................ 17

*Meyer v. Bebe Stores, Inc.*,
    No. 14-0267-YGR, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017).............................. 11

viii

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

*In re Nexus 6P Prod. Liab. Litig.*,
   No. 17-CV-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ..................................21

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 ............................................................................................................... 16

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015).......................................................................................22, 23

*Patel v. Trans Union, LLC*,
   308 F.R.D. 292 (N.D. Cal. 2015) ..................................................................................... 14

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014)....................................................................................... 18

*Radcliffe v. Experian Info. Solutions, Inc.*,
   715 F.3d 1157 (9th Cir. 2013)............................................................................................ 14

*Ramirez v. TransUnion LLC*,
   951 F.3d 1008 (9th Cir. 2020) ............................................................................................ 7

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010)........................................................................................ 7

*Rodman v. Safeway Inc.*,
   2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ............................................................... 19

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)......................................................................................*passim*

*Roes, 1–2 v. SFBSC Mgmt.*,
   944 F.3d 1035 (9th Cir. 2019)............................................................................................ 12

*Schofield v. Delta Air Lines, Inc.*,
   No. 18-CV-00382-EMC, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019).......................... 13

*Shin v. Plantronics, Inc.*,
   No. 18-CV-05626-NC, 2019 WL 2515827 (N.D. Cal. June 17, 2019) .......................... 12

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994)............................................................................................. 20

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)...............................................................................6, 7, 12

*In re Tableware Antitrust Litig.*,
   484 F.Supp.2d 1078 (N.D. Cal. 2007) ........................................................................... 15

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016)............................................................................................ 9

ix

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ...................................................................................... 10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ................................................................................................. 9

*Weeks v. Google LLC*,
    No. 5:18-CV-00801-NC, 2019 WL 8135562 (N.D. Cal. July 22, 2019) ..................... 24

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
    571 F.3d 953 (9th Cir. 2009) ....................................................................................... 9

*Williamson v. Mcafee, Inc.*,
    No. 5:14-CV-00158-EJD, 2016 WL 4524307 (N.D. Cal. Aug. 30, 2016) ................... 21

*Williamson v. McAfee, Inc.*,
    No. 5:14-cv-00158-EJD (N.D. Cal. Feb. 3, 2017), ECF No. 114 ............................... 16

*Wolin v. Jaguar Land Rover N. Am.*,
    LLC, 617 F.3d 1168 (9th Cir. 2010) ............................................................................ 7

*Xiufang Situ v. Leavitt*,
    240 F.R.D. 551 (N.D. Cal. 2007) ................................................................................. 9

**State Cases**

*Grossman v. MatchNet PLC*,
    10 A.D.3d 577 (N.Y. App. 2004) ................................................................................ 14

*Hansen v. Tinder Inc.*,
    2018 Cal. Super. LEXIS 123 (Superior Court, San Luis Obispo) (April 11, 2018) ................... 16

**Federal Statutes**

CAFA, 28 U.S.C. § 1715 ................................................................................................ 25

**State Statutes**

Cal. Civil Code § 1542 .................................................................................................... 6

Cal. Civ. Code § 1694 ..................................................................................................... 2

Cal. Bus. & Prof. Code § 17200 (UCL). ...................................................................... 1, 2

Cal. Bus. & Prof. Code § 17601 (ARL) ................................................................... *passim*

x

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

Cal. Civ. Code § 1750 (CLRA)..................................................................................2, 10

N.Y. Gen. Bus. Law § 349 ...........................................................................................2, 3

N.Y. Gen. Bus. Law § 394-c ............................................................................................1

**Rules**

Fed. R. Civ. P. 23 ...................................................................................6, 11, 12, 20

Fed. R. Civ. P. 23(a) .................................................................................................1, 7

Fed. R. Civ. P. 23(a)(1) ...............................................................................................7

Fed. R. Civ. P. 23(a)(2) ...............................................................................................9

Fed. R. Civ. P. 23(a)(3) ...............................................................................................7

Fed. R. Civ. P. 23(a)(4) ...............................................................................................8

Fed. R. Civ. P. 23(b) ....................................................................................................7

Fed. R. Civ. P. 23(b)(3) .......................................................................................1, 9, 10

Fed. R. Civ. P. 23(c) ....................................................................................................7

Fed. R. Civ. P. 23(c)(2) ...........................................................................................20, 22

Fed. R. Civ. P. 23(c)(2)(B) .........................................................................................20

Fed. R. Civ. P. 23(c)(3) ..............................................................................................22

Fed. R. Civ. P. 23(e) ...............................................................................................12, 20

Fed. R. Civ. P. 23(e)(1) ..............................................................................................21

Fed. R. Civ. P. 23(e)(2) ..........................................................................................11, 12

Fed. R. Civ. P. 23(e)(3) ..............................................................................................11

Fed. R. Civ. Pro. 23(g) .................................................................................................8

**Other Authorities**

Accessible at https://www.ftc.gov/system/files/documents/reports/consumers-class-
      actions-retrospective-analysis-settlement-
      campaigns/class_action_fairness_report_0.pdf (last visited June 12, 2020)................20

xi

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

## ISSUES TO BE DECIDED

1. Do the proposed settlement classes meet the requirements for certification under Fed. R. Civ. P. 23(a) and (b)(3)?

2. Is the proposed settlement agreement fair, adequate, and reasonable thus warranting preliminary approval?

3. Does the proposed notice plan satisfy the requirements of Fed. R. Civ. Pro. 23(C)(2)(B) and Rule 23(e)?

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.     Introduction**

3

After hard-fought litigation and several key legal disputes which shaped the scope and

4

breadth of the pleadings in this case, Defendants Bumble Trading Inc. and Bumble Holding Ltd.

5

(Bumble) and Plaintiffs Nick King, Jr., Elena Weinberger, and Deena Fischer have reached a class

6

settlement that provides $22.5 million plus robust injunctive relief to consumers across the nation

7

who purchased Bumble's premium service, Boost.

8

The proposed Settlement Classes—the DSL Settlement Class consisting of Boost purchasers

9

nationwide and the ARL Settlement Class consisting of Boost purchasers in California who were

10

charged auto-renewal fees —should be certified because they satisfy Federal Rule of Civil

Procedure 23(a) and (b)(3).

11

The Settlement's monetary component alone compares favorably to other class settlements

12

premised on violations of the California Automatic-Renewal Law[1] and is the only *nationwide*

13

settlement under the New York Dating Services Law.[2]  Under the Agreement, Bumble will establish

14

a non-reversionary, settlement fund of $22.5 million to be divided amongst all Settlement Class

15

Members who submit valid claim forms, after deducting amounts the Court may approve for notice

16

and administration costs, attorneys' fees and expenses, and Class Representatives' service awards.

17

DSL Settlement Class members that file valid claims will receive a *pro rata* share based on

18

statutory damages under the DSL.  ARL Settlement Class members that file valid claims will

19

receive a *pro rata* share proportionate to the amounts they were charged in auto-renewal fees.

20

This cash recovery, combined with an injunction that will require Bumble to implement

21

meaningful changes to the purchase flow on the Bumble platform and to Bumble's Terms &

22

Conditions—including new provisions that afford consumers across the nation with refund and

23

cancellation rights—renders the Settlement eminently fair, reasonable, and adequate, warranting the

24

Court's preliminary approval.

