David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

*Attorneys for Plaintiffs Nick King Jr,*
*Deena Fischer and Elena Weinberger, individually*
*and on behalf of all others similarly situated*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| NICK KING, JR., DEENA FISCHER, ELENA WEINBERGER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BUMBLE TRADING, INC. AND BUMBLE HOLDING LTD.,<br><br>Defendants. | No. 5:18-cv-06868-NC<br><br>Hon. Nathanael Cousins<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVES' SERVICE AWARDS**<br><br>Date:      December 16, 2020<br>Time:      2:00 p.m.<br>Location:  Courtroom 5 *via Zoom Video*<br>               280 South 1st St.<br>               San Jose, California 95113 |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 16, 2020 at 2:00 p.m., in Courtroom 5 in the Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, via Zoom video, before the Honorable Judge Nathanael Cousins. Plaintiffs Nick King Jr., Deena Fischer, and Elena Weinberger ("Plaintiffs") will and hereby do move for an Order pursuant to Rules 23(h)(1) and 54(d)(2) of the Federal Rules of Civil Procedure ("Rule") awarding: (1) Attorneys' Fees to Class Counsel of $6,075,000.00; (2) reimbursement of $15,104.00 in litigation costs; and (3) a total of $15,000.00 in service awards to the three named Plaintiffs.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion and the authorities cited therein, the supporting declarations of David C. Parisi, Grace E. Parasmo, Nick King Jr., Deena Fischer, and Elena Weinberger; the records and file in this action; and on such other matters as may be presented before or at the hearing of the motion.

Dated: October 9, 2020                    By:    /s/Yitzchak H. Lieberman____

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile:  (877) 501-3346

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)

dcparisi@parisihavens.com
shavens@parisihavens.com

Attorneys for Plaintiffs Nick King Jr., Deena
Fischer and Elena Weinberger on their own behalf,
and on behalf of all others similarly situated

David C. Parisi (SBN 162248)
dcparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, CA  94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile: (877) 501-3346

*Attorneys for Plaintiffs Nick King Jr,
Deena Fischer and Elena Weinberger, on their own
behalf, and on behalf of all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| NICK KING JR., DEENA FISCHER, ELENA WEINBERGER, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>BUMBLE TRADING, INC. AND BUMBLE HOLDING LTD.,<br>　　　　　　　Defendants. | No. 5:18-cv-06868-NC<br><br>Hon. Nathanael Cousins<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS AND CLASS REPRESENTATIVES' SERVICE AWARDS**<br><br>Date:　　　December 16, 2020<br>Time:　　　2:00 p.m.<br>Location:　Courtroom 5 *via Zoom Video*<br>　　　　　　280 South 1st St.<br>　　　　　　San Jose, CA  95113 |

# TABLE OF CONTENTS

I.      Introduction....................................................................................................1

II.     The Requested Award Of Fees Is Fair And Reasonable.......................................2

      A.      The percentage-of-the-fund method is appropriate for determining a
             reasonable attorneys' fee award because Class Counsel's efforts created a
             fixed common fund for the benefit of the Settlement Classes. ...............................2

      B.      Given the excellent result achieved and relevant circumstances, a fee
             award that exceeds the benchmark of 25% of the common fund is fair and
             reasonable. ....................................................................................................4

            1.      The overall result and benefits obtained for the Settlement Classes
                 support an award of the requested fee.........................................................5

            2.      The risks of litigation support the fee award requested. ............................8

            3.      The skill required by Class Counsel and the quality of their work
                 support the fee award requested...............................................................10

            4.      The contingent nature of the litigation and preclusion of other work
                 favor the requested fee. ..........................................................................12

             5.      Awards in similar cases support the fee sought. .......................................13

      C.      A lodestar-crosscheck confirms the reasonableness of the fee request. ................15

III.    Class Counsel Should Be Reimbursed For Their Necessary And Reasonable
       Litigation Costs.............................................................................................18

IV.     Plaintiffs' Efforts For The Settlement Classes Support Their Requested Service
       Award..........................................................................................................18

V.      Conclusion ...................................................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................15

5

6

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................3, 4, 5, 15

7

8

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .............................................................................................2

9

*Burnthorne-Martinez v. Sephora USA, Inc.*,
    No. 16-2843-YGR, 2018 WL 5310833 (N.D. Cal. May 16, 2018) ......................13

10

11

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ..............................................................................16

12

*Canada Life Assurance Co. v. LaPeter*,
    563 F.3d 837 (9th Cir. 2009) ................................................................................3

13

14

*In re Capacitors Antitrust Litig.*,
    No.14-CV-3264-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ................3, 5

15

16

*Carlin v. DairyAmerica, Inc.*,
    380 F. Supp. 3d 998 (E.D. Cal. 2019) ...............................................................14

17

18

*Carlotti v. ASUS Computer Int'l*,
    No. 18-3369-DMR, 2020 WL 3414653 (N.D. Cal. June 22, 2020) ....................19

19

*Chambers v. Whirlpool Corp.*,
    214 F. Supp. 3d 877 (C.D. Cal. 2016) ...............................................................11

20

21

*Ching v. Siemens Indus., Inc.*,
    No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ...............4

22

23

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
    No. 17-md-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019)................19

24

25

*Cohen v. Facebook*,
    No. 10-cv-05282-RS, Dkt. 347-1 ........................................................................17

26

27

*Covillo v. Specialtys Café*,
    No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ...................15

28

*Craft v. County of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ..................................................................9

*Deluca v. Farmers Ins. Exch.*,
   No. 17-CV-00034-TSH, 2020 WL 5071700 (N.D. Cal. Aug. 24, 2020) ................................16

*Destefano v. Zynga, Inc.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..........................12, 18

*Dickey v. Advanced Micro Devices, Inc.*,
   No. 15-4922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020)................................3

*Edmonds v. United States*,
   658 F. Supp. 1126 (D.S.C. 1987)........................................................................10

*Farrell v. Bank of Am. Corp., N.A.*,
   Nos. 18-56272, 18-56273, 18-56371, 2020 WL 5230456 (9th Cir. Sept. 2,
   2020) .....................................................................................................15

*Florida v. Dunne*,
   915 F.2d 542 (9th Cir. 1990) ..........................................................................3

*Fox v. Vice*,
   563 U.S. 826 (2011)...................................................................................15

*Fronda v. Staffmark Holdings, Inc.*,
   No. 15-2315-MEJ, 2018 WL 2463101 (N.D. Cal. June 1, 2018) ...............................13

*G. F. v. Contra Costa Cnty.*,
   Case No. 13-cv-03668-MEJ, 2015 WL 7571789 (N.D. Cal. Nov. 25, 2015) ....................16

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. 08-1365, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010)..............................12, 13

*Gergetz v. Telenav, Inc.*,
   No. 16-4261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ...........................17

*Guaranty Trust Co. of New York v. York*,
   326 U.S. 99, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945)......................................3

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................................4

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ...........................................................................18

*Hefler v. Wells Fargo & Co.*,
   No. 16-5479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)................................16

