David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (646) 509-3913
Facsimile: (877) 501-3346

Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, and Elena Weinberger,
individually, and on behalf of a class of
similarly situated individuals

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| NICK KING, JR., DEENA FISCHER, and ELENA WEINBERGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BUMBLE TRADING, INC., and BUMBLE HOLDING LTD.,<br><br>Defendants. | Case No.  5:18-cv-06868-NC<br><br>Hon. Nathanael Cousins<br><br>**DECLARATION OF DAVID C. PARISI IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, COSTS AND NAMED PLAINTIFFS' SERVICE AWARDS**<br><br>Date:      December 16, 2020<br>Time:      2:00 p.m.<br>Location:  Courtroom 5 *via Zoom Video*<br>           280 South 1st St.<br>           San Jose, CA  95113 |

I, David C. Parisi, declare as follows:

1.      I am a partner in the law firm of Parisi & Havens LLP and, along with my partner, am responsible for the handling of this litigation at my firm.  I am counsel of record for Plaintiffs Nick King, Jr., Deena Fischer, and Elena Weinberger (collectively, "Class Representatives").  I am a member of the Bar in the States of California and Washington.  I make this declaration based upon my own personal knowledge.  I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs and Named Plaintiffs' Service Awards.  If called to testify, I could and would testify to the facts contained herein.

**QUALIFICATIONS OF COUNSEL**

2.      The principals of Parisi & Havens LLP are Suzanne Havens Beckman and myself.  I graduated with a law degree from Boston University School of Law and have been practicing law since passing the California State Bar in 1992.  My law partner, Ms. Havens Beckman, obtained her law degree from the University of Southern California and was admitted to the California State Bar in 1997.  I am admitted to practice law in the States of California and Washington, and before the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, as well as other District Courts.  Together, my partner and I have successfully litigated numerous complex class actions on behalf of plaintiffs.  Over the past seventeen or more years of practice, well over ninety-five percent of our firm's work has been devoted to representing consumers in class actions. A copy of my firm's resume is attached as **Exhibit 1**.

3.      As our firm resume indicates, we are highly experienced in the litigation of complex consumer class actions in both trial courts as well as appellate courts. A sampling of some of these actions are as follows: *Djoric v. Justin Brands, Inc.*, Case No. BC574927 (Los Angeles Superior Court); *Guido, et al. v. L'Oreal, USA, Inc., et al.*, No. 2:11-cv-01067-CAS (N.D. Cal.); *In re ATI Tech. HDCP Litigation*, No. 5:06-cv-01303-JW (N.D. Cal.); *In re iPhone Application Litigation*, No. 5:11-md-02250-LHK (N.D. Cal.); *In re Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, No. 1:14-md-02513-RGS (Dist. Mas.); *In re Hulu Privacy Litigation*, No. 3:11-cv-03764-LB (N.D. Cal.); *Lane, et al. v. Facebook, Inc., et al.*, No. 5:08-cv-03845-RS (N.D. Cal.); *Lebarre v. Century-National Ins. Co.*, Case No. BC479159 (Los Angeles Superior Court); *Lofton v. Verizon Wireless (VAW) LLC*, No. 4:13-cv-05665 (N.D. Cal.); *Meyer v. Portfolio Recovery Assoc.*,

No. 11-CV-01008 (S.D. Cal.), *transferred to MDL*, *In re PRA*, No. 2295; *Meyer v. PYOD, LLC, et al.*, No. 37-2014-00008110-CU-BT-NC (San Diego Superior Court); *Slovin, et al. v. Sunrun, Inc., et al.*, No. 4:15-cv-05340-YGR (N.D. Cal.); *Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 3:13-cv-01803-EMC (N.D. Cal.); *Wang v. Asset Acceptance, LLC, et al.*, No. 3:09-cv-04797-SI (N.D. Cal.); and *Wang v. Bank of America, N.A.*, Case No. CGC-12-526452 (San Francisco Superior Court).

**SUMMARY OF TIME PERFORMED BY MY FIRM**

4.     During the course of the litigation, defendants Bumble Trading Inc. and Bumble Holding Ltd. ("Bumble" or "Defendants") challenged Plaintiffs' claims on all fronts, requiring my firm and co-counsel to aggressively oppose legal challenges to the merits and pursue discovery from Defendants related to jurisdiction, class certification, and merits.  Bumble filed three motions to dismiss, two of which we opposed and one of which caused Plaintiffs to amend the operative complaint.  The motions to dismiss challenged the merits of the case and caused significant research into areas of law which have not been litigated in the past, or in which the courts were only recently addressing.  We also sought and succeeded in obtaining an order lifting the stay on discovery at the pleading stage.  Overall, we served, and defendants responded to seventy-three document requests, fourteen interrogatories, and fourteen requests for admissions.  We also sought third party discovery and subpoenaed Bumble's primary vendors for relevant data and policies relating to Bumble.  Discovery issues in this case were highly contested and resulted in telephonic meet and confers over the course of the litigation, an order, requested by Bumble, setting discovery limits, the filing of two discovery briefs with the Court, and the preparation and negotiation of several others.  Further, we deposed Bumble's current Chief of Staff and former Chief Operations Officer for Bumble Trading, Inc.  We also worked with our clients and Plaintiffs responded to Bumble's document discovery requests.

