David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (646) 509-3913
Facsimile: (877) 501-3346

Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, and Elena Weinberger,
individually, and on behalf of a class of
similarly situated individuals

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NICK KING, JR., DEENA FISCHER, and ELENA WEINBERGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BUMBLE TRADING, INC., and BUMBLE HOLDING LTD.,<br><br>Defendants. | Case No.  5:18-cv-06868-NC<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** December 16, 2020<br>**Time:** 2:00 p.m.<br>**Courtroom:** 5 (via Zoom video)<br>**Judge:** Nathanael Cousins<br>**Trial Set:** Not Yet<br>**Complaint Filed:** November 13, 2018 |

## NOTICE OF MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 16, 2020 (or on any other date the Court may set) at 1:00 p.m., in Courtroom 5 in the San Jose Division of the USDC of the Northern District of California (via Zoom video), before the Hon. Nathanael Cousins, Plaintiffs Nick King, Deena Fischer, and Elena Weinberger (collectively, Plaintiffs) will and hereby do move for final approval of the class settlement with Defendants Bumble Trading, Inc. and Bumble Holding Ltd. (collectively Defendants or Bumble) under Rule 23(c) and (e) of the Federal Rules of Civil Procedure.

On July 15, 2020, the Court determined, on a preliminary basis, that the parties' settlement was fair, reasonable, and adequate to the class, consistent with Rule 23(e).  Dkt. 115.  Notice required by the Settlement Agreement has been completed in accordance with the terms of the Preliminary Approval Order.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in Support of the Motion, the authorities cited therein, and the supporting declarations. This Motion is also made on the grounds that the Settlement Agreement is the product of arm's-length, good-faith negotiations; is fair, reasonable, and adequate to the Settlement Class; and should be finally approved, as discussed in the attached memorandum. *See* Dkt. 108-1, Exh. 1, Settlement Agreement ("Agreement").

Dated: December 2, 2020         By:   /s/David C. Parisi
                                      David C. Parisi (162248)
                                      dcparisi@parisihavens.com
                                      Suzanne Havens Beckman (188814)
                                      shavens@parisihavens.com
                                      PARISI & HAVENS LLP
                                      (818) 990-1299 (telephone)
                                      (818) 501-7852 (facsimile)
                                      100 Pine Street, Suite 1250
                                      San Francisco, CA  94111
                                      Telephone: (818) 990-1299
                                      Facsimile: (818) 501-7852

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (917) 657-6857
Facsimile:  (877) 501-3346

Notice of Motion and Motion for Final Approval of Class Action Settlement

David C. Parisi (SBN 162248)
dparisi@parisihavens.com
Suzanne Havens Beckman (SBN 188814)
shavens@parisihavens.com
PARISI & HAVENS LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (818) 990-1299
Facsimile: (818) 501-7852

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone: (646) 509-3913
Facsimile: (877) 501-3346

Attorneys for Plaintiffs Nick King, Jr.,
Deena Fischer, and Elena Weinberger,
and the Settlement Classes

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NICK KING, JR., DEENA FISCHER, and ELENA WEINBERGER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BUMBLE TRADING, INC., and BUMBLE HOLDING LTD.,<br><br>Defendants. | Case No.  5:18-cv-06868-NC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** December 16, 2020<br>**Time:** 2:00 p.m.<br>**Courtroom:** 5 (via Zoom video)<br>**Judge:** Nathanael Cousins<br>**Trial Set:** Not Yet<br>**Complaint Filed:** November 13, 2018 |

# TABLE OF CONTENTS

I.     Introduction ....................................................................................................... 1

II.    Background ....................................................................................................... 2

     A.    Overview of the litigation ..................................................................... 2

     B.    Discovery conducted by the Parties ..................................................... 3

     C.    Settlement negotiations and mediation ................................................ 4

     D.    Preliminary Approval ........................................................................... 5

III.   Terms of the Settlement ................................................................................... 5

     A.    The Settlement Classes ........................................................................ 5

     B.    Monetary relief .................................................................................... 5

     C.    Injunctive relief ................................................................................... 6

     D.    Payment of attorneys' fees and costs ................................................... 7

     E.    Notice and settlement administration ................................................... 7

IV.   The Settlement merits final approval ............................................................... 8

     A.    The Court should certify the Settlement Classes ................................. 9

     B.    The Settlement Classes Meet the Requirements of Rule 23(a) ............ 9

          1.    The classes are numerous ......................................................... 9

          2.    Plaintiffs' claims are typical of the classes they seek to represent ............... 9

          3.    Plaintiffs and their counsel have fairly and adequately protected the Settlement Classes' interests ......................................... 10

     C.    Rule 23(a)(2) and (b)(3) requirements are satisfied ................................ 10

          1.    Common questions predominate for both classes ......................... 10

          2.    A class action is the superior dispute resolution mechanism ....................... 12

V.    The class notice satisfies due process and Rule 23(c)(2) and (e) requirements ................... 13

VI.   The Settlement is fair, adequate, and reasonable and should be finally approved ............... 14

A.   The Settlement is the result of informed, arms-length, non-collusive negotiations and a mediator's proposal ...................................................... 16

B.   Plaintiffs' case is strong but continued litigation poses significant risks ................. 17

C.   The risk of maintaining class action status throughout the trial supports approval ................................................................................................... 18

D.   The amount offered is adequate and fair and supports approval ............................ 19

E.   The extensive discovery completed and the stage of the proceedings supports final approval ................................................................................................ 22

F.   The experience and views of counsel support final approval ................................ 23

G.   The lack of a governmental participant weighs in favor of final approval .............. 23

H.   Class members positive reaction to the Settlement supports final approval ............ 23

I.   The Objection from Mr. Sourbeer should be overruled because it lacks merit ......... 24

VII.   Conclusion .............................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
 2017 WL 1806583 (N.D. Cal. May 5, 2017) .............................................................. 11

*Allen v. Bedolla*,
 787 F.3d 1218 (9th Cir. 2015) ......................................................................... 14, 17

*In re Anthem, Inc. Data Breach Litig.*,
 327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................ 23

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. 2015) .................................................................... 16, 22

*Black v. T-Mobile USA, Inc.*,
 No. 17-CV-04151-HSG, 2019 WL 3323087 (N.D. Cal. July 24, 2019).......................... 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
 654 F.3d 935 (9th Cir. 2011) .............................................................................. 17

*Bradach v. Pharmavite, LLC*,
 735 F. App'x 251 (9th Cir. 2018) ......................................................................... 12

*Briseno v. ConAgra Foods, Inc.*,
 844 F.3d 1121 (9th Cir. 2017) ............................................................................ 13

*Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*,
 249 F.R.D. 334 (N.D. Cal. 2008) ......................................................................... 10

*Carlotti v. ASUS Computer Int'l*,
 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019).......................................................... 17

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
 No. 3:07-CV-5944 JST, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016)........................... 25

*Ching v. Siemens Indus., Inc.*,
 No. 11-4838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ............................... 17

*Chun–Hoon v. McKee Foods Corp.*,
 716 F.Supp.2d 848 (N.D.Cal.2010) ...................................................................... 24

*Churchill Village, L.L.C. v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004)......................................................................... 16, 24

*Corzine v. Whirlpool Corp.*,
 No. 15-5764-BLF, 2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) ............................... 25

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ........................................................................... 19

*Dennis v. Kellogg Co.*,
   2013 WL 6055326 (S.D.Cal.2013) ........................................................................................... 24

*Dupler v. Costco Wholesale Corp.*,
   249 F.R.D. 29 (E.D.N.Y. 2008) ............................................................................................... 12

*Edwards v. Nat'l Milk Producers Fed'n*,
   No. 11-4766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) ........................................... 14

*Free Range Content, Inc. v. Google*,
   LLC, No. 14- 2329-BLF, 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ................................... 14

*Gergetz v. Telenav, Inc.*,
   No. 16-CV-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ................................... 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................... *passim*

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................... 15

*In re Hyundai and Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ............................................................................................ 11, 14

*Johnson v. Pluralsight*,
   LLC, 728 F. App'x 674 (9th Cir. 2018) ........................................................................ 12, 17, 18

*Just Film Inc. v. Buono*,
   847 F.3d 1108 (2017) ........................................................................................................ 12, 13

*Larsen v. Trader Joe's Co.*,
   No. 11-5188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................................... 24

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ............................................................................................. 23

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................................................. 20

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ................................................................................................... 19

*McCabe v. Six Continents Hotels, Inc.*,
   No. 12-CV-04818 NC, 2015 WL 3990915 (N.D. Cal. June 30, 2015) ..................................... 20

*In re Med. Capital Sec. Litig.*,
   2011 WL 5067208 (C.D. Cal. July 26, 2011) ........................................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)...................................................................................22

*Meyer v. Bebe Stores, Inc.*,
   No. 14-0267-YGR, 2017 WL 558017 (N.D. Cal. Feb. 10, 2017)...............................12

*Munday v. Navy Fed. Credit Union*,
   No., 2016 WL 7655807 (C.D. Cal. Sept. 15, 2016).....................................................23

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................23

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (S.D.Cal. 2018)..........................................................................21, 23

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
   688 F.2d 615 (9th Cir. 1982)......................................................................................16

