UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK KING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BUMBLE TRADING, INC., et al., <br><br> Defendants. | Case No. 18-cv-06868-NC <br><br> **ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT, AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES** <br><br> Re: Dkt. Nos. 117, 120 |

Following the Court's preliminary approval, notice to prospective class members, and a fairness hearing, the Court now considers Plaintiff's unopposed motion for final approval of a proposed class action settlement. The proposed class settlement totals $22.5 million and includes all monetary benefits and payments to the Settlement Class, Service Awards, Class Counsel Award, and all claims for interest, fees, and costs.[1] The settlement's non-monetary benefits include injunctive relief. Also before the Court is Plaintiff's motion for attorneys' fees totaling $6,075,000.00 (27% of the total Settlement Fund), reimbursement of litigation costs totaling $15,104.00, and Plaintiffs' class representative service awards totaling $15,000.00. These amounts would be deducted

---

[1] Capitalized terms are defined in the Settlement Agreement.

from the $22.5 million settlement fund. Weighing the strength of the claims against the risk of continued litigation, the Court finds that the proposed settlement is fair and reasonable. Accordingly, the Court GRANTS the motion for final approval of the settlement. The Court also GRANTS IN PART AND DENIES IN PART the motion for attorneys' fees, costs, and expenses.

## I. BACKGROUND

### A. Pre-Settlement Procedural History

Defendants Bumble Trading, Inc. and Bumble Holding Ltd. (Bumble) own and operate a mobile software application called "Bumble," which provides dating services by matching its users using a proprietary algorithm. *See* Dkt. No. 58 Third Amended Complaint ("TAC") ¶¶ 18, 21. Users provide Bumble with various personal information when they sign up, such as their names, addresses, and photographs. *Id.* ¶ 20. Bumble offers a premium service called "Bumble Boost" that unlocks additional features for a recurring subscription fee. *See id.* ¶¶ 22, 23, Ex. B.

This litigation arises from the alleged violation of California's Automatic-Renewal Law (ARL), and New York's Social Referral Services Law (DSL) for failure to provide statutorily required disclaimers and contract provisions in connection with Bumble Boost. *See id.* ¶¶ 2, 25–50. Plaintiffs Nick King, Jr., Deena Fischer, and Elena Weinberger ("Named Plaintiffs") filed a putative class action against Bumble on behalf of themselves and classes of nationwide consumers. *See* Dkt. No. 108-1, Ex. 1 at 1 ("Settlement Agr."). On November 13, 2018, Plaintiffs filed this action in the United States District Court for the Northern District of California. Dkt. No. 1. Mr. King alleged that Bumble automatically renewed his subscription without obtaining his affirmative consent to the automatic renewal offer terms in violation of California's ARL. *See* Dkt. No. 120 ("Mot. For Final Approval") at 2. Plaintiffs also alleged that Bumble's Terms and Conditions failed to notify California consumers of their right to cancel their contracts for dating services within three business days, and their right to obtain a refund under California's Dating Service Law. *Id.*

Bumble moved to dismiss, and Plaintiffs subsequently filed an amended complaint. Dkt. Nos. 23, 25.  On April 5, 2019, Plaintiffs filed a second amended complaint to include new allegations and a claim for money had and received.  Dkt. No. 43.  On April 12, 2019, Bumble moved to dismiss the second amended complaint on the grounds that Plaintiffs failed to state a claim, and that the choice-of-law provision in Bumble's Terms and Conditions designated New York Law to govern the dispute.  *See* Dkt. No. 44.  On July 8, 2019, this Court granted Bumble's motion to dismiss all claims relying upon the California Dating Service Law but denied dismissal as to the claims premised on violations of California's ARL.  Dkt. No. 53.