**II.    Background**

25

**A.     Summary of the litigation**

26

On November 13, 2018, Plaintiffs filed this action on behalf of themselves and similarly

27

28

---

[1]    Cal. Bus. & Prof. Code §§17600-17606 (ARL)
[2]    N.Y. Gen. Bus. Law § 394-c (DSL)

1

situated individuals who purchased Boost in California.  Dkt. 1.  Mr. King alleged that Bumble

automatically renewed his subscription without properly disclosing and without obtaining his

consent to the automatic renewal offer terms in violation of the ARL.  *Id.*, ¶¶ 54-65.  Plaintiffs

alleged that Bumble's Terms & Conditions failed to notify California consumers of their right under

California's Dating Service Law, Cal. Civ. Code § 1694, *et seq.* ("California DSL") to cancel their

contracts for dating services within three business days and obtain a refund.  *Id.,* ¶¶ 25-37.

Bumble moved to dismiss the original complaint on Article III standing and other grounds.

*See* Dkt. No. 23.  Plaintiffs subsequently amended their complaint.  Dkt. 25.  On April 5, 2019, by

stipulation of the parties, Plaintiffs filed a second amended complaint to add allegations and a claim

for money had and received.  Dkt. 42.  Bumble again moved to dismiss arguing that Plaintiffs did

not sufficiently allege claims under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code

§§ 1750, *et seq.*, the California Unfair Competition Act ("UCL"), Cal. Bus. & Prof. Code §§ 17200,

*et seq.*, and for money had and received.  Dkt. 44.  It also moved to dismiss all claims based on a

choice-of-law provision in the Terms & Conditions that designated New York law.  Dkt. 44.

On July 8, 2019, the Court ruled on Bumble's motion to dismiss.  Dkt. 53.  In determining

the enforceability of the choice-of-law provision, the Court considered whether the statutes

represent fundamental public policies of California.  The Court concluded that the ARL represents a

fundamental public policy of California, but the California DSL does not.  Accordingly, the Court

dismissed, without leave to amend, Plaintiffs' claims relying upon the California DSL and denied

the motion to dismiss Plaintiffs' claims under the CLRA and UCL, as well as claims for money had

and received which were premised on violations of the ARL.  *Id.*

On August 9, 2019, by stipulation of the parties, Plaintiffs filed the third amended

complaint.  Dkt 58.  Ms. Weinberger and Ms. Fischer alleged their claims under New York's DSL,

N.Y. Gen. Bus. Law § 349 and added a claim for unjust enrichment.  Along with a New York

resident, Brian Wess, who joined as a named plaintiff, they sought to represent a nationwide class of

Boost purchasers.  Mr. King reasserted claims for ARL violations.

On September 9, 2019, Bumble moved to dismiss the New York claims arguing that it did

not violate the DSL because Bumble Boost is not a "social referral service" under the statute.  Dkt.

67.  Bumble also moved to dismiss for lack of personal jurisdiction as to absent out-of-state class

2

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

1   members and the New York-based plaintiff, and in the alternative, moved for certification of the

2   question to the Ninth Circuit.

3          On November 20, 2019, the Court denied Bumble's motion to dismiss Plaintiffs' claims

4   under the DSL, N.Y. Gen. Bus. Law § 349 and their claims for unjust enrichment.  Dkt. 76.  The

5   Court deferred ruling on personal jurisdiction, granted jurisdictional discovery, and ordered

6   supplemental briefing.  On February 11, 2020, the Court granted Bumble's motion to dismiss for

7   lack of personal jurisdiction as to the New York based plaintiff.  However, the Court denied

8   Bumble's motion to dismiss as to absent out-of-state class members and declined to certify the issue

9   for appeal to the Ninth Circuit.  Dkt. 84.

10         During the litigation, the Parties engaged in wide-ranging discovery on jurisdiction, class

11  certification, and merits.  Plaintiffs' counsel served, and Bumble responded to, 73 document

12  requests, 14 interrogatories, and 14 requests for admissions.  Parisi Decl., ¶ 3.  Plaintiffs also

13  subpoenaed Apple and Google for relevant class data and policies.  *Id.*  Discovery issues were

14  highly contested and resulted in numerous telephonic meet-and-confers over the course of the

15  litigation, an order setting discovery limits, and the filing of two discovery briefs.  *Id.*  Plaintiffs

16  deposed Bumble's current Chief of Staff and former Chief Operations Officer for Bumble Trading,

17  Inc.  *Id.*  Plaintiffs also responded to Bumble's document discovery requests.  *Id.*

**B.    Settlement negotiations and mediation**

18         On April 2, 2020, the Parties participated in a mediation before the Hon. Edward Infante,

19  Ret.  Parisi Decl., ¶ 5.  The Parties prepared detailed mediation briefs outlining their positions on

20  the strengths and weaknesses of the case.  *Id.*  The Parties went into the mediation with substantial

21  differences of opinion regarding the appropriate terms of settlement and accordingly did not resolve

22  the lawsuit at the initial mediation session.  *Id.*  Over the following weeks, while the Parties

23  continued to litigate, they engaged in the mediation process with Judge Infante, who helped bridge

24  the gap between the Parties' positions.  *Id.*  Further briefing was provided to Judge Infante on the

25  more divisive issues in mediation.  *Id.*  On April 23, 2020, Judge Infante made a six-point

26  mediator's recommendation to settle on a class-wide basis, which included a total contribution from

27  Bumble of $22.5 million and was accepted by all Parties in a double-blind process on April 24,

28  2020.  *Id.*  For the next eight weeks, the Parties negotiated the fine points of the settlement

agreement language and the notice program. *Id*.

### III.    The Settlement

#### A.    Class definition

The DSL Settlement Class is defined as:

> all persons nationwide who purchased Bumble Boost during the Settlement Class Period. (Settlement, § 1.9.)

The ARL Settlement Class is defined as:

> all persons who purchased, within California, during the Settlement Class Period, Bumble Boost and had their credit card, debit card, and/or a third-party payment account charged as part of Bumble's automatic renewal program or continuous service program. (Settlement, §1.5.)

#### B.    Monetary relief

The Parties have agreed to a total of $22.5 million in *non-reversionary*, monetary benefits to be distributed to the Settlement Classes after deduction for administrative costs, service awards to Plaintiffs, and any fee and expense award to Class Counsel.  Each DSL Settlement Class member who submits a valid claim will receive a proportionate and equal share of the DSL Net Settlement Fund.[3]  Settlement, § 2.4.1.  Each ARL Settlement Class member who submits a valid claim will receive a *pro rata* share of the ARL Net Settlement Fund proportionate to the amount they were charged under an automatic renewal or continuous service program for Boost during the Settlement Class Period.  Settlement, § 2.4.2.

Payments to Settlement Class Members will be made by their preferred payment method, by check or electronically via Zelle, PayPal, or Venmo.  Settlement, § 2.4.4.  Aside from being a cost-effective and efficient method of distributing money to class members, the option for electronic payments allows the claims process to be contactless, an additional benefit during the ongoing pandemic.