Motion for Attorney's Fees,
Costs and Service Awards                    iv                    5:18-cv-06868-NC

*Hendricks v. Starkist Co.*,
    No. 13-cv-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016)................................14

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)......................................................................................................................4

*In re Heritage Bond Lit.*,
    2005 WL 1594389 (C.D. Cal. 2005)........................................................................................12, 13

*Hopkins v. Stryker Sales Corp.*,
    2013 WL 496358 (N.D.Cal.2013) ...............................................................................................17

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) (en banc) ........................................................................................3

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    No. 16-CV-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ............................16, 17

*Johnson v. Pluralsight, LLC*,
    728 F. App'x 674 (9th Cir. 2018) ..................................................................................................6

*Kakani v. Oracle Corp.*,
    No. 6-6493WHA, 2007 WL 4570190 (N.D. Cal. Dec. 21, 2007) ...........................................14

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir.1975) ............................................................................................................5

*Knight v. Red Door Salons, Inc.*,
    No. 08-01520, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .....................................................12

*Kona Enters., Inc. v. Estate of Bishop*,
    229 F.3d 877 (9th Cir. 2000) .........................................................................................................3

*In re Korean Air Lines Co., Antitrust Litig.*,
    2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) .............................................................................3

*In re Lenovo Adware Litig.*,
    No. 15-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019)................................14, 16

*Lofton v. Verizon Wireless*
    LLC, No. C 13-05665 YGR, 2016 WL 7985253 (N.D. Cal. May 27, 2016) .........................10

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) .......................................................................................................14

*In re Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
    No. 09-5418 RS, 2012 WL 10277179 (N.D. Cal. Jan. 6, 2012)..............................................18

*Morris v. Lifescan, Inc.*,
   54 Fed. Appx. 663 (9th Cir. 2003) ........................................................................14

*Mussat v. IQVIA, Inc.*,
   No.19-1204, 2020 WL 1161166 (7th Cir. Mar. 11, 2020) ..........................................8

*In re Nexus 6P Prod. Liab. Litig.*,
   No. 17-CV-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ........................11, 14

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..................................................... *passim*

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .................................................................13

*Peel v. Brooksamerica Mortg. Corp.*,
   No. 11-79-JLS, 2015 WL 12745788 (C.D. Cal. Apr. 6, 2015) ...............................14

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) .................................................................4

*In re Quantum Health Res., Inc.*,
   962 F. Supp. 1254 (C.D. Cal. 1997) ..........................................................12

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*,
   779 F.3d 934 (9th Cir. 2015) .................................................7, 15, 18, 19

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................18

*Rodriquez v. It's Just Lunch Int'l*,
   No. 07-CV-09227 (SN), 2020 WL 1030983 (S.D.N.Y. Mar. 2, 2020) .........................14

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ......................................6, 8, 10, 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................... *passim*

*Steiner v. Am. Broad Co., Inc.*,
   248 F. App'x 780 (9th Cir. 2007) .............................................................17

*Taylor v. Shippers Transp. Express, Inc.*,
   No. 13-2092, 2015 WL 12658458 (C.D. Cal. May 14, 2015) .................................7

*Theodore Broomfield v. Craft Brew All., Inc.*,
   No. 17-1027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ...........................18

*True Health Chiropractic Inc v. McKesson Corp.*,
No. 13-02219, 2015 WL 3453459 (N.D. Cal. May 29, 2015)................................17

*Valentine v. NebuAd Inc.*,
No. 8-5113, TEH (LB), 2011 WL 13244509 (N.D. Cal. Nov. 21, 2011)................................8

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...................................... *passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)................................16, 17

*Weeks v. Google LLC*,
No. 18-0801-NC, 2019 WL 8135563 (N.D. Cal. Dec. 13, 2019)................................4, 5

*Weeks v. Kellogg Co.*,
No. CV 09-8102, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013)................................14

*Williamson v. McAfee, Inc.*,
No. 5:14-cv-00158-EJD, 2017 WL 6033070 (N.D. Cal. Feb. 3, 2017)................................14

*In re WPPSS*,
19 F.3d at 1299 ................................3, 12, 16

**California Cases**

*Apple Computer, Inc. v. Superior Court*,
126 Cal.App.4th 1253 (2005) ................................3

*In re Consumer Privacy Cases*,
175 Cal.App.4th 545, 96 Cal.Rptr.3d 127 (2009)................................14

*Hansen v. Tinder, Inc.*,
2018 Cal. Super. LEXIS 123 (Cal. Sup. Ct, San Luis Obispo) ................................6

*Laffitte v. Robert Half Int'l Inc.*,
1 Cal.5th 480 (2016) ................................3, 15

*Mayron v. Google LLC*,
No. H044592, 2020 WL 5494245 (Cal. Ct. App. Sept. 11, 2020) ................................6

*Wershba v. Apple Computer, Inc.*,
91 Cal.App.4th 224, 110 Cal. Rptr.2d 145 (2001)................................17

**California Statutes**

California Auto Renewal Law, Cal. Bus. & Prof. Code
§§ 17600-17606 ..................................................................................1, 6, 9, 10

**New York Statutes**

N.Y. Gen. Bus. Law
§ 349...............................................................................................................14

N.Y. Gen. Bus. Law
§ 394-c ...................................................................................................... 1, 14

**Other Authorities**

Federal Judicial Center, *Manual for Complex Litigation* .................................5

Fed. R. Civ. P. § 23 .........................................................................................19

Fed. R. Civ. P. § 23(h) ......................................................................................1

Fed. R. Civ. P. § 54(d)(2).................................................................................1

National Law Journal, *Billing Rates Across the Country* ..............................17

*Newberg on Class Actions* ...........................................................................4, 5

William B. Rubenstein, *Why the Percentage Method?, Class Action Attorney Fee
Digest* 93 (March 2008)..................................................................................4

12 Wright, Miller & Marcus § 2983 ................................................................3

**<u>ISSUES TO BE DECIDED</u>**

1.  Whether the Court should award attorneys' fees of 27 percent (i.e. $6,075,000.00) of the common fund.

2.  Whether the Court should award Class Counsel for unreimbursed costs incurred in the amount of $15,104 that were necessary and reasonable to litigate the case.

3.  Whether the Court should award each named plaintiff the presumptively reasonable amount of $5,000 for their services to the settlement classes.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Nick King Jr, Deena Fischer and Elena Weinberger hereby move the Court pursuant to Rule 54(d)(2) and Rule 23(h) of the Federal Rules of Civil Procedure, for an order awarding attorneys' fees (in the amount of $6,075,000.00), costs of $15,104.00, and service awards of $5,000.00 for each named plaintiff from the common fund established under the settlement agreement ("Agreement"; Dkt. 108-1)[1] with Defendants Bumble Trading Inc. and Bumble Holding Ltd. ("Bumble" or "Defendants").