5.     These efforts paid off and put my firm and co-counsel in the position to fully evaluate the merits of the case and Bumble's defenses (those formally raised and those expected). The formal and informal discovery also gave us a comprehensive and thorough understanding of Bumble's in-app subscription and purchase flows, auto-renewal and refund policies and procedures, internal complaint processes related to refunds, as well the size of the proposed classes, the amounts

1  paid by class members to Bumble for Boost, when Bumble Boost was launched, and information

2  necessary to identify the Settlement Class Members.  Ultimately, our intimate understanding of the

3  facts of the case and the complex legal issues involved enabled us to negotiate the best possible

4  settlement for the classes.

5        6.     The reasonable and necessary time spent on this action by myself and my partner can

6  generally be broken down into phases which occurred at different times during the litigation.  These

7  time periods are similar, though not identical, to the same periods described in the declaration by

8  my co-counsel, Grace Parasmo.

9        7.     I have reviewed my firm's time sheets and describe and summarize the phases of

10  litigation as follows:

11        8.     **Case Investigation, Commencement of the Action, and Filing of the First**

12  **Amended Complaint - October 2018 through February 13, 2019.**  My firm's attorneys billed

13  $74,520.00 for 126.10 hours of time during this period.  During this period, my firm, along with co-

14  counsel, evaluated the theories of liability and potential causes of action, conducted factual and

15  legal research regarding the claims, revised a demand letter as required by the Consumer Legal

16  Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and prepared the complaint for Plaintiffs

17  Nick King, Jr., Deena Fischer, and Elena Weinberger for filing on November 13, 2018.  Dkt. 1. This

18  early investigation was extensive and included significant analysis of the California Dating Services

19  Law ("CA DSL"), Cal. Civ. Code § 1694, and the California Auto Renewal Law ("ARL"), Business

20  & Professions Code §§ 17600-17606, neither of which have well-established jurisprudence as

21  compared with other consumer protection provisions.  Further, my firm and my co-counsel spent

22  considerable time investigating the operation of the Bumble Boost application on different

23  platforms, including screen layouts, purchase flows, and interaction with third parties (primarily the

24  Apple App Store and Google Play Store).  After filing the complaint, we reviewed the Court's

25  standing orders and evaluated whether to consent to the magistrate assigned to the case, which we

    did in December 2018.  Dkt. 11.

26        9.     It was also during this time that we began a dialogue with defense counsel about the

27  case and negotiated Bumble's waiver of service and acceptance of the summons and complaint by

28  counsel.  Further, the parties discussed Bumble's anticipated motions and, guided by the Court's

1   Initial Scheduling Order, the scheduling of the case, and Bumble's deadline to respond to the

2   complaint.  Ultimately, the parties stipulated to an extension of time for Bumble to respond,

3   negotiated a briefing schedule for Bumble's expected motion to dismiss, and sought to continue the

4   Initial Status Conference hearing to March 27, 2019, the date of the proposed motion hearing.  My

5   firm and co-counsel were adamant, however, that discovery advance while the pleadings were

6   finalized.  Accordingly, we insisted that the Rule 26(f) discovery conference take place no later than

7   February 14, 2019 despite the delayed Initial Status Conference date so that we could press forward

8   with discovery and gathering the evidence to prove plaintiffs' claims.

9           10.      On January 23, 2019, Bumble filed their motion to dismiss the complaint.

10  Defendants argued that the complaint was deficient because, among other things, two of the

11  Plaintiffs lacked standing and each of the Plaintiffs were precluded from bringing their claims in

12  California due to Bumble's Terms and Conditions and imbedded choice of law provision.  We spent

13  significant time researching Bumble's arguments, developing a strategy for opposing the motion in

14  conjunction with co-counsel, and evaluating the strategic value of opposing the motion or amending

15  Plaintiffs' complaint.  After much consideration, we chose to refine the pleadings and we filed the

16  First Amended Complaint ("FAC") on Plaintiffs' behalf on February 13, 2019.  Dkt. 25.

17          11.      **Rule 26(f) Conference, Discovery, and Investigation and Filing of Second
Amended Complaint – February 14, 2019 through April 5, 2019.**  During these months, my

18  firm's attorneys billed $23,972.50 for 40.60 hours of time.  The early part of this time period was

19  spent working with Bumble's counsel to negotiate a briefing schedule for their Motion to Dismiss

20  the FAC.  We also spent time researching and drafting an updated CLRA demand letter to include a

21  claim regarding the alleged unconscionability of some of the provisions in Bumble's Terms and

22  Conditions, which we served on March 7, 2019.  However, upon discussion with Bumble's counsel

23  concerning their challenges to the complaint, my firm and co-counsel decided to further refine the

24  allegations in the complaint to try to narrow the parties' disagreements over the factual allegations.

25  To that end, we filed the Second Amended Complaint ("SAC") on April 5, 2019.  Dkt. No.  43.

26  The SAC clarified some of the allegations with which Bumble took issue relating to Plaintiffs'

27  purchase of Bumble Boost and the facts relevant to the ARL, and added a cause of action for

28  monies had and received.

12.     My firm also prepared for and participated in the Rule 26(f) conference during this time.  The conference required extensive discussions with Bumble's counsel and internal strategy sessions concerning the framework of discovery and overall case management schedule. While congenial, Bumble's position during the conference was clear – Bumble intended to do everything possible to avoid providing any discovery for as long as possible. My firm and co-counsel began building a strategy to deal with Bumble's intransigence and moving the case to class certification, and then identifying the best methods to resolve the merits issues.