*Patel v. Trans Union, LLC*,
   308 F.R.D. 292 (N.D. Cal. 2015) ...............................................................................10

*Perez v. Rash Curtis & Assocs.*,
   No. 4:16-3396-YGR, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020) .........................20

*Quiruz v. Specialty Commodities, Inc. & Archer-Daniels-Midland Co., Defendants.*,
   No. 17-3300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020)...............................24

*Radcliffe v. Experian Info. Solutions, Inc.*,
   715 F.3d 1157 (9th Cir. 2013).....................................................................................17

*Ramirez v. TransUnion LLC*,
   951 F.3d 1008 (9th Cir. 2020)......................................................................................9

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010)..................................................................................9

*Rodman v. Safeway Inc.*,
   2018 WL 4030558 (N.D. Cal. Aug. 23, 2018).............................................................17

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)...............................................................13, 17, 19, 20

*Roes, 1–2 v. SFBSC Mgmt.*,
   944 F.3d 1035 (9th Cir. 2019).....................................................................................16

*Schneider v. Chipotle Mexican Grill, Inc.*,
   No. 16-CV-02200-HSG, 2020 WL 6484833 (N.D. Cal. Nov. 4, 2020) ..............14, 23

*Schofield v. Delta Air Lines, Inc.*,
   No. 18-CV-00382-EMC, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019)......................16

ix

*Shin v. Plantronics, Inc.*,
  No. 18-CV-05626-NC, 2019 WL 2515827 (N.D. Cal. June 17, 2019) .......................................15

*Shin v. Plantronics, Inc.*,
  No. 18-CV-05626-NC, 2020 WL 1934893 (N.D. Cal. 2020)...................................16, 18, 19, 23

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016)...........................................................................24

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003)...........................................................................................16

*In re Tableware Antitrust Litig.*,
  484 F.Supp.2d 1078 (N.D. Cal. 2007) .............................................................................19

*Theodore Broomfield v. Craft Brew All., Inc.*,
  No. 17-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020).................................23, 24, 25

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016)..........................................................................................11

*Wahl v. Yahoo! Inc.*,
  No. 17-2745-BLF, 2018 WL 6002323 (N.D. Cal. Nov. 15, 2018)........................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ....................................................................................................11

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  571 F.3d 953 (9th Cir. 2009)............................................................................................11

*Williamson v. McAfee, Inc.*,
  No. 5:14-cv-00158-EJD (N.D. Cal. Feb. 3, 2017), ECF No. 114 .......................................21

*Wolin v. Jaguar Land Rover N. Am.*,
  LLC, 617 F.3d 1168 (9th Cir. 2010) ..................................................................................9

*Xiufang Situ v. Leavitt*,
  240 F.R.D. 551 (N.D. Cal. 2007) .....................................................................................11

**State Cases**

*Grossman v. MatchNet PLC*,
  10 A.D.3d 577 (N.Y. App. 2004).....................................................................................18

*Hansen v. Tinder Inc.*,
  2018 Cal. Super. LEXIS 123 (Superior Court, San Luis Obispo) (April 11, 2018) ....................21

**Federal Statutes**

CAFA, 28 U.S.C. § 1715 ..................................................................................................23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**State Statutes**

California Automatic-Renewal Law, Cal. Bus. & Prof. Code, §§ 17600-17606 .......................*passim*

California Dating Service Law, Cal. Civ. Code, § 1694, *et seq.*.................................................................2

California Unfair Competition Act, Cal. Bus. & Prof. Code, § 17200, *et seq.* .........................2, 3, 12

Consumer Legal Remedies Act, Cal. Civ. Code, § 1750, *et seq.*...............................................2, 12

N.Y. Gen. Bus. Law, § 349 .......................................................................................................................3

**Rules**

Fed. R. Civ. P.
    Rule 23 ..................................................................................................8, 13, 14, 15
    Rule 23(a) ................................................................................................................9
    Rule 23(a)(1) ...........................................................................................................9
    Rule 23(a)(2) ....................................................................................................10, 11
    Rule 23(a)(3) ...........................................................................................................9
    Rule 23(a)(4) .........................................................................................................10
    Rule 23(b) ................................................................................................................9
    Rule 23(b)(3) ....................................................................................................10, 11
    Rule 30(b)(6) ........................................................................................................4, 5
    Rule 23(c) ..............................................................................................................13
    Rule 23(c)(2) ....................................................................................................13, 14
    Rule 23(c)(2)(B) ...................................................................................................13
    Rule 23(c)(3) .........................................................................................................14
    Rule 23(e) ........................................................................................................13, 16
    Rule 23(e)(1) .........................................................................................................13
    Rule 23(e)(2) ......................................................................................................8, 15
    Rule 23(e)(2)(A) ...................................................................................................10
    Rule 23(e)(2)(C)(ii) ................................................................................................8
    Rule 23(e)(2)(D) ...................................................................................................17
    Rule 23(e)(3) .........................................................................................................15

**Other Authorities**

N.Y. Gen. Bus. Law § 394-c ....................................................................................................................1

Notice of Motion and Motion for Final Approval of Class Action Settlement

## ISSUES TO BE DECIDED

1.    Is the proposed settlement fair, adequate, and reasonable thus warranting final approval?

2.    Did notice to the Settlement Classes satisfy the requirements of Rule 23 and Due Process?

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.      Introduction**

After hard-fought litigation and several key legal disputes that shaped the scope and breadth of the pleadings, Defendants Bumble Trading, Inc. and Bumble Holding Ltd. (Bumble) and Plaintiffs Nick King, Jr., Elena Weinberger, and Deena Fischer (Plaintiffs) reached a class settlement that provides significant monetary plus robust injunctive relief to consumers across the nation who purchased Bumble's premium service, Boost.

Under the Agreement, Bumble will establish a non-reversionary, settlement fund of $22.5 million to be divided amongst all Settlement Class Members who submit valid claim forms, after deducting amounts the Court may approve for notice and administration costs, attorneys' fees and expenses, and Class Representatives' service awards. The Settlement's monetary component alone compares favorably to other class settlements premised on violations of the California Automatic-Renewal Law[1] and is the only nationwide settlement under the New York Dating Services Law.[2] The Settlement also includes an injunction that will require Bumble to implement meaningful changes to the purchase flow on the Bumble platform and to adopt new provisions in Bumble's Terms & Conditions that will afford consumers refund and cancellation rights.

The Court provisionally certified the Settlement Classes, preliminary approved the Settlement, and found that the proposed notice program constitutes the "best notice practicable under the circumstances." Dkt. 115. The Settlement Administrator has now effectuated Notice to Settlement Class Members. Hundreds of thousands of Settlement Class Members have filed claims. Over five percent of DSL Settlement Class members filed timely claims and will receive a *pro rata* share based on statutory damages under the DSL.  Over eight percent of ARL Settlement Class members filed timely claims and will receive a *pro rata* share proportionate to the amounts they were charged in auto-renewal fees.  There is one objection; the sole objector asks the Court to throw out the entire case leaving class members with no recovery. Thus, there are no *real* objections to the Settlement.

---

[1]      Cal. Bus. & Prof. Code §§17600-17606 (ARL).
[2]      N.Y. Gen. Bus. Law § 394-c (DSL).

1    For these and the below reasons, the Settlement is eminently fair, reasonable, and adequate,

2    warranting final approval.

3    **II.    Background**

         **A.    Overview of the litigation**

4    Below is a brief overview of the litigation; a more detailed, chronological summary is

5    provided in the declarations of David C. Parisi and Grace E. Parasmo filed in support of the Motion

6    for Attorney's Fees, Costs, and Service Awards. Dkts. 117-1 & 117-2.

7    On November 13, 2018, Plaintiffs filed this action on behalf of themselves and classes of

8    California consumers.  Dkt. 1.  Mr. King alleged that Bumble automatically renewed his

9    subscription without obtaining his affirmative consent to the automatic renewal offer terms in

10   violation of the ARL.  *Id*., ¶¶ 54-65.  Plaintiffs alleged that Bumble's Terms & Conditions failed to

11   notify California consumers of their right to cancel their contracts for dating services within three

12   business days and obtain a refund under California's Dating Service Law.[3]  *Id.,* ¶¶ 25-37.

13   Bumble moved to dismiss on Article III standing and other grounds. *See* Dkt. 23.  Plaintiffs

14   subsequently amended the complaint to clarify the allegations.  Dkt. 25.  On April 5, 2019,

15   Plaintiffs filed a second amended complaint which added allegations and a claim for money had and

16   received.  Dkt. 42.  Bumble moved to dismiss on the sufficiency of the pleadings for claims under

17   the Consumer Legal Remedies Act (CLRA), Cal. Civ. Code, § 1750, *et seq*., the California Unfair

18   Competition Act (UCL), Cal. Bus. & Prof. Code, § 17200, *et seq.*, and for money had and received.

19   Dkt. 44.  It also moved to dismiss all claims based on a choice-of-law provision in the Terms &

20   Conditions that designated New York law.  Dkt. 44.

21   On July 8, 2019, the Court granted in part, and denied in part, Bumble's motion.  Dkt. 53.

22   To determine whether the choice-of-law provision was enforceable, the Court considered whether

23   the underlying statutes represent fundamental public policies of California.  *Id.* The Court

24   concluded that the ARL represents a fundamental public policy of California, but the California

25   DSL does not. *Id.*  Accordingly, the Court dismissed, without leave to amend, all claims relying

26   upon the California DSL and sustained all claims premised on violations of the ARL.  *Id.*

27   On August 9, 2019, Plaintiffs filed the third amended complaint.  Dkt. 58.  Plaintiffs

28   _____

[3]      Cal. Civ. Code § 1694, *et seq*. (California DSL).