On August 9, 2019, Plaintiffs filed the third amended complaint.  *See* TAC.  In addition to alleging that Bumble violated California's ARL, Plaintiff's third amended complaint alleged unjust enrichment, and that Bumble also violated New York's Social Referral Services Law (DSL).  *See id.*  Plaintiffs joined Brian Wess, a New York resident, as a named plaintiff.  *Id.*  On September 9, 2019, Bumble moved to dismiss the New York claims in the third amended complaint.  Dkt. No. 67.  Bumble argued that it did not violate New York's DSL, and it challenged personal jurisdiction over Wess and out-of-state class members.  *Id.*  On November 20, 2019, this Court denied Bumble's motion to dismiss the New York claims, deferred ruling on personal jurisdiction, granted jurisdictional discovery, and ordered supplemental briefing.  *See* Dkt. Nos. 74, 76.  On February 11, 2020, this Court granted Bumble's motion to dismiss Wess for lack of personal jurisdiction but denied dismissal of the absent out-of-state class members, and declined to certify the issue for interlocutory appeal to the Ninth Circuit.  Dkt. No. 84.

The parties engaged in multiple rounds of discovery on issues including: contested ESI issues, Bumble's Terms and Conditions, Boost purchase and subscription flows, Bumble's internal complaint process, the size of the proposed classes, Bumble's refund policies, and the amounts paid for Boost by Settlement Class Members.  *See* Dkt. No. 120-1 ("Beckman Decl.") ¶ 5.  The Plaintiffs took one deposition of Bumble's former Chief Operations Officer, drafted a set of requests for admission, and conducted third-party

discovery. *See* Dkt. No. 117-2 ("Parasmo Fee Decl.") ¶¶ 48, 57, 66. On April 2, 2020, the parties attended a mediation before Retired Magistrate Judge Infante which did not resolve the lawsuit at the initial session. *See* Mot. for Final Approval at 4. On April 23, 2020, the mediator made a six-point recommendation to settle on a class-wide basis which was accepted by all parties in a double-blind process on April 24, 2020. *Id.*

### B.   The Settlement Agreement

The Settlement Agreement is docketed in full at ECF 108-1, Ex. 1. The Court summarizes its contents here.

The proposed Settlement Class, for purposes of this order, means "both the DSL Settlement Class and the ARL Settlement Class[.]" Settlement Agr. ¶ 1.49. The "'ARL Settlement Class' means all persons who purchased, within California, during the Settlement Class Period, Bumble Boost and had their credit card, debit card, and/or a third-party payment account charged as part of Bumble's automatic renewal program or continuous service program." *Id.* ¶1.5. The "'DSL Settlement Class' means all persons nationwide who purchased Bumble Boost during the Settlement Class Period." *Id.* ¶ 1.19. Under the settlement terms, Bumble will pay a total settlement amount of $22.5 million in non-reversionary monetary benefits to the Settlement Classes. *Id.* ¶ 2.1. This sum includes payments made to the settlement class members, Settlement Administration costs, awards of attorneys' fees and costs, and class representative service awards. *Id.* ¶ 2.2. Each DSL Settlement Class member who submitted a valid claim will receive a proportionate and equal share of the DSL Net Settlement Fund.[2] *Id.* ¶ 2.4.1. Each ARL Settlement Class member who submitted a valid claim will receive a *pro rata* share of the ARL Net Settlement Fund proportionate to the amount they were charged under an automatic renewal or continuous service program for Boost during the Settlement Class Period. *Id.* ¶ 2.4.2. Under the Settlement Agreement, ARL settlement class members who

---

[2] The DSL Net Settlement Fund represents 85% and the ARL Net Settlement Fund represents 15% of the fund after deduction of administrative costs, service awards to Plaintiffs, and any fee and expense award to Class Counsel. Settlement Arg. ¶¶ 1.20, 1.4.

made valid claims are estimated to recover, on average, $50.00 per claim, not including any award they will receive from the DSL portion of the Settlement. *See* Mot. for Final Approval at 21. Members of the DSL class who made valid claims are estimated to recover $37.00. *See id.* at 20.