Residual funds will be distributed to Settlement Class Members.  For DSL Settlement Class members, the additional payment, when combined with the initial payment, will not exceed $100. Settlement, § 2.5(c).  For ARL Settlement Class members, when combined with the initial payment

---

[3]     The DSL Net Settlement Fund represents 85% and the ARL Net Settlement Fund represents 15% of the fund after deduction for administrative costs, service awards to Plaintiffs, and any fee and expense award to Class Counsel.  Settlement, §§ 1.20, 1.4.

received, will not exceed the amount the ARL Settlement Class member was charged in auto-renewal fees.  Settlement, § 2.5(b).  Any monies left after the second distributions will be paid to a Court-approved *cy pres* recipient.  Settlement, § 2.6.

### C.   Injunctive relief

Bumble consents to the entry of an injunction that requires it to implement certain business practices for a period of 18 months.  Settlement, § 2.8.  The reformed business practices are specifically designed to satisfy the injunctive relief demands in the operative complaint.  Dkt. 58 at 24-25.  Bumble denies that it is legally obligated to make these changes but is doing so as part of the Settlement.

For the DSL Settlement Class, Bumble agrees that as long as New York law is the law governing its relationship with Bumble users (as it has been throughout the Settlement Class Period), Bumble's Terms & Conditions will inform consumers nationwide of their right to cancel their Boost subscription and obtain a full refund within three business days of their initial purchase. In the event that Bumble changes the governing law, it agrees to give those who reside in 11 states with comparable dating services laws notice of their right to cancel, within three business days, and obtain a full refund, under their state's dating service law.  Settlement, § 2.8 (a) and (b).

For the ARL Settlement Class, Bumble agrees to change its subscription purchase flow in the Bumble App for users that purchase subscriptions directly from Bumble to include additional disclosures regarding the recurring nature of the subscription and explain Bumble's full cancellation policy.  *Id.*, § 2.8(c).  Further, post-purchase emails sent by Bumble to users that purchase subscriptions directly from Bumble will disclose the price and period of the plan purchased, include a statement that the plan will auto-renew unless cancelled within 24 hours prior to the end of the plan period, and provide instructions on cancellation.  *Id.*, § 2.8(d).

### D.   Scope of the release

In exchange for the benefits provided by the Settlement, Plaintiffs and Settlement Class Members will release claims that directly track the allegations in the operative complaint and thus share an identical factual predicate with the claims in the case.  Under the Agreement, ARL Settlement Class members will release Released ARL Claims only; and likewise, DSL Settlement Class members will release Released DSL Claims only.  The Released DSL Claims means "any and

1   all claims..." (including unknown claims) that "arise or relate to the allegations in the operative

2   complaint and that occurred during the Settlement Class Period relating to the purchase of Bumble

3   Boost or denial of a refund for the purchase of Bumble Boost."  Settlement, § 1.41.  Similarly, the

4   Released ARL Claims means "any and all claims..." (including unknown claims) that "arise or

5   relate to the allegations in the operative complaint and that occurred during the Settlement Class

6   Period relating to the 'automatic' renewal of any Bumble Boost subscription and the disclosures,

7   acknowledgments, advertisements, trials, and features of any 'automatic' renewal of any Bumble

8   Boost subscription."  Settlement, § 1.40.  The releases also include a waiver under California Civil

9   Code § 1542 for claims that could have been alleged based on the same facts underpinning the

10  operative complaint.  Settlement, § 6.4.  Accordingly, the release furthers the goals of finality by

11  ensuring that claims that arise from the same set of facts are not relitigated and comports with Ninth

12  Circuit precedent requiring that released claims be based on the "identical factual predicate."  *See*

    *Hesse v. Sprint Corp*., 598 F.3d 581, 590–92 (9th Cir. 2010).[4]

13  **IV.    Legal Standard for Preliminary Approval of a Class Settlement**

14          The Ninth Circuit maintains a "strong judicial policy" that favors settlement, particularly

15  "where complex class action litigation is concerned."  *In re Hyundai and Kia Fuel Econ. Litig.*, 926

16  F.3d 539, 556 (9th Cir. 2019) (en banc) (internal citations omitted.)  But "settlement class actions

17  present unique due process concerns for absent class members" (*Hanlon v. Chrysler Corp.,* 150

18  F.3d 1011, 1026 (9th Cir.1998)); thus "the district court has a fiduciary duty to look after the

19  interests of those absent class members."  *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

20          First, the Court must determine whether a Rule 23 settlement class may be certified.  *Staton*

21  *v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003).  If a Rule 23 class exists, the Court may approve a

22  proposed class-action settlement after finding that it is "fair, reasonable, and adequate."  Fed. R.

23  Civ. P. 23.  "The court need not ask whether the proposed settlement is ideal or the best possible; it

24  determines only whether the settlement is fair, free of collusion, and consistent with the named

25  plaintiffs' fiduciary obligations to the class."  *Hanlon,* 150 F.3d at 1026–27 (9th Cir. 1998).

26  _____

27  [4]      Additionally, for clarity's sake, instead of releasing the generic "affiliates", the Agreement
    lists a group of affiliated companies that are released. Settlement, § 1.42.  *Cf. Johnson v. Fujitsu*

28  *Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *4 (N.D. Cal. May 11,
    2018).

6

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

1

2

3

4

5

## V.     The Court Should Conditionally Certify the Classes for Settlement Purposes

Certification of a class under Rule 23(c) is a prerequisite to preliminary approval of the Agreement. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Rule 23(a) requires numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). A plaintiff must then establish that one of the bases for certification in Rule 23(b) is met.[5]

6

### A.     Plaintiffs satisfy Rule 23(a) requirements

7

#### 1.     The classes are numerous

8

9

10

11

12

13

14

Rule 23(a)(1) requires that "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Based on discovery obtained during the litigation, Plaintiffs' independent investigation, the collaborative work of the Parties, and analysis of Bumble's user data, the Parties have determined that the proposed DSL Settlement Class consists of ████████████████████████████ and the proposed ARL Settlement Class consists of over ████████ Parisi Decl., ¶ 4. Both classes thus meet the numerosity requirement. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (numerosity generally found with at least 40 class members).

15

#### 2.     Plaintiffs' claims are typical of the classes they seek to represent

16

17

18

19

20

21

22

To satisfy Rule 23(a)(3), plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (punctuation, citation omitted). This standard is "permissive," and claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

23

24

25

26

Mr. King seeks to represent the ARL Settlement Class. His claims regarding Bumble's auto-renewal disclosures, or lack thereof, are typical because they arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and his claims were based on the same legal theory." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir.

27

28

---

[5]     "The criteria for class certification are applied differently in litigation classes and settlement classes...manageability is not a concern in certifying a settlement class where, by definition, there will be no trial". *In re Hyundai & Kia Fuel Econ. Litig*, 926 F.3d at 556-57.

7

1   2020) (internal citations omitted) (typicality satisfied where claims based on the same legal theory).

2   Similarly, the claims of Plaintiffs Weinberger and Fischer, who seek to represent the DSL

3   Settlement Class, are typical because they arise from Bumble's Terms & Conditions, which failed

4   to give notice and provide the right to cancel and obtain a refund as required under the DSL. *See*

5   *e.g.*, Dkt. 58 ¶¶ 53-86 and Dkt. 87 at 10-14.

6        **3.        Plaintiffs and their counsel have fairly and adequately protected the
                    classes' interests**

7        Rule 23(a)(4) requires that Plaintiffs fairly and adequately protect the classes' interests.  The

8   adequacy test poses two questions: "(1) are there conflicts between plaintiffs and their counsel and

9   the other members of the settlement class, and (2) will plaintiffs and their counsel vigorously

10  prosecute the class action?"  *See Hanlon*, 150 F.3d at 1020.