## I.    Introduction

The Settlement provides for a $22.5 million non-reversionary fund plus robust injunctive relief to consumers across the nation who purchased Bumble's premium dating service, Boost. Settlement Class Members who make a claim will likely receive between $21 and $169 depending on the class or classes of which they are a member.  This amount represents more than 40% of Settlement Class Members' potential damages had they prevailed on each of their claims at trial. The injunction will require Bumble to implement meaningful changes to the purchase flow on the Bumble platform and to Bumble's Terms & Conditions—including new provisions that afford consumers across the nation with refund and cancellation rights.

These results are exceptional. In fact, there is no precedent of a court awarding statutory damages to consumers for claims based on the seldom litigated notice and refund provisions of the New York DSL.[2] Similarly, whether the gift provision of the California Auto Renewal Law ("ARL")[3] allows for recovery for a digital product like Boost—as opposed to a tangible good— also lacks controlling precedent. Thus, recovery for the Settlement Classes was far from certain. Further, the Settlement's monetary component alone compares favorably to other class settlements premised on violations of the California ARL and is the only nationwide settlement under the New York DSL.

---

[1]     The case history and background will be addressed in the Motion for Final Approval, which is scheduled to be filed by December 2, 2020.  Capitalized terms not defined herein shall have the meanings set forth in the Settlement Agreement, at Dkt. 108-1.

[2]     N.Y. Gen. Bus. Law § 394-c ("New York DSL").

[3]     Cal. Bus. & Prof. Code §§17600-17606 ("ARL").

Plaintiffs won pivotal victories against a formidable defense team by defeating challenges to threshold issues that shaped the size of the class and the scope of the relief. Class Counsel devoted considerable time and effort exhaustively investigating and researching the facts, claims, and defenses, aggressively pursuing discovery from Defendants and third parties, and skillfully clearing various legal hurdles to negotiate this substantial relief for the classes. Class Counsel took this case on a contingency basis and advanced costs for the case. And the three named plaintiffs stepped forward to represent the Settlement Classes and devoted their time and energy to pursue the interests of Settlement Class Members.

Class Counsel's fee request of 27% of the $22,500,000 fund (i.e., $6,075,000.00), and $15,104.00 in costs is well supported by the relevant factors, including the exceptional results achieved in the face of substantial legal and financial risks assumed by counsel. The requested fee is also warranted based on awards approved in the Ninth Circuit and is in line with awards in other similar cases. Additionally, the requested $5,000.00 service award for each of the named plaintiffs is the presumptively reasonable amount in this district.

## II. The Requested Award Of Fees Is Fair And Reasonable

### A. The percentage-of-the-fund method is appropriate for determining a reasonable attorneys' fee award because Class Counsel's efforts created a fixed common fund for the benefit of the Settlement Classes.

Class Counsel requests the Court award attorneys' fees and expenses applying the percentage-of-the-fund method. Settlement, § 8.4. The common fund doctrine is an equitable doctrine that ensures that litigants (here, the Settlement Classes), rather than the Defendants, bear their own attorneys' fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Under the doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* Where Class Counsel's efforts result in a common fund, the doctrine of unjust enrichment entitles them to reasonable attorneys' fees from the fund. *See Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("the common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees").

"Under Ninth Circuit law, the district court has discretion in common fund cases to

1   choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*,

2   290 F.3d 1043, 1047 (9th Cir. 2002) (citing *WPPSS*, 19 F.3d at 1295-96); *In re Hyundai & Kia*

3   *Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc).[4]   The Ninth Circuit has

4   recognized the "ground swell of support for mandating a percentage-of the-fund approach in

5   common fund cases[.]" *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990).

6       Indeed, courts regularly apply the "common fund" doctrine in determining attorneys' fees

7   in class action suits, in which the court awards class counsel a certain percentage of the benefits

8   made available to the class. *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003); *In re*

9   *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).   The percentage-of-the-

10  fund calculation is also the *preferred* method when counsel's efforts have created a fixed

11  common fund for the benefit of the class. *In re Capacitors Antitrust Litig.*, No.14-CV-3264-JD,

12  2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018) (emphasis in original) citing *In re Korean*

13  *Air Lines Co., Antitrust Litig.*, 2013 WL 7985367, at *1, (C.D. Cal. Dec. 23, 2013) ("The use of

14  the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth

15  Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund

16

17

18  _____

[4]       As discussed, Class Counsel request fees under the federal common-fund-doctrine.
19  "Indeed, a federal court sitting in diversity may exercise equitable powers independent of state
    law." *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009) citing 12 Wright,
20  Miller & Marcus § 2983 (citing *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 65 S. Ct.
    1464, 89 L. Ed. 2079 (1945), which affirmed the independent vitality of federal equitable
21  powers).
         Some courts in this district, however, begin with an analysis of California law in diversity
22  cases. *See e.g. Dickey v. Advanced Micro Devices, Inc.*, No. 15-4922-HSG, 2020 WL 870928, at
    *7–8 (N.D. Cal. Feb. 21, 2020) These courts rely on certain Ninth Circuit case law stating that
23  normally "a federal court sitting in diversity applies the law of the forum state regarding an
    award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir.
24  2000). But even these district courts look to federal authority for guidance in awarding attorneys'
    fees. *See e.g. Dickey v. Advanced Micro Devices, Inc.*, No. 15-4922-HSG, 2020 WL 870928, at
25  *7–8 (N.D. Cal. Feb. 21, 2020) citing *Apple Computer, Inc. v. Superior Court*, 126 Cal.App.4th
    1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters
26  involving class action procedures").
         In any event, this step does not change the analysis because California law is in accord
27  with federal law that the percentage-of the-fund method is appropriate in class actions when
    awarding attorneys' fees from a common fund.  *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480,
28  506 (2016).

conferring benefits on a class was created through the efforts of plaintiffs' counsel.").[5] "Using either method, the ultimate inquiry is whether the end result is reasonable." *Weeks v. Google LLC*, No. 18-0801-NC, 2019 WL 8135563, at *3 (N.D. Cal. Dec. 13, 2019) (internal citations omitted).

Here, Class Counsel secured a fixed cash fund of $22.5 million for the benefit of the Settlement Classes. Thus, the percentage-of-the-fund method is appropriate. *Id.*

**B.    Given the excellent result achieved and relevant circumstances, a fee award that exceeds the benchmark of 25% of the common fund is fair and reasonable.**

The Ninth Circuit has established 25% of the common fund as a benchmark award for attorney fees in class actions where a common fund is established. *Staton*, 327 F.3d at 968 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). And although 25% is the starting point, "in most common fund cases, the award exceeds that benchmark." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007). As a general matter, courts have observed that "attorneys' fees in the amount of 30% of the common fund falls within the range of acceptable attorneys' fees in Ninth Circuit cases." *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014).