13.     **Briefing of Defendants' Motion to Dismiss the Second Amended Complaint, Discovery, Initial Case Management Conference, and Hearing on Motion – April 6, 2019 through July 8, 2019**.  During this period my firm's attorneys billed $124,022.50 for 209.70 hours of time.  The bulk of the time during this period was spent trying to settle the pleadings and defeat Bumble's Motion to Dismiss the SAC, which was filed on April 12, 2019.  Dkt. No. 44. Defendants' motion essentially challenged the entirety of Plaintiffs' complaint and again raised complicated issues relating to choice of law.  Defendants argued, among other things, that its Terms and Conditions precluded application of the statutes at the heart of Plaintiffs' complaint, the CA DSL and the ARL.  These challenges required substantial legal research, including obtaining and evaluating the legislative history of the ARL which Defendant contended did not represent a fundamental public policy of the State of California.  My firm worked closely with co-counsel to draft and fine tune Plaintiffs' opposition to the motion and the accompanying request for judicial notice.  Dkt. Nos. 46 & 47.

14.     Additionally, my firm and co-counsel began formal discovery by preparing initial disclosures, preparing Plaintiffs' documents for their initial production, and serving Plaintiffs' first set of written discovery on Defendants.  We also continued our informal discovery efforts with respect to Bumble's finances and corporate structure, as well as the operation of Bumble Boost. (Bumble was in litigation with Match Group, LLC at this time and review of filings in that action pending in Texas provided valuable insight as to Bumble's structure, among other information.) During this time, we also worked to draft a Joint Case Management Statement with Defendants, which was on filed on May 29, 2019, and memorialized the parties' Rule 26(f) conference.  Dkt. 50. Finally, my firm and my co-counsel prepared for and attended the initial status conference and the

hearing on the motion to dismiss on June 5, 2019.  At the hearing, the motion was taken under

submission and discovery was stayed.

15.     **Third Amended Complaint, Legal and Factual Research on New York Claims,**

**Discovery, Motion to Terminate Discovery Stay - July 9, 2019 through August 31, 2019.**

During this period my firm's attorneys billed $26,545.00 for 44.70 hours of time.  On July 8, 2019,

this Court issued its order granting in part and denying in part Bumble's motion to dismiss the SAC.

Dkt. 53.  The order left intact Plaintiffs' allegations stemming from the violation of the ARL, but

dismissed with prejudice Plaintiffs' claims arising out of the CA DSL.  We analyzed the Court's

ruling to evaluate the impact on the case and the best way to prosecute Plaintiffs' claims moving

forward.

16.     My firm and co-counsel began investigating the claims of one of our New York

resident clients and analyzed the possibility of amending the complaint again to add violations of

the New York Dating Services Law ("NY DSL"), New York General Business Law § 394-C, on his

behalf as well as on behalf of the existing named plaintiffs.  There is little case law on the NY DSL.

Contemplating the addition of New York claims required significant research – a thorough analysis

of the potential interplay between the relevant California and New York statutes, as well as,

jurisdiction and choice of law issues.  On August 9, 2019, we filed the Third Amended Complaint

("TAC").  Dkt. 58.  Ms. Weinberger and Ms. Fischer alleged their claims under the NY DSL, a

claim pursuant to New York's Deceptive Acts and Practices provision, N.Y. Gen. Bus. Law § 349,

and added a claim for unjust enrichment.  Along with Mr. Wess, who joined as a named plaintiff,

they sought to represent a nationwide class of Boost purchasers.  Mr. King reasserted claims for

ARL violations. The filing of the TAC required further negotiations with Bumble's counsel to

obtain a stipulation to file pursuant to Fed. Rule of Civ. Pro., Rule 15 (A)(2) and agreements with

regard to a briefing schedule and other case management deadlines.  Dkt. 57.

17.     During this time, my firm and my co-counsel shifted our discovery focus from

informal efforts and shaping the pleadings to obtaining the necessary evidence to support a motion

for class certification and prove Plaintiffs' case.  Bumble, however, sought to extend the stay on

discovery and refused to serve initial disclosures or responses to any of Plaintiffs' discovery

requests until it eventually filed an answer.  My firm and co-counsel spent hours negotiating with

Bumble's counsel on this point, and ultimately sought the Court's assistance for the first of many discovery disputes. Dkt. 61. Bumble's refusal to participate in discovery despite clearly losing part of their motion to dismiss related to the ARL claims made it clear to us that Bumble would require us to fight aggressively to obtain discovery and move the litigation forward. But, as a result of our discovery letter brief, on August 22, 2019, the discovery stay was lifted and the parties were ordered to exchange initial disclosures no later than September 5, 2019. Dkt. 62.

18.     **Motion to Dismiss Third Amended Complaint; Hearing; Further Case Management Conference; Discovery - September 1, 2019 through November 30, 2019.** During this period my firm's attorneys billed $116,832.50 for 197.90 hours of time. On September 9, 2020, Bumble filed its motion to dismiss the TAC. Dkt. 67. The motion raised two central issues: whether this Court had personal jurisdiction over the Bumble entities for the claims raised by Mr. Wess for non-California residents given, as defendants asserted, that California is not its principal place of business; and whether Bumble Boost is a "social referral service" and governed by the NY DSL. To support its motion, Bumble submitted the declaration of its Chief of Staff, Caroline Roche. Dkt. 67-1. We worked with our co-counsel to analyze the motion, researched the arguments raised, and spent time evaluating the facts that we had obtained through our own informal investigation, including documents filed by the Bumble entities with the California Secretary of State indicating that in fact, defendants did have a California corporate presence. On October 7, 2019, we filed Plaintiffs' opposition to the motion to dismiss as well as a request for judicial notice. Dkt. 69 & 70. On November 6, 2019, after negotiations with Bumble's counsel, we filed the Joint Case Management Statement. Dkt. 73. We then prepared for and attended the hearing on the motion and the concurrent case management conference held on November 13, 2019. The Court took the motion under submission, granted Plaintiffs' request for the opportunity to conduct discovery on the jurisdiction issues raised in Bumble's motion to dismiss, and ordered the parties to submit supplemental briefing on the jurisdictional questions. Dkt. 74. Importantly, the Court also set a June 1, 2020 deadline for Plaintiffs to file their motion for class certification, but deferred referring the parties to mediation as neither side believed that it was yet appropriate.