2

1   Weinberger and Fischer alleged violations of New York's DSL and N.Y. Gen. Bus. Law § 349 and

2   a claim for unjust enrichment. Brian Wess, a New York resident, joined as a named plaintiff.

3   Together, they sought to represent a nationwide class of Boost purchasers.  Dkt. 58.  Plaintiff King

4   reasserted his claim for money had and received and his ARL-based claims under the UCL and the

5   CLRA. *Id.*

6       On September 9, 2019, Bumble moved to dismiss the New York claims.  Bumble argued

7   that it did not violate the DSL because Boost is not a "social referral service" under the statute.  Dkt.

8   67.  Bumble also asserted that the Court lacked personal jurisdiction over the claims of Mr. Wess

9   and out-of-state class members.  On November 20, 2019, the Court denied Bumble's motion to

10  dismiss the New York claims, deferred ruling on personal jurisdiction, granted jurisdictional

11  discovery, and ordered supplemental briefing.  Dkt. 76.  On February 11, 2020, the Court granted

12  Bumble's motion to dismiss for lack of personal jurisdiction as to Mr. Wess, denied Bumble's

13  motion to dismiss for lack of personal jurisdiction as to absent out-of-state class members and

    declined to certify the issue for appeal to the Ninth Circuit.  Dkt. 84.

14      **B.    Discovery conducted by the Parties**

15      The Parties conducted formal discovery on class certification, merits, and jurisdiction.

16  Parisi Decl., Dkt. 117-1, ¶ 4.  Shortly after the Court ruled on the first round of motion to dismiss

17  briefing, Plaintiffs moved to compel discovery, which resulted in an order terminating a stay on

18  discovery.  Dkt. 61-62.  Bumble's discovery responses and several ESI issues were fiercely

19  contested, resulting in a multitude of meet-and-confers, another motion to compel, and amended

20  discovery responses. Dkt. 95-99; Parisi Decl., Dkt. 117-2, ¶ 4; Parasmo Decl., Dkt. 117-2, ¶¶ 44-47,

21  55-56, 61-65, 74.  And despite the Parties' fundamental disagreements on the proper scope of

22  discovery, Plaintiffs obtained discovery related to not only its Terms and the Boost purchase and

23  subscription flows, but also Bumble's internal complaint processes, the size of the proposed classes,

24  the amounts paid by Settlement Class Members to Bumble for Boost and other information

25  necessary to identify the Settlement Class Members, among other things.  Declaration of Suzanne

26  Havens Beckman (SHB Decl.), ¶ 5.  Plaintiffs also took jurisdictional discovery, including a

27  deposition of Bumble Trading, Inc.'s current Chief of Staff and former Chief Operations Officer.

28  Parasmo Decl., Dkt 117-2, ¶ 56-57.  In total, Bumble responded to 73 document requests, 14

interrogatories, and 14 requests for admissions, and produced thousands of pages. Parisi Decl., Dkt. 117-1, ¶ 4; Parasmo Decl., Dkt. 117-2 ¶ 66.  Plaintiffs also responded to Bumble's document requests.  Parasmo Decl., Dkt. 117-2, ¶ 4.

Formal discovery from Bumble was supplemented by Plaintiffs' independent investigations and third-party discovery.  Plaintiffs interviewed dozens of Bumble users and analyzed thousands of pages of documents not produced by Bumble.  Parasmo Decl., Dkt. 117-2, ¶¶ 23-24, 48, 52. Plaintiffs also served subpoenas on Apple, Inc. and Google LLC, who responded with lengthy objections.  Parasmo Decl., Dkt. 117-2, ¶ 48; 67, 70.  After extensive meet-and-confers with these non-parties, Plaintiffs obtained hundreds of pages of documents, including certain class data and internal refund policies.  SHB Decl., ¶¶ 4-5.

Plaintiffs' aggressive discovery efforts continued throughout the mediation process; Plaintiffs were fully prepared to take Bumble's Rule 30(b)(6) depositions and subsequently file a motion for class certification if the case did not resolve at mediation.  Parasmo Decl., Dkt. 117-2, ¶ 73-78; Parisi Decl., Dkt. 117-1, ¶ 24.

**C.      Settlement negotiations and mediation**

On April 2, 2020, the Parties participated in a mediation before the Hon. Edward Infante, Ret.  Dkt. 117-2, ¶ 72.  The Parties prepared detailed mediation briefs outlining their positions on the strengths and weaknesses of the case.  Dkt. 117-1, ¶ 24.  The Parties went into the mediation with substantial differences of opinion regarding the appropriate terms of settlement and accordingly did not resolve the lawsuit at the initial session.  *Id*.  Over the following weeks, while the Parties continued to litigate, they engaged in the mediation process with Judge Infante, who helped bridge the gap between the Parties' positions.  *Id.*  Further briefing was provided to Judge Infante on the more divisive issues.  *Id.*  On April 23, 2020, Judge Infante made a six-point mediator's recommendation to settle on a class-wide basis, which included a total contribution from Bumble of $22.5 million; it was accepted by all Parties in a double-blind process on April 24, 2020. *Id*. at ¶ 25.  For the next eight weeks, the Parties engaged in heavy negotiations over the fine points of the Agreement, including the injunctive relief provisions, the mechanics of the notice program, the language of the class notices and claims forms, among other things.  *Id*. at ¶ 26. The process was protracted with the Parties reaching a full agreement on the language of the Agreement and the

1  supporting documents—the five separate class notice documents and the two claim forms—on the

2  last possible day.  *Id.*

3         **D.     Preliminary Approval**

4         This Court granted preliminary approval of the Settlement on July 15, 2020.  Dkt. 115. The

5  Court preliminarily certified the Settlement Classes, appointed Plaintiffs' counsel as Class Counsel,

6  and appointed JND as the Settlement Administrator.  The Court also directed notice to be given to

   the Settlement Classes in conformance with the Agreement.  *See* Dkt. 115.

7  **III.   Terms of the Settlement**

8
9         **A.     The Settlement Classes**

10        The Preliminary Approval Order certified the below classes for purposes of Settlement:

11        •  The **DSL Settlement Class** defined as all persons nationwide who purchased
             Bumble Boost during the Settlement Class Period. (Settlement, § 1.19.)

12        •  The **ARL Settlement Class** defined as all persons who purchased, within California,
             during the Settlement Class Period, Bumble Boost and had their credit card, debit
13           card, and/or a third-party payment account charged as part of Bumble's automatic
             renewal program or continuous service program. (Settlement, §1.5.)
14

15        **B.     Monetary relief**

16        The Parties agree to a total of $22.5 million in *non-reversionary*, monetary benefits to be

17 distributed to the Settlement Classes after deduction for administrative costs, service awards to

18 Plaintiffs, and any fee and expense award to Class Counsel.  Each DSL Settlement Class member

19 who submitted a valid claim will receive a proportionate and equal share of the DSL Net Settlement

   Fund.[4]  Settlement, § 2.4.1.  Each ARL Settlement Class member who submitted a valid claim will
20
   receive a *pro rata* share of the ARL Net Settlement Fund proportionate to the amount they were
21
   charged under an automatic renewal or continuous service program for Boost during the Settlement
22
   Class Period.  Settlement, § 2.4.2.  Bumble denies that it is legally obligated to make these
23
   payments but is doing so as part of the Settlement.  Settlement, Recitals (F).
24
          Residual funds will be distributed to Settlement Class Members.  For DSL Settlement Class
25
   members, the additional payment, when combined with the initial payment, will not exceed $100.
26

27 _____
   [4]     The DSL Net Settlement Fund represents 85% and the ARL Net Settlement Fund represents
28 15% of the fund after deduction for administrative costs, service awards to Plaintiffs, and any fee
   and expense award to Class Counsel.  Settlement, §§ 1.20, 1.4.

Settlement, § 2.5(c).  For ARL Settlement Class members, the additional payment, when combined with the initial payment, will not exceed the amount the ARL Settlement Class member was charged in auto-renewal fees.  Settlement, § 2.5(b).  If any monies are left after the second distributions, they will be paid to a Court-approved *cy pres* recipient.  Settlement, § 2.6. The Parties proposed the National Consumer Law Center as the *cy pres* recipient. Settlement, § 1.14 and Decl. of Richard Dubois, Dkt. 108-3.

Payments to Settlement Class Members will be made by their preferred payment method, by check or electronically via Zelle, PayPal, or Venmo.  Settlement, § 2.4.4.  Aside from being a cost-effective and efficient method of distributing money to class members, the option for electronic payments allowed the claims process to be contactless during the ongoing pandemic.