The distribution process for the Net Settlement Fund is detailed in full in the Settlement Agreement. *Id.* ¶ 2.4. Residual and unclaimed funds will be distributed to Settlement Class Members after they receive initial payments. For DSL Settlement Class Members, the additional payment, when combined with the initial payment, will not exceed $100.00. *Id.* ¶ 2.5(c). For ARL Settlement Class Members, the additional payment, when combined with the initial payment, will not exceed the amount the ARL Settlement Class member was charged in auto-renewal fees. *Id.* ¶ 2.5(b).

If any portion of the payment is not successfully distributed to Settlement Class Members, or if funds remain in the Net Settlement Fund for an additional one-hundred (100) days after the second distribution, then the remaining funds will be distributed to the *Cy Pres* beneficiary, the National Consumer Law Center. *Id.* ¶¶ 1.14, 2.6; *see also* Dkt. No. 108-3 Declaration of Richard Dubois.

This Settlement Agreement represents a compromise between the parties and comes at the release of claims by the parties, detailed within the Settlement Agreement. *See* Settlement Agr. ¶ 1.41. Bumble consented to an injunction that requires it to implement certain business practices for a period of eighteen (18) months. Settlement Agr. ¶ 2.8. The reformed business practices are specifically designed to satisfy the injunctive relief demands in the operative complaint. *See* TAC ¶¶ 110–15.

For the DSL Settlement Class, Bumble agrees that as long as New York law is the law governing its relationship with Bumble users, Bumble's Terms and Conditions will inform consumers nationwide of their right to cancel their Boost subscription and obtain a full refund within three business days of their initial purchase. *Id.* ¶ 2.8(a), (b). In the event that Bumble changes the governing law, the Terms and Conditions will be changed to notify consumers who reside in eleven (11) states with comparable dating services laws

5

of their right to cancel, within three business days, and obtain a full refund, under their state's dating service law. *Id.*

For the ARL Settlement Class, Bumble agrees to change its subscription purchase flow in the Bumble App for users that purchase subscriptions directly from Bumble to include additional disclosures regarding the recurring nature of the subscription and explain Bumble's full cancellation policy. *Id.* ¶ 2.8(c). Further, for users that purchase subscriptions directly from Bumble, it will disclose in its post-purchase emails the price and period of the plan purchased, include a statement that the plan will auto-renew unless cancelled within twenty-four (24) hours prior to the end of the plan period, and provide instructions on cancellation. *Id.* ¶ 2.8(d).

### C. Preliminary Approval

On July 15, 2020, this Court issued an order (1) preliminarily approving the settlement agreement; (2) preliminarily certifying the proposed certification classes; (3) approving the form of Notice of Class Action Settlement and directing the manner of delivery; (4) approving Parisi & Havens, LLP and Parasmo Lieberman Law as Class Counsel, Nick King, Jr. as ARL Class Representative, Deena Fischer and Elena Weinberger as DSL Class Representatives, and (5) appointed JND as the Settlement Administrator. *See* Dkt. No. 115 ("Prelim. Approval Order").

### D. Class Notice

Pursuant to the Court's Preliminary Approval Order, the Court appointed JND Settlement Administrators as the Settlement Administrator. *See* Prelim. Approval Order at 10. JND sent court-approved Email Notices to millions of class members. *See* Dkt. No. 124 Jennifer Keough Declaration ("Keough Decl.") ¶ 10. Members of both ARL and DSL Settlement Classes received a combined Email Notice, and members of the DSL but not ARL Settlement Class received a DSL Email Notice. *Id.* Of the initial Email Notices sent, approximately 67% were successfully delivered, and approximately 33% came back as undeliverable. *Id.* For the undeliverable Email Notices, JND used email skip-trace tools to identify updated email and mailing addresses. *Id.* ¶ 11. For some Settlement Class

1   Members whose Email Notice was undeliverable and for whom JND obtained a mailing
2   address through the skip tracing process, JND mailed notices. *Id.* ¶ 15. Overall,
3   approximately 81 % of the Settlement Class Members were successfully sent either an
4   Email or Mailed Notice. *Id.* ¶ 21. JND supplemented these Notices with a Press Release
5   which Global Newswire published on July 18, 2020. *Id.* ¶ 10. Additionally, JND
6   established a website to provide links to the Notice, case documents, video information for
7   the final approval hearing, contact information for Class Counsel, and PACER access
8   instructions. *Id.* ¶ 11.