11       Plaintiff King seeks to represent the ARL Settlement Class and Plaintiffs Weinberger and

12  Fischer seek to represent the DSL Settlement Class.  There is no indication of any conflicts between

13  Plaintiffs and other members of the classes they seek to represent.  To the contrary, Plaintiffs share

14  the same claims as their respective Settlement Classes and have the same interest in recovering

15  money from Bumble and initiating change to Bumble's practices.  Named Plaintiffs are adequate.

16       "Adequate representation is usually presumed in the absence of contrary evidence."

17  *Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal.

18  2008) (quoted, followed by *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 306 (N.D. Cal. 2015)).[6]

19  Plaintiffs' counsel have diligently and skillfully investigated and litigated this case.  They are well-

20  versed in the applicable laws and experienced in litigating consumer class actions.  *See* Parisi Decl.,

21  ¶¶ 9-10; Parasmo Decl., ¶¶ 3-4.  Counsel have represented the classes on a contingency-fee basis

22  and have provided vigorous representation resulting in significant monetary and injunctive relief for

23  members of the Settlement Classes.  Counsel are thus adequate.

24

25

26  _____

27  [6]     Fed. R. Civ. Pro. 23(g) lists additional factors a court may consider when determining
    counsel's adequacy and the advisory committee's notes instruct that "[i]n evaluating prospective

28  class counsel, the court should weigh all pertinent factors.  No single factor should necessarily be
    determinative in a given case."

**B.     Rule 23(a)(2) and 23(b)(3) requirements are satisfied**

**1.     Common questions predominate for both classes**

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Common questions of law or fact "must be of such a nature [they are] capable of classwide resolution"; that is, that the answer to such common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation, punctuation omitted).  Commonality can be "easily satisf[ied]" where class members "all base their claims on the same legal theory."  *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) (citation, punctuation omitted).

Relatedly, Rule 23(b)(3) focuses on the relationship between the common and individual issues.  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).  "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3)."  *Hanlon,* 150 F.3d at 1019.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Id.* at 1022.

"Predominance is not, however, a matter of nose-counting.  Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class."  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citation omitted).  Therefore, even if just one common question predominates, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately."  *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at 557 - 58 (internal citations omitted)[7].

Here, common questions go to the heart of Bumble's liability for ARL violations and outweigh any individualized issues that may exist.  Whether the Boost purchase process conforms to the requirements for adequate notice and affirmative consent under the ARL is a common,

---

[7]      Courts often undertake the commonality and predominance analyses simultaneously. *See e.g. Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2017 WL 1806583, at *6 (N.D. Cal. May 5, 2017).  *See also* 7 Newberg on Class Actions § 22:69 (5th ed.) (same).

9

predominating question because the ARL Settlement Class' claims will stand or fall based on the answer to this question. *See* Cal. Bus. & Prof. Code §§ 17601-17604. Moreover, under Plaintiffs' theory of liability, the ARL converts Bumble subscriptions offered in violation of the ARL into "unconditional gifts" and makes it illegal to charge anything for such subscriptions. *See e.g. Johnson v. Pluralsight*, LLC, 728 F. App'x 674, 677 (9th Cir. 2018). Thus, liability for the proposed ARL Settlement Class boils downs to a common, predominating legal question—whether the unconditional gift provision of the ARL applies to Bumble Boost— a digital product. *See e.g.,* Dkt. 44 n.6; Dkt. 46 n.18; Dkt. 49 n.8. And, whether consumers would have acted differently (*i.e.*, cancelled) had the proper disclosures been made before their purchase, is of no moment. *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058, 1070 (S.D. Cal.2018).

Likewise, the CLRA and UCL claims, which are derivative of the alleged ARL violations, turn on the same predominating common questions. Indeed, "CLRA and UCL claims are ideal for class certification because they will not require the court to investigate class members' individual interaction with the product" but instead turn on the objective question of whether a reasonable consumer would be misled. *Bradach v. Pharmavite, LLC,* 735 F. App'x 251, 254–55 (9th Cir. 2018).

The DSL Settlement Class also hinges on common, predominating questions: (1) whether Boost is a "social referral service" under the DSL (*see* Dkt. 76) and (2) whether Bumble's Terms & Conditions violate the DSL. *See e.g., Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action treatment".) *In re Med. Capital Sec. Litig.*, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (same).

Thus, Plaintiffs satisfy the commonality and predominance factors for each class.

### 2.   A class action is the superior dispute resolution mechanism

"A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234-35 (9th Cir. 1996). Here, there is no realistic dispute mechanism alternative for Plaintiffs and Settlement Class members. *See Hanlon*, 150 F.3d at 1023 (assessing superiority under Rule 23(b)(3) "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution"). Settlement Class Members are

10

required to bring their claims against Bumble in the courts of New York State regardless of their state of residency.  *See e.g.,* Dkt. 58-1.[8]  And consumers nationwide are likely unaware of their cancellation and refund rights under the New York law.

The Ninth Circuit has explained that class actions are superior when the "'risks, small recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually pursue their claims." *Just Film Inc. v. Buono*, 847 F.3d 1108, 1123 (2017) (citation omitted).  The amount of statutory damages and restitution for violations of the ARL and the DSL in this case "are not sufficient to compensate the average consumer for the time and effort that would be involved in bringing small claims against a national corporation." *Meyer v. Bebe Stores, Inc.*, No. 14-0267-YGR, 2017 WL 558017, at *4 (N.D. Cal. Feb. 10, 2017) (finding superiority under the TCPA where statutory damages would amount to $500 to $1500 per violation).  Indeed, "[t]hese considerations are at the heart of why the Federal Rules of Civil Procedure allow class actions in cases where Rule 23's requirements are satisfied." *Just Film Inc.*, 847 F.3d at 1123.  A class action is superior here.

## VI.    The Proposed Settlement is Fair, Adequate, and Reasonable

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Rule 23, as amended, directs the court to consider four overarching factors in evaluating fairness, whether:

> (A)  the class representatives and class counsel have adequately represented the class;
> (B)  the proposal was negotiated at arm's length;
> (C)  the relief provided for the class is adequate, taking into account:
>> (i)  the costs, risks, and delay of trial and appeal;
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Advisory Committee notes to these recent amendments, recognizing that each circuit has devised its own list of factors to weigh the fairness of class settlements, make clear that adding these specific factors to Rule 23(e)(2) was not meant "to displace any factor, but rather to focus the

---

[8]    As the claims at issue are for relatively small sums of money, individual plaintiffs would not meet the threshold for Federal Court jurisdiction.

11

court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes, Fed. R. Civ. P. 23, subdiv. (e)(2) (2018); *see also Shin v. Plantronics, Inc.,* No. 18-CV-05626-NC, 2019 WL 2515827, at *4 (N.D. Cal. June 17, 2019). "Accordingly, the Court should apply the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

When making this determination, district courts may consider several factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon*, 150 F.3d at 1026; *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004).