District courts may depart from the 25% benchmark rate by "providing adequate explanation in the record of any 'special circumstances.'" *In re Bluetooth*, 654 F.3d at 942.[6] Courts consider several non-exhaustive factors in determining whether to depart from the benchmark, including: (1) the results achieved for the class; (2) the complexity of the case and

---

[5]    "[U]nder the percentage method, counsel has an interest in generating as large a recovery for the class as possible, as her fee increases with the class's take, while keeping her hours to the minimum necessary to do the job effectively." William B. Rubenstein, *Why the Percentage Method?, Class Action Attorney Fee Digest* 93 (March 2008); *See also* 5 W. Rubenstein, *Newberg on Class Actions* §§ 15:62, 15:65 (5th ed. 2020) ("The ease of administration of the percentage method saves valuable judicial and party resources, thus heeding the Supreme Court's insistence that the "request for attorney's fees … not result in a second major litigation."") quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Conversely, "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino*, 290 F.3d at 1050 n.5.

[6]    *Powers v. Eichen*, 229 F.3d 1249, 1257 (9th Cir. 2000) ("The district court need not explain its decision in a written order of the court, but such explanation must be in the record.")

the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases.[7] *Vizcaino,* 290 F.3d at 1048–50; *In re Capacitors Antitrust Litigation,* No.14-3264, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018).

Here, Class Counsel seek a fee award of 27% of the common fund (i.e., $6,075,000). For the reasons discussed below, this percentage falls well within the established range of approved awards and will fairly and reasonably compensate Class Counsel for their work on behalf of the Settlement Classes.

### 1. The overall result and benefits obtained for the Settlement Classes support an award of the requested fee.

"[T]he factor given the greatest emphasis is the size of the fund created, because 'a common fund is itself the measure of success and represents the benchmark from which a reasonable fee will be awarded.'" Federal Judicial Center, *Manual for Complex Litigation*, §14.121 (4th ed. 2004) (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*). *See also Omnivision*, 559 F. Supp. 2d at 1046 ("overall result and benefit to the class from the litigation is the most critical factor in granting a fee award"). Here, the Agreement provides for a monetary award of $22.5 million plus substantial non-monetary benefits.

The Settlement provides claiming DSL Settlement Class Members with an estimated recovery of $21 to $44 (assuming the requested attorneys' fee, expenses and service fees are awarded), an amount ranging from 40% to 88% of their potential damages at trial. These percentages are based on Plaintiffs' most aggressive damages theory—each Boost purchaser's entitlement to $50 statutory damages. *See e.g. Weeks v. Google LLC*, No. 18-0801-NC, 2019

---

[7] These same general factors have also been enumerated as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See e.g. In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d at 942 and n. 7 (9th Cir. 2011) *citing Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975).

WL 8135563, at * 3 (N.D. Cal. Dec. 13, 2019) (awarding 30% where claiming class members would receive 38% of possible damages at trial). These "results are exceptional given that there was an absence of precedent involving a court awarding a monetary recovery to consumers for claims based on [the notice provisions of the New York DSL]". *Spann v. J.C. Penney Corp.,* 211 F. Supp. 3d 1244, 1263 (C.D. Cal. 2016) (in the absence of controlling precedent in a consumer protection case, court awarded 27% of the fund, amounting to a 3.07 multiplier when conducting a lodestar-crosscheck). That consumers in states that do not offer similar rights and statutory remedies are able to obtain relief in this Settlement (based on the choice-of-law provision in Bumble's Terms & Conditions) makes this relief more robust.[8]

      ARL Settlement Class member's potential damages depend upon how much they paid for Boost.  Based on current claims, claiming ARL Settlement Class Members are expected to receive a *pro rata* share amounting to over 50% of their potential damages[9].  This percentage is also based on Plaintiffs' most aggressive ARL damages theory—entitlement to all monies paid for auto-renewals under the gift provision.  This damages theory, grounded on the premise that the ARL's gift provision applies to digital products like Bumble Boost, waded into uncertain legal terrain as it has not yet been addressed by the Ninth Circuit nor California appellate courts. *See e.g. Johnson v. Pluralsight, LLC,* 728 F. App'x 674, 677 (9th Cir. 2018) (expressly leaving open whether the gift provision of the ARL applies to digital products); *see also Mayron v. Google LLC*, No. H044592, 2020 WL 5494245, at *5 (Cal. Ct. App. Sept. 11, 2020) ("…we need not reach the issue of whether the gift provision applies only to tangible goods and not to a data storage plan like Google Drive"). Thus, the monetary results obtained in this agreement are

---

[8]     Indeed, there is only one other class settlement—the Tinder dating app settlement—that Plaintiffs are aware of that resolved claims for alleged violations of the notice provisions of a dating service law. *Hansen v. Tinder Inc.*, a class action alleging that Tinder failed to notify consumers of their right to cancel, was settled on a class-wide basis for coupons only: either one free month of Tinder or a one-time allotment of "Super Likes." 2018 Cal. Super. LEXIS 123, *2 (Cal. Sup. Ct, San Luis Obispo) (April 11, 2018). It did not provide consumers with a cash recovery. *Cf. Omnivision,* 559 F. Supp. 2d at 1046 (recovery of more than the average recovery in the category of class action settlements weighed in favor of granting the 28% request.)

[9]     ARL Settlement Class Members who are also members of the DSL Settlement Class will get a combined recovery (i.e., their respective shares from each Settlement Class).

---

Motion for Attorney's Fees,
Costs and Service Awards            6                 5:18-cv-06868-NC

exceptional.

Class Counsel also generated significant benefits to the Settlement Classes beyond the creation of a sizable common fund.  Under the Agreement, Bumble consents to the entry of an injunction that requires the company to implement and maintain certain business practices for a period of 18 months. Settlement, § 2.8. These business practices were designed to reform the complained-of practices and policies that were the basis for the claims in the Third Amended Complaint. Dkt. 58 at 24-25.  The injunction will require Bumble to implement meaningful changes to the purchase flow on the Bumble platform and to Bumble's Terms & Conditions. Under the Agreement, Bumble will provide additional disclosures clarifying the auto-renewing nature of the subscriptions prior to the purchase and send post-purchase emails that disclose the price and period of the plan purchased, that the plan will auto-renew unless cancelled within 24 hours prior to the end of the plan period, and the instructions for how to cancel. Settlement, § 2.8 (c) and (d). Bumble will also change its Terms and Conditions to offer cancellation and refund rights to consumers. Settlement, § 2.8 (a) and (b).  That Bumble denies that it is legally obligated to make any of these changes makes this relief more compelling. *Id*., § 2.8.

Class Counsel do not provide a methodology to quantify the monetary value of this injunctive relief (as it is difficult to accurately assess) so such non-monetary benefits are not treated as part of the common fund.  Rather, since Class Counsel generated significant non-monetary benefits, the Court "...should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund [C]lass [C]ounsel should receive as attorneys' fees, rather than as part of the fund itself." *Staton*, 327 F.3d at 974 (citing *Vizcaino*, 290 F.3d at 1049). *See also Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.),* 779 F.3d 934, 955 (9th Cir. 2015) (courts consider whether counsel's performance "generated benefits beyond the cash settlement fund," as a factor in assessing attorneys' fees).  Courts have deviated from the benchmark based on non-monetary benefits provided to class members.  *See e.g. Taylor v. Shippers Transp. Express, Inc*., No. 13-2092, 2015 WL 12658458, at \*15 (C.D. Cal. May 14, 2015) (holding the non-monetary relief obtained represented a "special circumstance" that justified an upward enhancement from the benchmark);

1   *Valentine v. NebuAd Inc.*, No. 8-5113, TEH (LB), 2011 WL 13244509, at *2 (N.D. Cal. Nov. 21,
2   2011) (non-monetary relief warranted upward adjustment).