19.     This was a pivotal time period in the case. Though the briefing of the motion to dismiss took substantial effort, my firm and co-counsel pushed forward with discovery at the same

time.  We worked hard to challenge Bumble's objections to Plaintiffs' first written discovery requests, researched and wrote a multitude of meet and confer correspondence and participated in two meet and confer conferences.  These meet and confer efforts were essential to obtaining the evidence we needed to frame and prove the case, including information about the scope of data maintained by Bumble concerning its users; information about Bumble's training and policies as they related to user refunds; transaction and revenue data; and documents concerning the drafting, iterations, and communications about Bumble's Terms and Conditions.  We also negotiated and finalized the Stipulated Protective Order to govern the exchange of discovery.  Additionally, in light of the Court's order providing the opportunity to conduct discovery relevant to personal jurisdiction, we researched, drafted, and served relevant special interrogatories to both Bumble entities, additional requests for production, and began negotiating the location, scope, and timing of necessary depositions.

20.     On November 20, 2020, the Court issued its ruling on the motion to dismiss, reserving its decision on the jurisdictional question but otherwise denying Bumble's motion as it related to Plaintiffs' New York claims.  Significantly, the Court found that Bumble Boost is a "social referral service" as defined by the NY DSL and thus, subject to its provisions.  Dkt. 76. Although Plaintiffs prevailed on the motion to dismiss on the NY DSL issue, Bumble continued to press its defense that, as a factual matter, Bumble Boost does not meet the statutory definition because it does not "match" users and is merely a paid upgrade consisting of a package of interface features.  Bumble also continued to challenge the viability of Plaintiffs' damages and restitution calculations by contending that class members who were satisfied with their Boost subscriptions received the benefit of the bargain.

21.     **Supplemental Briefing on Motion to Dismiss Third Amended Complaint re: Jurisdiction; ESI Protocol; Written Discovery and Deposition of Bumble Executive; Hearing on Motion to Dismiss; Case Management Conference—December 1, 2019 through February 29, 2020.**  My firm's attorneys billed $174,045.00 for 296.50 hours of time during this period.  The Court granted Plaintiffs' leave to conduct jurisdictional discovery through January 13, 2020.  Dkt. 74. My firm and co-counsel served three additional sets of written discovery during this time period and Ms. Roche was deposed.  After analyzing the additional evidence received, we filed Plaintiffs'

supplemental briefing regarding jurisdiction on January 21, 2020.  Dkt. 77.  We also negotiated, drafted, and filed a Joint Case Management Statement on January 29, 2020, which importantly noted that the parties were now amendable to exploring settlement discussions, and sought a three-month extension of the class certification motion deadline to accommodate a mediation.  Dkt. 81.  My partner and co-counsel prepared for and attended the further hearing on Bumble's motion to dismiss regarding personal jurisdiction and case management conference on February 5, 2020.  The motion was taken under consideration.  However, at the conference, the Court denied the request to extend the class certification briefing schedule.  Dkt. 82.  On February 11, 2020, the Court issued its ruling on the remaining issue in the pending motion to dismiss finding that the Court did not have personal jurisdiction over Bumble with respect to Mr. Wess's claims, which were dismissed.  Dkt. 84.  Additionally, on February 12, 2020, the Court issued its ADR referral and set a mediation deadline of May 15, 2020.  Dkt. 86.

22.     During the whole of this time period, we were earnestly continuing with our class and merits discovery efforts.  We served additional written requests on Bumble, reviewed and analyzed Bumble's document and data productions, and continued pushing Bumble to supplement insufficient discovery responses.  Additionally, we worked to obtain agreement to an equitable and reasonable ESI protocol, pressed Bumble to commit to firm production completion dates, and spent significant time conferring with Bumble's counsel about search terms and the transparency and appropriate scope of a sampling of consumer complaints.  It was not until my firm and co-counsel were forced to unilaterally seek the assistance of the Court that a meaningful agreement was reached on a number of these critical discovery issues.  It is unlikely that we would have received the discovery necessary to prepare the case for mediation or class certification had we not maintained our aggressive approach to discovery.

23.     During this time period we also conducted relevant third-party discovery.  Specifically, we drafted and served subpoenas on Apple and Google seeking, among other things, purchase flow information for Bumble Boost, information about their respective refund procedures, data acquired, and their data retention.