**C.     Injunctive relief**

Bumble consents to the entry of an injunction that requires it to implement certain business practices for a period of 18 months.  Settlement, § 2.8.  The reformed business practices are specifically designed to satisfy the injunctive relief demands in the operative complaint.  Dkt. 58 at 24-25.  Bumble denies that it is legally obligated to make these changes but is doing so as part of the Settlement.  Settlement, § 2.8.

For the DSL Settlement Class, Bumble agrees that as long as New York law is the law governing its relationship with Bumble users (as it has been throughout the Settlement Class Period), Bumble's Terms & Conditions will inform consumers nationwide of their right to cancel their Boost subscription and obtain a full refund within three business days of their initial purchase. In the event that Bumble changes the governing law, the Terms & Conditions will be changed to notify consumers who reside in 11 states with comparable dating services laws of their right to cancel, within three business days, and obtain a full refund, under their state's dating service law. Settlement, § 2.8 (a) and (b).

For the ARL Settlement Class, Bumble agrees to change its subscription purchase flow in the Bumble App for users that purchase subscriptions directly from Bumble to include additional disclosures regarding the recurring nature of the subscription and explain Bumble's full cancellation policy.  *Id.*, § 2.8(c).  Further, post-purchase emails sent by Bumble to users that purchase subscriptions directly from Bumble will disclose the price and period of the plan purchased, include

a statement that the plan will auto-renew unless cancelled within 24 hours prior to the end of the plan period, and provide instructions on cancellation.  *Id*., § 2.8(d).

**D.      Payment of attorneys' fees and costs**

On October 9, 2020, Class Counsel filed the Motion for Attorneys' Fees and Cost and Class Representatives' Service Award.  Dkt. 117.  Class Counsel seek an award of $6,075,000.00 in attorney's fees, representing 27% of the $22,500,000 non-reversionary common fund, as well as costs of $15,104.00.  Dkt. 117.  Additionally, the Class Representatives each seek Service Awards of $5,000.00 for the time and effort that they invested in the Action.  *Id*.  The Parties did not negotiate nor did they reach any agreements with respect to attorneys' fees, costs, and service awards.  Settlement, §§ 7.7, 8.1, 9.2; *see also* Parisi Decl., Dkt. 108-1, ¶¶ 13 & 16. Indeed, Bumble filed a Statement of Non-Opposition to the Motion for Attorneys' Fees and Cost and Class Representatives' Service Award.  *See* Dkt. 118.

**E.      Notice and settlement administration**

The Preliminary Approval Order appointed JND as Settlement Administrator.  Dkt. 115.  As detailed in the Declaration of Jennifer Keough, JND fully implemented the notice plan ordered by the Court.  Keough Decl., ¶¶6-10.  Pursuant to the Agreement, Ms. Keough will submit a more detailed declaration on December 9, 2020.

Bumble used its records to provide the Settlement Administrator with a list of all Settlement Class Members, as well as their contact information.  JND attempted direct Email Notice to 100% of the ▒▒▒▒▒ Settlement Class Members. *Id*. at ¶ 6.  Settlement, § 4.2.  Of these emails ▒▒▒▒▒ Settlement Class members were successfully delivered.  *Id*. at ¶ 7.  Two reminder Email Notices were sent to these Settlement Class Members whose emails were delivered and had not yet filed a claim, excluded themselves, or unsubscribed to the email campaign at the time of the reminder(s).  *Id*.  For the undeliverable emails, JND used telephone numbers and zip codes to trace and append mailing addresses of owners of those numbers during the time the Bumble account was used.  *Id*. at ¶ 8.  Through this reverse look-up process, JND found additional email addresses for ▒▒▒▒▒ class members and ▒▒▒▒▒ of these emails were delivered. *Id*.  Additionally, ▒▒▒▒▒ postcard notices were mailed via this same process to Settlement Class Members whose email notices were undeliverable.  Of the postcards sent, ▒▒▒▒▒were delivered.  *Id*.  Ultimately, 81% of

1    Settlement Class Members received direct notice.  *Id*. at ¶ 9.  Direct notice was supplemented with a

2    Press Release, which was published on July 18, 2020 by Global Newswire. *Id.* at ¶ 10.  The Press

3    Release received 100 full text placements and 72 headline-only placements.  *Id*.; Settlement, § 4.5.

4         JND established a website [www.bumbleboostsettlement.com], whose URL was indicated

5    on the notices, dedicated to this Settlement to provide information to the Settlement Class Members

6    and to answer frequently asked questions.  Keough Decl., ¶ 11.  The website provided links to the

7    Notice and important case documents; the date, time, and place (via Zoom video) of the Final

8    Approval Hearing; contact information for Class Counsel to answer questions; and instructions on

9    how to access the case docket via PACER or in person at any of the Court's locations.  There were

10   over 484,000 unique visitors to the website.  *Id.*  The Settlement Administrator also established a

11   toll-free telephone number for Settlement Class Members to call with questions about the

     Settlement and received over 2,400 calls.  *Id.* at ¶ 13.

12        To obtain a payment, Settlement Class Members needed to fill out a claim form online or by

13   mail.  The claim forms were simply designed and easy to fill out.  The claim forms required contact

14   and method of payment information only: the name of the Bumble Boost user; method of payment;

15   where to send the payment; and consent for Bumble and the Settlement Administrator to process the

16   data for settlement purposes.  *See* Keough Decl., Dkt. 110, Ex. G; Fed. R. Civ. P. (e)(2)(C)(ii).

17        A substantial number of claims were submitted.  Over ████████ Settlement Class members

18   submitted timely claims.  Keough Decl., ¶ 17.  The claims rate for the ARL Settlement Class was

19   over eight percent and the DSL Settlement Class had a claims rate of over 5 percent. *Id* at ¶ 18.  The

20   Settlement Administrator received 889 valid and timely exclusion requests from the Settlement

21   Classes.  *Id*. at ¶ 16. One Settlement Class Member objected to the Settlement. *Id.* at ¶15, *see also,*

22   Dkt. 119.

23   **IV.     The Settlement merits final approval**

24        To grant final approval of a class action settlement, the Court must reaffirm its provisional

25   findings that the Settlement Classes meet the requirements for certification under Rule 23.  The

     Court also assesses whether notice has been provided in a manner consistent with Rule 23 and due

26   process.  Fed. R. Civ. P. 23(e)(2).  Finally, the Court determines whether the settlement reached on

27   behalf of the classes is fair, reasonable, and adequate.  The Settlement satisfies these requirements.

28

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.      The Court should certify the Settlement Classes

The Court provisionally certified the Settlement Classes.  Dkt. 115.  There are no new circumstances that would alter the Court's prior analysis.  For the reasons stated in the Preliminary Approval Order, the Court should certify the Settlement Classes for final approval.  *See, e.g., Black v. T-Mobile USA, Inc.*, No. 17-CV-04151-HSG, 2019 WL 3323087, at \*2 (N.D. Cal. July 24, 2019) ("Because no facts that would affect these requirements have changed since the Court preliminarily approved the class . . . this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.").

### B.      The Settlement Classes Meet the Requirements of Rule 23(a)

#### 1.      The classes are numerous

Rule 23(a)(1) requires that "the class is so numerous that joinder of all class members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Based on formal discovery, Plaintiffs' independent investigation, the collaborative work of the Parties, and analysis of Bumble's user data, the Parties have determined that the proposed DSL Settlement Class consists of over ▮▮▮▮▮ persons and the proposed ARL Settlement Class consists of over ▮▮▮▮ members.  Parisi Decl., Dkt. 108-1, ¶ 4.  Both classes thus meet the numerosity requirement.  *Rannis v. Recchia,* 380 F. App'x 646, 651 (9th Cir. 2010) (numerosity generally found with at least 40 class members).

#### 2.      Plaintiffs' claims are typical of the classes they seek to represent

To satisfy Rule 23(a)(3), plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (punctuation, citation omitted).  This standard is "permissive," and claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff King represents the ARL Settlement Class.  His claims regarding Bumble's auto-renewal disclosures, or lack thereof, are typical because they arise "from the same event or practice or course of conduct that gave rise to the claims of other class members and his claims were based on the same legal theory."  *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020)

1   (internal citations omitted) (typicality satisfied where claims based on the same legal theory).

2   Similarly, the claims of Plaintiffs Weinberger and Fischer, who represent the DSL Settlement Class,

3   are typical because they arise from Bumble's Terms & Conditions, which failed to give notice of

4   the substantive rights to cancel and obtain a refund as required under the DSL.  *See e.g.*, Dkt. 58, ¶¶

5   53-86 and Dkt. 87 at 10-14.

### 3.   Plaintiffs and their counsel have fairly and adequately protected the Settlement Classes' interests

Rule 23(a)(4) requires that Plaintiffs fairly and adequately protect the classes' interests.  The

adequacy test poses two questions: "(1) are there conflicts between plaintiffs and their counsel and

the other members of the settlement class, and (2) will plaintiffs and their counsel vigorously

prosecute the class action?"  *Hanlon*, 150 F.3d at 1020.  There is no indication of any conflicts

between the Plaintiffs and other members of the classes they represent.  To the contrary, the

Plaintiffs are adequate because they share the same claims as their respective Settlement Classes

and have the same interest in recovering money from Bumble and initiating change to Bumble's

practices.