### E. Reaction to Settlement

The period for class members to timely object to the settlement or opt-out expired on November 13, 2020. *Id.* ¶ 30. As of the December 16, 2020 final approval hearing, the Court received one timely objection from a DSL class member, and one untimely objection from another DSL class member. *See* Dkt. No. 131 ("Fairness Hearing (Dec. 16, 2020)"); *see also* Keough Decl. ¶ 31.

"The fact there is some opposition [to the proposed settlement] does not necessitate disapproval of the settlement; rather, the court must evaluate whether the objections suggest serious reasons why the proposal might be unfair." *Corzine v. Whirlpool Corp.*, No. 15-cv-5764-BLF, 2019 WL 7372275, at *7 (N.D. Cal. Dec. 31, 2019) (citing *Moore v. Verizon Commc'ns Inc.*, No. 09-cv-1823-SBA, 2013 WL 4610764, at *9 (N.D. Cal. Aug. 28, 2013). Mr. Jon Sourbeer submitted the only timely objection in this case. Dkt. No. 119. Mr. Sourbeer objects to the merits of the case as a whole, rather than the adequacy of the settlement. *See id.* He requested that "the whole case should be thrown out," because "[c]lass action suits like this provide almost no benefit to class members" such as himself. *Id.* Because Mr. Sourbeer's objection speaks to the merits of the claim and does not object to the fairness of the settlement, the Court agrees with the parties. The proper remedy would have been for Mr. Sourbeer to opt-out of the class action if he was unhappy with the settlement terms. *See Corzine*, 2019 WL 7372275, at *7 (noting that federal courts routinely hold that the opt-out remedy is sufficient to protect class members who are

unhappy with the settlement terms). Accordingly, the Court OVERRULES Mr. Sourbeer's objection.

Additionally, at the fairness hearing there was one untimely objector from the DSL class, Mr. Jacob Freeman. *See* Fairness Hearing (Dec. 16, 2020). Mr. Freeman objected based on "timely notice" because he did not receive the notice until two weeks after the Settlement Administrator purportedly emailed notice, according to Keough's declaration. *See id*. Thus, Mr. Freeman asserted that there was a low response rate among class members, and that low response rate was the result of late notice. *See id*. Not only was Mr. Freeman's objection untimely, but the Court finds that counsel complied with the preliminary approval order. Notice was provided as prescribed under the Settlement Agreement (which was on a rolling basis as JND obtained unreachable class members' contact information). Additionally, Mr. Freeman received timely notice and was not prejudiced in any way. Mr. Freeman's objection appears to be a misunderstanding of the notice process under the Agreement, and his objection is thus OVERRULED.

### F.     CAFA Notice

Pursuant to Class Action Fairness act, 29 U.S.C. § 1711, et seq., a separate notice of the settlement was provided to 52 federal and state agencies on or about July 2, 2020. *See* Keough Decl. ¶ 5. No state Attorney General or Federal Official has objected to the Settlement or raised any concerns about its validity. *See* Mot. for Final Approval at 23.