When parties "negotiate a settlement agreement before the class has been certified, settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1–2 v. SFBSC Mgmt.*, 944 F.3d 1035, 1043 (9th Cir. 2019) (internal quotations omitted). The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

### A. The Agreement is the result of informed, arms-length, non-collusive negotiations and a mediator's proposal

On preliminary approval, the court evaluates the means by which the settlement was achieved. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). The proposed Settlement is a product of extensive arms-length negotiations, including a formal mediation and continued negotiations before an experienced and highly respected mediator and former Chief Magistrate Judge of this District. Parisi Decl., ¶ 5. When the Parties reached an impasse, Judge Infante provided a mediator's recommendation, which was ultimately accepted by the Parties. *Id.*

12

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

1   These settlement negotiations occurred while this Action was being heavily litigated and with the

2   benefit of formal discovery that was conducted.  *Id.*

3       "The assistance of an experienced mediator in the settlement process confirms that the

4   settlement is non-collusive."  *Schofield v. Delta Air Lines, In*c., No. 18-CV-00382-EMC, 2019 WL

5   955288, at *6 (N.D. Cal. Feb. 27, 2019) (internal quotations omitted).  And the "parties' use of

6   mediation, which took place after significant discovery, and their reliance on the mediator's

7   proposal in settling demonstrates the parties considered a neutral opinion in evaluating the strength

8   of their arguments ... and weigh[s] in favor of settlement."  *Bellinghausen v. Tractor Supply Co*.,

9   306 F.R.D. 245, 257 (N.D. Cal. 2015).

10      The absence of signs of potential collusion also supports preliminary approval of the

11  Settlement.  Signs of potential collusion include: (1) "when counsel receive a disproportionate

12  distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e.,

13  an arrangement where defendant will not object to a certain fee request by class counsel); and (3)

14  when the parties create a reverter that returns unclaimed fees to the defendant."  *Allen v. Bedolla,*

15  787 F.3d 1218, 1224 (9th Cir. 2015) (*quoting In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d

16  935, 946 (9th Cir. 2011).)

17      Here, there is no 'clear sailing' agreement as Bumble reserves the right to challenge any fee

18  request.  Settlement, § 8.1.  The Settlement is also not dependent on any fee amount Counsel may

19  be awarded in the case.  *Id.*  Finally, the Settlement Fund is non-reversionary.  *Id.* at §§2.5, 2.6.

20      Moreover, the proposal treats Settlement Class Members equitably relative to each other.

21  The payment structures (detailed above in section III.B.) are dependent on the relief authorized by

22  the claims at issue for each class.  For example, the distribution for the DSL Settlement Class is a

23  *pro rata* share of statutory damages authorized by the DSL.  Conversely, recovery for the ARL

24  Settlement Class is dependent on the total amount each ARL Settlement Class member was charged

25  in auto-renewal fees—as the ARL converts any subscriptions offered in violation of its terms into

26  unconditional gifts.  *See Johnson,* 728 F. App'x at 677.

27      Class Representatives will seek service awards which "are fairly typical in class action

28  cases" and do not render a settlement unfair or unreasonable.  *See Rodriguez,* 563 F.3d at 958.

    Class Representatives are also treated equitably relative to other class members because the service

13

1   awards are dependent on the Court's approval and are not conditions of the Agreement.  Settlement,

2   §§ 7.7, 9.4.; *Cf. Radcliffe v. Experian Info. Solutions, Inc.,* 715 F.3d 1157, 1167 (9th Cir. 2013).

**B.      Plaintiffs' case is strong but continued litigation poses significant risks**

3   
4       Both sides were confident in the strength of their respective positions.  Aside from the

general risks and increased costs of continued litigation, this case presented significant risks to class

5   recovery.  At the outset, Bumble's affirmative defense of class action waiver poses a risk to class

6   recovery.  *See* Dkt. 87.  While the legal risks of enforcing the purported waiver may differ for a

7   California and a nationwide class, the thorny choice-of-law issues that could be raised, namely—

8   whether a particular states' law would apply nationwide, and if so, which states' law would apply—

9   does not guarantee a favorable outcome for the nationwide DSL Settlement Class.  Indeed, at times,

10  courts have found that being required to conduct this analysis can itself defeat class certification and

11  raise questions about the viability of a nationwide DSL class.  *See Lozano v. AT&T Wireless Servs.,*

12  *Inc.*, 504 F.3d 718 (9th Cir. 2007) (finding no abuse of discretion in denying class certification of

13  nationwide class where applicability of class action waiver would require state-by-state analysis).

14      Further, Plaintiffs' position that the ARL's gift provision applies to digital products like

15  Boost is an open legal issue.  Plaintiffs also acknowledge that Bumble has maintained throughout

16  the litigation that the purchase process for Boost complies with the ARL.  There are also significant

17  risks relating to whether the Court or jury would find that Boost "provides matching" under the

18  DSL.  *See e.g.,* Dkt. 76 at 5:22-28.  And if Boost is regulated by the DSL, Bumble maintained that

19  purchasers who liked the service received the benefit of the bargain and could not recover under the

20  statute.  *See Grossman v. MatchNet PLC*, 10 A.D.3d 577, 577 (N.Y. App. 2004).

21      Moreover, had the Court certified the nationwide DSL Settlement Class for litigation,

22  Bumble would likely have renewed its request to certify the question of personal jurisdiction over

23  absent out-of-state class members to the Ninth Circuit.  *See* Dkt. 84 at 11.  Irrespective of the

24  strengths of Plaintiffs' position, a grant of leave to appeal after class certification or a post-trial

25  appeal in the case could have dragged out this litigation for an extended period.[9]  While Plaintiffs

26  
---

27  [9]     *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.,* 2008 WL
    4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and

28  expense of continuing with the litigation and will produce a prompt, certain, and substantial
    recovery for the Plaintiff class.").

14

1  maintain that the Settlement Classes are suitable for class action treatment and would likely win on

2  the merits, Bumble vigorously disputes this assessment.  Thus, actual risk exists that could preclude

3  class member recovery altogether if the parties continue to litigate.  On the other hand, the proposed

4  Agreement balances the risks, costs, and potential delays.  It provides class members with

5  substantial monetary and injunctive relief that is both certain and immediate, thereby eliminating

6  any risk that class members would be left recovering nothing at all.

### C.     The amount offered in Settlement falls within the range of possible approval

7        When evaluating whether the amount offered is adequate, "courts primarily consider

8  plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware*

9  *Antitrust Litig.,* 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007).  "The fact that a proposed settlement

10  may only amount to a fraction of the potential recovery does not, in and of itself, mean that the

11  proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska*

12  *P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998).  The Court's assessment of the likelihood of success is

13  "nothing more than an amalgam of delicate balancing, gross approximations and rough justice."

14  *Rodriguez,* 563 F.3d at 965 (9th Cir. 2009) (internal quotation marks omitted).  "In reality, parties,

15  counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by

16  considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances

17  of obtaining it, discounted to present value." *Id.*

18        The proposed Agreement falls well within the range of reasonableness.  Here, Bumble's

19  potential liability, based on statutory damages of $50 per subscriber ███████████████████

20  ████████████████████████████████████████████████████████████████

21  ████████████████████   Parisi Decl., ¶ 8.  And Bumble indicated that if Plaintiffs were to secure

22  a favorable judgment, it would challenge any statutory damages award as excessive and violative of

23  due process, thus posing another risk to full recovery for the Settlement Classes.  *See e.g.*, Dkt. 87 at

24  29.