3           Here, the monetary and non-monetary benefits obtained by Class Counsel support the fee
4   request and favor an upward deviation from the benchmark.

5           **2.    The risks of litigation support the fee award requested.**

6           The significance of the results achieved, and benefits obtained come into sharper focus
7   when assessing the litigation risks the class faced.  "Courts have recognized that the novelty,
8   difficulty and complexity of the issues involved are significant factors in determining a fee
9   award."  *Spann*, 211 F. Supp. 3d at 1263-64 (internal citations omitted).

10           This litigation and subsequent settlement hinged on complex, threshold issues that
11   lacked in controlling precedent and were novel in their application. On the first motion to
12   dismiss, the parties briefed whether a choice-of-law clause in Bumble's Terms and Conditions is
13   enforceable.  This required a series of complicated choice-of-law analyses for each of the claims,
14   including a matter of first impression —whether the California DSL represents a fundamental
15   public policy of California.

16           The second motion to dismiss briefing was focused, in part, on additional legal
17   complexities concerning the Court's jurisdiction. Bumble contended that the Court did not have
18   personal jurisdiction over out-of-state class members and urged the Court to certify the issue to
19   the Ninth Circuit.  *See e.g.* Dkt. 67 at 17.  The Court denied Bumble's motion to dismiss for lack
20   of personal jurisdiction as to absent out-of-state class members but acknowledged that there may
21   be a substantial ground for a difference of opinion. Dkt. 84 at 11.

22           Therefore, had the Court certified the nationwide DSL Settlement Class for litigation
23   purposes, Bumble would likely have renewed its request to certify the issue for appeal to resolve
24   this difference of opinion.  Irrespective of the strengths of Plaintiffs' position,[10] a grant of leave
25   to appeal after class certification or a post-trial appeal in the case could have dragged out this

26   _____

27   [10]      After this Court's ruling denying the request, the Seventh Circuit held that a challenge to
     jurisdiction does not apply to unnamed class members in a class action. *See Mussat v. IQVIA,*
28   *Inc.*, No.19-1204, 2020 WL 1161166, at *5 (7th Cir. Mar. 11, 2020). But the Ninth Circuit has
     not yet spoken on the issue.

litigation for an extended period and potentially risked the size of the class and consequently the scope of any relief.

Plaintiffs' claims were strong but novel in their application, thus presenting significant litigation risks.  As to the New York DSL claims, the parties briefed the hotly contested issue of whether Bumble Boost is a "social referral service" under the statute.  And although Plaintiffs prevailed on a motion to dismiss on this issue, Bumble continued to press its defense that, as a factual matter, Bumble Boost does not meet the statutory definition because it does not "match" users and is merely a paid upgrade consisting of a package of interface features.  Parisi Decl. ¶ 20.  This issue, untested outside of the pleadings, continued to present a risk to recovery.

As to the ARL claims, Bumble challenged the applicability of the ARL's gift provision to Bumble Boost—a digital product.  Dkt. Nos. 23 at 26; 44 at 24; 49 at 17. As discussed above in section II.B.2., this remains an open question.

An adverse ruling for Plaintiffs on any of these dispositive issues could have stopped the litigation in its tracks and thwarted recovery. *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1117 (C.D. Cal. 2008) (risk supported increased fee where "law was not settled in the areas encompassed by the suit, and in some areas the law was very uncertain").

Moreover, Bumble's intention to enforce a purported class action waiver in its Terms and Conditions posed yet an additional risk to class certification. *See* Dkts. 87;109-4 at 26:5-14. That "counsel pursued this case in the absence of supporting precedents, in the face of [purported] agreements signed by the class members [supposedly] forsaking benefits..." to participate in a class action against Bumble, highlights the exceptional results achieved. *Vizcaino*, 290 F.3d at 1048.

Assuming Plaintiffs prevailed on liability, Bumble challenged the viability of Plaintiffs' damages and restitution calculations by contending that class members who were satisfied with their Boost subscriptions received the benefit of the bargain.  Parisi Decl. ¶ 20. Therefore, the settlement amount of $22.5 million "...is compelling given the substantial litigation risks in this case, including the real possibility that [class members] could recover nothing even if [they]

---

prevailed on liability given the risks with respect to each of plaintiff's proposed measures of restitution [and damages]." *Spann*, 211 F. Supp. 3d at 1263; (internal quotations omitted).

While Plaintiffs had strong and potent responses to Bumble's—yet to be tested— arguments, and despite the merit of their claims, these specific legal risks make the outcome unclear and could have prevented recovery altogether. *See Omnivision*, 559 F. Supp. 2d at 1046-47. ("The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees").

Finally, Bumble's well-funded and determined defense in this litigation by Cooley LLP—a firm that is widely regarded as one of Silicon Valley's go-to law firms for technology cases—presented a serious risk to any recovery. *See, e.g. Lofton v. Verizon Wireless* (VAW) LLC, No. C 13-05665 YGR, 2016 WL 7985253, at *1 (N.D. Cal. May 27, 2016) ("[T]he risks of class litigation against an able defendant well able to defend itself vigorously" support an increase in the percentage of the fund awarded).

These risks also support an upward adjustment from the benchmark.

### 3.   The skill required by Class Counsel and the quality of their work support the fee award requested.

"The 'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Omnivision*, 559 F. Supp. 2d at 1047 (quoting *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987)).  Class Counsel are experienced consumer class action attorneys who have litigated many class cases, including cases under the consumer protection statutes of New York and California.  Parasmo Decl., ¶¶ 3-18; Parisi Decl., ¶¶ 2-3.

Class Counsel advanced the case despite three motions to dismiss, discovery obstacles, and other significant roadblocks. Class Counsel successfully defeated Bumble's motion to dismiss Plaintiffs' claims based on the California ARL, so Boost consumers in California can recover monies and relief for their auto-renewal claims under the Settlement.

Moreover, at the outset, Plaintiffs proposed to represent a California only class. Although Bumble was successful in enforcing a choice-of-law provision designating New York law (thus defeating Plaintiffs' California DSL and derivative claims), Class Counsel recast the case by

---

Motion for Attorney's Fees,
Costs and Service Awards                    10                    5:18-cv-06868-NC

1    asserting claims on behalf of a nationwide class. Plaintiffs stated dating service law and

2    derivative claims under New York law on behalf of Boost purchasers across the nation and

3    defeated Bumble's subsequent challenges to both the Court's jurisdiction over these out-of-state

4    purchasers and the NY DSL's applicability to Boost.