24.     **Mediation; Class Discovery and Preparation of Motion to Certify - March 1, 2020 through April 30, 2020.**  My firm's attorneys billed $257,257.50 for 437.40 hours of time

10

during this period.  The tight timeline between the mediation and the class certification motion deadline meant that my firm and co-counsel needed to be increasingly efficient and proactive with our time.  Due to the mediation and certification deadlines, we were required to focus on both mediation and preparation of a class certification motion.  My partner and I began researching potential mediators and approaches to mediation even before the Court issued the ADR referral and we moved quickly thereafter to reach an agreement with Bumble as to a neutral and potential dates for a mediation.  We were able to secure a date with Hon. Edward Infante and we immediately began drafting a detailed mediation brief outlining the strengths and potential weaknesses of the case. The parties went into the mediation with substantial differences in opinion regarding the appropriate terms of settlement and were unable to make much progress during the initial mediation session.  Thereafter, we continued to spend substantial time, with Judge Infante's assistance, to explore a resolution of the case through phone conferences, emails, and supplemental briefing regarding the more divisive issues.  At the same time, with no settlement in sight, we pressed forward on the numerous on-going discovery disputes and trying to nail down the last pieces of evidence necessary for class certification, including the planned deposition of Bumble's Rule 30(b)(6) designee(s).  The scheduling of this deposition proved logistically challenging and contentious (given the Pandemic, travel bans, and Bumble's apparent reluctance to produce deponents) and required extensive negotiations with Bumble's counsel.  Though the deposition was important for Plaintiffs' motion for class certification, Bumble initially refused to agree to have it conducted remotely.  Accordingly, we researched and drafted yet another discovery letter brief seeking leave to take the deposition remotely in conformance with the framework of Rule 30(b)(4).  We also conferred with our clients and prepared their written discovery responses and began to prepare for their depositions.

25.     Ultimately, settlement negotiations reached an impasse.  Judge Infante then made a six-point mediator's recommendation to settle this action on a class-wide basis, which included a total contribution from Bumble of $22.5 million.  I and my partner conferred with co-counsel and our clients, weighing the risks of continuing litigation against the value of the settlement, and all parties accepted the proposal, in a double-blind process, on April 24, 2020.

26. **Negotiation and Preparation of Settlement Agreement, Class Notice and Claim Documents; Motion for Preliminary Approval - May 1, 2020 through June 22, 2020.** My firm's attorneys billed $311,272.50 for 529.40 hours of time during this time period. After the parties accepted the mediator's proposal, my firm and co-counsel began negotiating and drafting the fine details of the Settlement Agreement; analyzing Bumble's data to define the contours of the class; developing a notice and claims procedure, and negotiating the scope of the injunctive relief provisions. This was a much bigger task than we expected. Within a day of accepting the mediator's proposal, we found ourselves heavily negotiating the injunctive relief and detailed terms of the settlement. The process was time intensive and complicated with the parties only reaching a full agreement on the Settlement Agreement and the supporting documents – the five separate class notice documents and the two claim forms - on the last possible day.

27. Additionally, we interviewed four potential claims administrators, obtained bids and administration proposals from three, selected JND Legal Administrators, and worked to create a comprehensive notice and administration plan. We also researched potential *cy pres* candidates, and in conjunction with Defendants, selected the National Law Center as the *cy pres* recipient.

28. Finally, during this period, we worked on the Motion for Preliminary Approval, which was filed on June 22, 2020. Dkt. 108.

29. **Preliminary Approval Hearing and Final Revisions to Class Notice, Claim Documents, and Settlement Website – June 23, 2020 through September 14, 2020.** My firm's attorneys billed $46,807.50 for 79.6 hours of time during this period. Time during this period was spent preparing for the hearing on the Motion for Preliminary Approval. Additionally, I and my co-counsel, in conjunction with Bumble's counsel, spent time providing all necessary information to the designated claim administrator and worked closely with the administrator to finalize the notice documents, the settlement website, and otherwise, prepare for notice to the class.

30. The figures stated above do not include time spent after September 14, 2020, the date which class notice commenced, which includes significant work on this motion and supporting documents and will include time for the final approval motion. The figures stated above also do not include the time that will be necessary to respond to any potential objections to the settlement, to appear at the hearing on this motion and the motion for final approval, and/or to provide the Court

with any subsequent reporting on the administration of the settlement.  Further, we expect to expend additional hours responding to class member inquiries and conducting all of the other steps necessary to finalize the settlement.  Based on past experience, I expect that we will incur several hundred additional hours between now and the final approval hearing.

**PARISI & HAVENS LLP'S HOURLY RATE AND LODESTAR**

31.     My hourly rate is currently $600 per hour and my partner's is $575 per hour.  These rates are consistent with, and in many cases, notably lower than the billing rates in our relevant legal community for attorneys of comparable experience.

32.     The attorneys at Parisi & Havens LLP record their time contemporaneously with the work performed.  Our firm's practice is to keep contemporaneous records for each timekeeper and to regularly record time records in the normal course of business.  We kept time records in this case consistent with that practice.  Moreover, our firm's practice is to bill in 6-minute (tenth-of-an-hour) increments.  As reflected in the chart below (segregating time by attorney), as of September 14, 2020, the total number of attorney hours spent on this matter, with the exclusions listed above, by my firm is 1,961.90 hours and our total lodestar is $1,155,275.00.  This lodestar figure is based on the ordinary professional billing rate that my law office charges clients.  Expenses are accounted for and billed separately and are not duplicated in our professional billing rate.  The time breaks down as follows:

| Attorney | Years Practicing | Hourly Rate | Hours Billed | Total |
|---|---|---|---|---|
| David C. Parisi | (1992 law school graduate) | $600 | 1,087.30 | $652,380.00 |
| Suzanne Havens Beckman | (1996 law school graduate) | $575 | 874.60 | $502,895.00 |
| Total: | | | 1,961.90 | $1,155,275.00 |

33.     I personally reviewed the time reported for my partner and myself and, as mentioned previously, did not include any of my firm's time spent working on plaintiffs' motion for an award of fees and costs and the named plaintiffs' service awards, or this supporting declaration and exhibits, within the lodestar reported above.