"Adequate representation is usually presumed in the absence of contrary evidence."

*Californians for Disability Rights, Inc. v. Cal. Dep't. of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal.

2008) (quoted, followed by *Patel v. Trans Union, LLC*, 308 F.R.D. 292, 306 (N.D. Cal. 2015)).

Class Counsel diligently and skillfully investigated and litigated this case.  They are well-versed in

the applicable laws and experienced in litigating consumer class actions.  *See* Parisi Decl., Dkt. 117-

1, ¶¶ 2-3; Parasmo Decl., Dkt. 117-2, ¶ 4.  Class Counsel have represented the Settlement Classes

on a contingency-fee basis (Parisi Decl., Dkt. 117-1, ¶ 37; Parasmo Decl., Dkt. 117-2, ¶ 93) and

have provided vigorous representation resulting in significant monetary and injunctive relief for

members of the Settlement Classes.  Plaintiffs and Class Counsel are thus adequate and satisfy Rule

23(a)(4) and 23(e)(2)(A).

### C.   Rule 23(a)(2) and (b)(3) requirements are satisfied

### 1.   Common questions predominate for both classes

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R.

Civ. P. 23(a)(2).  Common questions of law or fact "must be of such a nature [they are] capable of

1    classwide resolution"; that is, that the answer to such common questions "will resolve an issue that

2    is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

3    131 S. Ct. 2541, 2551 (2011) (citation, punctuation omitted).  Commonality can be "easily

4    satisf[ied]" where class members "all base their claims on the same legal theory." *Xiufang Situ v.*

5    *Leavitt*, 240 F.R.D. 551, 560 (N.D. Cal. 2007) (citation, punctuation omitted).

6        Relatedly, Rule 23(b)(3) focuses on the relationship between the common and individual

7    issues.  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009).

8    "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion

9    requirements of Rule 23(b)(3)."  *Hanlon,* 150 F.3d at 1019.  "When common questions present a

10   significant aspect of the case and they can be resolved for all members of the class in a single

11   adjudication, there is clear justification for handling the dispute on a representative rather than on an

12   individual basis."  *Id.* at 1022.

13       "Predominance is not, however, a matter of nose-counting.  Rather, more important

14   questions apt to drive the resolution of the litigation are given more weight in the predominance

15   analysis over individualized questions which are of considerably less significance to the claims of

16   the class."  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citation

17   omitted).  Therefore, even if just one common question predominates, "the action may be

18   considered proper under Rule 23(b)(3) even though other important matters will have to be tried

19   separately."  *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 557-58 (9th Cir. 2019)

20   (internal citations omitted).[5]

21       Here, common questions go to the heart of Bumble's liability for ARL violations and

22   outweigh any individualized issues that may exist.  Whether the Boost purchase process conforms

23   to the requirements for adequate notice and affirmative consent under the ARL is a common,

24   predominating question because the ARL Settlement Class' claims will stand or fall based on the

25   answer to this question.  *See* Cal. Bus. & Prof. Code, §§ 17601-17604.  *See also, Wahl v. Yahoo!*

26   *Inc.,* No. 17-2745-BLF, 2018 WL 6002323, at *3 (N.D. Cal. Nov. 15, 2018) ("The common

27   question in this case – whether Yahoo violated the ARL by automatically renewing subscriptions to

28

---

[5]     Courts often undertake the commonality and predominance analyses simultaneously. *See e.g.*, *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, 2017 WL 1806583, at *6 (N.D. Cal. May 5, 2017).  *See also* 7 Newberg on Class Actions § 22:69 (5th ed.) (same).

1  Rivals.com without statutorily required notice – predominates.").  Moreover, under Plaintiffs'

2  theory of liability, the ARL converts Bumble subscriptions offered in violation of the ARL into

3  "unconditional gifts" and makes it illegal to charge anything for such subscriptions.  *See e.g.,*

4  *Johnson v. Pluralsight*, LLC, 728 F. App'x 674, 677 (9th Cir. 2018).  Thus, liability for the

5  proposed ARL Settlement Class boils downs to a common, predominating legal question—whether

6  the unconditional gift provision of the ARL applies to Bumble Boost— a digital product.  *See e.g.,*

7  Dkt. 44 n.6; Dkt. 46 n.18; Dkt. 49 n.8.

8         Likewise, the CLRA and UCL claims, which are derivative of the alleged ARL violations,

9  turn on the same predominating common questions.  Indeed, "CLRA and UCL claims are ideal for

10 class certification because they will not require the court to investigate class members' individual

11 interaction with the product" but instead turn on the objective question of whether a reasonable

12 consumer would be misled.  *Bradach v. Pharmavite, LLC,* 735 F. App'x 251, 254–55 (9th Cir.

13 2018).

14        The DSL Settlement Class also hinges on common, predominating questions: (1) whether

15 Boost is a "social referral service" under the DSL (*see* Dkt. 76) and (2) whether Bumble's Terms &

16 Conditions violate the DSL.  *See e.g., Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37

17 (E.D.N.Y. 2008) ("An overwhelming number of courts have held that claims arising out of form

18 contracts are particularly appropriate for class action treatment"); *In re Med. Capital Sec. Litig.*,

19 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (same).

20        Thus, Plaintiffs satisfy the commonality and predominance factors for each class.

21        **2.     A class action is the superior dispute resolution mechanism**

22        The Ninth Circuit has explained that class actions are superior when the "'risks, small

23 recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually

24 pursue their claims."  *Just Film Inc. v. Buono*, 847 F.3d 1108, 1123 (2017) (citation omitted).  The

25 amount of statutory damages and restitution for violations of the ARL and the DSL in this case "are

26 not sufficient to compensate the average consumer for the time and effort that would be involved in

27 bringing small claims against a national corporation."  *Meyer v. Bebe Stores, Inc.*, No. 14-0267-

28 YGR, 2017 WL 558017, at *4 (N.D. Cal. Feb. 10, 2017) (finding superiority under the TCPA where

statutory damages would amount to $500 to $1500 per violation).  Further, individual claimants are

1
2
3

ostensibly required to bring their claims against Bumble in the courts of New York State regardless of their state of residency.  *See e.g.,* Dkt. 58-1.[6]  And consumers nationwide are likely unaware of their cancellation and refund rights under the New York law.

4
5
6

Indeed, "[t]hese [superiority] considerations are at the heart of why the Federal Rules of Civil Procedure allow class actions in cases where Rule 23's requirements are satisfied."  *Just Film Inc.*, 847 F.3d at 1123.  A class action is superior here.

7

**V.     The class notice satisfies due process and Rule 23(c)(2) and (e) requirements**

8
9
10
11
12
13
14
15
16
17
18
19

Before final approval of a class action settlement, the Court must find that class members were notified in a reasonable manner.  Fed. R. Civ. P. 23(e)(1).  To satisfy Rule 23(e)(1), settlement notices must "present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).  Class members must receive "the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).  Ultimately, the notice plan must comport with due process requirements. *Rodriguez*, 563 F.3d at 963.  But "neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017). Rather, the rule only requires the "best notice that is *practicable under the circumstances*, including individual notice to all members who can be identified through *reasonable effort*." *Id.* (quoting Fed. R. Civ. P. 23(c)(2)(B) (emphasis in original).  "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."  Fed. R. Civ. P. 23(c)(2)(B).

20
21
22
23
24
25

The Court approved the Notice Plan when it granted preliminary approval.  Dkt. 115, ¶¶ 12-16.  The Court found "that the form, content, and manner of notice proposed by the parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstance, constitute sufficient notice to all persons and entities entitled to notice, and satisfy the Constitutional requirements of notice." Dkt. No. 115, ¶ 12. The Court should reaffirm this finding for final approval.  As detailed above in section III.F and the

26
27
28

---

[6]     As the claims at issue are for relatively small sums of money, individual plaintiffs would not meet the threshold for Federal Court jurisdiction.

1    Settlement Administrator's declarations (one filed on December 2 and another to be filed on

2    December 9), the Settlement Administrator implemented the Notice Plan according to the Order.

3         "[N]otice plans estimated to reach a minimum of 70 percent are constitutional and comply

4    with Rule 23." *Free Range Content, Inc. v. Google,* LLC, No. 14- 2329-BLF, 2019 WL 1299504,

5    at *6 (N.D. Cal. Mar. 21, 2019) (citing *Edwards v. Nat'l Milk Producers Fed'n,* No. 11-4766-JSW,

6    2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017)).  Here, the notice reached approximately 81%

7    of Class Members, thereby satisfying the notice requirements.  *See e.g., Schneider v. Chipotle*

8    *Mexican Grill, Inc.,* No. 16-CV-02200-HSG, 2020 WL 6484833, at *6 (N.D. Cal. Nov. 4, 2020)

9    (approving settlement where notice reach was approximately 72.64% of the Settlement Class);

10   *Gergetz v. Telenav, Inc.,* No. 16-CV-04261-BLF, 2018 WL 4691169, at *4 (N.D. Cal. Sept. 27,

11   2018) (approving settlement where 79.1% of class members received notice).