### G.     **Fairness Hearing**

The Court held a fairness hearing on December 16, 2020. *See* Fairness Hearing (Dec. 16, 2020). There, the parties confirmed that the process of notifying class members went according to the process described in the Settlement Agreement, the Settlement Funds were being managed as contemplated by the Settlement Agreement, the one timely objection to the settlement was meritless, and at the time of the hearing there were still 889 timely opt-outs and six untimely opt-outs. *Id.*; *see also* Keough Decl. ¶ 35. As discussed above, there was one untimely objector from the DSL class who appeared and spoke at the hearing, but his objection does not change the Court's conclusion about the fairness or

adequacy of the Settlement. *See* Fairness Hearing (Dec. 16, 2020). Neither party raised objections or concerns with the Settlement Agreement moving forward. *See id.*

In response to the Court's inquiries about the distribution of funds, counsel confirmed the process of re-distribution of Settlement Funds after the initial allocation. To date, there are eighty-nine (89) late claims forms.[3] The Settlement Administrator will make reasonable attempts to perform quality assurance procedures on late claims, and to pay those timely claimants with unclaimed funds before distributing any funds to the *cy pres* beneficiary. The parties also confirmed that under the Settlement Agreement, they have no power to permit the late opt-outs (exclusions) in the Settlement.

### H. Motion for Final Approval

Plaintiffs now move for final approval of the settlement. *See* Mot. For Final Approval. In conjunction with the final approval motion, and as authorized by the settlement terms, Plaintiffs also move to recover attorneys' fees, costs, and expenses. *Id*. Both motions are unopposed.[4]

## II. DISCUSSION

As a threshold matter, this Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. sections 1332(d)(2) and 1453. All parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). Dkt. Nos. 11, 21, 22.

The Court first discusses Plaintiffs' motion for final approval of the class action settlement, then discusses Plaintiffs' motion for attorneys' fees and other expenses.

### A. The Court Finally Approves the Class Action Settlement.

The settlement agreement contemplates two settlement classes, which this Court preliminarily certified under Federal Rule of Civil Procedure 23(b)(1). *See* Prelim. Approval Order at 2. The Court now confirms its findings and finally certifies the

---

[3] At the time of Keough's declaration, JND received 85 late claims forms. Keough Decl. ¶ 36.
[4] Although Bumble filed a statement of non-opposition regarding the motion for attorneys' fees and technically did not object, Bumble noted that the requested amount was "higher than anticipated" in light of the nature of the case.

following non-opt-out classes:

> "'ARL Settlement Class' means all persons who purchased, within California, during the Settlement Class Period, Bumble Boost and had their credit card, debit card, and/or a third-party payment account charged as part of Bumble's automatic renewal program or continuous service program." Settlement Agr. ¶1.5. The "'DSL Settlement Class' means all persons nationwide who purchased Bumble Boost during the Settlement Class Period."

Settlement Agr. ¶ 1.19. JND Settlement Administrators received 889 timely and valid exclusion requests (opt-outs) and six late exclusion requests. *See* Keough Decl. ¶ 35; *see also* Mot. for Final Approval at 8. As to the valid opt-out members, their claims are not released pursuant to the settlement agreement, and settlement funds will not be provided to them through the claims process. *See id*. ¶ 34.

Any settlement agreement that will bind absent class members requires judicial approval. Fed. R. Civ. P. 23(e). In deciding whether approval is appropriate, "the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To make this evaluation, courts in the Ninth Circuit look to the eight *Churchill* factors:

> "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). However, the "relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. The determination of whether a proposed settlement is fair falls within the sound discretion of the district court. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

1    Here, considering the *Churchill* factors, the Court is persuaded that the settlement
2    agreement merits approval.  After two years of litigation, experienced counsel on both
3    sides of the dispute negotiated a settlement of monetary and injunctive relief for the class
4    members.  Counsel engaged in protracted negotiations for eight weeks and negotiated a
5    substantial settlement that balances the strength of Plaintiffs' claims against the risks,
6    expense, complexity, and likely duration of further litigation.  The parties have substantial
7    differences in opinion about a range of outstanding issues, but they avoided that risk by
8    entering a $22.5 million settlement with injunctive relief.  This settlement is in the best
9    interest of the class.