25        Yet, Plaintiffs secured significant relief for the classes.  Based on current estimates (and

26  assuming the requested attorneys' fee, expenses, and service fees are awarded), claiming members

27  of the DSL Settlement Class will receive approximately $21 to $44.  Given the DSL's statutory

28  damage provision of $50, this cash recovery is excellent, and at the low end, represents more than

15

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

40% of a DSL Settlement Class member's potential statutory damages award recoverable at trial.

Analyzing the DSL Settlement Class recovery through a *per capita* lens ██████████████

█████████████████   This compares favorably to other class settlements of claims with statutory

damages.  *See e.g., McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2015 WL

3990915, at *10 (N.D. Cal. June 30, 2015) (approving settlement where the *per capita* recovery

represented 0.3% of the maximum statutory damages award in call recording case).

This monetary relief for DSL Settlement Class members is available to all Boost purchasers

nationwide.  That consumers in states other than New York—that do not offer similar refund and

cancellation rights and remedies—are able to obtain relief in this Settlement (based on the choice-

of-law provision in Bumble's Terms & Conditions) makes this Settlement more robust.  And this

case compares favorably to the single class settlement that Plaintiffs are aware of that alleged

violations of the notice provisions of a state dating service law (albeit not New York.)  A California

class action alleging that the Tinder dating app failed to notify consumers of their right to cancel

was settled on a class-wide basis for coupons only: either one free month of Tinder or a one-time

allotment of Super Likes.  *Hansen v. Tinder Inc.*, 2018 Cal. Super. LEXIS 123, *2 (Superior Court,

San Luis Obispo) (April 11, 2018).  But here, all members of the DSL Settlement Class will receive

substantial monetary relief in addition to injunctive relief.

Under the proposed Settlement, ARL Settlement Class members who make valid claims are

estimated to recover, on average, between $43 to $85 per claim, not including any award they may

receive from the DSL portion of the Settlement.  The average amount of auto-renewal fees charged

per ARL Settlement Class member is ██████   These estimated recovery amounts are approximately

█████████████ of all renewal fees charged per claiming ARL Settlement Class member during the

Settlement Period.  This compares favorably to other ARL settlements.  *See e.g., Custom LED, LLC

v. eBay, Inc*, No. 12-CV-00350-JST, 2013 WL 6114379, at *3 (N.D. Cal. Nov. 20, 2013)

(approving settlement recovery of 1.8% or 16% of the total amount paid in subscriptions); *Noll v.

eBay, Inc.,* 309 F.R.D. 593, 607 (approving settlement representing 50% of the first month renewal

fees and 9% of all renewal fees); *Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD (N.D. Cal.

Feb. 3, 2017), ECF No. 114, at 2 (approving settlement where auto-renewal class members received

$11.50 in value certificates or cash, which was "roughly half of the overcharge").

16

In addition, the Settlement includes significant injunctive relief for both classes in terms of changes to Bumble's Terms & Conditions as well as the purchase flow and disclosures for Boost subscriptions.  Settlement, § 2.8.

**D.    The extensive discovery completed and the stage of the proceedings supports preliminary approval**

Under this factor, courts evaluate whether class counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  As discussed above, the Court issued three orders on Bumble's motions to dismiss on issues that relate to the crux and scope of Bumble's potential liability, such as whether a choice-of-law provision in Bumble's Terms & Conditions is enforceable, whether the New York DSL applies to online dating apps like Bumble, and the Court's jurisdiction over out-of-state absent class members.  The significant litigation of these key, dispositive issues assisted the Parties in evaluating the claims and defenses at an earlier stage in the case.

Plaintiffs also succeeded in obtaining an order lifting the stay on discovery at the pleading stage.  Plaintiffs aggressively pursued discovery from Bumble related to jurisdiction, class certification and merits.  Parisi Decl., ¶ 3.  Plaintiffs engaged in intensive meet-and-confers, resolved multiple joint discovery letters without Court assistance, and two of these letters were filed to seek the Court's assistance in resolving the dispute.  *Id.*  As a part of their "belt-and-suspenders approach," Plaintiffs subpoenaed documents from non-parties, Google and Apple, and obtained documents and information in connection with these subpoenas.  *Id.*  Plaintiffs analyzed thousands of documents and substantial data produced files in formal discovery.  *Id.*  So, through formal discovery (and their own independent investigation), Plaintiffs gained a comprehensive and thorough understanding of Bumble's in-app subscription and purchase flows, auto-renewal and refund policies and procedures, internal complaint processes related to refunds, and the number of purchasers affected, which was necessary to evaluate the case.

Plaintiffs' investigation into the merits and defenses of the claims was all done well before the Parties participated in a mediation.  The Parties' detailed mediation briefs carefully analyzed class certification, summary judgment, and trial.  Parisi Decl., ¶ 5.  A formal mediation was conducted before the former Chief Magistrate Judge of this District, who provided the Parties with a

17

1   reasonable assessment of the strength and weaknesses of the case and a mediator's proposal, which

2   was accepted by the Parties.  *Id.*

3        Considering these facts, the Parties had more than sufficient information to make a reasoned

4   and informed decision about the relative merits of the case and the fairness of the Settlement.  *See*

5   *Bellinghausen v. Tractor Supply C*o., 306 F.R.D. 245, 257 (N.D. Cal. 2015) (factor supported

6   approval where parties had litigated multiple motions to dismiss, engaged in formal and informal

7   discovery, produced and analyzed thousands of pages of documents, prepared detailed mediation

8   briefs, and participated in mediation) (*citing Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal.

9   2014) ("The parties' use of mediation, which took place after significant discovery, and their

10   reliance on the mediator's proposal in settling demonstrates the parties considered a neutral opinion

11   in evaluating the strength of their arguments ... and weigh[s] in favor of settlement." (citation

    omitted)).

12        **E.      The experience and views of counsel support preliminary approval**

13        Here, the Settlement was negotiated by counsel with extensive experience in consumer class

14   action litigation.  *See* Parisi Decl., ¶¶ 9-10 and Exh. 2; Parasmo Decl., ¶¶ 3-4 and Exh. 1.  Based on

15   their collective experience, Plaintiffs' Counsel concluded that the Settlement provides exceptional

16   results for the Settlement Classes while avoiding costs, delays and uncertainties of continued

17   litigation.  *See* Parisi Decl., ¶¶ 6-8 and Parasmo Decl., ¶¶ 5-7.

18   **VII.   The Procedural Guidance For Class Settlements Are Satisfied**
         **Guidance 1:  Differences, range and plan of allocation**

19        The DSL Settlement Class, consisting of all persons nationwide who purchased Boost, is

20   identical to the Dating Service Law Class in the operative complaint.  *See* Dkt. 58, ¶ 87.[10]  The DSL

21   Settlement Class also encompasses all members of the proposed Dating Service Law Subclass in the

22   operative complaint.  *Id.*  The ARL Settlement Class likewise mirrors the California Automatic

23   Renewal Class in the operative complaint.  *Id.*  The only material difference is the exclusions from

24   the Settlement Classes: (1) any Judge, or mediator presiding over this Action and members of their

25   immediate families; (2) Bumble and Bumble's employees; (3) persons who properly and timely

26   _____

27   [10]     There is a distinction in that the time frame for the DSL Settlement Class goes back to
         November 2014 while the DSL class in the operative complaint goes back to August 2016.  This

28   change is simply meant to create uniformity between classes.  In actuality, Bumble Boost was not
         launched until August 2016.  Parisi Decl., ¶ 4.