5         Through these efforts, Boost consumers in all 50 states are now able to recover money

6    and exercise cancellation rights under the New York DSL that they could not have prior to the

7    litigation.  These results are a testament to the skill, perseverance, and diligence Class Counsel

8    exercised and the quality of their work in the case. *Cf. Chambers v. Whirlpool Corp.*, 214 F.

9    Supp. 3d 877, 902 (C.D. Cal. 2016) ("[t]hese results are particularly impressive given that class

10   counsel began with an 11-state lawsuit and converted it into a nationwide settlement"); *In re*

11   *Nexus 6P Prod. Liab. Litig.,* No. 17-CV-02185-BLF, 2019 WL 6622842, at *12 (N.D. Cal. Nov.

12   12, 2019) ("[t]hat Plaintiffs' case withstood two such motions, despite other weaknesses, is some

13   testament to [Class] Counsel's skill") citing *In re Omnivision Techs.,* 559 F. Supp. 2d at 1047.

14   (second alteration in original).

15       Class Counsel's aggressive and persistent pursuit of the litigation put Plaintiffs in a

16   position to negotiate the favorable settlement on behalf of the Settlement Classes. Bumble

17   resisted certain class discovery that in turn necessitated numerous lengthy meet-and-confers that

18   transpired over a course of months, exchanges of discovery letter briefs, and on occasion, Court

19   intervention.  Parasmo Decl., ¶¶ 44-47, 61-65, 74-77; *See also,* Dkt. 61, 62, 81, 90, 95-99. The

20   parties were in the final stages of negotiating topics for the deposition of Defendants' 30(b)(6)

21   witnesses, with any outstanding disagreements to be brought to the Court. Parasmo Decl. ¶ 74,

22   76, 77.  The parties were also in the process of locking down deposition dates and preparing for

23   Plaintiffs' depositions. Parasmo Decl. ¶ 78, 91. Plaintiffs were a little over a month away from

24   filing their class certification motion when the parties reached an agreement in principle to

25   resolve the case with a $22.5 non-reversionary fund and injunctive relief.  Agreeing on the

26   settlement language, the claims and notice program, and reaching a final settlement, however,

27   required skill and was no easy task.  Parisi Decl. ¶¶ 24-27; Parasmo Decl. ¶¶ 81-85. Put simply,

28   the risks overcome, and results achieved with the Agreement reflect Class Counsel's exercise of

their skills and the quality of their work in this case.

Further, as discussed, Bumble fought aggressively each step of the way, and was successful in knocking out several claims and a named plaintiff. *See* Dkts. 53, 76, and 84. "[T]he quality of opposing counsel is also relevant to the quality and skill that class counsel provided." *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016). Bumble's counsel at Cooley, LLP are well respected both inside and outside this district and refused to back down on any of the disputed legal and discovery issues. *See Heritage Bond*, 2005 WL 1594403, at *20 ("[t]here is also no dispute that the plaintiffs in this litigation were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients").

Notwithstanding the fact that Bumble's "counsel understood the legal uncertainties in this case, and were in a position to mount a vigorous defense[,]" Class Counsel have recovered a $22.5 million settlement; and a "sizeable recovery… is some testament to Plaintiffs' counsel's skill." *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, *6 (N.D. Cal. Feb. 2, 2009); *see also Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-1365, 2010 WL 1687829, *2 (N.D. Cal. Apr. 22, 2010) ("Class Counsel displayed great skill in overcoming the numerous formidable challenges raised by State Farm [,]" justifying increased fee award). This factor also warrants an upward departure.

### 4. The contingent nature of the litigation and preclusion of other work favor the requested fee.

"Because payment is contingent upon receiving a favorable result for the class, an attorney should be compensated both for services rendered and for the risk of loss or nonpayment assumed by accepting and prosecuting the case." *In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1257 (C.D. Cal. 1997). An increased fee award here serves the important function that contingency fees play in our legal system: "assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *In re WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("importance of assuring adequate representation for plaintiffs who could not otherwise afford competent

1    attorneys").

2           Collectively, Class Counsel have reasonably expended more than 4,540 hours, over two

3    years, incurred $2,411,187.50 in fees, on a contingency basis, and over $15,104 in claimed

4    expenses, without any guarantee that any of the time or expense would be recovered.  Parisi

5    Decl. ¶¶ 32 and 40; Parasmo Decl. ¶¶ 93-96, 98, 108. Further, Class Counsel were precluded

6    from taking on certain new case opportunities and turned down opportunities to work on other

7    cases in order to devote the appropriate amount of energy, time, and resources to this case.

8    Parasmo Decl. ¶¶ 94-95; Parisi Decl. ¶ 37.  *See Garner v. State Farm Mut. Auto. Ins. Co.,* No.

9    08-1365 CW, 2010 WL 1687829, at *2 (N.D. Cal. Apr. 22, 2010) (where class counsel turned

10   down opportunities to work on other cases supported increase from benchmark); *In re Heritage*

11   *Bond Lit.,* 2005 WL 1594389, at * 14 (C.D. Cal. 2005) (same). And "attorneys whose

12   compensation depends on their winning the case must make up in compensation in the cases they

13   win for the lack of compensation in the cases they lose."  *Fronda v. Staffmark Holdings, Inc.,*

14   No. 15-2315-MEJ, 2018 WL 2463101, at *11 (N.D. Cal. June 1, 2018) *quoting Vizcaino,* 290

15   F.3d at 1051.  These "[financial] burdens are relevant circumstances" to the Court's fee award

16   and justify an increase from the benchmark. *Vizcaino*, 290 F.3d at 1050.

17           **5.     Awards in similar cases support the fee sought.**

18           Class Counsel seek a fee award of 27%, which falls within the range of fee awards in

19   common fund settlements.  Indeed, even "fee award[s] of 30 percent [are] within the usual range

20   of fee awards that Ninth Circuit courts award in common fund cases." *Garner v. State Farm Mut.*

21   *Auto. Ins. Co.,* No. CV 08-1365 CW, 2010 WL 1687829, at *1 (N.D. Cal. Apr. 22, 2010)

22   (collecting cases) (internal citations omitted). Moreover, "[i]n most common fund cases, the

23   award exceeds [the 25%] benchmark, with a 30% award the norm absent extraordinary

24   circumstances that suggest reasons to lower or increase the percentage." *Burnthorne-Martinez v.*

25   *Sephora USA, Inc*., No. 16-2843-YGR, 2018 WL 5310833, at *2 (N.D. Cal. May 16, 2018)

26   (internal quotations and citations omitted). The Ninth Circuit has also affirmed awards greater

27   than the 27% sought here in common fund cases. *See, e.g.*, *In re Pac. Enters. Sec. Litig.,* 47 F.3d

28   373, 379 (9th Cir. 1995) (no abuse of discretion where the "$4 million award (thirty-three

---

percent [of the class's recovery]) for attorneys' fees is justified because of the complexity of the issues and the risks"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee award of one third of common fund); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003) (affirming attorneys' fee of 33% of the recovery); *Vizcaino*, 290 F.3d at 1047–48 (no abuse of discretion to award fees constituting 28% of the class's recovery given "risk" assumed in litigating).[11]