**THE RATES BILLED ARE CONSISTENT WITH ATTORNEY RATES IN THIS DISTRICT**

34.     The figures stated above reflect hours worked and tasks performed throughout the litigation.  The hourly rates of my firm as stated above is the usual and customary hourly rate charged for our services in similar litigation.  Based on my 28 years of experience handling similar complex and class action litigation, I believe the rates are reasonable and in line with (and actually less than) the rates charged for comparable work in the Northern District of California by professionals with similar levels of experience, expertise, and reputations.  The rates stated above were determined by my law partner and me, during the ordinary course of business, and they apply equally to all of the firm's litigation.  These are the current rates we seek for all of our legal work and contain no premium for the contingency nature of our practice.

35.     In determining our firm's hourly rates, we consider a variety of factors, including but not limited to: (a) my knowledge of the market in which I have been practicing since 1992, including my knowledge of the rates established by other attorneys in the Northern District of California as well as other districts; (b) my review of attorney fee declarations of other attorneys in the Northern District of California at plaintiff class action firms with whom my firm competes; (c) review of publicly available information regarding prevailing rates, such as reports in legal newspapers; (d) review of rates charged by other firms with whom my firm has associated in its litigation matters; and (e) review of reported decisions and fee rulings reflecting other firm's hourly rates.

36.     As stated previously, my firm's billing rates, given my and my partner's years of experience in the field are consistent with, and typically lower than, the billing rates for comparably experienced class action counsel.  *See Moreno v. San Francisco Bay Area Rapid Transit District* (N.D. Cal., Oct. 18, 2018, No. 17- 02911-JSC) ECF No. 104-1 ¶19 (declaration of Todd Logan, identifying attorney of 13 years' experience billing at $700 per hour); *Moreno v. San Francisco Bay Area Rapid Transit District* (N.D. Cal., Jan. 28, 2019, No. 17-CV-02911-JSC) 2019 WL 343472, at *6 ("Class counsel has demonstrated that their hourly rates [including] $700 an hour for the managing partner . . . are reasonable in light of prevailing market rates in the Bay Area"); *Hefler v. Wells Fargo & Co.*, No. 16-5479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod.*

*Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable); *Deluca v. Farmers Ins. Exch.*, No. 17-CV-00034-TSH, 2020 WL 5071700, at *7 (N.D. Cal. Aug. 24, 2020) (finding rates of $475-625 for partner attorneys reasonable); *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *9 (N.D. Cal. Apr. 24, 2019)(finding rates of $365 to $950 per hour for attorneys reasonable). *Rose v. Bank of Am. Corp.*, No. 11-02390, 2014 WL 4273358, *7-8 (N.D. Cal. Aug. 29, 2014) (finding billing rates of associates ranging from $325 to $525 per hour and partners rates from $350 to $775 per hour to be reasonable); *Etter v. Allstate Ins. Co.*, No. C 17-00184 WHA, 2018 WL 5791883, at *4 (N.D. Cal. Nov. 4, 2018) (court found that attorney fee rates ranging from $600 to $950 per hour to be reasonable.)  My firm's historical billing rates have always been approved by Courts and have never been rejected.

37.     Prosecution of this action has involved significant financial risk for my law firm. My firm undertook this matter solely on a contingent basis, with no assurance of any recovery, and devoted significant resources in terms of its time, energy, and efforts to the resolution of the claims by Plaintiffs' and the Settlement Classes' claims. Class actions such as this are typically complex and protracted, and this case, which was filed in 2018 and involved significant time and reasonable expenses, is not an exception.  This is especially true given that my firm and co-counsel's firm are small and the litigation efforts in this matter prevented us from pursuing other work that might well have been as or more rewarding than this action.

**CAREFUL ASSIGNMENT OF WORK**

38.     Throughout my firm's involvement in this action, we did our part to ensure that the tasks necessary to prosecute the case were allocated among counsel in our firm and outside of our firm appropriately and were conducted efficiently, without undue duplication of effort, and at minimal expense.  We worked very efficiently with our co-counsel and complemented each other's work and skill set.  Not being paid by the hour, we had an incentive to conduct our efforts efficiently.  So too, being responsible for advancing all expenses, we had an incentive not to expend funds unnecessarily.

39.     While my co-counsel, Grace Parasmo and Yitzchak Lieberman, are not at the same firm, we work together well.  We have worked with the attorneys at Parasmo Lieberman for over a decade and have found that we have complementing skill sets.  My firm was generally responsible for assisting in formulating strategy decisions, reviewing and finalizing all work product, and serving as the leads in negotiating settlement with opposing counsel and communicating with the mediator.  My partner and I were heavily involved in every strategic decision in this case as well as the extensive written discovery and motion work.  The work performed by Plaintiffs' counsel, including my firm, is further detailed in the concurrently submitted declaration of Ms. Parasmo.

**LITIGATION COSTS INCURRED**

40.     We were prepared to advance whatever costs were necessary for the prosecution of this action.  As of October 1, 2020, my office has incurred a total of $14,872.12 in unreimbursed third-party expenses in connection with the prosecution of this litigation.  My firm worked hard to litigate this matter as efficiently as possible so that Plaintiffs and the rest of the Settlement Classes did not bear any unnecessary costs.  The bulk of the expenses in the case were spent on mediator fees and research expenses (due to novel statutory issues), both of which were essential to the resolution.

41.     These expenses have been fully paid by my firm and were reasonable and necessary for the prosecution of this litigation.  Our costs itemized below do not include our normal cost of doing business expenses, such as in-office printing or office supplies, monthly subscription services like Westlaw or Lexis, or other computerized services that law firms such as ours employ to run our office.