12        The content of the "[n]otice is satisfactory if it generally describes the terms of the

13   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

14   forward and be heard." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 567 (internal citations

15   omitted).  The various forms of Notice, reviewed and approved by this Court, provided clear

16   descriptions of who is a member of the Settlement Classes and their rights and options under

17   the Settlement.  Dkt. 110, Keough Decl., Exs. B, C, D & E.  Notice satisfied Rule 23(c)(2) by

18   informing class members of the nature of the action; the definition of the classes certified; the class

19   claims and issues; that a class member may enter an appearance through an attorney if they desire;

20   that the Court will exclude from the Settlement any member who requests exclusion; the time and

21   manner for requesting exclusion; the binding effect of a class judgment on Settlement Class

22   Members under Rule 23(c)(3).  *See id.*

**VI.   The Settlement is fair, adequate, and reasonable and should be finally approved**

23        The Ninth Circuit maintains a "strong judicial policy" that favors settlement, particularly

24   "where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Econ. Litig.*, 926

25   F.3d 539, 556 (9th Cir. 2019) (en banc) (internal citations omitted).  But "settlement class actions

26   present unique due process concerns for absent class members" (*Hanlon,* 150 F.3d at 1026); thus

27   "the district court has a fiduciary duty to look after the interests of those absent class members."

28   *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).

1

2    If a Rule 23 class exists, the Court may approve a proposed class-action settlement after

3    finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23. "The court need not ask

4    whether the proposed settlement is ideal or the best possible; it determines only whether the

5    settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to

     the class." *Hanlon,* 150 F.3d at 1026–27.

6    "The court may approve [a proposed class action settlement] only after a hearing and on

7    finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  To evaluate fairness, Rule

8    23, as amended, directs the court to consider four overarching factors, whether:

     (A)  the class representatives and class counsel have adequately represented the class;
9    (B)  the proposal was negotiated at arm's length;
     (C)  the relief provided for the class is adequate, taking into account:
10          (i)  the costs, risks, and delay of trial and appeal;
            (ii)  the effectiveness of any proposed method of distributing relief to the class,
11          including the method of processing class-member claims;
            (iii)  the terms of any proposed award of attorney's fees, including timing of
12          payment; and
            (iv)  any agreement required to be identified under Rule 23(e)(3); and
13

14   (D)  the proposal treats class members equitably relative to each other.

15   *Id.*  Recognizing that each circuit has devised its own list of factors to weigh the fairness of class

16   settlements, the Advisory Committee Notes to these amendments, make clear that Rule 23's specific

17   factors are not meant "to displace any factor, but rather to focus the court and the lawyers on the

18   core concerns of procedure and substance that should guide the decision whether to approve the

19   proposal."  Advisory Committee Notes, Fed. R. Civ. P. 23, subdiv. (e)(2) (2018); *see also Shin v.*

20   *Plantronics, Inc.,* No. 18-CV-05626-NC, 2019 WL 2515827, at *4 (N.D. Cal. June 17, 2019).

21   "Accordingly, the Court should apply the framework set forth in Rule 23, while continuing to draw

22   guidance from the Ninth Circuit's factors and relevant precedent."  *Hefler v. Wells Fargo & Co.*,

23   No. 16-CV-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

24   When making this determination, courts in the Ninth Circuit consider several factors,

25   including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration

26   of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the

27   amount offered in settlement; (5) the extent of discovery completed and the stage of the

28   proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

     participant; and (8) the reaction of the class members to the proposed settlement.  *Hanlon*, 150 F.3d

15

1   at 1026; *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  The "relative

2   degree of importance to be attached to any particular factor will depend upon and be dictated by the

3   nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances

4   presented by each individual case."  *Shin v. Plantronics, Inc.*, No. 18-CV-05626-NC 2020 WL

5   1934893, at *3 (N.D. Cal. 2020), citing *Officers for Justice v. Civil Service Com'n of City and

6   County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "The determination of whether a

7   proposed settlement is fair falls within the sound discretion of the district court." *Id.* (internal

8   citations omitted).

9       When parties "negotiate a settlement agreement before the class has been certified,

10  settlement approval requires a higher standard of fairness and a more probing inquiry than may

11  normally be required under Rule 23(e)."  *Roes, 1–2 v. SFBSC Mgmt.*, 944 F.3d 1035, 1043 (9th Cir.

12  2019) (internal quotations omitted).  The Ninth Circuit has recognized, however, that "[j]udicial

13  review also takes place in the shadow of the reality that rejection of a settlement creates not only

14  delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for

    the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

15      **A.    The Settlement is the result of informed, arms-length, non-collusive negotiations
              and a mediator's proposal**

16

17      The Settlement is a product of extensive arms-length negotiations, including a formal

18  mediation and continued negotiations before an experienced and highly respected mediator and

19  former Chief Magistrate Judge of this District.  Parisi Decl., Dkt. 117-1, ¶¶ 24-25; Parasmo Decl.,

20  Dkt. 117-2, ¶¶ 72-79.  When the Parties reached an impasse, Judge Infante provided a mediator's

21  recommendation, which was ultimately accepted by the Parties.  *Id.*  These settlement negotiations

    occurred while this Action was being heavily litigated and with the benefit of formal discovery.  *Id.*

22      "The assistance of an experienced mediator in the settlement process confirms that the

23  settlement is non-collusive."  *Schofield v. Delta Air Lines, In*c., No. 18-CV-00382-EMC, 2019 WL

24  955288, at *6 (N.D. Cal. Feb. 27, 2019) (internal quotations omitted).  And the "parties' use of

25  mediation, which took place after significant discovery, and their reliance on the mediator's

26  proposal in settling demonstrates the parties considered a neutral opinion in evaluating the strength

27  of their arguments . . . and weigh[s] in favor of settlement." *Bellinghausen v. Tractor Supply Co*.,

28  306 F.R.D. 245, 257 (N.D. Cal. 2015).

The absence of signs of potential collusion also supports final approval.  Signs of potential collusion include: "(1) when counsel receive a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant."  *Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015) (*quoting In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011)).  Here, there is no agreed-upon attorneys' fees and there is no 'clear sailing' agreement as Bumble reserved the right to challenge any fee request.  Settlement, § 8.1. Nor is the Settlement dependent on any fee amount Counsel may be awarded in the case.  *Id.*  Finally, the Settlement Fund is non-reversionary.  *Id.* at §§ 2.5, 2.6.

Moreover, the proposal treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D).  The payment structures are dependent on the relief authorized by the claims at issue for each class.  The distribution for the DSL Settlement Class will be a *pro rata* share of statutory damages authorized by the DSL.  Distribution for the ARL Settlement Class will be a *pro rata* share based on the total amount each ARL Settlement Class member was charged in auto-renewal fees—as Plaintiffs contend the ARL converts any subscriptions offered in violation of its terms into unconditional gifts.  *See Johnson,* 728 F. App'x at 677.[7]

Class Representatives seek service awards that "are fairly typical in class action cases" and do not render a settlement unfair or unreasonable.  *See Rodriguez*, 563 F.3d at 958; Dkt. 117 at 31. Class Representatives are also treated equitably relative to other class members because the service awards are dependent on the Court's approval and are not conditions of the Agreement.  Settlement, §§ 7.7, 9.4.; *Cf. Radcliffe v. Experian Info. Solutions, Inc.,* 715 F.3d 1157, 1167 (9th Cir. 2013).

**B.     Plaintiffs' case is strong but continued litigation poses significant risks**

"Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Ching v. Siemens Indus., Inc.*, No. 11-4838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (internal quotations

---

[7]      "Courts have approved settlement plans that pay monetary benefits based on the comparative strengths and weaknesses of certain claims." *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *13 (N.D. Cal. Nov. 19, 2019); *see also Rodman v. Safeway Inc.*, 2018 WL 4030558, at *2 (N.D. Cal. Aug. 23, 2018) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable.").

1   omitted).  Here, both sides were confident in the strength of their respective positions.  At the

2   outset, even if this case had not "present[ed] especially novel or complex issues," there is always

3   the risk that "managing a large consumer class could be complicated and expensive."  *Shin v.*

4   *Plantronics, Inc.,* 2020 WL 1934893, at *3 (finding general risk in consumer class action plus

5   expense, complexity, and likely duration of further litigation to weigh in favor of approval).  Aside

6   from the general risks and increased costs of continued litigation, this case also presented specific

7   risks to class recovery had the parties continued to litigate.

8       On the merits, there were significant risks to class recovery as this case raised novel and

9   complex issues.  As to the DSL claims, whether the Court or jury would find—as a factual matter

10  —that Boost "provides matching" and is thereby governed by the DSL presented risk.  *See e.g.,*

11  Dkt. 76 at 5:22-28.  And even if Boost is governed by the DSL, Bumble maintained that purchasers

12  who liked the service received the benefit of the bargain and could not recover under the statute.

13  *See Grossman v. MatchNet PLC*, 10 A.D.3d 577, 577 (N.Y. App. 2004).  Further, Plaintiffs'

14  position that the ARL's gift provision applies to digital products like Boost is an open legal issue.