   The extent of discovery, although not extraordinary, weighs in favor of settlement here.  The parties' jurisdictional discovery allowed them to evaluate the viability of their claims and defenses.  *See* Mot. for Final Approval at 22.  For formal discovery, Plaintiffs took one deposition of Bumble's former Chief Operations Officer, drafted a set of requests for admission, and conducted third-party discovery.  *See* Parasmo Fee Decl. ¶¶ 48, 57, 66. Plaintiffs' own investigations and review of Bumble's document production gave them a comprehensive understanding of the issues involved in the case.  *See* Mot. for Final Approval at 22.  This conclusion is supported by the fact that only two out of millions of class members filed objections in response to the settlement notices; one timely, and one untimely.  *See* Fairness Hearing (Dec. 16, 2020).  As discussed above, those two objections do not alter the Court's conclusion that the settlement is fair, adequate, and reasonable.

   In sum, the Court finds that, viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" to warrant approval.  *See Officers for Justice*, 688 F.2d at 625. The Court therefore approves the settlement agreement.

### B. The Motion for Attorneys' Fees and Other Expenses is Granted in Part and Denied in Part

In a separate motion, and as contemplated by the settlement agreement, Plaintiffs move for attorneys' fees, certain costs, expenses, and class representative service awards,

11

all to be paid from the negotiated settlement amount of $22.5 million. Specifically, Plaintiffs seek $6,075,000.00 (27% of the Settlement Fund) in attorneys' fees; $15,104.00 in litigation costs and expenses; and $15,000.00 in service awards to the three Named Plaintiffs ($5,000.00 each). *See* Dkt. No. 117 ("Mot. for Fees") at 1. The Court finds that the figures for litigation costs, expenses, and service awards are reasonable and awards those amounts in full. However, the Court finds that the requested 27% attorneys' fee payment is unreasonable, and awards attorneys' fees in part.

### 1. Attorneys' Fees

The Court finds that $5,625,000.00 (25% of the Settlement Fund), is a reasonable fee award given the facts of this case, as opposed to Plaintiffs' requested 27%.

In an unopposed motion,[5] Plaintiffs move for fees under a common fund doctrine. Because plaintiffs asserted claims under California law, "California law governs plaintiffs' motion for fees." *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 982 (N.D. Cal. 2017); *see Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("federal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine" (internal footnote omitted)); *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees." *Ridgeway*, 269 F. Supp. 3d at 982 (citing *MacDonald v. Ford Motor Co.*, No. 13-cv-2988-JST, 2016 WL 3055643, at *2 (N.D. Cal. May 31, 2016)).

In common fund cases like this one, the Ninth Circuit has endorsed calculating attorneys' fees using a benchmark of 25% of the common fund amount. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). "Notably, while the California Supreme Court recognized the Ninth Circuit's 25% benchmark for percentage awards in common fund cases, it did not adopt such a benchmark for California cases." *Ridgeway,* 269 F. Supp. 3d at 982 (internal citations omitted) (citing *Laffitte v.*

---

[5] As explained above, Bumble technically does not oppose the request for attorneys' fees, but its reaction to Plaintiffs' request highlights objectionable issues for the court.

12

*Robert Half Int'l Inc.*, 205 Cal.Rptr.3d 555, 566 (2016)). "The goal under either the percentage or lodestar approach [is] the award of a reasonable fee to compensate counsel for their efforts." *Laffitte*, 205 Cal.Rptr.3d at 575.

Whether awarding the benchmark amount or some other figure, the Court must support an attorneys' fee award with "findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. In particular, district courts should consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Hopkins v. Stryker Sales Corp.*, No. 11-cv-02786-LHK, 2013 WL 496358, at *1 (N.D. Cal. Feb. 6, 2013) (citing *Vizcaino*, 290 F.3d at 1048–50).[6] Additionally, district courts may cross-check the reasonableness of a percentage award by comparing it to a lodestar calculation and risk multiplier. *Vizcaino*, 290 F.3d at 1050.