                                        18

1  request exclusion from the Settlement Classes; (4) Class Counsel; and (5) the legal representatives,

2  successors or assigns of any such excluded persons.  Settlement, § 1.49.

3        As discussed more fully above, the Released DSL Claims and the Released ARL Claims are

4  anchored to the factual allegations in the operative complaint relative to each class.  *See supra*, at

5  section III.D.

6        The anticipated class recovery under the Settlement, the potential class recovery if Plaintiffs

7  had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount

8  of the compromise are addressed above in sections VI.

9        The details of the proposed distribution of the Settlement Fund are provided in section III.B.

10  above.  The allocation of the funds to the Settlement Class Members is based on an evaluation of

11  the strengths and weaknesses of each claim, the size of the classes, and the relief authorized under

12  the relevant statutes.[11]  *See supra*, at section VI.A.

13       To obtain a payment, Settlement Class Members must fill out a claim form.  The claim

14  forms are simply designed and easy to fill out. Settlement, Exhibits G and H. The claim forms

15  require contact and method of payment information only: the name of the Bumble Boost user;

16  method of payment; where to send the payment; and consent for Bumble and the Settlement

17  Administrator to process the data for settlement purposes.

18       The claims rate is projected to be between 5% and 10% for both classes.  Declaration of

19  Jennifer Keough, "Keough Decl.", ¶ 18.  Given its extensive experience in creating notice plans for

20  consumer cases with similar amounts of class members and the notice plan proposed here, JND

21  Legal Administration LLC (JND), the proposed Settlement Administrator, expects the actual claims

22  rate here to skew toward the higher end of the expected range.  *Id.*  Among the reasons is that the

23  claims forms are relatively short, use plain language, and are user-friendly.  *Id.*  The Settlement

24  Classes also consists of an Internet-savvy population that is more likely to read email notice and file

25  a claim online.  *Id.* Additionally, the notice plan, designed by counsel in concert with JND, was

26  _____

27       [11] "Courts have approved settlement plans that pay monetary benefits based on the comparative strengths and weaknesses of certain claims".  *Carlotti v. ASUS Computer Int'l,* 2019 WL 6134910, at *13 (N.D. Cal. Nov. 19, 2019).  *See also Rodman v. Safeway Inc.,* 2018 WL

28  4030558, at *2 (N.D. Cal. Aug. 23, 2018) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable.")

1
2
guided by the Federal Trade Commission's finding that sending reminder emails to class members can help achieve an optimal claims rate.[12]  *Id.; see infra,* Guidance 3.

3
### Guidance 2: The proposed Settlement Administrator

4
5
6
7
8
9
10
11
12
The Parties interviewed and discussed best methods of direct notice and electronic payment options with four administrators and obtained two rounds of bids from three administrators.  Parisi Decl., ¶ 11.  The Parties ultimately selected JND and adopted its recommendation on a direct notice plan. *Id.* and Settlement, § 1.47. Of Class Counsel, only Parisi & Havens LLP has worked with JND in the last two years, and only in one action.  Parisi Decl., ¶ 12; Parasmo Decl., ¶ 8.  The anticipated Settlement Administrator costs of $1 million to $1.3 million, which will be paid from the Settlement Fund, are reasonable relative to amount of the Settlement Fund.  Parisi Decl., ¶ 12; Settlement, § 2.2.  Given its experience in administering hundreds of settlements and its track record of being approved by courts around the country (Keough Decl., ¶¶ 2-12), the Parties request JND be appointed as Settlement Administrator.

13
### Guidance 3: The proposed settlement notices satisfy Rule 23(c)(2) and (e) requirements

14
15
16
17
18
19
Rule 23 requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Notice must be "reasonably certain to inform the absent members of the plaintiff class," but need not be actual notice.  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (internal quotation marks and citation omitted).  "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B).

20
21
22
23
24
25
Under the proposed notice plan, within ten business days after entry of a preliminary approval order, Bumble will provide the Settlement Administrator with a list of all Settlement Class Members, as well as their contact information.  Settlement, § 4.1.4.  The Settlement Administrator will then send direct Email Notice to the Settlement Class Members for whom Bumble has email addresses.  Settlement, § 4.2.  Two reminder Email Notices will be sent to Settlement Class Members who have not filed a claim, excluded themselves, or unsubscribed to the email campaign.

26
27
28
---
[12]    See Federal Trade Commission, Consumers And Class Actions: A Retrospective And Analysis Of Settlement Campaigns (Sept. 2019) at p. 21. Accessible at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last visited June 12, 2020).

1    For the remainder, the Settlement Administrator will use telephone numbers and zip codes to trace

2    and append mailing addresses of owners of those numbers during the time the Bumble account was

3    used.  Settlement, § 4.3.2.  Postcard notices will also be mailed via this same reverse look-up

4    process to Settlement Class Members whose email notices are undeliverable.  Settlement, § 4.4.

5    The outside of the postcard will alert the individuals that they may receive settlement funds, but to

6    protect their privacy, will not reveal their status as a Bumble user.  Settlement, §§ 4.3.2 and 4.4.

7        The proposed notice program will also provide for the launch and maintenance of a

8    dedicated settlement website allowing Settlement Class Members to fill out claim forms or opt-out

9    forms electronically.  Important dates, deadlines, case documents, and answers to frequently asked

10   questions, and Class Counsel's and the Settlement Administrator's contact information will also be

11   available on the website.  Settlement, § 4.4.2.  Finally, direct notice will be supplemented with a

     Press Release.  Settlement, § 4.5.

12       Courts consistently approve similar notice plans.  *See e.g.  In re Nexus 6P Prod. Liab. Litig.*,

13   No. 17-CV-02185-BLF, 2019 WL 6622842, at *3 (N.D. Cal. Nov. 12, 2019) (approving email

14   notice supplemented with postcard notice via reverse lookup and a press release as supplemental

15   notice); *Williamson v. Mcafee, Inc.,* No. 5:14-CV-00158-EJD, 2016 WL 4524307, at *7 (N.D. Cal.

16   Aug. 30, 2016) (approving notice plan that proposed to directly notify class members via email and

17   mail and short form notices tailored to the disparate classes); *Custom LED, LLC v. eBay, Inc*, No.

18   12-CV-00350-JST, 2014 WL 2916871, at *2 (N.D. Cal. June 24, 2014) (approving (1) setting up a

19   website (2) email (3) first-class mail for class members whose email notice is returned as

20   undeliverable; and (4) a press release).

21       To satisfy Rule 23(e)(1), settlement notices must "present information about a proposed

22   settlement neutrally, simply, and understandably."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,

23   962 (9th Cir. 2009).  "Notice is satisfactory if it generally describes the terms of the settlement in

24   sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

25   heard."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 567 (internal citations omitted.) A

26   settlement notice need not "provide an exact forecast" of the award each class member would

27   receive, let alone a detailed mathematical breakdown; it merely must give class members "enough

28   information so that those with 'adverse viewpoints' could investigate and 'come forward and be

21

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

1   heard.'" *Id.* at 568, citing *Online DVD-Rental*, 779 F.3d at 946–47 (9th Cir. 2015) (quoting *Lane v.*

2   *Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)).