The modest upward departure requested here is also within the range awarded in consumer class actions, a category of cases that pose unique risks[12].  *See e.g.*, *In re Lenovo Adware Litig.*, No. 15-02624-HSG, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (awarding 30% in consumer privacy litigation); *Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *12-13 (N.D. Cal. Sept. 29, 2016) (finding award of 30% reasonable in consumer fraud case).  *In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) (awarding 30% fee in product liability case); *Weeks v. Kellogg Co.*, No. CV 09-8102, 2013 WL 6531177, at *30 (C.D. Cal. Nov. 23, 2013) (awarding 30% in consumer protection case); *Peel v. Brooksamerica Mortg. Corp.,* No. 11-79-JLS, 2015 WL 12745788, at *6 (C.D. Cal. Apr. 6, 2015) (awarding 29.3% for UCL claims)*; In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2019 WL 6622842, at *13 (N.D. Cal. Nov. 12, 2019) (awarding 30% fee in product liability case); *Williamson v. McAfee, Inc*., No. 5:14-cv-00158-EJD, 2017 WL 6033070, at *2 (N.D. Cal. Feb. 3, 2017) (awarding attorneys' fees at about 26.8% in auto-renewal case, based on estimated value of certificates offered to class members); *Rodriquez v. It's Just Lunch Int'l,* No. 07-CV-09227 (SN), 2020 WL 1030983, at *10 (S.D.N.Y. Mar. 2, 2020) (awarding 31.5% for claims under consumer protection laws, New York GBL §§ 349 and 394-c).

---

[11]     "…California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent."  *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1022 (E.D. Cal. 2019) citing *In re Consumer Privacy Cases*, 175 Cal.App.4th 545, 556 n. 13, 96 Cal.Rptr.3d 127 (2009)).

[12]     *See e.g. Kakani v. Oracle Corp.*, No. 6-6493WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 21, 2007) (observing that consumer protection cases, as a category, do not follow a predicable set of parameters and thus pose inherent litigation risks.)

### C.    A lodestar-crosscheck confirms the reasonableness of the fee request.

"As a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048.  Courts are not required to conduct a lodestar-crosscheck.  *See e.g. Farrell v. Bank of Am. Corp., N.A.,* Nos. 18-56272, 18-56273, 18-56371, 2020 WL 5230456, at *1 (9th Cir. Sept. 2, 2020) ("This Court has consistently refused to adopt a crosscheck requirement, and we do so once more.") (collecting cases).[13]  But a lodestar cross-check is encouraged to confirm the reasonableness of the percentage of the fund awarded.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015); *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 944 (9th Cir. 2011).

Here, Class Counsel has submitted declarations providing detailed summaries of the work done on behalf of the Settlement Classes.  Parisi Decl. ¶¶ 4-30; Parasmo Decl. ¶¶ 22-92.[14]  Based on work to date, Class Counsel's collective lodestar is $2,411,187.50, corresponding to 4,540 hours in uncompensated time that was necessary and reasonable to the prosecution of the case. Parasmo Decl. ¶¶ 98-99; Parisi Decl. ¶¶ 32 and 40. Class Counsel worked in cooperation with one another to divide tasks, ensure efficient case management, and avoid duplicative work. Parasmo Decl. ¶ 106; Parisi Decl. ¶¶ 38-39.  Class Counsel did not undertake extraneous work nor was there an incentive to do so. Parasmo Decl. ¶ 96; Parisi Decl. ¶¶ 38-39.  Class Counsel's lodestar does not include the additional time that they will need to devote to drafting the final approval papers and appearing at the hearing, implementing the Settlement (should the Court

---

[13]    *Accord Laffitte*, 1 Cal.5th at 503–06 (holding, under California law, that "the percentage method to calculate [attorney's] fee in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

[14]    When conducting a lodestar-crosscheck, review of summaries in attorneys' declarations are sufficient. *See e.g. Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting ... [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (citations omitted) (second and third alterations in original); *See also Covillo v. Specialtys Café,* No. C-11-00594 DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (finding that for the lodestar cross-check, courts "may rely on summaries submitted by the attorneys and need not review actual billing records") (citation omitted). The Court seeks to "do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

grant final approval), responding to Settlement Class Members' inquiries, supervising and monitoring the settlement administration generally, providing post-distribution accounting reports to the Court, working on any appeal if necessary, and taking further steps to close out the litigation. Parasmo Decl. ¶ 107; Parisi Decl. ¶¶ 30. Class Counsel's lodestar will grow as the settlement process is finalized and the litigation comes to a close.

Class Counsel's hourly rates, ranging from $475 to $600 for attorneys, are reasonable.[15] "To determine whether rates are reasonable, courts must identify the relevant community, and assess the prevailing hourly rate in that community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *G. F. v. Contra Costa Cnty.*, Case No. 13-cv-03668-MEJ, 2015 WL 7571789, at *14 (N.D. Cal. Nov. 25, 2015). The relevant community for the purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

Class Counsel's hourly rates are consistent with, or less than, the prevailing market for legal services like that performed in this case, by attorneys with reasonably comparable skill, experience and reputation in the Northern District of California. Parisi Decl. ¶¶ 34-36; Parasmo Decl. ¶¶ 102-103. *See e.g.*, *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11, 2018) (finding rates "ranging from $600 to $875 per hour for attorneys with more than 10 years of experience" to be reasonable); *Hefler v. Wells Fargo & Co.*, No. 16-5479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $ 490 for paralegals reasonable*); Deluca v. Farmers Ins. Exch.*, No. 17-CV-00034-TSH, 2020 WL 5071700, at *7 (N.D. Cal. Aug. 24, 2020) (finding rates of $475-625 for partner attorneys reasonable); *In re Lenovo Adware*

---

[15] *See In re WPPS.*, 19 F.3d at 1305 (courts apply each biller's current rates for all hours of work performed, regardless of when the work was performed, as a means of compensating for the "delay in payment."); *Vizcaino*, 290 F.3d at 1051 (affirming lodestar crosscheck using current billing rates).