42.     The actual expenses incurred in the prosecution of this case by my firm are reflected in my firm's accounting records.  Those accounting records are prepared based on invoices for this litigation and accurately reflect all actual expenses incurred.  These expenses are categorized below.

| Description | Amount |
|---|---|
| Court reporters and transcripts | $1,143.90 |
| Filing and messenger fees | $700.02 |
| Mediator fees | $8,635.03 |

| | |
|---|---:|
| Fees to purchase court documents and legislative history | $2,363.04 |
| Postage and delivery | $125.73 |
| Subpoena service and related expenses | $241.33 |
| Travel (airline, hotels, meals, auto and parking) | $1,663.07 |
| **TOTAL** | **$14,872.12** |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on October 9, 2020 at Port Hadlock, Washington.

_____
David C. Parisi

# Exhibit 1

(June 2020)

# The Law Firm

**Parisi & Havens LLP** prides itself in meeting the varying needs of our clients.  Our firm is committed to providing each of our clients with the highest quality legal representation and achieving the most successful resolution of their cases possible.  We primarily represent individuals and businesses in class actions as well as complex insurance coverage disputes.  The firm counts as its clients several banks, a Fortune 500 Company and numerous consumers.  In each area in which we practice, the firm and its partners have built a reputation in the community for representing clients with strength and integrity.

The attorneys at Parisi & Havens have served in leadership roles or were co-lead counsel in the following complex lawsuits and class actions:

> *Slovin, et al. v. Sunrun, Inc., et al.,* 4:15-cv-05340-YGR, a nationwide consumer class action which sought compensation for consumers called in violation of the TCPA, which resulted in a $5.5 million settlement.

> *Djoric v. Justin Brands, Inc.*, Los Angeles Superior Court Case No. BC574927, a California class action which sought compensation for consumers for boots sold as "handcrafted in the USA" when in fact the boots or their components were manufactured outside the United States, and which resulted in injunctive relief and cash benefits or promotional codes for anyone who timely submitted a qualifying claim.

> *In re Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, 1:14-md-2513-RGS, a nationwide consumer class action which sought compensation for consumers for violations of the TCPA and resulted in a $3.2 million settlement.

> *Meyer v. PYOD, LLC, et al.*, San Diego Superior Court Case No. 37-2014-00008110-CU-BT-NC, a California class action which sought compensation for consumers harmed in violation of the California Rosenthal Act and which resulted in class members receiving the near maximum benefit allowed by law.

> *Lofton v. Verizon Wireless (VAW) LLC*, 4:13-cv-05665-YGR, a nationwide consumer class action which sought compensation for consumers called in violation of the TCPA and the California's Invasion of Privacy Act, which resulted in a $4 million settlement.

(June 2020)

*In re Portfolio Recovery Associates, LLC Telephone Consumer Protection Act Litigation*, a nationwide consumer class action which sought compensation for consumers called in violation of the TCPA and which resulted in an $18 million settlement.

*Williams, et al. v. Motricity, Inc. et al*, Case No. 09 CH 19089 (Cook County, Illinois), a class action alleging the imposition of unauthorized mobile content charges which settled for $9 million.

*Valdez-Marquez, et al. v. Netflix, Inc.*, Case No. 5:09-cv-05903 (N.D. Calif.), a class action involving the privacy consequences of the release of allegedly anonymized records from a customer database which resolved with changes in Netflix's practices.

*Walker, et al. v. Openmarket, Inc., et al.*, Case No. 08 CH 40592 (Cook County, Illinois, a class action alleging the wrongful imposition of unauthorized mobile content charges.

*Slater v. Tagged, Inc*., Case No. 3:09-cv-3697 (N.D. Cal.), a data privacy class action involving a social network's website and the acquisition of consumer's email address books.

*Holmes v. NCO, Inc*., Case No. 3:10-cv-2543 (S.D. Cal.), a Fair Debt Collection Practices Act class action which resulted in over 1,000 persons whose credit reports were impacted to receive nearly the entire amount of possible damages recoverable, even after trial.

*DuFour v. Be, LLC, et al.*, Case No. 3:09-cv-3770-CRB (N.D. Cal.), a class action against a talent agency and its finance company which resulted in a $1.25 million settlement fund and $700,000 in debt relief to families based in part on allegations that defendants violated the Advance Fee Talent Services Act and related California law.

*In re ATI HDCP Litigation*, a consumer class action which sought compensation for persons who purchased video graphics cards which were advertised as being able to process video pursuant to the HDCP protocol.  The case settled with a value of $11.5 million and all persons who made claims were given the opportunity to receive a new, more functional, graphics cards.

(June 2020)

*In re Farmers Northridge Earthquake Commercial Litigation* and *In re Farmers Northridge Earthquake Commercial Litigation No. II*, two groups of consolidated and related complex lawsuits.  The firm's clients' had over 169 claims in this litigation and resolved their disputes for in excess of $191 million.

*Wang v. Asset Acceptance LLC and Trans Union LLC*, a class action which resulted in a settlement valued at in excess of $11 million on behalf of consumers whose credit reports failed to report disputed debt.

*Wang v. Bank of America*, a class action which resulted in over 12,000 persons throughout California receiving compensation as a result of a dispute over the proper interpretation of a bank deposit agreement.

*Mendel v. Sirius Satellite Radio, Inc., et al.*, a consumer class action valued at just over $1 million in which every consumer was awarded 100 percent reimbursement.

*August v. Sony Pictures Home Entertainment, Inc., et al.*, a consumer action which resulted in both Sony Pictures and Netflix, Inc. changing their practices with respect to all consumers nationwide.