15  *See e.g., Johnson v. Pluralsight, LLC*, 728 F. App'x 674, 677 (9th Cir. 2018).  Plaintiffs also

16  acknowledge that Bumble has maintained throughout the litigation that the purchase process for

17  Boost complies with the ARL.

18      Moreover, while Plaintiffs maintain that the Settlement Classes are suitable for class action

19  treatment and would likely win on the merits, Bumble vigorously disputes this assessment.  Thus,

20  actual risk exists that could preclude class member recovery altogether if the parties continue to

21  litigate.  On the other hand, the proposed Settlement balances the risks, costs, and potential delays.

22  It provides Settlement Class Members with substantial monetary and injunctive relief that is both

23  certain and immediate, thereby eliminating any risk that they would be left with no recovery.

**C.   The risk of maintaining class action status throughout the trial supports approval**

24      The Court provisionally certified the Settlement Classes for settlement purposes. The DSL

25  Settlement Class, consisting of all persons nationwide who purchased Boost, is identical to the

26  Dating Service Law Class in the operative complaint.  See Dkt. 58, ¶ 87.  The ARL Settlement

27  Class likewise mirrors the California Automatic Renewal Class in the operative complaint.  *Id.*

28

1
2
3
4

The risk of maintaining class action status through trial was found to be a neutral factor where, the Settlement Classes were similar to the proposed classes in the operative complaint.  *See Shin v. Plantronics, Inc.*, 2020 WL 1934893, at *3 (noting that this factor could be neutral where the class complaint outlined a putative class similar to the certified settlement class).

5
6
7
8
9
10
11

But here this factor favors approval as Bumble's challenges to class certification uniquely apply to litigation classes.  First, Bumble would likely have renewed its request to certify the question of personal jurisdiction over absent out-of-state class members to the Ninth Circuit had the case proceeded and the Court certified the nationwide DSL Settlement Class for litigation.  *See* Dkt. 84 at 11.  The Court previously acknowledged that there may be a substantial ground for a difference of opinion on the issue.  Dkt. 84 at 11.  Hence, an appeal in the case could have resulted in decertification of a litigation class.[8]

12
13
14
15
16
17
18
19

Second, Bumble's affirmative defense of class action waiver posed a risk to class recovery. See Dkt. 87.  While the legal risks of enforcing the purported waiver may differ for a California and a nationwide class, the thorny choice-of-law issues that could be raised, namely— whether a particular states' law would apply nationwide, and if so, which states' law would apply— does not guarantee a favorable outcome for the nationwide DSL Settlement Class.  Indeed, at times, courts have found that being required to conduct this analysis can itself defeat class certification and raise questions about the viability of a nationwide DSL class.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718 (9th Cir. 2007) (finding no abuse of discretion in denying class certification of nationwide class where applicability of class action waiver would require state-by-state analysis).

20
21
22

Here, this factor weighs in favor of final approval.  *Cf. Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (where "[a]t the time of settlement, the risk remained that the nationwide class might be decertified" weighed in favor of settlement).

23

### D.     The amount offered is adequate and fair and supports approval

24
25

When evaluating whether the amount offered is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware*

26
27
28

---

[8]     *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.,* 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class").

19

1   *Antitrust Litig.,* 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007).  "The fact that a proposed settlement

2   may only amount to a fraction of the potential recovery does not, in and of itself, mean that the

3   proposed settlement is grossly inadequate and should be disapproved."  *Linney v. Cellular Alaska*

4   *P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998).  The Court's assessment of the likelihood of success is

5   "nothing more than an amalgam of delicate balancing, gross approximations and rough justice."

6   *Rodriguez,* 563 F.3d at 965 (internal quotation marks omitted).  "In reality, parties, counsel,

7   mediators, and district judges naturally arrive at a reasonable range for settlement by considering

8   the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining

9   it, discounted to present value."  *Id.*

10       The proposed Settlement falls well within the range of reasonableness.  Here, Bumble's

11   potential liability, based on statutory damages of $50 per subscriber for over ▮▮▮▮▮ Boost

12   subscribers, is approximately ▮▮▮▮▮▮▮ Parisi Decl., Dkt. 108-1, ¶ 7.  This estimate is about

13   equal to or greater than total nationwide sales of Boost, at the time the parties agreed to settle.

14   Parisi Decl., Dkt. 108-1, ¶ 7.  And Bumble indicated that if Plaintiffs were to secure a favorable

15   judgment, it would challenge any statutory damages award as excessive and violative of due

16   process, thus posing another risk to full recovery for the Settlement Classes.  *See e.g.*, Dkt. 87 at 29.

17       Yet, Plaintiffs secured significant relief for the Settlement Classes.  Based on current

18   estimates (and assuming the requested attorneys' fee, expenses, and service fees are awarded),

19   claiming members of the DSL Settlement Class will receive approximately $37.  Given the DSL's

20   statutory damage provision of $50, this cash recovery is excellent, and represents approximately

21   74% of a DSL Settlement Class member's potential statutory damages award recoverable at trial.

22   Analyzing the DSL Settlement Class recovery through a gross *per capita* lens, yields approximately

23   ▮▮▮ of statutory damages.  This compares favorably to other class settlements of claims with

24   statutory damages.  *See e.g., McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2015

25   WL 3990915, at *10 (N.D. Cal. June 30, 2015) (approving settlement where the gross *per capita*

26   recovery represented 0.3% of the maximum statutory damages award in call recording case and

27   actual recovery by claiming class members was 2% of statutory maximum damages); *Perez v. Rash*

28   *Curtis & Assocs.,* No. 4:16-3396-YGR, 2020 WL 1904533, at *16 (N.D. Cal. Apr. 17, 2020)

(noting the actual recovery by claiming class members in typical TCPA statutory damages cases

1  ranges between four and ten percent of minimum statutory damages and between one and four

2  percent of maximum statutory damages).

3       This monetary relief for DSL Settlement Class members was made available to all Boost

4  purchasers nationwide.  That consumers in states that do not offer refund and cancellation rights and

5  remedies similar to New York's DSL can obtain relief in this Settlement (based on the choice-of-

6  law provision in Bumble's Terms & Conditions) makes this Settlement more robust.  And this case

7  compares favorably to the single class settlement that Plaintiffs are aware of that alleged violations

8  of the notice provisions of a state dating service law (albeit not New York)—a California class

9  action alleging that the Tinder dating app failed to notify consumers of their right to cancel was

10  settled on a class-wide basis for coupons only: either one free month of Tinder or a one-time

11  allotment of "Super Likes".  *Hansen v. Tinder Inc*., 2018 Cal. Super. LEXIS 123, *2 (Superior

    Court, San Luis Obispo) (April 11, 2018).  In contrast, here, claiming DSL Settlement Class

12  Members will receive a substantial cash payment.

13       Under the proposed Settlement, the ARL Settlement Class members who made valid claims

14  are estimated to recover, on average, $50 per claim, not including any award they will receive from

15  the DSL portion of the Settlement.  The average amount of auto-renewal fees charged per ARL

16  Settlement Class member is ▮▮▮▮   Parisi Decl., Dkt. 108-1, ¶ 8.  This recovery amounts to

17  approximately ▮▮▮ of all renewal fees charged per claiming ARL Settlement Class member during

18  the Settlement Class Period.  This compares favorably to other ARL settlements.  *See e.g. Noll v.*

19  *eBay, Inc.,* 309 F.R.D. 593, 607 (S.D.Cal. 2018) (approving settlement representing 50% of the first

20  month renewal fees and 9% of all renewal fees in credits and cash); *Williamson v. McAfee, Inc.*, No.

21  5:14-cv-00158-EJD (N.D. Cal. Feb. 3, 2017), ECF No. 114, at 2 (approving settlement where auto-

22  renewal class members received $11.50 in value certificates or cash, which was "roughly half of the

23  overcharge").

24       In addition, the Settlement includes significant injunctive relief for both classes with

25  substantive changes to Bumble's Terms & Conditions as well as the purchase flow and disclosures

26  for Boost subscriptions.  Settlement, § 2.8.

27

28

1

**E.     The extensive discovery completed and the stage of the proceedings supports final approval**

2

Under this factor, courts evaluate whether class counsel had sufficient information to make

3

an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

4

454, 459 (9th Cir. 2000).  As discussed above in section II.A, the Court issued three orders on

5

Bumble's motions to dismiss on issues that relate to the crux and scope of Bumble's potential

6

liability, such as whether a choice-of-law provision in Bumble's Terms & Conditions is

7

enforceable, whether the New York DSL applies to online dating apps like Bumble, and the Court's

8

jurisdiction over out-of-state absent class members.  The significant litigation of these key,

9

dispositive issues assisted the Parties in evaluating the claims and defenses.