### a. Fairness of Requested Fee in Common Fund Cases

Plaintiffs here argue that counsel should receive 27% of the Settlement Fund ($6,075,000.00) because the monetary and non-monetary results obtained by this Settlement Agreement are "exceptional." *See* Mot. for Fees at 6–7. Counsel argues that the risks of litigation were severe because this lawsuit involved "complex, threshold issues that lacked in controlling precedent and were novel in their application." *Id.* at 8. Specifically, counsel asserts that they avoided the risks of litigation because (1) the applicability of the California's ARL gift provision to Bumble Boost remains an open

---

[6] These same general factors have also been identified as "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942 n.7 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)).

13

question, and (2) litigation "could have" dragged on for an extended period of time had Bumble been able to appeal to the Ninth Circuit the issue of personal jurisdiction for out-of-state class members. *Id.* at 8–9.

Having considered the relevant factors, however, the Court disagrees that this action posed a substantial risk and required significant time and skill to achieve the results for the class. Although class counsel is skilled and experienced in consumer class actions, the discovery conducted in this case was not as complex or voluminous enough to warrant a heightened fee award. The discovery involved one half-day deposition, and only a few hundred documents were produced through the course of the litigation. *See* Dkt. No. 118, Bumble Statement of Non-Opposition. This case was not litigated for an atypical length of time and counsel did not maximize efficiency in staffing hearings. Additionally, most of the litigation was at the motion to dismiss stage. The results here may be novel considering the unique consumer protection statutes, but a fee award in excess of $5 million is more than adequate to compensate for experienced counsels' work on these few novel issues.

Regarding quality of presentation, although Plaintiff's counsel did not have experience alleging violations of the New York DSL or California ARL, *see* Dkt. No. 108-1 ("Parisi Decl.") ¶ 11, the litigation and settlement appear to be the work of skillful and experienced attorneys with significant experience in consumer class actions. Counsel assumed numerous risks in litigating this case, including taking its cases on a contingency fee basis. *See* Parisi Fee Decl. ¶ 34. But more importantly, it is instructive that other courts in this district have denied fee requests above the Ninth Circuit's established benchmark where the actions did not pose a substantial risk nor require extraordinary time and skill to obtain a result for the class. *See In reLinkedin User Privacy Litig.*, 309 F.R.D. 573, 590–91 (N.D. Cal. 2015) ("While the Class counsel skillfully and professionally prosecuted this action, the Court does not believe the facts of this case warrant a departure from the Ninth Circuit's established benchmark of 25%" for an award of 32%.). Therefore, the requested amount does not fall within the range of reasonableness.

14

### b. Lodestar Cross-Check

A lodestar cross-check confirms that Plaintiffs' fee request is unreasonable. After reviewing the reasonable billing rates for Plaintiffs' attorneys, the lodestar calculation amounts to $2,411,187.50 for work spent leading up to, but not including, the final approval of settlement. *See* Mot. for Final Approval at 13; *see also* Parisi Fee Decl. ¶ 32; *see also* Parasmo Fee Decl. ¶ 98. This amount requires a risk multiplier of 2.5 to reach the $6,075,000.00 Plaintiffs' counsel seeks. *See* Mot. for Fees at 17. According to Bumble, Plaintiffs' hours reflect nearly 1.7-times the total hours Bumble's outside counsel spent on this litigation. *See* Dkt. No. 118. The Court is concerned about the marked difference between the requested percentage and the benchmark percentage —27% of this $22.5 million fund would have yielded $450,000.00 more than the benchmark 25% attorneys' fee award.

In this district, courts have denied class counsel's attorneys' fee request in excess of the 25% benchmark in diversity cases where a cross-check of the lodestar multiplier could result in a windfall for attorneys' fees. *See Ridgeway*, 269 F. Supp. 3d at 1000 (the court denied counsel's request for one-third of the common fund because, although not exactly a windfall, a lodestar cross-check showed that one-third would equate to a 3.0 multiplier, which was slightly high in light of the results achieved, work performed, and the nature of the case). Like in *Ridgeway*, there is risk of a windfall here because the requested amount is an additional $450,000.00 above the lodestar calculation. That excess is high considering the work performed and the nature of this case.