3          Here, the long form Website Notice provides detailed information about the Settlement to

4   inform interested Settlement Class Members of the litigation.  It satisfies Rule 23(c)(2) and this

5   District's guidance by informing class members of the nature of the action; the definition of the

6   classes certified; the class claims and issues; that a class member may enter an appearance through

7   an attorney if they desire; that the Court will exclude from the Settlement any member who requests

8   exclusion; the time and manner for requesting exclusion; the binding effect of a class judgment on

9   Settlement Class Members under Rule 23(c)(3); the settlement website address with links to the

10  Notice and important case documents; the date, time, and place of the Final Approval Hearing;

11  contact information for class counsel to answer questions; and instructions on how to access the

12  case docket via PACER or in person at any of the Court's locations. Fed. R. Civ. P. 23(c)(2);

    Settlement, Exhibit E.

13         **Guidance 4 and 5:  Opt-outs or objections**

14         Each Settlement Class Member will have an opportunity to exclude themselves from the

15  settlement or object to its approval, the proposed service awards, or requested attorney's fees and

16  expenses awards.  Settlement, § 5.2.  The Notice instructs Settlement Class Members who wish to

17  exclude themselves to submit an opt-out form or send a letter setting forth their name and

18  information needed to be properly identified to the Settlement Administrator.  It clearly advises of

19  the deadline, methods of exclusion, and the consequences of doing so.  The Notice also instructs

20  Settlement Class Member who wish to object to the Settlement to send their written objections only

21  to the Court by the deadline for filing and adopts this District's suggested language regarding

22  objections.

23         **Guidance 6: The intended attorneys' fees and costs request**

24         Plaintiffs' counsel will seek an award for attorneys' fees and expenses to be paid from the

    $22.5 million Settlement Fund.  Settlement, § 8.4.  Plaintiffs' counsel intends to request up to 27%

25  percent of the common fund.  It is well established that 25% is the benchmark in the Ninth Circuit.

26  *See e.g. In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015).  And "in most

27  common fund cases," the award exceeds this benchmark "with a 30% award the norm absent

28

extraordinary circumstances that suggest reasons to lower or increase the percentage." *Burnthorne-Martinez v. Sephora USA, Inc.*, No. 4:16-CV-02843-YGR, 2018 WL 5310833, at *2 (N.D. Cal. May 16, 2018) (internal citations omitted.).

This amount represents a 2.7 multiplier on their lodestar to date, which represents a total of 4,220 hours billed to date. *See* Parisi Decl., ¶13; Parasmo Decl., ¶ 9. And multiples "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002).

Plaintiffs will also seek their litigation costs and expenses of $15,104. Parisi Decl., ¶14; Parasmo Decl., ¶ 9. Plaintiffs' counsel will fully brief their fee request at least 35 days prior to the objection deadline.

**Guidance 7: The proposed settlement and proposed service awards do not unjustly favor any class members, including the named plaintiffs**

As discussed above, the Settlement does not grant any preferential treatment to class representatives or segments of the Settlement Classes. *See* section IV.A., *supra*.

"Incentive awards are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. These awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59 (followed by *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015)).

The proposed class representatives each intend to request a Service Award of up to $5,000 for the time and effort that they have invested in the case and the initiative taken to retain counsel and pursue this action. They preserved and collected documents, kept informed about the case developments, and met with and sought regular updates from their attorneys, made themselves available for mediation, analyzed and reviewed settlement offers, contributed to injunctive relief provisions, made themselves available for depositions and put their personal lives on display by making public that they were users of the Bumble dating app. The amount of the request "is reasonable as [$5000] is the presumptive incentive award in the Northern District of California." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019) (internal citations omitted). Plaintiffs will submit declarations in support of their requests at least 35 days prior to the objection deadline.

**Guidance 8:** *Cy pres* **awardee**

As noted above, the Settlement has no reversionary provision.  The Settlement provides that the residual funds shall be apportioned *pro rata* to Settlement Class Members who received a payment that was processed and have not met the maximum recovery allotment, if practicable. Settlement, § 2.5.  If after a second distribution, residual funds remain, then those funds will be distributed to a *cy pres* designated recipient as approved by the Court.  *Id.* at § 2.6.

To qualify as a *cy pres* recipient, there must be a driving nexus between the recipient and the classes and the award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (internal citations and quotations omitted).

The National Consumer Law Center (NCLC) is an appropriate *cy pres* recipient here and has been approved by numerous courts as its mission closely aligns with consumer issues.  *See e.g. Weeks v. Google LLC*, No. 5:18-CV-00801-NC, 2019 WL 8135562, at *2 (N.D. Cal. July 22, 2019); *McKnight v. Uber Techs., Inc.,* No. 14-CV-05615-JST, 2017 WL 3427985, at *6 (N.D. Cal. Aug. 7, 2017) (collecting cases).  The NCLC bears a substantial nexus to the interests of the Settlement Class Members has committed to use the *cy pres* funds to further the objectives of the statutes underlying this case.  The nationally designated funds will be used for education and training, including scholarships to NCLC conferences and trainings, and to better inform consumers and advocate on their behalf, with respect to consumers' refund and cancellation rights in contracts and other deceptive practices relating to Internet sales.  Declaration of Richard Dubois, ¶ 12.  The California designated funds will be used for education and training, including scholarships to NCLC conferences and trainings and to better inform consumers and advocate on their behalf, with respect to negative option and automatic renewal contracts, unwanted or recurring charges to credit cards, bank accounts, and third-party payment systems.  *Id.*  The Parties do not derive any benefit from the NCLC; neither Plaintiffs nor Class Counsel has any relationship with the organization.  Parisi Decl., ¶ 17; Parasmo Decl., ¶ 8.

24

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement

**Guidance 9:  The proposed timeline**

| Date | Event |
|------|-------|
| Within ten (10) business days following entry of the Preliminary Approval Order | Bumble to provide Settlement Administrator with Settlement Class Member data |
| No later than sixty (60) days after Preliminary Approval Order | Notice Date; initial notice disseminated |
| Thirty-five (35) days prior to Objection and Exclusion Deadline | Motion for attorneys' fees and expenses, as well as service awards to be filed |
| Sixty (60) days after the Notice Date | Objection and Exclusion Deadline |
| Seventy (70) days after the Notice Date | Claims Deadline |
| Fourteen (14) days prior to Final Approval Hearing | Motion for Final Approval to be filed |
| Approximately one hundred fifty (150) days after entry of Preliminary Approval Order | Final Approval Hearing |

**Guidance 10: The Class Action Fairness Act**

The Agreement provides that the Settlement Administrator will serve notice of the settlement that meets the requirements of CAFA, 28 U.S.C. § 1715, on the appropriate federal and state officials no later than 10 days after the filing of the Agreement with the Court.  Settlement, § 4.6.

**Guidance 11:  Past distributions**

As stated above, this case does not have meaningful comparators.

**VIII.   Conclusion**

For the foregoing reasons, Plaintiffs respectfully request the Court grant the relief requested in the Notice of Motion.

Dated: June 22, 2020                    Respectfully submitted,


By: /s/David C. Parisi
David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, CA  94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)

25

1

gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)

2

ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW

3

7400 Hollywood Blvd, #505
Los Angeles, CA 90046

4

Telephone:  (646) 509-3913
Facsimile:   (877) 501-3346

5

6

*Attorneys for Plaintiffs Nick King, Jr.,*
*Deena Fischer, and Elena Weinberger,*

7

*individually and on behalf of a class of similarly*
*situated individuals*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion for Prelim. Approval of Class Action Settlement