1  *Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *9 (N.D. Cal. Apr. 24, 2019) (finding

2  rates of $365 to $950 per hour for attorneys reasonable). *See True Health Chiropractic Inc v.*

3  *McKesson Corp.*, No. 13-02219, 2015 WL 3453459, *2 (N.D. Cal. May 29, 2015) ("[i]n the Bay

4  Area, reasonable hourly rates for partners range from $560 to $800).[16]

5          Courts routinely enhance the lodestar to reflect the risk of non-payment in common fund

6  cases. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672

7  CRB (JSC), 2017 WL 1047834, at *3 (N.D. Cal. Mar. 17, 2017). Thus, "[m]ultipliers of 1 to 4

8  are commonly found to be appropriate in complex class action cases." *Hopkins v. Stryker Sales*

9  *Corp.*, 2013 WL 496358, *4 (N.D.Cal.2013).[17]  Class Counsel's fee request, which represents a

10 current multiplier of approximately 2.5, is fair and reasonable and falls within the range of

11 multiplier requests approved by the Ninth Circuit. *See, e.g., Steiner v. Am. Broad Co., Inc.*, 248

12 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of approximately 6.85 to be "well within

13 the range of multipliers that courts have allowed" when crosschecking a fee based on a

14 percentage of the fund); *see also Vizcaino*, 290 F.3d at 1052 (collecting cases and finding the risk

15 multiplier fell between 1.0 and 4.0 in 83% of cases, with a range of 0.6–19.6 and approving 3.65

16 multiplier when performing a lodestar-crosscheck awarding 28% of fund.); *Johnson v. Fujitsu*

17 *Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *7 (N.D. Cal. May 11,

18 2018) (finding a 4.375 multiplier to be reasonable in crosschecking a fee of 25% of a settlement

19 fund); *Spann v. J.C. Penney Corp.,* 211 F. Supp. 3d at 1263 (finding a 3.07 multiplier reasonable

20 when crosschecking a fee award of 27% of the fund); *Gergetz v. Telenav, Inc.,* No. 16-4261-

21

22 ───────────────────

   [16]      Indeed, for complex class action litigation, the market rates for defense firms defending

23 these actions—including Cooley LLP, which represents Bumble—often exceed the rates sought

   here. For example, Facebook requested attorneys' fees for work performed by Cooley LLP in

24 2010 to 2011 at billable hourly rates of $930 for partners and $580 for sixth-year associates for

   successfully defending the company in a putative consumer class action. *See Cohen v. Facebook*,

25 No. 10-cv-05282-RS, Dkt. 347-1, at 13. *See also*, National Law Journal, *Billing Rates Across the*

   *Country*, http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-

26 Country (last visited Oct. 7, 2020) (reflecting that 9 years ago, the average Cooley LLP partner's

   billable rate was $820 per hour, with a high of $990, and associates averaged $525).

27 [17]      *Accord Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 255, 110 Cal. Rptr.2d 145

28 (2001) ("Multipliers can range from 2 to 4 or even higher").

1   BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) (finding a multiplier of 2.625 is within

2   the range of reasonableness in crosschecking fee of 30% in consumer case).

3   **III.   Class Counsel Should Be Reimbursed For Their Necessary And Reasonable
         Litigation Costs**

4

5           An attorney is also entitled to "recover as part of the award of attorney's fees those out-

6   of-pocket expenses that would normally be charged to a fee paying client." *Theodore*

7   *Broomfield v. Craft Brew All., Inc.,* No. 17-1027-BLF, 2020 WL 1972505, at *17 (N.D. Cal.

8   Feb. 5, 2020) (*citing Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

9           Class Counsel request reimbursement from the fund in the amount of $15,104.00 for

10  litigation costs reasonably and necessarily incurred in pursuit of the litigation.  Parisi Decl. ¶¶

11  40-42; Parasmo Decl. ¶¶ 108-109 (combined, counsel incurred a total of $16,976.12 in costs).

12  The categories of expenses for which counsel seek reimbursement are the type of expenses

13  routinely charged to paying clients and, therefore, should be reimbursed out of the common fund.

14  Parisi Decl. ¶42 (court reporters and transcripts, research, mediator, travel, filing and messenger,

15  postage and service of process); Parasmo Decl. ¶ 109 (travel and PACER expenses). These are

16  the normal costs of litigation that are traditionally billed to paying clients. *In re Milligan v.*

17  *Toyota Motor Sales, U.S.A., Inc.*, No. 09-5418 RS, 2012 WL 10277179, at *9 (N.D. Cal. Jan. 6,

18  2012) (courts grant reimbursement requests where class counsel incurred out-of-pocket costs

19  including filing fees, copying, mailing, faxing, serving documents, conducting computer

20  research, conducting depositions and obtaining transcripts, travel to hearings, depositions and

21  mediation sessions, and expert fees); *see also Destefano v. Zynga, Inc*., 2016 WL 537946, at *22

22  (N.D. Cal. Feb. 11, 2016) (same).

23  **IV.   Plaintiffs' Efforts For The Settlement Classes Support Their Requested Service
         Award**

24          "Incentive awards are fairly typical in class action cases . . . and are intended to

25  compensate class representatives for work done on behalf of the class, to make up for financial

26  or reputational risk undertaken in bringing the action, and, sometimes, to recognize their

27  willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,

28  958-59 (9th Cir. 2009) (cited by *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 943

1    (9th Cir. 2015)).  Class representatives are eligible for reasonable service awards.  *Staton*, 327

2    F.3d at 977.  Generally, to make such a determination, courts may look to a variety of factors

3    such as the class representative's actions to protect the interests of the class, the degree to which

4    the class has benefitted from those actions, the time and effort the class representative expended

5    in pursuing the litigation, and any risk the class representative assumed.  *Id.*  Each of these

6    factors are found here.

7        The proposed class representatives each request a Service Award of $5,000.00 for the

8    time and effort that they have invested in the case and the initiative taken to retain counsel and

9    pursue this action.  They preserved and collected documents, responded to written discovery

10   requests, kept informed about the case developments, met with and sought regular updates from

11   their attorneys, made themselves available for mediation, analyzed and reviewed settlement

12   offers and terms, contributed to the crafting of the injunctive relief provisions, made themselves

13   available for depositions and put their personal lives on display by making public that they were

14   users of the Bumble dating app. *See* Decl. Elena Weinberger ¶¶ 4-7; Decl. Deena Fischer ¶¶ 4-7;

15   Decl. Nick King, Jr. ¶¶ 3-5.

16       Additionally, each plaintiff's request is reasonable as $5,000 is the presumptive incentive

17   award in the Northern District of California. *Carlotti v. ASUS Computer Int'l,* No. 18-3369-

18   DMR, 2020 WL 3414653, at *7 (N.D. Cal. June 22, 2020) *citing In re Chrysler-Dodge-Jeep*

19   *Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL

20   536661, at *9 (N.D. Cal. Feb. 11, 2019); *see also In re Online DVD-Rental Antitrust Litig.*, 779

21   F.3d at 947 (approving $5,000 incentive awards where individual class members each received

22   $12).

23       Plaintiffs' efforts are precisely what was contemplated in the enactment of Rule 23 and

24   they should be awarded here with the requested service awards.

25

26

27

28

Motion for Attorney's Fees,
Costs and Service Awards                            19                            5:18-cv-06868-NC

1

## V.  Conclusion

For the foregoing reasons, Plaintiffs respectfully request the Court grant this motion and award Class Counsel attorneys' fees of $6,075,000.00 plus reimbursement costs of $15,104.00, and service awards of $5,000.00 for each of the three class representatives.

Dated: October 9, 2020           By: _____/s/Yitzchak H. Lieberman_____

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile:  (877) 501-3346

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
(818) 990-1299 (telephone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Attorneys for Plaintiffs Nick King Jr., Deena Fischer, Elena Weinberger on their own behalf, and on behalf of all others similarly situated