*Eren v. Topa Insurance Company, Inc., et al.*, an insurance action which resulted in Topa changing its practices with respect to denying particular types of insurance claims and reimbursing affected insureds in State of California.

*Simonian v. Farmers Group, Inc., et al.*, an insurance class action which resolved with insureds receiving 100 percent reimbursement of approximately $9 million withheld by the insurer, and which resulted in a change in the claims practice of the insurer.

*McGuire v. Farmers Group, Inc., et al.*, an insurance class action which challenged Farmers' practice of overinsuring property, thereby artificially inflating policy limits and artificially inflating policy premiums.  The case was settled with Farmers agreeing to change its practices.

*Marootian v. New York Life Ins. Co., et al.*, a class action which involved claims stemming from the Armenian Genocide of 1915 which involved complex issues of International Jurisdiction.

(June 2020)

# The Attorneys

**David C. Parisi**

Mr. Parisi represents consumers in class action lawsuits.  He also represents consumers and businesses in conflicts with their insurance carriers.  His consumer class actions range from lawsuits against companies which fail to honor rebates to insurance and privacy class actions.  Most of his consumer class action lawsuits arise from companies which are untruthful in their advertising.  In his career, Mr. Parisi has also addressed and resolved numerous insurance issues for businesses and homeowners, such as the application of complex exclusions in directors and officers liability insurance policies, the scope of business liability insurance policies, the degree to which insurance carriers may dictate the defense strategy of their insureds, whether insurance carriers can force insureds to participate in a costly appraisal process, as well as various automobile and homeowners policy interpretation issues.

Mr. Parisi's published appellate opinions include *Fireman's Fund Ins. Companies v. Younesi* (1996) 48 Cal.App.4th 451; *Doheny West Homeowners' Ass'n v. American Guarantee & Liability Ins. Co.* (1997) 60 Cal.App.4th 400; *Truck Insurance Exchange v. Superior Court* (1998) 67 Cal.App.4th 142; *Basich v. Allstate Ins. Co.* (2001) 87 Cal.App.4th 1112; *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870; *21st Century Ins. Co. v. Superior Court (Schwartz)* (2005) 127 Cal.App.4th 1351; *Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076; *Meyer v. Portfolio Recovery Associates, LLC* (2012) 707 F.3d 1036; *Holmes v. NCO Financial Services, Inc.* (2013) 538 Fed.Appx. 765; *Thomas v. Taco Bell Corp.*, 582 Fed.Appx. 678 (9th 2014); *Thomas v. Dun &Y Bradstreet Credibility Corp.,* 100 F.Supp.3d 937 (2015); *Lofton v. Verizon Wireless (VAW) LLC*, 586 Fed.Appx. 420 (9th 2014); *Schmukler v. Farmers Group, Inc.*, 553 F.Appx. 702 (9th Cir. 2014); *Valentine v. Nebudad, Inc.*, 804 F.Supp.2d 1022 (2011); and *Gomez v. Campbell-Ewald Company*, 768 F.3d 871 (9th Cir. 2014).

Mr. Parisi has taught attorneys about consumer class actions and insurance bad faith and is often called upon by insurance professionals for advice on complex insurance coverage issues.  Mr. Parisi is admitted to the State Bar of California, the Washington State Bar Association, as well as the U.S. District Court for the Northern, Southern, Eastern and Central Districts of California.

(June 2020)

As a consumer advocate, Mr. Parisi gives a great deal of his time to assist various consumer-related insurance organizations.  Mr. Parisi is a 1992 graduate of the Boston University School of Law.

**Suzanne Havens Beckman**

Ms. Havens Beckman's practice is primarily focused on the prosecution of consumer class actions ranging from false advertising and misleading labeling to warranty and privacy issues.  Ms. Havens Beckman has represented injured individuals and consumers in cases in California and throughout the country and has recovered millions of dollars for those who would otherwise have no recourse.  Ms. Havens Beckman also has extensive experience in representing California policyholders in insurance bad faith.  Ms. Havens Beckman has represented insureds and resolved hundreds of lawsuits dealing with a wide variety of complex insurance bad faith issues with clients ranging from individuals to small businesses and large corporations.

Ms. Havens Beckman has been successful at the appellate level. In recognition of her efforts to confirm the constitutionality of Code of Civil Procedure section 340.9, Ms. Havens Beckman received the Consumer Attorneys of California 2001 Presidential Award of Merit. Ms. Havens Beckman's published opinions include *Basich v. Allstate Ins. Co.* (2001) 87 Cal.App.4th 1112; *20th Century Ins. Co. v. Superior Court* (*Ahles*) (2001) 90 Cal.App.4th 1237; *Bialo v. Western Mutual Insurance Company* (2002) 95 Cal.App.4th 68; *Migliore v. Mid-Century Insurance Company* (2002) 97 Cal.App.4th 592; *E.M.M.I. Inc. v. Zurich American Insurance Company* (2004) 32 Cal.4th 465; *21st Century Ins. Co. v. Superior Court* (Schwartz) (2005) 127 Cal.App.4th 1351; and *Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exchange* (2005) 132 Cal.App.4th 1076.

Ms. Havens Beckman is often called upon by other attorneys and insurance professionals for her advice in the litigation of class actions and responding to insurance company denials of claims and has spoken frequently on these topics.

Ms. Havens Beckman received her J.D. from the University of Southern California Law School in 1996.  Ms. Havens Beckman is admitted to the State Bar of California, the U.S. District Courts for California, as well as several other districts across the country, and the 9th Circuit Court.