10

The Parties exchanged formal discovery related to jurisdiction, class certification, and

11

merits.  *See* section, II.B, *supra*.  Plaintiffs also obtained class data and other relevant documents

12

from third parties and conducted their own investigations by interviewing class members and

13

reviewing documents about Bumble's finances, corporate structure, and other documents not

14

produced in discovery.  SHB Decl., ¶¶ 4-5.  Plaintiffs gained a comprehensive and thorough

15

understanding of the information necessary to the evaluate the merits and defenses of the claims as

16

well the size and composition of the Settlement Classes.  *Id.*; *see* section, II.A, *supra*.  This was

17

conducted well before the mediation as the Parties' detailed mediation briefs carefully analyzed

18

class certification, summary judgment, and trial.  *Id.*; Parasmo Decl., Dkt. 117-2, ¶¶ 71-79.  A

19

formal mediation was conducted before the former Chief Magistrate Judge of this District, who

20

provided the Parties with a neutral, reasonable assessment of the strength and weaknesses of the

case and a mediator's proposal, which was accepted by the Parties.  *Id.*

21

Considering these facts, the Parties had more than sufficient information to make a reasoned

22

and informed decision about the relative merits of the case and the fairness of the Settlement.  *See*

23

*Bellinghausen v. Tractor Supply C*o., 306 F.R.D. 245, 257 (N.D. Cal. 2015) (factor supported

24

approval where parties litigated multiple motions to dismiss, engaged in formal and informal

25

discovery, produced and analyzed thousands of pages of documents, prepared detailed mediation

26

briefs, and participated in mediation).

27

28

### F.     The experience and views of counsel support final approval

Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation.  *See* Parisi Decl., Dkt. 108-1, ¶¶ 9-10 and Exh. 2; Dkt. 108-2, ¶¶ 3-4 and Exh. 1. Based on their collective experience, Class Counsel concluded that the Settlement provides exceptional results for the Settlement Classes while avoiding costs, delays and uncertainties of continued litigation.  *See* Parisi Decl., Dkt. 108-1, ¶¶ 6-8 and Parasmo Decl., Dkt. 108-2, ¶¶ 5-7.

### G.     The lack of a governmental participant weighs in favor of final approval

There was no governmental participant in this action.  Additionally, notice has been provided to 52 governmental agencies complying with CAFA, 28 U.S.C. § 1715.  Keough Decl., ¶5. No state Attorney General or Federal official has objected to the Settlement or raised any concerns about its validity.  *Id.*  Thus, this factor favors approval of the settlement.  *Noll*, 309 F.R.D. at 608.

### H.     Class members positive reaction to the Settlement supports final approval

Courts have acknowledged that "[t]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent."  *Munday v. Navy Fed. Credit Union,* No., 2016 WL 7655807, at *8 (C.D. Cal. Sept. 15, 2016) (internal citations omitted) (alterations in original).  Here, the claims rate of over 8% for the ARL Settlement Class and 5.5% for the DSL settlement Class is higher than average and favors approval*.  See e.g., In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 329 (N.D. Cal. 2018) (approving 1.8% claims rate); *Theodore Broomfield v. Craft Brew All., Inc*., No. 17-01027-BLF, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (approving 2% claims rate); *Shin v. Plantronics, Inc*., 2020 WL 1934893, at *4 (approving approximately 3.8% claims rate)*; Schneider v. Chipotle Mexican Grill, Inc.,* No. 16-CV-02200-HSG, 2020 WL 6484833, at *9 (N.D. Cal. Nov. 4, 2020) (approving 0.83% claims rate).

Additionally, "a low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."  *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015).  *See also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

Here, ███ of Settlement Class Members stayed in the class.  Such a positive reaction to the Settlement supports approval.  *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming

23

1   majority of the class willingly approved the offer and stayed in the class presents at least some

2   objective positive commentary as to its fairness") (approving settlement and finding positive

3   reaction with 971 opt-outs (99.9%) in nationwide class action); *Quiruz v. Specialty Commodities,*

4   *Inc. & Archer-Daniels-Midland Co., Defendants.,* No. 17-3300-BLF, 2020 WL 6562334, at *7

5   (N.D. Cal. Nov. 9, 2020) ("Opt-out percentages of nearly 5% have been deemed so

6   "overwhelmingly positive" as to support approval of the class action settlement"); *Churchill Vill.,*

7   361 F.3d at 577 (no abuse of discretion where there were 45 objections and 500 opt-outs from

8   approximately 90,000 class members); *Chun–Hoon v. McKee Foods Corp.,* 716 F.Supp.2d 848, 852

9   (N.D.Cal.2010) (4.86% opt-out rate strongly supported approval).

### I.       The Objection from Mr. Sourbeer should be overruled because it lacks merit

10          Finally, out of the millions of Settlement Class Members nationwide, there was only one

11   objection to the Settlement from Mr. Jon Sourbeer. Dkt. 119.  Mr. Sourbeer is a member of the DSL

12   Settlement Class. Keough Decl., ¶15.  Mr. Sourbeer believes that "the whole case should be thrown

13   out" and urges the Court to "please, please, please throw the case out". Dkt. 119.  The objection is

14   groundless.  First, "objections directed to the merits of the claim are objections on behalf of

15   [Bumble] and not the class" (*Larsen v. Trader Joe's Co*., No. 11-5188-WHO, 2014 WL 3404531, at

16   *6 (N.D. Cal. July 11, 2014)), and are "irrelevant" because the Court "is a fiduciary to absent class

17   members, not Defendant."  *Spann v. J.C. Penney Corp.,* 211 F. Supp. 3d 1244, 1258 (C.D. Cal.

18   2016) (citing *Dennis v. Kellogg Co.*, 2013 WL 6055326, *6 (S.D.Cal.2013)).  Second, the Court

19   must "determine whether the settlement is fundamentally fair to the class, not [] reexamine the

20   underlying merits of the litigation".  *Larsen,* 2014 WL 3404531, at *6.

21          Mr. Sourbeer also mentions that this case provides "almost no benefit" as $44 plus the right

22   to cancel a subscription and obtain a refund is not meaningful enough relief for him.  The New York

23   DSL provides statutory damages of $50.  Mr. Sourbeer does not explain what amount he believes he

24   should be entitled to under the law.  Rather, it appears that Mr. Sourbeer is challenging the general

25   utility of class actions.[9]  But to the extent that Mr. Sourbeer believes that the relief here is somehow

---

26   [9]      In that case, Mr. Sourbeer would also lack standing to object. "In the class action context,
     the objecting class member must be 'aggrieved' by the settlement provision."  *Theodore Broomfield*

27   *v. Craft Brew All., Inc.,* No. 17-1027-BLF, 2020 WL 1972505, at *20 (N.D. Cal. Feb. 5, 2020).

28   (internal citations omitted).  "If modifying the settlement provision would not 'actually benefit the

1  insufficient, the proper remedy for Mr. Sourbeer was to opt-out. *In re: Cathode Ray Tube (Crt)*

2  *Antitrust Litig.*, No. 3:07-CV-5944 JST, 2016 WL 721680, at *27 (N.D. Cal. Jan. 28, 2016)

3  ("Courts routinely hold that the opt-out remedy is sufficient to protect class members who are

4  unhappy with the negotiated class action settlement terms"); *Corzine v. Whirlpool Corp.,* No. 15-

5  5764-BLF, 2019 WL 7372275, at *7 (N.D. Cal. Dec. 31, 2019) (same).

6       Finally, Mr. Sourbeer states that "he couldn't find" the amount requested by the class

7  representatives on the "settlement page". Dkt. 119. The requests for attorneys' fees, costs, and

8  service awards to named plaintiffs were made available on the Settlement Website in a variety of

9  places and spelled out in every version of notice sent to Settlement Class Members including the

10  three email Notices sent to and opened by Mr. Sourbeer. Keough Decl., ¶15. Indeed, every

11  document containing the estimated $44 recovery for Settlement Class Members—that Mr. Sourbeer

12  references—also contained the amount being requested in attorneys' fees, costs and service awards

13  in the same paragraph. *Id.* The attorney fees' motion and memorandum of law with accompanying

14  exhibits has also been available on the Settlement Website since October 9, 2020. *Id.* at ¶12. The

Court should overrule this meritless objection.

15  **VII.   Conclusion**

16       For the foregoing reasons, the Court should finally approve the Settlement as it is fair,

17  adequate and reasonable and is an excellent result for Settlement Class Members.

18

19  Dated, December 2, 2020

20  Respectfully submitted,                    By: /s/Yitzchak H. Lieberman_____

21                                             Yitzchak H. Lieberman

22                                             David C. Parisi (SBN 162248)
                                               dparisi@parisihavens.com

23                                             Suzanne Havens Beckman (SBN 188814)
                                               shavens@parisihavens.com

24                                             PARISI & HAVENS LLP

25                                             100 Pine Street, Suite 1250
                                               San Francisco, CA  94111

26                                             Telephone: (818) 990-1299
                                               Facsimile: (818) 501-7852

27  _____

28  objecting class member,' the class member lacks standing because his challenge to the settlement
provision cannot result in redressing any injury." *Id.* (internal modifications omitted.)

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Grace E. Parasmo (SBN 308993)
gparasmo@parasmoliebermanlaw.com
Yitzchak H. Lieberman (SBN 277678)
ylieberman@parasmoliebermanlaw.com
PARASMO LIEBERMAN LAW
7400 Hollywood Blvd, #505
Los Angeles, CA 90046
Telephone:  (646) 509-3913
Facsimile:   (877) 501-3346

*Attorneys for Plaintiffs Nick King, Jr.,*
*Deena Fischer, and Elena Weinberger,*
*and the Settlement Classes*

Notice of Motion and Motion for Final Approval of Class Action Settlement