Therefore, the requested amount does not fall within the range of reasonableness, and the Court DENIES Plaintiffs' request for 27% of the Settlement Fund. The Court GRANTS IN PART Plaintiffs' request for an award of fees from the Settlement Fund. The Court will award 25% of the $22.5 million Settlement Fund ($5,625,000.00) for attorneys' fees and costs.

### 2. Litigation Costs and Expenses

Next, Plaintiffs seek $15,104.00 in out-of-pocket costs for ordinary case-related

15

expenses. Plaintiffs provide these expenses in an itemized breakdown. *See* Parisi Fee Decl. ¶¶ 40–42; *see also* Parasmo Fee Decl. ¶¶ 108–09. The Court finds Plaintiffs' requested litigation costs and expenses are reasonable and were necessary for effective representation of the class. *See* Fed. R. Civ. P. 23(h); *Theriot v. Celtic Ins. Co.*, No. 10-cv-04462-LB, 2011 WL 1522385, at *7 (N.D. Cal. Apr. 21, 2011) ("Class counsel are entitled to reimbursement of reasonable out-of-pocket expenses.").

### 3. Service Awards

Finally, Plaintiffs ask the Court to award Nick King, Jr., Deena Fischer, and Elena Weinberger $5,000.00 each (totaling $15,000.00) for their service as class representatives. *See* Mot. for Fees at 18–19. Class representative awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–959 (9th Cir. 2009). In making the discretionary determination whether to grant such an award, the district court considers relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation[.]" *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "In this district, a $5,000 payment is presumptively reasonable." *Pierce v. Rosetta Stone, Ltd.*, No. 11-cv-01283-SBA, 2013 WL 5402120, at *6 (N.D. Cal. Sept. 26, 2013).

Here, the class representatives submitted declarations describing their involvements in this case. *See* Dkt. Nos. 117-3 ("Fischer Decl."), 117-4 ("King Decl."), 117-5 ("Weinberger Decl."). King, Fischer, and Weinberger devoted a high level of involvement requiring significant time and energy to regularly communicate with their attorneys, work with counsel on investigations and discovery requests, and participate in mediation. *See* King. Decl. ¶¶ 4–5; Fischer Decl. ¶¶ 5–7; Weinberger Decl. ¶¶ 5–7. They also undertook significant reputational risks by putting their lives on display by making public that they

were users of the Bumble dating app. *See* Weinberger Decl. ¶ 4. Based on the work performed in this case, the Court finds it appropriate to GRANT Plaintiffs' requested $15,000.00 service award.

### III.  CONCLUSION

For the reasons stated above, the Court CERTIFIES the proposed settlement classes and GRANTS Plaintiffs' unopposed motion for final approval of the class action settlement on the terms set forth in the settlement agreement. *See generally* Settlement Agr.

The Court GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for attorneys' fees and other expenses to be paid from the Settlement Fund. The Court awards $5,625,000.00 (25% of the Settlement Fund) and DENIES Plaintiffs' request for $6,075,000.00 (27%). The Court also awards $15,104.00 in out-of-pocket litigation expenses, and $15,000.00 in class representative service awards. The total award is $5,655,104.00.

This Court will retain jurisdiction of the matter through the conclusion of the post-distribution accounting. Within thirty (30) days of the settlement administrator completing the dispersal of funds to class members, Plaintiffs must submit to the Court a status report on: (1) the amount of money dispersed and the amount of money left in the Settlement Fund; (2) the number of class members that received a payment, and the number that did not; and (3) any other updates that might assist the Court in overseeing the fair and just administration of the settlement.

**IT IS SO ORDERED.**

Dated: December 18, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge